**Henry J. Kaplan,** OSB No. 830559
**Thomas K. Doyle**, OSB No. 972511
Bennett, Hartman, Morris & Kaplan, LLP
210 SW Morrison St., Ste. 500
Portland, Oregon 97204-3149
Telephone: (503) 227-4600
Facsimile: (503) 248-6800
Email: doylet@bennetthartman.com
Email: kaplanh@bennetthartman.com

    Attorneys for Plaintiff International Longshore
    Warehouse Union

**Jeffrey P. Chicoine,** OSB No. 902279
Miller Nash LLP
111 SW 5th Ave Ste 3400
Portland OR  97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155
Email:  jeff.chicoine@millernash.com

    Attorneys for Plaintiff Pacific Maritime
    Association

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION and PACIFIC MARITIME ASSOCIATION, | Case No. |
| Plaintiffs, | COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF FINAL AND BINDING RULINGS UNDER COLLECTIVE BARGAINING AGREEMENT |
| v. | |
| ICTSI OREGON, INC., an Oregon corporation, | |
| Defendant. | |

Page 1 - COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF FINAL AND
      BINDING RULINGS UNDER COLLECTIVE BARGAINING AGREEMENT

Plaintiffs INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ("ILWU")

and PACIFIC MARITIME ASSOCIATION ("PMA"), for their Complaint against Defendant

ICTSI OREGON, INC. ("ICTSI") herein, allege as follows:

## JURISDICTION AND VENUE

1.      This is an action to enforce a collective bargaining agreement. This action arises

under Section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. §

185). Jurisdiction is conferred upon this Court by the provision of that section.

2.      Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendant

ICTSI maintains its principal place of business in this district.

3.      Plaintiff ILWU is, and at all times mentioned herein was, an unincorporated

association commonly known as a labor union and maintains its principal offices in San Francisco,

California. The ILWU represents longshore workers, longshore mechanics, gearmen, and marine

clerks, employed by waterfront companies who are members of PMA, at all West Coast ports

including Portland, Oregon. The ILWU is, and at all times mentioned herein has been, a labor

organization representing employees within the meaning of Section 301 of the Labor Management

Relations Action, 29 U.S.C. § 185.

4.      Plaintiff PMA is, and at all times mentioned herein has been, a non-profit

corporation organized and existing under and by virtue of the laws of the State of California. At all

material times, PMA has maintained its principal office at 555 Market Street, San Francisco,

California. PMA is a multiemployer collective bargaining association whose members include

stevedoring companies, terminal operators, and maintenance and repair contractors that employ

dockworkers, such as longshoremen, throughout the United States Pacific Coast. PMA represents

Page 2 - COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF FINAL AND
        BINDING RULINGS UNDER COLLECTIVE BARGAINING AGREEMENT

these employers, including Defendant ICTSI, in collective bargaining negotiations with the ILWU and in the administration of the resulting labor agreements.

5.      Defendant ICTSI is, and at all times mentioned herein has been, a for-profit corporation organized and existing under and by virtue of the laws of the State of Oregon. At all material times, ICTSI has maintained a principal place of business at the Portland of Portland (Terminal 6), and has employed longshore workers, including longshore mechanics, who are represented by the ILWU.

6.      PMA and its member companies, including ICTSI, are, and at all times mentioned herein have been, employers in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act of 1947, 29 U.S.C. § 142, and Section 2 of the National Labor Relations Act, 29 U.S.C. § 152, and within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

## FACTS

### The Collective Bargaining Agreement

7.      The ILWU and PMA are parties to a single, coastwise, collective bargaining agreement covering all commercial ports along the West Coast of the United States from San Diego, California to Bellingham, Washington. The collective bargaining agreement is known as the "Pacific Coast Longshore and Clerks Agreement" ("PCL&CA"), which is set forth in two documents, (1) the Pacific Coast Clerks Contract Document, which governs the wages, hours, and terms and conditions of employment for marine clerks employed by PMA member companies, and (2) the Pacific Coast Longshore Contract Document ("PCLCD"), which governs the terms and condition of employment of all longshore workers, including longshore mechanics, employed by

PMA member companies, including ICTSI. A true and correct copy of the relevant portions of the PCLCD in effect during the period July 1, 2008 through July 1, 2014 is attached hereto as Exhibit A.

8.      The PCL&CA is administered by the Joint Coast Labor Relations Committee (Coast LRC). The Coast LRC is the master labor-management committee for the entire West Coast and is composed of representatives of the ILWU and PMA headquarters in San Francisco, California, where the Coast LRC regularly meets and conducts its business under the Agreement. Its decisions are binding on the parties in all ports and become a part of the PCL&CA.

9.      Each port has at least one Joint Port Labor Relations Committee ("JPLRC"), which is a joint labor-management committee composed of representatives of the ILWU Local Union and the local PMA-member companies at that particular port. The JPLRC administers the PCL&CA at the local level and its decisions are binding on the local parties, subject to the ultimate control of the Coast LRC.

10.     The preamble to the PCLCD specifies, "All property rights in and to the Agreement, including this Contract Document for longshoremen, are entirely and exclusively vested in the Pacific Maritime Association and the International Longshore and Warehouse Union respectively, and their respective members."

11.     Section 1 of the PCLCD, entitled, "Scope of This Contract Document and Assignment of Work to Longshoremen," contains detailed provisions describing the nature and scope of the work that ILWU-represented employees are contractually entitled to perform under the Agreement.

Page 4 - COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF FINAL AND
            BINDING RULINGS UNDER COLLECTIVE BARGAINING AGREEMENT

12.    Section 1.7 states, "The Contract Document shall apply to the maintenance and repair of containers of any kind and of chassis, and the movement incidental to such maintenance and repair. (See Section 1.81.)"

13.    Section 1.71 states, "This Contract Document shall apply to the maintenance and repair of all stevedore cargo handling equipment. (See Section 1.81.)"

14.    The work described in Sections 1.7 and 1.71 includes the maintenance and repair of refrigerated containers commonly referred to as "reefers." Reefers loaded with cargo have to be plugged into a power source in order to keep their contents within a specified temperature range. The maintenance and repair of reefers includes plugging the reefers into a power source, unplugging them when needed and monitoring their temperatures and vent settings.

15.    Section 1.76 states that, "The Employers shall assign work in accordance with Section 1 provisions and as may be directed by the CLRC or an arbitration award, which the Employers shall defend in any legal proceeding. PMA shall participate along with the individual Employers assigning the work in any legal proceeding."

16.    Section 1.81 states, "ILWU jurisdiction of maintenance and repair work shall not apply at those specific marine terminals that are listed as being 'red circled' in the July 1, 2008 Letter of Understanding on this subject…."

17.    Section 1.82 states, "An employer in a port covered by this Contract Document who joins the Association subsequent to the execution hereof and who is not a party to any conflicting longshore agreement becomes subject to this Contract Document."

18.    Section 11.2 states that, "The Union and Employers, as the case may be, shall be required to secure observance of this Agreement."

Page 5 - COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF FINAL AND
          BINDING RULINGS UNDER COLLECTIVE BARGAINING AGREEMENT

19.    Section 18.1 requires the parties to act in good faith:

> As an explicit condition hereof, the parties are committed to observe
> this Agreement in good faith. The Union commits the locals and
> every clerk it represents to observe this commitment without resort
> to gimmicks or subterfuge. The Employers give the same guarantee
> of good faith observance on their part.

### The Mandatory Grievance/Arbitration Provisions in the Agreement

20.    Section 17 sets forth the parties' mandatory grievance procedure for final and

binding resolution of disputes arising under the PCL&CA.

21.    Section 17.15 specifies that, "The grievance procedure of this Agreement shall be

the exclusive remedy with respect to any dispute arising . . ." under the Agreement. Section 17 and

its various subparts set out a multi-step, coastwise labor relations/arbitration system for processing

and resolving all manner of contract disputes. Under this system, disputes between the ILWU and

PMA concerning application and interpretation of the Agreement are initiated at the local level,

where they are first considered by the JPLRC.

22.    Under Section 17.25 of the PCL&CA, disputes that are not resolved by the JPLRC

may be referred to arbitration before the Area Arbitrator. The Area Arbitrators are standing

arbitrators who hear all contract disputes arising within their geographic area. There are four

separate "areas" - Southern California, Northern California, the Columbia River and Oregon Coast

Ports Area, and the Puget Sound Area. At all relevant times to this complaint, Jan R. Holmes has

served as the Columbia River and Oregon Coast Ports Area Arbitrator.

23.    Section 17.52 of the Agreement specifies that the powers of the arbitrators are

limited strictly to the application and interpretation of the Agreement as written, and that they have

"jurisdiction to decide any and all disputes arising under the Agreement. . . ."

24.     Section 17.26 states, "The Joint Coast Labor Relations Committee has jurisdiction to consider issues that are presented to it in accordance with this Agreement and shall exercise such jurisdiction where it is mandatory and may exercise it where such jurisdiction is discretionary as provided in section 17.261, section 17.262 and other provisions of this Agreement." With or without a prior grievance, prior JPLRC ruling or prior Area Arbitration award, the Coast LRC has the discretion to review and resolve disputes that arise under the PCL&CA. At the Coast LRC, the ILWU and PMA each have one vote, even though each side may be represented by multiple representatives at particular meetings.

25.     Section 17.52 of the Agreement specifies that the powers of the arbitrators are limited strictly to the application and interpretation of the Agreement as written, and that they have "jurisdiction to decide any and all disputes arising under the Agreement. . . ."

26.     The rulings of the Coast LRC, as specified in the PCL&CA, are final and binding on all the parties who are subject to the PCL&CA and are part and parcel of the parties' collective bargaining agreement.

### The Coast LRC Rulings to Be Enforced

27.     In or about 2008, ILWU Local 8 filed grievances alleging that PMA-member companies were violating the PCL&CA by failing to assign certain reefer maintenance and repair work to ILWU longshore mechanics at Terminal 6 in the Port of Portland. Specifically, ILWU Local 8 alleged that PMA-member companies were refusing and failing to assign to ILWU longshore mechanics the work of plugging, unplugging and monitoring of reefers on the dock at Terminal 6. The JPLRC reviewed the issue and later referred the matter to Area Arbitration.

28.     On or about February 12, 2011, Defendant ICTSI commenced operating Terminal 6. ICTSI failed and refused to assign the work of plugging, unplugging and monitoring of reefers on the dock to ILWU longshore mechanics.

29.     In or about early 2012, ILWU Local 8 filed new grievances against ICTSI and other PMA member companies alleging that they were, among other things, refusing and failing to assign to ILWU longshore mechanics the work of plugging, unplugging and monitoring of reefers on the dock at Terminal 6.

30.     Before the Area Arbitration on the grievances was held, the Coast LRC decided to address the issue. On or about May 23, 2012, the Coast LRC held a special meeting. The Coast LRC met in a special meeting and reviewed the relevant provisions of the PCL&CA and relevant arbitral precedent.

31.     The same day, the Coast LRC issued a set of minutes reflecting the Coast LRC's ruling. The minutes are labeled CLRC-012-2012, as they reflect the CLRC meeting number twelve held in 2012. The minutes state:

> After discussion and consideration of the matter, and in accordance with its authority under Section 17.26 and 17.27 of the PCLCD, the CLRC agree the work in dispute, currently being performed by other than ILWU workers, is work that is covered by Section 1.7 at the Terminal 6 facility in Portland and shall be performed by ILWU represented workers.
>
> …
>
> The Committee instructs ICTSI to assign the subject work to ILWU represented Longshore personnel in accordance with the PCLCD and this CLRC agreement. The Committee further instructs ICTSI to comply with Section 1.76, PCLCD.

Page 8 - COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF FINAL AND BINDING RULINGS UNDER COLLECTIVE BARGAINING AGREEMENT

A true and correct copy of the complete Coast LRC minutes from CLRC-012-2012, which constitute the Coast LRC's May 23, 2012 ruling (hereinafter, "CLRC-012-2012 Ruling"), is attached hereto as Exhibit B.

32.     The CLRC-012-2012 Ruling became and is a final and binding agreement of the parties pursuant to the provisions of Section 17 of the PCL&CA.

33.     Thereafter, representatives of ILWU Local 8 filed a grievance alleging that Defendant ICTSI was failing and refusing to comply with the May 23, 2012 Ruling.

34.     On or about June 4, 2012, Jan R. Holmes, the Area Arbitrator conducted an arbitration hearing. Immediately following the hearing, she issued a hand-written decision holding:

1)     The Employers have failed to secure observance of the Agreement in violation Section 11.2, PCLCD by failing to implement Coast LRC directive dated May 23, 2012, in CLRC Mtg # 12-12.

2)     The Employers shall immediately assign the work in question to ILWU Local 8 in accordance with CLRC Mtg # 12-12.

A true a correct copy of the Area Arbitrator's hand-written June 4, 2012, ruling is attached hereto as Exhibit C.

35.     Later the same day, Area Arbitrator Holmes issued a type-written decision further memorializing her ruling, labeled CRAA-008-2012. ("CRAA" stands for "Columbia River Area Arbitrator" and "008-2012" indicates it is the eighth decision issued from the Columbia River Area Arbitrator in 2012.)   The Columbia River Area Arbitrator held:

1.  The Employers have failed to secure observance of the Agreement in violation of Section 11.2, PCLCD by failing to implement Coast LRC directive dated May 23, 2012, CLRC Meeting #12-2012.

2.  The Employers shall immediately assign the work in question to ILWU Local 8 in accordance with CLRC Meeting #12-2012.

3.  The local grievance machinery is stalled and in accordance with Section 17.282, PCLCD, the matter in dispute can be referred at once by either the Union or the Association to the Joint Coast Labor Relations Committee for disposition.

A true and correct copy of CRAA-008-2012 is attached hereto as Exhibit D.

36.    Because ICTSI continued to fail to comply with CRAA-008-2012, on or about June 5, 2012, the ILWU referred the matter of ITCSI's failure to implement the May 23, 2012 Ruling to the Coast LRC.

37.    On or about June 6, 2012, the Coast LRC met in a special meeting to address CRAA-008-2012 and ICTSI continued noncompliance with CLRC-012-2012.

The Committee agreed to affirm orders 1 and 2 of CRAA-008-2012 and the agreement reached in CLRC meeting No. 12-12. It was further agreed that ICTSI has, to date, failed to comply with the CLRC order.

The Union moved: the contract grievance machinery has stalled and filed to work, and that the relevant CLRC agreements and the associated arbitration awards shall be implemented immediately.

The Employers voted "yes" noting that such vote is specific to the CLRC order in Meeting No. 12-12 regarding ICTSI and the fact that the grievance machinery has stalled in this matter.

The minutes of this meeting are labeled CLRC-013-2012. A true and correct copy of the minutes reflecting this ruling (hereinafter, "CLRC-013-2012 Ruling") is attached hereto as Exhibit E.

38.    CLRC-013-2012 Ruling became and is a final binding agreement of the parties pursuant to the provisions of Section 17 of the PCL&CA.

## CAUSE OF ACTION FOR ENFORCEMENT OF
## COLLECTIVE BARGAINING AGREEMENT

39.    ICTSI continues to refuse to comply with the CLRC-012-2012 Ruling and CLRC-013-2012 Ruling by continuing to fail and refuse to assign the plugging, unplugging and monitoring of reefers on the dock at Terminal 6 to ILWU longshore mechanics. The CLRC-012-2012 Ruling and CLRC-013-2012 Ruling are final and binding on all parties under section 17 of the PCL&CA.

40.    Section 1.76 of the PCLCD requires ICTSI to "assign work in accordance with Section 1 provisions and as may be directed by the CLRC or an arbitration award."

41.    Section 1.74 of the PCLCD forbids ICTSI from engaging in "subterfuge to avoid [its] maintenance and repair obligations under this Agreement to the ILWU."

42.    Section 18 of the PCLCD requires ICTSI to observe the PCLCD "in good faith." ICTSI has and continues to violate Section 18 by disregarding the CLRC-012-2012 Ruling and CLRC-013-2012 Ruling.

43.    The CLRC-012-2012 Ruling and CLRC-013-2012 Ruling are subject to immediate enforcement and confirmation pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185.

44.     By continuing to fail and refuse to comply with these rulings, ICTSI is causing and continuing to cause ILWU, PMA, and PMA member companies ongoing, irreparable injury not compensable by money damages, including but not limited to, injury to the coastwise bargaining relationship.

## PRAYER FOR RELIEF

As to the Cause of Action for enforcement of the collective bargaining agreement, Plaintiff ILWU prays for judgment as follows:

1.  That the Court order ICTSI to comply with the CLRC-012-2012 Ruling and CLRC-013-2012 Ruling by   immediately assigning the work of plugging, unplugging and monitoring of reefers on the dock at Terminal 6 to ILWU longshore mechanics.

2.  That the Court issue a temporary and permanent injunction compelling ICTSI to immediately assign the work of plugging, unplugging and monitoring of reefers on the dock at Terminal 6 to ILWU longshore mechanics.

3.  That upon trial of this action, judgment be had against ICTSI.

4.  For all damages sustained by ILWU as a result of ICTSI's failure to comply with, implement or secure compliance with said Coast LRC rulings and agreements.

5.  For ILWU's costs of suit incurred herein including reasonable attorneys' fees; and

6.   For such other relief as the Court may deem just and proper.

DATED this 13th day of June, 2012.

s/Henry J. Kaplan

Henry J. Kaplan, OSB 850330
Thomas K. Doyle, OSB 972511
Of Attorneys for Plaintiffs
kaplanh@bennetthartman.com
doylet@bennetthartman.com
   Attorneys for Plaintiff International
   Longshore and Warehouse Union

Jeffrey P. Chicoine, OSB No. 902279
Miller Nash LLP
111 SW 5th Ave Ste 3400
Portland OR  97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155
jeff.chicoine@millernash.com
   Attorneys for Plaintiff Pacific Maritime
   Association