# PACIFIC COAST LONGSHORE CONTRACT DOCUMENT

## July 1, 2008 – July 1, 2014

*Between*

INTERNATIONAL LONGSHORE AND WAREHOUSE UNION

*and*

PACIFIC MARITIME ASSOCIATION

**Published June 15, 2009**

Name _____

Port _____

Local No. _____ Reg. No. _____

**Pacific Coast Longshore Contract Document**

# TABLE OF CONTENTS

Page

## PREFACE

Preface . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

### CONTRACT SECTIONS

1 — Scope of This Contract Document and
    Assignment of Work to Longshoremen  . . . .    2
2 — Hours and Shifts  . . . . . . . . . . . . . . . . . . . . .   13
3 — Guarantees . . . . . . . . . . . . . . . . . . . . . . . . .   18
4 — Wages  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28
5 — Holidays  . . . . . . . . . . . . . . . . . . . . . . . . . . .   37
6 — Scheduled Day Off  . . . . . . . . . . . . . . . . . . . .   41
7 — Vacations . . . . . . . . . . . . . . . . . . . . . . . . . .   42
8 — Dispatching, Registration, and Preference . . .   48
9 — Promotions, Training,
    and Steady Skilled Men  . . . . . . . . . . . . . . .   53
10 — Organization of Gangs, Gang Sizes and
    Manning, and Methods of Dispatching  . . . .   55
11 — No Strikes, Lockouts, and Work Stoppages . . .   64
12 — Meetings for Registered Longshoremen  . . . . .   70
13 — No Discrimination . . . . . . . . . . . . . . . . . . . .   71
14 — Cranes . . . . . . . . . . . . . . . . . . . . . . . . . . . .   73
15 — Efficient Operations  . . . . . . . . . . . . . . . . . .   81
16 — Accident Prevention and Safety . . . . . . . . . . .   82
17 — Joint Labor Relations Committees,
    Administration of Agreement, and
    Grievance Procedures  . . . . . . . . . . . . . . . .   84
18 — Good Faith Guarantee  . . . . . . . . . . . . . . . . . 103

iii

19 — Union Security . . . . . . . . . . . . . . . . . . . . . . . . . 103
20 — Pay Guarantee Plan, Rules,
    and Administration  . . . . . . . . . . . . . . . . . . . 104
21 — Lash Barge Jurisdiction . . . . . . . . . . . . . . . . . 122
22 — Term of Agreement and Items Open to
    Review During Term of Agreement . . . . . . . 124
23 — Welfare and Pension Plans . . . . . . . . . . . . . . . 125
24 — Modification  . . . . . . . . . . . . . . . . . . . . . . . . . . 125

## PENALTY CARGO LIST

Penalty Cargo List  . . . . . . . . . . . . . . . . . . . . . . . . . . . 127

## WAGE SCHEDULES

2008-2009 Wage Schedule *(Effective 8:00 a.m.,*
    *June 28, 2008 to 8:00 a.m., July 4, 2009)*  . . . . . . 134
2009-2010 Wage Schedule *(Effective 8:00 a.m.,*
    *July 4, 2009 to 8:00 a.m., July 3, 2010)*  . . . . . . . 138
2010-2011 Wage Schedule *(Effective 8:00 a.m.,*
    *July 3, 2010 to 8:00 a.m., July 2, 2011)*  . . . . . . . 142
2011-2012 Wage Schedule *(Effective 8:00 a.m.,*
    *July 2, 2011 to 8:00 a.m., June 30, 2012)*  . . . . . . 146
2012-2013 Wage Schedule *(Effective 8:00 a.m.,*
    *June 30, 2012 to 8:00 a.m., June 29, 2013)*  . . . . 150
2013-2014 Wage Schedule *(Effective 8:00 a.m.,*
    *June 29, 2013)*  . . . . . . . . . . . . . . . . . . . . . . . . . . . 154
Mechanics Wage Schedule . . . . . . . . . . . . . . . . . . . . . 158

## CONTRACT SUPPLEMENTS

I   — Coastwise Registration and Transfer  . . . . . . . . 160
IA — Registration/Transfer to Clerk  . . . . . . . . . . . . . 166
II  — Coast Provision for Transfer
    of Registration Between Longshore
    and Clerk Registered Lists . . . . . . . . . . . . . . 170

iv

III — Registration and Transfer of Men
       from Low Work Opportunity Ports  . . . . . . . 173
IV — Industry Travel System  . . . . . . . . . . . . . . . . . . 178

### ADDENDA

Holdmen Capable of Driving Lifts . . . . . . . . . . . . . . 184
In Lieu of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 186
Jobs of Short Duration  . . . . . . . . . . . . . . . . . . . . . . 190
Picket Line Language . . . . . . . . . . . . . . . . . . . . . . . . 191
Scheduling of Meetings  . . . . . . . . . . . . . . . . . . . . . . 193
Guarantees, Skilled Rates for
       All Longshoremen and Clerks . . . . . . . . . . . 193
Steady Skilled Men  . . . . . . . . . . . . . . . . . . . . . . . . . 194
San Francisco Steady Skilled Men  . . . . . . . . . . . . . . 195
San Francisco Bay Area Crane Board . . . . . . . . . . . . 197
San Francisco Utility Man/Lift Drivers  . . . . . . . . . . 197
San Francisco Local 10 Day and Night
       Dock Preference . . . . . . . . . . . . . . . . . . . . . . 198
Seattle Equalization of Work Opportunity
       for Crane Operators  . . . . . . . . . . . . . . . . . . 201
Los Angeles/Long Beach Crane Operators  . . . . . . . . 204
Los Angeles/Long Beach Container Yard (CY)
       Equipment Board . . . . . . . . . . . . . . . . . . . . . 209
Los Angeles/Long Beach UTR Drivers  . . . . . . . . . . 209
Dispatch Hall Costs  . . . . . . . . . . . . . . . . . . . . . . . . 213
Employer Contribution to Longshore
       401(k) Fund  . . . . . . . . . . . . . . . . . . . . . . . . 215
PMA Letter to Members . . . . . . . . . . . . . . . . . . . . . . 216
Contractual Obligations  . . . . . . . . . . . . . . . . . . . . . 217
Strike, Lockout, and Work Stoppage Accelerated
       Grievance Procedure . . . . . . . . . . . . . . . . . . . 218

Clarifications and Exceptions to ILWU Maintenance
    and Repair Jurisdiction ..................... 218
Maintenance and Repair - Warranty Definition ..... 223
New Terminal Facilities ........................ 224
M&R Work "Contract Stevedore" and Bulk
    Facilities .................................. 225

## APPENDIX

Memorandum of Understanding
    Between ILWU and IBT .............. 226

## INDEX

Subject Index ................................ 230

vi

# PACIFIC COAST LONGSHORE CONTRACT DOCUMENT

THIS CONTRACT DOCUMENT, dated July 1, 2008, is by and between Pacific Maritime Association (hereinafter called "the Association"), on behalf of its members (hereinafter designated as "the Employers" or the "individual employer"), and the International Longshore and Warehouse Union (hereinafter designated as "the Union"), on behalf of itself and each and all of its longshore locals in California, Oregon and Washington (hereinafter designated as "longshore locals") and all employees performing work under the scope, terms and conditions of this Contract Document. This Contract Document is a part of the ILWU-PMA Pacific Coast Longshore and Clerks' Agreement.

The parties hereto are the International of the International Longshore and Warehouse Union and the coastwise Pacific Maritime Association. All property rights in and to the Agreement, including this Contract Document for longshoremen, are entirely and exclusively vested in the Pacific Maritime Association and the International Longshore and Warehouse Union respectively, and their respective members. In the case of the International Longshore and Warehouse Union, a majority of the members of both the individual and combined locals covered by the Agreement shall be necessary to designate any successor organization holding property rights and all benefits of the Agreement, and if an election is necessary to determine a majority of both individual and combined locals in order to establish the possessors of all rights and benefits under this Agreement, such election shall be conducted under the auspices

1

and the supervision of the Coast Arbitrator provided for in Section 17, provided that such designation or election is not in conflict with any paramount authority or lawful or statutory requirements.

## SECTION 1

# SCOPE OF THIS CONTRACT DOCUMENT AND ASSIGNMENT OF WORK TO LONGSHOREMEN

This Contract Document, as supplemented by agreements (Port Supplements and Working Rules) for the various port areas covered hereby, shall apply to all employees who are employed by the members of the Association to perform work covered herein. It is the intent of this Contract Document to preserve the existing work of such employees.

**1.1** Within the States of California, Oregon and Washington, all movement of cargo on vessels or loading to and discharging from vessels of any type and on docks or to and from railroad cars and barges at docks is covered by this Contract Document and all labor involved therein is assigned to longshoremen as set forth in this Section 1.

**1.11** This Contract Document covers the movement of outbound cargo only from the time it enters a dock and comes under the control of any terminal, stevedore, agent or vessel operator covered by this Contract Document and covers movement of inbound cargo only so long as it is at a dock and under the control of any vessel operator, agent, stevedore, or terminal covered by this Contract Document. In instances where an Employer asserts it had no control of the movement of the cargo in question, the responsibility of proving such lack of control shall be upon the employer.

2

SECTION 1                    SCOPE OF THIS CONTRACT DOCUMENT AND
                             ASSIGNMENT OF WORK TO LONGSHOREMEN

**1.2** Dock work provisions.

**1.21** When an employer chooses to perform the following dock work, such work is covered by this Contract Document and all labor involved therein is assigned to longshoremen:

    (a) High piling cargo and breaking down high piles of cargo,

    (b) Sorting of cargo,

    (c) Movement of cargo on the dock or to another dock,

    (d) The removing of cargo from cargo boards,

    (e) Building any loads of cargo on the dock,

    (f) Multiple handling of cargo,

    (g) Loading and unloading of containers at intermodal rail yards on dock (as defined in Section 1.92) and near dock, (i.e., not on dock, but adjacent to an employer's on-dock container yard) under the control of any employer covered by this Contract document shall be assigned to longshoremen — exception: unless such work at the intermodal yard has been assigned to other workers under terms of a collective bargaining agreement. An intermodal rail yard can only be designated as an on dock or a near dock but cannot be defined as both.

    1. Uninterrupted movement of containers, 365 days a year, 24 hours per day (no non-work days). *(See July 1, 1996, Letter of Understanding.)*

    2. Available shift starting times: day shift 0700, 0800 and 0900; night shift 1700, 1800, 1900, 0200 and 0300.

    3. Side gate and expedited gate procedures.

3

4.  Maximum of 10 hours for the purpose of finishing a train.

**1.211** Carriage of cargo between docks by barge or rail or by trucks on public roads may be assigned to longshoremen.

Exception: The intraport drayage of cargo, containers, chassis and cargo handling equipment shall be assigned, in either direction, to longshoremen whenever such drayage is between an on-dock container yard (as defined in Section 1.92) and a near-dock rail yard (i.e., not on-dock but adjacent to such container yard) which is covered by this Contract Document.

**1.212** When the following dock work is performed, such work is covered by this Contract Document and all labor involved therein is assigned to longshoremen:

Consolidating containers or chassis on the dock for storage or delivery purposes.

**1.22** Cargo received on pallet, lift, or cargo boards, or as unitized or packaged loads shall not be rehandled before moving to ships' tackle, unless so directed by the employer.

**1.23** Any load of cargo discharged from a vessel may be dock stored just as it left the hatch.

**1.24** Any load of cargo discharged from a vessel may, in whole or part, be rearranged if necessary for dock storage. Such cargo shall not be considered high piled unless stored more than 2 loads high.

**1.241** Newsprint in rolls shall not be considered high piled unless stored more than 2 high, except that half size rolls (36″ or less in height) shall not be considered high piled unless stored more than 4 high.

**1.25** Cargo may be removed by the consignee or his agent, without additional handling by longshoremen except for

4

breaking down high piles and any other work as the employer may choose to have done under Section 1.21.

**1.26**  If jurisdictional difficulties arise in connection with the performance of dock work, whatever jurisdictional agreements are reached shall not result in multiple handling.

**1.27**  Provisions relating to sorting or subsorting cargo to marks shall not prohibit a drayman from taking or rearranging such already sorted cargo for the purpose of properly loading his truck.

**1.28**  Masonite, hardboard and similar commodities are not high piled if the commodity is dock stored for delivery to a truck in piles not to exceed approximately 6 feet in height.

**1.3**  Any class of seamen in the employ of a vessel operator may do the work herein assigned to longshoremen that such seamen in their class now do, or may do, by practice arrived at by mutual consent of the parties or the Joint Coast Labor Relations Committee.

**1.4**  The Union may at any time, in general or limited terms, waive in writing the right of longshoremen to do any portion of the work herein assigned to longshoremen or so accept an interpretation of such assignment, and to the extent and for the time that such waiver or interpretation is accepted by the Association in writing the employer may assign or permit assignment of excepted work to any other class of workers consistent with such waiver or interpretation. Among the waivers and interpretations that have been made and accepted are: *(See Appendix I, Memorandum of Understanding between ILWU and IBT.)*

**1.41**  The Employers have the right to have trucks come under the hook to move heavy lifts, dunnage, lining material, long steel, booms, and ship-repair parts directly from truck to ship and/or ship to truck.

5

SCOPE OF THIS CONTRACT DOCUMENT AND
ASSIGNMENT OF WORK TO LONGSHOREMEN
SECTION 1

**1.42** Longshoremen will load or discharge trucks operating in direct transfer to or from the ship and otherwise will work on trucks when directed to do so by the employer.

**1.43** Teamsters may unload their trucks by unit lifts (excluding containers) or piece by piece, to the area designated by the employer at which point the trucking or drayage company or shipper releases control of the cargo. *(See Section 1.8.)*

**1.44** Teamsters may load their trucks piece by piece from cargo boards or with unit lifts (excluding containers) and build loads and otherwise handle cargo on their trucks or tailgates and on loading platforms and aprons. *(See Section 1.8.)*

**1.45** The movement of cargo to or from a vessel on an industrial dock shall be defined as work covered by this Contract Document and is assigned to longshoremen. Existing practices under which other workers perform such dock work at an existing facility may be continued. An industrial dock is a dock at a facility where materials are manufactured and/or processed and from which they are shipped or at which materials used in the manufacture or process are received, and the dock operator has a proprietary interest in such materials.

**1.5** All machinery, equipment and other tools now or hereafter used in moving cargo and/or used in performing other work described in Section 1.1 shall be operated by longshoremen when used in an operation or at a facility covered by this Contract Document and the operation thereof is assigned to longshoremen and is covered by this Contract Document.

    (a) Procedures provided for resolving disputes as set forth in Section 1.5 and subordinate subsections shall be construed in connection with the agreement of the Employers to provide skill training for longshoremen so as to minimize the grounds for exceptions listed in Section 1.54. When trained skilled long-

6

SECTION 1                    SCOPE OF THIS CONTRACT DOCUMENT AND
                             ASSIGNMENT OF WORK TO LONGSHOREMEN

shoremen, certified as capable of performing work now assigned by the Pacific Maritime Association member company to nonlongshoremen, are available, such longshoremen will be assigned to such work, provided no union jurisdictional work stoppages are caused and provided that such trained skilled longshoremen may be assigned to any skilled work they are capable of performing without limitation by reason of claimed specialization.

(b) Where Pacific Maritime Association or its member companies have existing bargaining relationships, have granted recognition to, and have assigned work to bona fide labor unions as a result of such relationships and recognition; or where status quo exceptions relating to other unions are now set forth in Section 1, International Longshore and Warehouse Union will not make any jurisdictional claim or cause any jurisdictional work stoppage dispute involving Pacific Maritime Association or such member companies with relation to such work assignments. However, if the Union obtains the right to represent and bargain for such workers and no jurisdictional work stoppage problems are created, the Association agrees that such exceptions regarding assignment of work to longshoremen will be eliminated.

**1.51** The individual employer shall not be deemed to be in violation of the terms of the Contract Document assigning work to longshoremen if he assigns work to a nonlongshoreman on the basis of a good-faith contention that this is permitted under an exception provided for herein.

7

SCOPE OF THIS CONTRACT DOCUMENT AND
ASSIGNMENT OF WORK TO LONGSHOREMEN                    SECTION 1

**1.52** Should there be any dispute as to the existence or terms of any exception, or should there be no reasonable way to perform the work without the use of nonlongshoremen, work shall continue as directed by the employer while the dispute is resolved hereunder.

**1.53** Any such dispute shall be immediately placed before the Joint Coast Labor Relations Committee by the party attacking any claimed exception or proposing any change in an exception or any new exception. The Joint Coast Labor Relations Committee decision shall be promptly issued and shall be final unless and until changed by the parties or that Committee. The Committee may act on the grounds set forth in Section 1.54 or on any other grounds. Both parties agree that its position on such a dispute shall in no case be supported by, or give rise to threat, restraint or coercion.

**1.54** Any such dispute that is not so resolved by the Committee within 7 days after being placed before it, may be placed before the Coast Arbitrator on motion of either party. The Arbitrator shall decide whether an exception should be upheld and may do so on the following grounds only:

    (a) Nonlongshoremen were assigned the skilled or unskilled labor in dispute under practices existing as of January-August 10, 1959, arrived at by mutual consent and as thereafter modified or defined by the parties or the Joint Coast Labor Relations Committee, or;

    (b) Cranes are not available on a bare boat basis and reasonable bona fide efforts to obtain them have been made and there is no reasonable substitute crane available.

**1.6** This Contract Document shall apply to the cleaning of cargo holds, loading ship's stores, handling lines on all vessels

8

(including lines handling at industrial docks), marking off lumber and logs, hauling ship, lashing, etc. *(See Addenda, In Lieu Of Time.) (See Section 1.8.)*

**1.7** This Contract Document shall apply to the maintenance and repair of containers of any kind and of chassis, and the movement incidental to such maintenance and repair. *(See Section 1.81.)*

**1.71** This Contract Document shall apply to the maintenance and repair of all stevedore cargo handling equipment. *(See Section 1.81.)*

**1.72** It is recognized that the introduction of new technologies, including fully mechanized and robotic-operated marine terminals, necessarily displaces traditional longshore work and workers, including the operating, maintenance and repair, and associated cleaning of stevedore cargo handling equipment. The parties recognize robotics and other technologies will replace a certain number of equipment operators and other traditional longshore classifications. It is agreed that the jurisdiction of the ILWU shall apply to the maintenance and repair of all present and forthcoming stevedore cargo handling equipment in accordance with Sections 1.7 and 1.71 and shall constitute the functional equivalent of such traditional ILWU work. It is further recognized that since such robotics and other technologies replace a certain number of ILWU equipment operators and other traditional ILWU classifications, the pre-commission installation per each Employer's past practice (e.g., OCR, GPS, MODAT, and related equipment, etc., excluding operating system, servers, and terminal infrastructure, etc.), post-commission installation, reinstallation, removal, maintenance and repair, and associated cleaning of such new technologies perform and constitute the functional equivalent of such traditional ILWU jobs. (See Section 1.81 and Letter of

9

SCOPE OF THIS CONTRACT DOCUMENT AND                    SECTION 1
ASSIGNMENT OF WORK TO LONGSHOREMEN

Understanding - Clarification and Exceptions to ILWU Maintenance and Repair Jurisdiction.)

**1.73** The scope of work shall include the pre-commission installation per each Employer's past practice (e.g., OCR, GPS, MODAT, and related equipment, etc., excluding operating system, servers, and terminal infrastructure, etc.), post-commission installation, reinstallation, removal, maintenance and repair, and associated cleaning of all present and forth-coming technological equipment related to the operation of stevedore cargo handling equipment (which term includes containers and chassis) and its electronics, that are controlled or interchanged by PMA companies, in all West Coast ports. (See Section 1.81 and Letter of Understanding - Clarification and Exceptions to ILWU Maintenance and Repair Jurisdiction.)

**1.731** In accordance with Sections 1.7, 1.71, 1.72, and 1.73, the maintenance and repair work on all new marine terminal facilities that commence operations after July 1, 2008, shall be assigned to the ILWU. New marine terminals shall include new facilities, relocated facilities, and vacated facilities. (See Section 1.81 and Letter of Understanding – Clarification and Exceptions to ILWU Maintenance and Repair Jurisdiction.)

**1.74** PMA members and their affiliated companies shall not engage in subterfuge to avoid their maintenance and repair obligations under this Agreement to the ILWU. Containers and chassis, owned, leased, or interchanged by a carrier controlling, controlled by or under common control with an agency company that is a PMA member shall be deemed to be owned, leased or interchanged by that PMA member company when that equipment is on a dock.

10

SECTION 1                    SCOPE OF THIS CONTRACT DOCUMENT AND
                             ASSIGNMENT OF WORK TO LONGSHOREMEN

**1.75** All on dock activities associated with the plugging and unplugging of vessels for cold ironing or its equivalent shall be performed by ILWU Longshore Division employees, except for US Flag vessels and crews as to their work on the vessel, as may be contractually assigned to them as of July 1, 2008. (See Section 1.81 and Letter of Understanding – Clarification and Exceptions to ILWU Maintenance and Repair Jurisdiction.)

**1.76** The Employers shall assign work in accordance with Section 1 provisions and as may be directed by the CLRC or an arbitration award, which the Employers shall defend in any legal proceeding. PMA shall participate along with the individual Employers assigning the work in any legal proceeding.

**1.8** Any type of work assigned herein in Sections 1.43, 1.44, and 1.6 to longshoremen that was done by nonlongshore employees of an employer or by subcontractor pursuant to a past practice that was followed as of July 1, 1978, may continue to be done by nonlongshore employees of that employer or by subcontractor at the option of said employer.

**1.81** ILWU jurisdiction of maintenance and repair work shall not apply at those specific marine terminals that are listed as being "red-circled" in the July 1, 2008 Letter of Understanding on this subject. Red-circled facilities, as they are modified/upgraded (e.g., introduction of new technologies), or expanded, while maintaining the fundamental identity of the pre-existing facility, shall not result in the displacement of the recognized workforce and shall not be disturbed, unless as determined by the terminal owner or tenant.

**1.811** This Contract Document shall apply to all movement of containers and chassis under one of the following conditions: (a) when containers or chassis are moved on a dock from a container yard to or from a storage area adjacent to a

11

maintenance and repair facility on the same dock, such movement will be made by ILWU personnel, and (b) when an employer does not use a storage area adjacent to a maintenance and repair facility and the movement is directly between a container yard and a maintenance and repair facility on the same dock, such movement will be made by ILWU personnel. If there is objection by the union having contractual rights at such facility, (a) above shall be applied and ILWU personnel shall move the containers or chassis to a storage area adjacent to a maintenance and repair facility.

This Section 1.811 does not apply to: (a) movements of containers or chassis to or from roadability check stations in the container yard for repairs required for over the road haulage; or (b) movements for emergency repair and emergency maintenance of laden refrigerated containers.

**1.82** An employer in a port covered by this Contract Document who joins the Association subsequent to the execution hereof and who is not a party to any conflicting longshore agreement becomes subject to this Contract Document.

**1.9** Definitions.

**1.91** The term "longshoreman" as used herein shall mean any employee working under this Contract Document. *(See Addenda, No Discrimination.)*

**1.92** The term "dock" as used herein shall mean any moorage—anchorage, pier, wharf, berth, terminal, waterfront structure, dolphin, dock, etc.—at which cargo is loaded to or discharged from oceangoing vessels or received or delivered by an employer covered by this Agreement. The term "dock" does not include any facility at which vessels do not moor.

12

**16.16** The employees individually must comply with all safety rules and cooperate with management in the carrying out of the accident prevention program.

**16.17** An employee who is injured and claims two PMA employers are in dispute over who is responsible for his workmen's compensation claim, may request the Joint Coast Labor Relations Committee to assist the employee in securing a determination as to which employer is to make advance payments until the dispute is resolved. The JCLRC will not function to determine which employer, if any, is liable.

**16.2** To make effective the above statements and promote on the job accident prevention, employer-employee committees will be established in each port. These committees will consist of equal numbers of employer and employee representatives at the job level. Each category of employees should be represented. Employers' representatives should be from the supervisory level. The purpose of the committees will be to obtain the interest of the men in accident prevention by making them realize that they have a part in the program, to direct their attention to the real causes of accidents and provide a means for making practical use of the intimate knowledge of working conditions and practices of the men on the job. It is further intended that this program will produce mutually practical and effective recommendations regarding corrections of accident-producing circumstances and conditions.

## SECTION 17

## JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION OF AGREEMENT, AND GRIEVANCE PROCEDURES

**17.1** Joint Labor Relations Committees.

84

SECTION 17        JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION
                  OF AGREEMENT, AND GRIEVANCE PROCEDURES

**17.11** The parties shall establish and maintain, during the life of this Agreement, a Joint Port Labor Relations Committee for each port affected by this Contract Document, 4 Joint Area Labor Relations Committees, and a Joint Coast Labor Relations Committee. Each of said Labor Relations Committees shall be comprised of 3 or more representatives designated by the Union and 3 or more representatives designated by the Employers. Each side of the committee shall have equal vote.

**17.12** The duties of the Joint Port Labor Relations Committee shall be:

**17.121** To maintain and operate the dispatching hall.

**17.122** To exercise control of the registered lists of the port, as specified in Section 8.3.

**17.123** To decide questions regarding rotation of gangs and extra men.

**17.124** To investigate and adjudicate all grievances and disputes according to the procedure outlined in this Section 17.

**17.125** To investigate and adjudicate any complaint against any longshoreman whose conduct on the job, or in the dispatching hall, causes disruption of normal harmony in the relationship of the parties hereto or the frustration and/or violation of the provisions of the working or dispatching rules or of this Agreement. The application of this Section 17.125 shall not negate the procedure for penalties as provided for in Section 17.7.

**17.126** To carry out such other functions as are assigned to it herein or by the parties, directly or through the Joint Coast Labor Relations Committee.

**17.13** There shall be a Joint Area Labor Relations Committee for each of the 4 port areas (Southern California, Northern California, Columbia River and Oregon Coast Ports, and Washington). Such Committee shall investigate and adjudi-

85

cate grievances not settled at the local level. The Area Joint Labor Relations Committee step may be eliminated by agreement at the area level or may be bypassed by agreement at the port level.

**17.14** The Joint Coast Labor Relations Committee shall function in the administration of this Agreement as provided herein and shall investigate and adjudicate grievances as provided herein.

**17.141** All meetings of the Joint Coast Labor Relations Committee and all arbitration proceedings before the Coast Arbitrator shall be held in the City and County of San Francisco, State of California, unless the parties shall otherwise stipulate in writing.

**17.15** The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the Association or any employer acting under this Agreement or both, on the other hand, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted.

**17.151** Any dispute in which the Association or the Union asserts that any dispatching hall is dispatching employees who were not entitled to be dispatched or who were dispatched out of sequence as to other persons entitled to priority dispatch shall be subject to prompt resolution through the grievance procedure of the Agreement when a complaint is filed by either party with the Joint Port Labor Relations Committee. If such complaint is not resolved within 7 days from the date of filing, the matter shall be referred to the Area Arbitrator whose decision shall be final and binding. The grievance procedure shall then be deemed "exhausted."

86

SECTION 17        JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION
                  OF AGREEMENT, AND GRIEVANCE PROCEDURES

**17.16**  Pending investigation and adjudication of such disputes work shall continue and be performed as provided in Section 11.

**17.2**  Grievances arising on the job shall be processed in accordance with the procedure hereof beginning with Section 17.21. Other grievances as to which there are no specific provisions herein shall be processed in accordance with the provisions hereof beginning with Section 17.23.

**17.21**  The gang steward and his immediate supervisor, where the grievance is confined to 1 gang, or any 1 steward who is a working member of an affected gang where the grievance involves more than 1 gang or a dock operation, shall take the grievance to the walking boss, or ship or dock foreman in immediate charge of the operation.

**17.22**  If the grievance is not settled as provided in Section 17.21, it shall be referred for determination to an official designated by the Union and to a representative designated by the Employers.

**17.23**  If the grievance is not settled as provided in Section 17.21 or Section 17.22 or does not arise on the job, it shall be referred to the Joint Port Labor Relations Committee which shall have the power and duty to investigate and adjudicate it.

**17.24**  In the event that the Employer and Union members of any Joint Port Labor Relations Committee shall fail to agree upon any question before it, such question shall be immediately referred at the request of either party to the appropriate Joint Area Labor Relations Committee for decision.

**17.25**  In the event that the Employer and Union members of any Joint Area Labor Relations Committee fail to agree on any question before it, such question shall be immediately referred at the request of either party to the Area Arbitrator for hearing and decision, and the decision of the Area Arbitrator

87

shall be final and conclusive except as otherwise provided in Section 17.26.

**17.26**  The Joint Coast Labor Relations Committee has jurisdiction to consider issues that are presented to it in accordance with this Agreement and shall exercise such jurisdiction where it is mandatory and may exercise it where such jurisdiction is discretionary as provided in Section 17.261, Section 17.262 and other provisions of this Agreement.

**17.261**  Any decision of a Joint Port or Joint Area Labor Relations Committee or of an Area Arbitrator claimed by either party to conflict with this Agreement shall immediately be referred at the request of such party to the Joint Coast Labor Relations Committee (and, if the Joint Coast Labor Relations Committee cannot agree to the Coast Arbitrator, for review). The Joint Coast Labor Relations Committee, and if it cannot agree, the Coast Arbitrator, shall have the power and duty to set aside any such decision found to conflict with the Agreement and to finally and conclusively determine the dispute. It shall be the duty of the moving party in any case brought before the Coast Arbitrator under the provisions of this Section 17.261 to make a prima facie showing that the decision in question conflicts with this Agreement, and the Coast Arbitrator shall pass upon any objection to the sufficiency of such showing before ruling on the merits.

**17.2611**  Any formal decision of an Area Arbitrator over disputes regarding violations of Subsection 11.1 with which either party is dissatisfied shall immediately be referred, at the request of such party, to the Joint Coast Labor Relations Committee. Such dispute shall be processed by the Joint Coast Labor Relations Committee upon receipt (including electronic) by the Joint Coast Labor Relations Committee and moved from step to step within forty-eight (48) hours as follows:

88

SECTION 17        JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION
                  OF AGREEMENT, AND GRIEVANCE PROCEDURES

(a)    Joint Coast Labor Relations Committee meeting within twenty-four (24) hours; and

(b)    Coast Arbitrator within twenty-four (24) hours.

Such hearing shall include all information regarding the dispute. At the request of either party, the Coast Arbitration shall be held at the site of the dispute. If such request is made, the timeline shall be extended by twenty-four (24) hours.

**17.262** The Joint Coast Labor Relations Committee and the Coast Arbitrator shall have power to review decisions relative to the operation of dispatching halls, or the interpretation of port working and dispatching rules, or discharges, or pay (including travel pay and penalty rates), but shall exercise it in any case only if the Committee decides to review the specific case.

**17.263** When either the Union or the Association claims that there has been a violation of Section 13 by anyone bound by this Agreement, the grievance shall be submitted to the Joint Coast Labor Relations Committee and shall be resolved there or referred to the Coast Arbitrator for hearing and decision in accordance with the applicable contract provisions.

**17.27** In the event that the Employer and Union members of the Joint Coast Labor Relations Committee fail to agree on any question before it, including a question as to whether the issue was properly before the Coast Labor Relations Committee, such question shall be immediately referred at the request of either party to the Coast Arbitrator for hearing and decision, and the decision of the Coast Arbitrator shall be final and conclusive.

**17.271** Referrals to the Coast Arbitrator must be submitted and heard by the Coast Arbitrator within 6 months following the date of disagreement at the Coast Labor Relations

Committee level. Referrals not submitted within 6 months shall be considered "dropped."

**17.28** Miscellaneous provisions.

**17.281** Should either party fail to participate in any of the steps of the grievance machinery, the matter shall automatically move to the next higher level.

**17.282** If the local grievance machinery becomes stalled or fails to work, the matter in dispute can be referred at once by either the Union or the Association to the Joint Coast Labor Relations Committee for disposition.

**17.283** The hearing and investigation of grievances relating to discipline by return to the dispatching hall (Section 17.7), penalties (Section 17.8) and dispatching hall personnel (Section 8.23) shall be given precedence over all other business before the Joint Port and Joint Area Labor Relations Committees and before the Area Arbitrator. Either party may request that:

    (a) grievances arising under Section 17.7 or involving dispatch hall disputes (except those covered by Section 17.151) be processed initially and from step to step within 24 hours; and

    (b) failures to observe Area Arbitrators' awards be processed to the next step within 24 hours.

**17.284** Nothing in this Section 17 shall prevent the parties from mutually agreeing upon other means of deciding matters upon which there has been disagreement.

**17.3** Business Agents.

**17.31** To aid in prompt settlement of grievances and to observe Agreement performance, it is agreed that Business Agents as Union representatives shall have access to ships and wharves of the employer to facilitate the work of the Business

90

SECTION 17          JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION
                    OF AGREEMENT, AND GRIEVANCE PROCEDURES

Agent, and in order that the employer may cooperate with the Business Agent in the settlement of disputes the Business Agent shall notify the representative designated by the employer before going on the job.

**17.4** When any longshoreman (whether a registered longshoreman or an applicant for registration or a casual longshoreman) claims that he has been discriminated against in violation of Section 13 of this Agreement, he may at his option and expense, or either the Union or the Association may at its option and at their joint expense, have such complaint adjudicated hereunder, which procedure shall be the exclusive remedy for any such discrimination.

**17.41** Such remedy shall be begun by the filing of a grievance with the Joint Port Labor Relations Committee setting forth the grievance and the facts as to the alleged discrimination. Such a grievance shall be timely if presented within 10 days of the occurrence of the alleged discrimination. Such grievance shall be investigated by the Joint Port Labor Relations Committee at a regular or special meeting of the Committee at which the individual involved shall be permitted to appear to state his case, at which time he may present oral and written evidence and argument.

**17.411** With respect to any claim of violation of Section 13, the Joint Port Labor Relations Committee shall extend the time for filing of such claim beyond the time established in Section 17.41 whenever such extension is necessary because the period of limitation otherwise applicable is determined to be unlawful or because in the judgment of the Committee in the exercise of its sound discretion, such an extension is otherwise necessary to prevent inequity but in no event shall the time for filing of such claims be extended beyond 6 months from the date of the occurrence of the alleged discrimination.

91

**17.42** Either the Employers, the Union or the man involved may appeal the decision of the Joint Port Labor Relations Committee. Such appeal shall be to the Joint Coast Labor Relations Committee by letter addressed to the Joint Coast Labor Relations Committee. To be timely, such appeal must be delivered or mailed within 7 days of the decision of the Joint Port Labor Relations Committee.

**17.421** If such an appeal is taken within the time limits allowed, the Joint Coast Labor Relations Committee shall either confirm or reverse or modify the decision of the Joint Port Labor Relations Committee without any further hearing, or order a further hearing and thereupon issue its decision on the basis of the entire record including that at both hearings.

**17.43** An appeal from the decision of the Joint Coast Labor Relations Committee can be presented to the Coast Arbitrator (or by agreement of the Joint Coast Labor Relations Committee to an Area Arbitrator) by the individual involved, the Employers or the Union. An appeal to the Coast Arbitrator filed by an applicant for registration or a casual longshoreman involving the subject of registration shall be permitted only for those grievances which the Joint Coast Labor Relations Committee, in its sole discretion, certifies to the Coast Arbitrator that the facts introduced in support of the grievance into the record of the prior proceedings, if unrebutted, may support a finding of a violation of the grievant's Section 13 rights under this Agreement. Appeal shall be by a written request for an arbitrator's hearing mailed or delivered to the Union and the Employer representatives of the Joint Coast Labor Relations Committee if by an individual, or to the individual and the other party's representative on the Joint Coast Labor Relations Committee if by either the Union or the Employers. Such an appeal shall be timely only if such request for an arbitrator's

92

SECTION 17        JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION
                  OF AGREEMENT, AND GRIEVANCE PROCEDURES

hearing is so filed in writing with the Joint Coast Labor Relations Committee no later than 7 days after issuance of the decision of the Joint Coast Labor Relations Committee from which an appeal to an arbitrator is taken.

**17.431**  The arbitration procedure shall be carried on in accordance with the procedures generally applicable under this Agreement for arbitration before the Coast Arbitrator.

**17.5**  Arbitrators and Awards.

**17.51**  The parties shall have an arbitrator for each of the said 4 port areas and a Coast Arbitrator.

**17.511**  The Area Arbitrator shall be appointed by the Joint Coast Labor Relations Committee and shall serve at its discretion. If any Area Arbitrator shall at any time be unable or refuse or fail to act, the Joint Coast Labor Relations Committee shall select a successor or substitute.

**17.512**  The Coast Arbitrator shall be selected by the Joint Coast Labor Relations Committee to serve a term coextensive with the term of the Agreement. The Coast Arbitrator may be reappointed for the term of the next Agreement by mutual agreement of the Parties. The Coast Arbitrator shall be a highly qualified neutral arbitrator with maritime experience, located on the West Coast. If the Committee fails to agree on the selection of the Coast Arbitrator, the individual shall be selected by a 6-person panel of prominent industry representatives: 3 selected by the Union and 3 selected by the Employers.

**17.5121**  If after thirty (30) days, the Panel is unable to select a Coast Arbitrator, the Panel shall submit to the Federal Mediation and Conciliation Service (FMCS) a request for a list of seven (7) highly qualified neutral arbitrators with maritime experience, located on the West Coast. If the Union and the Employer representatives agree that the list is unacceptable, they may jointly request that the FMCS provide a second

93

list. In the event, the Parties cannot mutually select a Coast Arbitrator from the FMCS Panel, the selection shall be determined by a striking process. The first strike shall be determined by a coin flip. The Party that correctly calls the coin flip shall have the choice of striking first or last.

   Note: It is agreed that since PMA nominated John Kagel, in the event a FMCS Panel is required to select the successor to John Kagel, the Union shall have the choice of a first or last strike. Thereafter, the procedure of coin flip set forth in Section 17.5121 shall apply.

   **17.52**  Powers of arbitrators shall be limited strictly to the application and interpretation of the Agreement as written. The arbitrators shall have jurisdiction to decide any and all disputes arising under the Agreement including cases dealing with the resumption or continuation of work.

   **17.53** Arbitrators' decisions must be based upon the showing of facts and their application under the specific provisions of the written Agreement and be expressly confined to, and extend only to, the particular issue in dispute. The arbitrators shall have power to pass upon any and all objections to their jurisdiction. If an arbitrator holds that a particular dispute does not arise under the Agreement, then such dispute shall be subject to arbitration only by mutual consent.

   **17.54** In the event the parties agree that an arbitrator has exceeded his authority and jurisdiction or that he is involved in the industry in any other position of interest which is in conflict with his authority and jurisdiction, he shall be disqualified for any further service.

   **17.55** All decisions of the arbitrators, except as provided in Sections 17.261 and 17.6, shall be final and binding upon all parties. Decisions shall be in writing signed by the arbitrator and delivered to the respective parties.

**17.56** All expenses and salaries of the arbitrators shall be borne equally by the parties, except where specifically provided herein to the contrary.

**17.57** All decisions of arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or formal, can be appealed unless it is observed and/or implemented.

**17.6** Informal hearings and interim rulings.

**17.61** When a grievance or dispute arises on the job and is not resolved through the steps of Sections 17.21 and 17.22, and it is claimed that work is not being continued as required by Section 11, a request by either party shall refer the matter to the Area Arbitrator (or by agreement of the Joint Coast Labor Relations Committee to the Coast Arbitrator) for his consideration in an informal hearing; such referral may be prior to formal disagreement in any Joint Labor Relations Committee or upon failure to agree on the question in the Joint Area Labor Relations Committee. Such hearing may be ex parte if either party fails or refuses to participate, provided that the arbitrator may temporarily delay an ex parte hearing to permit immediate bona fide efforts to settle an issue without a hearing.

**17.62** The arbitrator shall act with his powers limited strictly to the application and interpretation of the Agreement as written. The parties shall have the right to present such views as they wish to the arbitrator, but it shall not be necessary to have a shorthand or stenotype reporter present to report the proceedings nor shall employment of counsel be necessary. The arbitrator, on this basis, shall promptly issue an oral interim ruling with respect to the grievance or dispute and thereafter confirm it in writing. An interim ruling shall be binding on the parties regarding the particular issue on the particular ship on the particular occasion but shall not be a precedent for other

95

cases. Any interim ruling shall be binding unless reversed by a contrary decision after a formal hearing.

**17.63**  If either party is dissatisfied with the interim ruling, the question shall be immediately referred at the request of such party to the arbitrator for hearing and decision in accordance with the normal procedure under Section 17.5 of this Agreement; the arbitrator shall then proceed as if there had been a failure to agree on the question by the Joint Port Labor Relations Committee, provided that the arbitrator may temporarily delay a hearing to permit prompt bona fide efforts to settle the question in the Port or Area Joint Labor Relations Committee.

**17.631**  Formal area arbitration hearings on disputes regarding violations of Subsection 11.1, conducted in accordance with Section 17.63, shall be heard within twenty-four (24) hours following the issuance of the interim ruling to both parties by the Area Arbitrator. The formal decision shall be rendered within twenty-four (24) hours after receipt of the transcript of the hearing.

**17.64**  The use of the informal procedure leading to an interim ruling can be waived by consent of both parties with respect to any particular dispute or grievance. If at the beginning of the informal procedure either party establishes a good faith claim that an issue, other than a dispute with respect to Section 11, is of general significance or that the formal procedure will be necessary to settle such issue, the arbitrator shall rule that the informal procedure be bypassed regarding such issue. In the absence of such waiver or decision to bypass, the arbitrator shall hold an informal hearing and issue an interim ruling regarding the dispute in accordance with the procedure set forth above.

**17.7**  Discipline by return to the dispatching hall.

96

SECTION 17        JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION
                  OF AGREEMENT, AND GRIEVANCE PROCEDURES

**17.71**  The employer shall have the right to return to the dispatching hall any man (or to send home any nonregistered man) for incompetence, insubordination or failure to perform the work as required in conformance with the provisions of this Agreement.

**17.72**  Such longshoreman shall not be dispatched to such employer until his case shall have been heard and disposed of before the Joint Port Labor Relations Committee, and no other employer shall refuse employment to such longshoreman on the basis of such return to the dispatch hall.

**17.73**  If any man feels that he has been unjustly returned to the dispatching hall or dealt with, his grievance shall be taken up as provided in Section 17.2 beginning with Section 17.23.

**17.74**  In case of return to the dispatching hall without sufficient cause, the Joint Port Labor Relations Committee may order payment for lost time or reinstatement with or without payment for lost time.

**17.75**  When an employer returns a gang to the dispatching hall for cause, its gear priority terminates and such employer may carry on work at the hatch or gear involved without delay. The hatch or gear involved shall not stand idle because of any action or nonaction of the Union or longshoremen or the dispatching hall. A replacement gang shall be dispatched promptly upon order of the employer. Until the replacement gang turns to or if one is not ordered or cannot be dispatched, any other gang employed by the employer shall shift to the hatch or gear involved as directed by the employer. The returned gang shall not be redispatched to the job involved unless it is the only available gang and the Association requests that it be dispatched. The provisions of Sections 17.73 and 17.74 shall apply with respect to any gang returned to the dispatching hall for cause.

97

JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION          SECTION 17
OF AGREEMENT, AND GRIEVANCE PROCEDURES

**17.8**  Penalties for work stoppages, assault, gross misconduct, pilferage, drunkenness, drug abuse and peddling, safety violations and other offenses.

**17.81**  All longshoremen shall perform their work conscientiously and with sobriety and with due regard to their own interests shall not disregard the interests of the employer. Any employee who is guilty of deliberate bad conduct in connection with his work as a longshoreman or through illegal stoppage of work shall cause the delay of any vessel shall be fined, suspended, or for deliberate repeated offenses for which he has been found guilty under the Contract procedures, cancelled from registration. A determination that an onerous or health and safety claim made in good faith shall be disallowed is not a finding that a man is guilty of an offense within the meaning of this Section. Any employer may file with the Union a complaint against any member of the Union and the Union shall act thereon and notify the Joint Port Labor Relations Committee of its decision within 30 days from the date of receipt of the complaint. An employer shall not be required to appear nor need he participate in discipline by the Union of its members beyond the filing of complaints.

**17.811**  If within 30 days thereafter the Employers are dissatisfied with the disciplinary action taken under Section 17.81, then the following independent procedure of Section 17.82 may be followed, which procedure shall also be applicable in the case of longshoremen not members of the Union.

**17.82**  The Joint Port Labor Relations Committee has the power and duty to impose penalties on longshoremen who are found guilty of stoppages of work, assault, gross misconduct, refusal to work cargo in accordance with the provisions of this Agreement, or who leave the job before relief is provided, or who are found guilty of pilfering or broaching cargo or of

98

drunkenness or who in any other manner violate the provisions of this Agreement or any award or decision of an arbitrator. In determining penalties neither the parties nor the arbitrators shall consider offenses that predate by 5 years or more the date of a current offense.

**17.821**  Assault.

**17.8211**  For first offense assault: Minimum penalty, 1 year suspension from work. Maximum penalty, discretionary.

**17.8212**  For second offense assault: mandatory cancellation from registered list upon request of either party.

**17.8213**  In either case such conviction shall not be dependent upon the existence of a prior court decision, nor shall the determination of guilt await a court decision.

**17.822**  Pilferage.

**17.8221**  For first offense pilferage: Minimum penalty, 60 days' suspension from work. Maximum penalty, discretionary.

**17.8222**  For second offense pilferage: Mandatory cancellation from registered list upon request of the employer.

**17.823**  Drunkenness or smoking in prohibited areas.

**17.8231**  First offense: Suspension for 15 days.

**17.8232**  Second offense: Suspension for 30 days.

**17.8233**  Succeeding offenses: Minimum penalty, 60 days suspension. Maximum penalty, discretionary.

**17.824**  Abuse of or use of controlled substances and/or drugs on the job or in or around any employment premises or the dispatch hall.

**17.8241**  First offense: Suspension for 15 days.

**17.8242**  Second offense: Suspension for 30 days.

99

**17.8243** Succeeding offenses: Minimum penalty, 60 days suspension. Maximum penalty, discretionary.

**17.825** Sale and/or peddling of controlled substances and/or drugs on the job or in or around any employment premises or the dispatch hall.

**17.8251** For first offense: Minimum penalty, 1year suspension from work. Maximum penalty, discretionary.

**17.8252** For second offense: Mandatory cancellation from registered list upon request of either party.

**17.8253** In either case such conviction shall not be dependent upon the existence of a prior court decision, nor shall the determination of guilt await a court decision.

**17.826** An employee found to be in violation of reasonable verbal instructions, posted employer safety rules, and/or the PCMSC shall attend a 1-day safety class approved by the Coast Labor Relations Committee without pay. Failure to attend and complete the class as scheduled without a valid excuse shall result in suspension from work until the class is completed. In addition, the employee shall be subject to the following minimum discipline, which shall be applied uniformly without favoritism or discrimination.

**17.8261** First Offense: Letter of warning.

**17.8262** Second Offense: Suspension from work for 15 days.

**17.8263** Third Offense: Suspension from work for 60 days. Maximum penalty, discretionary.

**17.8264** Fourth Offense: Subject to deregistration.

**17.827** An employee who, knowingly and flagrantly disregards reasonable verbal instructions, posted employer safety rules, and/or the PCMSC, and who intentionally causes significant damage to equipment or cargo, or who intentional-

100

ly injures himself or others, shall be subject to the following minimum discipline, which shall be applied uniformly without favoritism or discrimination.

**17.8271** First Offense: Suspension from work for 90 days. Maximum penalty, discretionary.

**17.8272** Second Offense: Subject to deregistration.

**17.828** Grievances arising under Sections 17.826 and 17.827 shall be subject to the grievance procedure of Section 17, with the following exceptions.

**17.8281** Grievances arising under Sections 17.826 and 17.827 shall be heard by the local parties within 30 days of the employee being cited. In the event the parties fail to resolve the grievance within the 30-day time period, the grievance shall be referred to the Area Arbitrator, at the request of either party, for an immediate hearing and decision.

**17.8282** In determining whether a violation under Sections 17.826 and 17.827 is a first, second, third or fourth offense, Section 17.82 shall govern.

**17.829** An employee released from the job for being under the influence of alcohol or drugs may request that his/her union representative report to the job. If the union representative, having observed the employee, believes the employee was unjustly released, he will discuss the case immediately with the employer. If the employer and union representative are unable to reach agreement, or if the union representative does not immediately respond to the request to come to the job, the case shall be immediately referred at the request of either party to the Joint Port Labor Relations Committee which shall have the power and duty to investigate and adjudicate it. If the Joint Port Labor Relations Committee members present are unable to reach agreement, and/or if no Union member of the Joint Port Labor Relations Committee responds to the request

101

to come to the job within 1 hour, the Area Arbitrator shall be immediately called to the job to decide if the employee was properly released. If the released employee fails to contact his/her union representative, or if the employee leaves the job, the employee shall be guilty as charged. Where an employee is guilty of working under the influence of alcohol or drugs the employee shall be subject to the penalties found in Section 17, and shall be referred to the ILWU-PMA employee assistance program.

**17.83** Suspensions under the foregoing provisions shall follow convictions by either the Union grievance machinery or by the Joint Port Labor Relations Committee, either of whom shall accept a prior court decision. The court decision will be considered by the parties and they shall discount the penalties set forth above accordingly. Where a fine has been assessed then the days off on suspension shall be discounted at the rate of $5.00 per day. Any man suspended under these provisions shall not be dispatched for work in any port covered by this Agreement until the suspension penalty has been served.

**17.84** Any longshoremen having records of habitual drunkenness or whose conduct on the job or in the dispatching hall causes disruption of normal harmony in the relationship of the parties hereto, or who physically assault anyone in the dispatching hall or on the job, or who have records of working in a manner that is hazardous to themselves or that endangers other workers shall not be dispatched to operate or used to operate any hoisting or mechanical equipment or devices or to supervise the operation of such equipment; or they shall be subject to such other remedy as the Joint Port Labor Relations Committee shall mutually consider appropriate.

**17.85** In the event of disagreement at the Joint Port Labor Relations Committee level as to the imposition of penalties un-

102

der this Section 17.8, the issue shall be processed immediately through the grievance procedure, and to the Area Arbitrator, if necessary.

**17.86** The rules and penalties provided hereinabove shall be applicable to fully registered longshoremen and, except where a more stringent rule or penalty is applicable pursuant to Section 17.861, to limited registered longshoremen and to nonregistered longshoremen.

**17.861** More stringent rules and penalties than those provided hereinabove that are applicable to limited registered longshoremen or to nonregistered longshoremen or to both such groups may be adopted or modified by unanimous action of the Joint Coast Labor Relations Committee and, subject to the control of such Committee so exercised, more stringent rules and penalties applicable to limited registered men or non-registered men or to both groups that are provided in existing and future local joint working, dispatching, and registration rules and procedures or by mutually agreed practices shall be applicable.

## SECTION 18

# GOOD FAITH GUARANTEE

**18.1** As an explicit condition hereof, the parties are committed to observe this Agreement in good faith. The Union commits the locals and every longshoreman it represents to observe this commitment without resort to gimmicks or subterfuge. The Employers give the same guarantee of good faith observance on their part.

103

# LETTER OF UNDERSTANDING
## Strike, Lockout, and Work Stoppage
## Accelerated Grievance Procedure

Mr. McKenna:

During the course of the 2008 PCL&CA negotiations, the Parties discussed the intent of the new Sections 17.2611 and 17.631 and agreed that the provisions do not apply to picket lines, health and safety, and onerous work disputes.

Sincerely,

/s/ Robert McEllrath

International President

Understanding confirmed:

/s/ *James C. McKenna*

President & CEO

Pacific Maritime Association

Dated: 07/28/08

# LETTER OF UNDERSTANDING
## Clarifications and Exceptions to
## ILWU Maintenance and Repair Jurisdiction

Mr. McKenna:

During the course of the 2008 PCL&CA negotiations, the Parties discussed the assignment of maintenance and repair work to the ILWU coastwise bargaining unit to offset the introduction of new technologies and robotics that will necessarily displace/erode traditional longshore work and workers. The scope of ILWU work shall include the pre-commission installation per each Employer's past practice (e.g., OCR, GPS, MODAT, and related

218

equipment, etc., excluding operating system, servers, and terminal infrastructure, etc.), post-commission installation, reinstallation, removal, maintenance and repair, and associated cleaning of all present and forthcoming technological equipment related to the operation of stevedore cargo handling equipment and its electronics in all West Coast ports except for those, and only those, specific marine terminal facilities listed as "red-circled" below:

| OAKLAND | |
|---|---|
| APL/EMS Berths 60-63 | Red circle cranes, reefers, and container washing |
| APM OAK Berths 20-23 | Red circle Berth 20 cranes, Horizon off dock trucking operation and associated equipment |
| OICT/SSAT Berths 57-59 | Red circle |
| TBCT/ITS Berths 24-26 | Red circle |
| Howard Terminal/SSAT Berths 67-68 | Red circle |
| Ben Nutter/Evergreen Berths 35-38 | Red circle |
| Hanjin/TTI Berths 55-56 | Red circle with the exception of cranes, transtainers, dry containers, reefers, and chassis |
| SSAT/Richmond | Red circle |

219

LETTER OF UNDERSTANDING                                    ADDENDA
CLARIFICATIONS AND EXCEPTIONS TO ILWU MAINTENANCE
AND REPAIR JURISDICTION

| LONG BEACH | |
|---|---|
| LB 243-247/ LB 266-270 SSA Pier J | Red circle |
| LB 88-94 SSAT Pier A | Red circle |
| LB 60-62 SSAT Pier C | Red circle |
| LB 227-236 ITS Pier J/G | Red circle |
| LB 132-140 Pier T Hanjin/TTI | Red circle with the exception of cranes, transtainers, reefers, dry containers and chassis |
| LB 205-207 SSA Pier F | Red circle |

| LOS ANGELES | |
|---|---|
| LA APL/EMS Berths 302-305 | Red circle reefer, minor chassis service repair and roadability in CY |
| LA Berths 226-236 Evergreen | Red circle with the exception of cranes, transtainers, reefers, dry containers and chassis |
| LA Berths 121-131 Yang Ming | Red circle with the exception of cranes |
| LA SSA Outer Harbor 54-55 | Red circle |
| LA Berth 100 WBCT/China Shipping | Red circle with the exception of cranes |

220

Exhibit A
Page 40 of 43

| TACOMA | |
|---|---|
| Husky Terminal/ITS | Red circle |
| TOTE | Red circle with the exception of minor trailer repair, federal trailer licensing, and rolox box repair |
| APM Terminal | Red circle hammerhead cranes only |
| OCT/Yang Ming/Terminal 7 Berth D | Red circle with the exception of chassis, reefers, and dry containers |
| Horizon Facility | Red circle |

| SEATTLE | |
|---|---|
| SSA Terminal 18 | Red circle |
| SSAT Terminal 25 | Red circle |
| SSAT/China Shipping Terminal 30 | Red circle |
| Terminal 46/Hanjin | Red circle with the exception of cranes, transtainers, chassis, dry containers, and reefers |
| Pier 66/CTA | Red circle |
| APL/EMS North Terminal 5 | Red circle |

The "red-circled" list shall replace the 1978 past practice exception with respect to Sections 1.7, 1.71, 1.72, and 1.73 of the PCLCD.

The Parties further agree that all carriers and vessel operators may use any of the "red-circled" facilities, as they see fit, without affecting the status of these facilities as an exception to ILWU maintenance and repair jurisdiction. It shall be a subterfuge for a

221

LETTER OF UNDERSTANDING                                      ADDENDA
CLARIFICATIONS AND EXCEPTIONS TO ILWU MAINTENANCE
AND REPAIR JURISDICTION

carrier to utilize a "red circled" terminal to perform maintenance and repair work on its equipment unless the work is associated with a vessel calling that facility. Modifications and reconstruction of any "red-circled" facility, including changes in the boundary lines that do not change the fundamental identity of the "red-circled" facility, shall not change its exception status.

The Parties agree that a terminal operator that is the owner or lessee of a "red-circled facility and that has a direct collective bargaining relationship with another union as of July 1, 2008, may vacate a "red-circled" facility and then relocate its operations to another facility within the same port (other than newly constructed terminals subject to ILWU jurisdiction under Section 1.731) and retain its incumbent non-ILWU mechanic workforce, provided the relocation maintains a continuity of operations, personnel, and equipment.

The Parties also agree that, notwithstanding the above paragraph, the anticipated relocation, due to eminent domain, of the Tacoma TOTE facility to another location within the Port of Tacoma area shall not displace or disturb the recognized workforce at the prior facility, unless otherwise determined by the Employer.

With respect to Section 1.75, the Parties agreed that the exception would only apply to "full red-circled" facilities.

The Parties left for future resolution under Section 17 the question concerning how Section 1 provisions, as amended, apply in situations when stevedore cargo handling equipment (See Section 1.7 and sub-sections), at a marine terminal is moved off the marine terminal by the terminal operator or by a signatory carrier.

Sincerely,

/s/ Robert McEllrath
International President

222

ADDENDA                  LETTER OF UNDERSTANDING
             MAINTENANCE AND REPAIR - WARRANTY DEFINITION

Understanding confirmed:
/s/ James C. McKenna
President & CEO
Pacific Maritime Association
Dated: 07/28/08

# LETTER OF UNDERSTANDING
## Maintenance and Repair
## – Warranty Definition

Dear Mr. McEllrath:

During the course of the 2008 ILWU-PMA Contract negotiations, the Parties discussed the M&R warranty provisions in the applicable port supplements and agreed to the following warranty language (See Section 1.81 and Letter of Understanding – Clarification and Exceptions to ILWU Maintenance and Repair Jurisdiction):

*Work may be performed on dock by vendors under bona fide original written manufacturers' warranty on new purchased or leased equipment. Length of such warranties shall not exceed industry standards of the manufacturer or three (3) years, whichever is less. Past practice exceptions (e.g., manufacturer design problems, major structural repairs, major painting, and items recalled by the manufacturer) may continue. Additional service contracts not covered by the original warranty shall not be construed as being bona fide original manufacturers' warranties. Copies of said warranties shall be furnished to the Union upon request.*

*While under vendor warranty, no agency other than vendor and/or manufacturer or their designated agency shall be used to repair said piece of equipment.*

223