| | |
|---|---|
| IN THE MATTER OF A CONTROVERSY | CRAA-0008-2012 |
| BETWEEN | INTERIM DECISION |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 8 | OF |
| AND | JAN R. HOLMES OREGON AREA ARBITRATOR |
| PACIFIC MARITIME ASSOCIATION | PORTLAND, OREGON |
| ISSUE: – Union's Motion – Violation of Sections 11.1, 11.2, and 1.74, PCLCD, ICTSI, Terminal 6, Portland, Oregon | JUNE 4, 2012 |

An informal hearing was held at 4:30 PM at the Port of Portland Administration Building, Terminal 6, Portland, Oregon. The parties were afforded a full opportunity to present witnesses, arguments and evidence.

FOR THE UNION:       Jack Mulcahy, ILWU Local 8
                     Torrae DelaCruz, ILUW Local 8
                     Kevin Johnson, ILWU Local 8

FOR THE EMPLOYERS:   Mike Dodd, Pacific Maritime Association
                     Jim Mullen, ICTSI
                     Preston Foster, TMC

POSITION OF THE PARTIES

The Union held that the Employers have engaged in a lockout and have not secured observance of the Agreement by refusing to utilize ILWU reefer mechanics to perform plugging, unplugging, and monitoring of reefer containers for ITCSI at Terminal 6. The provisions of Section 17.62, PCLCD have been followed. The Coast parties agreed in CLRC Meeting No. 12-2012, May 23, 2012, that the work assignment was properly assigned to the ILWU. The employer has refused to utilize the ILWU and has threatened to fire ILWU reefer mechanics who perform this work. No reefer mechanics have been hired on the second shift, June 4, 2012. Non-ILWU electricians have been directed to perform this work. NLRB proceedings cannot be considered by the Area Arbitrator.

The Union moved that the Employers were guilty of violation of Section 11.1, PCLCD, for locking out the ILWU reefer mechanics from agreed-to work, and Section 11.2, PCLCD, for failure of the Employers to secure observance of the Agreement. Further, the Employers are guilty of violation of Section 1.74, PCLCD, for engaging in subterfuge to avoid their maintenance and repair obligations under the Agreement. The employer should be directed to immediately assign the work in question to the ILWU.

The Employers held that this issue is not proper before the Arbitrator. Sections 11.3 and Section 11.31, PCLCD, provide that the only reasons for on-the-job arbitrations are health and safety, onerous workload, or picket lines. The industry has maintained a longstanding practice

Arbitration Award CRAA-0008-2012 2
June 4, 2012

to "work now, grieve later." Though the CLRC instructed the parties to utilize the ILWU for the work in question, the NLRB 10(k) hearing was pursued by the employer after receiving a strike letter from the IBEW, the Union also claiming this work. The grievance machinery has not been fully implemented. The parties should be able to work out the kinks in the CLRC agreement. The issue is still being discussed in San Francisico.

Further, the Employers held that it is not proper to be charged with a violation of Section 1.74, PCLCD. The Employers stated that ICTSI is protesting the CLRC agreement and are in an impossible situation. If the employer assigns the work to the ILWU they will be violating their lease with the Port. The Union has slowed down the operation today which is tantamount to a work stoppage. There is no immediate danger to the health and safety of the longshoremen, an onerous workload, or a picket line. This issue is not proper before the Area Arbitrator.

DISCUSSION

Section 11.1, PCLCD, provides that there shall be no strike, lockout, or work stoppage for the life of the Agreement. Section 11.2, PCLCD, requires that the parties secure observance of the Agreement. This is a case of a dispute that was resolved with finality under the authority granted the Joint Coast Labor Relations Committee under the terms of Sections 17.26 and 17.27, PCLCD. Sections 17.52 and 17.53, PCLCD, limit the Arbitrator's powers to the application and interpretation of the language as written in the Agreement; no other outside rulings or proceedings are to be considered. The Coast minutes clearly state that the terms of the 2008-2014 PCLCD were considered, as well as Section 1.7 and subsections, PCLCD, the "Red-circle facilities" Letter of Understanding, and Coast Arbitrator John Kagel's Coast Award C-07-2011. Additionally, the parties considered the terms of the lease ICTSI has with the Port of Portland. The CLRC minutes state, "The Committee instructs ICTSI to assign the subject work to ILWU represented Longshore personnel in accordance with the PCLCD and this CLRC agreement. The Committee further instructs ICTSI to comply with Section 1.76, PCLCD. The Committee agreed that this specific issue is considered resolved with finality, therefore no back pay claims are payable."

The Employers held that ICTSI cannot assign the work to the ILWU without violating its lease agreement with the Port with serious consequences. An NLRB 10(k) hearing was held on this jurisdictional dispute on May 24, 2012, a day after the CLRC Meeting was held and the resolution is pending. The employer stated that they would not implement the Arbitrator's decision. Accordingly, the following decision was hereby rendered.

DECISION

1. The Employers have failed to secure observance of the Agreement in violation of Section 11.2, PCLCD by failing to implement Coast LRC directive dated May 23, 2012, CLRC Meeting #12-2012.
2. The Employers shall immediately assign the work in question to ILWU Local 8 in accordance with CLRC Meeting #12-2012.
3. The local grievance machinery is stalled and in accordance with Section 17.282, PCLCD, the matter in dispute can be referred at once by either the Union or the Association to the Joint Coast Labor Relations Committee for disposition.

*Jan R. Holmes*

Jan R. Holmes, Oregon Area Arbitrator