**Jeffrey S. Eden**, OSB #851903
Email: jeden@schwabe.com
**Amanda T. Gamblin,** OSB # 021361
Email: agamblin@schwabe.com
**Michael T. Garone**, OSB #802341
Email: mgarone@schwabe.com
**Richard K. Hansen**, OSB #832231
Email: rhansen@schwabe.com
**Andrew J. Lee**, OSB #023646
Email: ajlee@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

        *Attorneys for ICTSI Oregon, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION and PACIFIC MARITIME ASSOCIATION,** | No. 3:12-cv-01058-SI |
| Plaintiffs, | **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE*** |
| vs. | |
| **ICTSI OREGON, INC., an Oregon corporation,** | REQUEST FOR ORAL ARGUMENT |
| Defendant. | |
| **ICTSI OREGON, INC., an Oregon corporation,** | |
| Counterclaim Plaintiff, | |
| vs. | |
| **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; ILWU LOCAL  8; and ILWU LOCAL 40; and PACIFIC MARITIME ASSOCIATION,** | |
| Counterclaim Defendants. | |

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## TABLE OF CONTENTS

LOCAL RULE 7-1(a) CERTIFICATION STATEMENT ................................................... 1

INTRODUCTION ........................................................................................................... 1

ISSUE PRECLUSION ................................................................................................... 2

Motion 1    Excluding evidence, argument, and comment (a) disputing that
ILWU Entities violated 29 U.S.C. § 187, as found in this Court's
Opinion and Order [Dkt. 362], or (b) for the established periods,
asserting some object for the work stoppages and slowdowns oter
than the reefer dispute. ....................................................................... 2

Motion 2    Excluding evidence, argument, and comment disputing that the Port
controlled the reefer work or that it was unlawful for the ILWU
Entities to pursue that work through labor activities. ................................... 4

Motion 3    Excluding evidence, argument, and comment suggesting that ILWU
Entities have a "work preservation" defense, which defense was
rejected.  [UNOPPOSED.] ............................................................................ 5

Motion 4    Excluding evidence, argument, and comment relitigating "safety"
issues, including whether they were pretextual or related to
productivity during those previously litigated periods and beyond. ............. 6

Motion 5    Excluding evidence, argument, and comment (a) disputing that
ILWU Entities agreed to increasing productivity at Terminal 6
during the 2013 mediation with Governor Kitzhaber, or (b)
addressing the discussions that preceded that agreement. ............................ 8

Motion 6    Excluding evidence, argument, and comment disputing previously
adjudicated facts regarding the ILWU Entities and their agents'
actions between May 21 and August 10, 2012, including but not
limited to those set forth in Exhibit A. ......................................................... 9

FALSE LIABILITY ELEMENT OR FALSE AFFIRMATIVE DEFENSE .................... 10

Motion 7    Excluding evidence, argument, and comment suggesting that ILWU
Entities had a good faith belief that the work belonged to it under the
PCL&CA. .................................................................................................... 10

DAMAGES—SUPPOSED MITIGATION ISSUES ...................................................... 12

Page i        **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

Motion 8      Excluding evidence, argument, and comment suggesting that ICTSI
              failed to mitigate damages or otherwise acted improperly by failing
              to seek or insist on control of the reefer jobs under its lease with the
              Port. ................................................................................................ 12

Motion 9      Excluding evidence, argument, and comment suggesting that
              ICTSI's failure to heed Hanjin's demand to assign ILWU the reefer
              work was improper or a failure to mitigate. ................................. 14

Motion 10     Excluding evidence, argument, and comment regarding Terminal 6
              subtenant Evraz Steel's complaints or the expiration/non-renewal of
              its sublease. .................................................................................... 15

DAMAGES—SUPPOSED OFFSETS ........................................................... 16

Motion 11     Excluding evidence, argument, and comment attempting to use
              Hanjin's bankruptcy to offset ICTSI's damages. ......................... 19

Motion 12     Excluding evidence, argument, or comment suggesting that the jury
              may offset ICTSI's damages because ILWU Defendants' wrongful
              conduct caused ICTSI to avoid 21 years of lease payments to the
              Port. ................................................................................................ 22

Motion 13     Excluding evidence, argument, and comment opining or speculating
              about Terminal 6's potential profitability after the period of time for
              which ICTSI seeks damages. ....................................................... 23

Motion 14     Excluding evidence, argument and comment about ICTSI's
              discretionary expenditures—*e.g.*, bonuses to employees or
              distributions to its shareholder. ................................................... 24

Motion 15     Excluding evidence, argument, and comment regarding the Port's
              payment of some of ICTSI's damages, including any related
              agreement or statements. ............................................................. 25

IMPROPER OPINION TESTIMONY ............................................................ 27

Motion 16     Excluding evidence, argument, and comment opining or speculating
              about how any agent or member of ILWU Entities *might have*
              responded to hypothetical actions by ICTSI. ............................. 27

APPEALS TO PASSION AND PREJUDICE ................................................ 29

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

Motion 17    Excluding evidence, argument and comments that reference nationality, locations, or affiliate locations of ICTSI Inc. or ICTSI Oregon, Inc. and their agents or otherwise denigrate them in relation to such characteristics.................................................................. 29

Motion 18    Excluding evidence, argument, and comment about the financial resources of ICTSI (beyond use of its financial data for the damages claim), its parent company, or their owners, principles, or employees. ..................................................................... 30

Motion 19    Excluding evidence, argument, and comment suggesting ICTSI is "litigious," including by referencing litigation between ICTSI and parties other than ILWU Entities, demeaning the civil justice system, or disparaging ICTSI's reliance on legal remedies in any matter. .............. 31

Motion 20    Excluding evidence, argument, and comment regarding disputes between the Port and ICTSI, including about "reimbursables" under the lease agreement. .................................................................. 32

Motion 21    Excluding evidence, argument, and comment suggesting that ICTSI defrauded PMA when it became a PMA member....................................... 33

Motion 22    Excluding evidence, argument, and comment suggesting that ICTSI is suing union members or that union members have individual liability.................................................................................... 34

Motion 23    Excluding evidence, argument, and comment about how ILWU Entities would pay a judgment, including suggesting that individual members would somehow pay a judgment rendered against a union. ........ 34

MISCELLANEOUS ISSUES ......................................................................... 35

Motion 24    Excluding evidence, argument, and comment about supposed legal rights and principles (*e.g.*, the First Amendment) about which the jury is not instructed. .................................................................. 35

Motion 25    Excluding evidence, argument, or comment regarding examples or incidents beyond the scope of what could have been presented as part of Interrogatories 6, 8, 9, and 13 but—based on ILWU's objection as to the burden of the Interrogatories—were not...................... 36

Page iii        **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

Motion 26    Excluding ILWU Entities' exhibits and testimony from (or derived from) their members and agents, the substance of which was within the topics listed on ICTSI's 30(b)(6) notice to Local 8. ............................ 39

GENERIC MOTIONS PRESENTED WITHOUT ARGUMENT ................................... 39

Motion 27    Excluding all lay witnesses (except parties' designees) from the trial proceedings when they are not testifying, pursuant to Rule 615. [UNOPPOSED.] .......................................................................... 39

Motion 28    Excluding any evidence, argument, or comment relating to or referencing the parties' law firms, the size or number of attorneys in those law firms, or the law firms' representation of or association with other parties or their employees or agents.  Fed. R. Evid. 402, 403. .................................................................................................. 39

Motion 29    Prohibiting any "Golden Rule" arguments or testimony, or any suggestions that the jury should put themselves in the positions of the parties.  Fed. R. Evid. 402, 403; *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (such arguments are "universally condemned"). ........................................................... 39

Motion 30    .Prohibiting counsel from explicitly or implicitly arguing their case during jury selection or opening statement.  [UNOPPOSED.] .................. 40

Motion 31    Prohibiting the parties from addressing jurors individually (except in *voir dire*).  [UNOPPOSED.] ...................................................... 40

Motion 32    Prohibiting any evidence or argument that any party is covered by insurance.  Fed. R. Evid. 402, 403, 411.  [UNOPPOSED.] ........................ 40

Motion 33    Prohibiting counsel from suggesting personal knowledge of the facts or giving their opinions of the testimony, facts, credibility of the witnesses, or justice of the case.  Fed. R. Evid. 402, 403. ......................... 40

Motion 34    Precluding speaking objections. ................................................. 40

Motion 35    Precluding the use of any document or thing for impeachment that was not disclosed in discovery, unless such item is first considered outside the presence of the jury to address whether the item was requested in discovery and properly subject to use for impeachment at trial. ......................................................................................... 40

Page iv        **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

<u>Motion 36</u>    That counsel be specifically instructed to inform and instruct all witnesses or parties in the courtroom not to volunteer, inject, disclose, state, or mention to the jury any matters prohibited by the Court's rulings on motions *in limine*, unless specifically allowed by the Court.  [UNOPPOSED.].......................................................40

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

TABLE OF AUTHORITIES

## Cases

*Finjan, Inc. v. Sophos, Inc.*,
No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 189272 (N.D. Cal.
Aug. 22, 2016) ................................................................................................ 30

*Am. Steel Erectors v. Local Union No. 7, Int'l Ass'n of Bridge, Structural,
Ornamental & Reinforcing Iron Workers*,
815 F.3d  43(1st Cir. 2016) ........................................................................... 23

*Bird v. Glacier Elec. Coop., Inc.*,
255 F.3d 1136 (9th Cir. 2001) ...................................................................... 29

*Bowen v. United States*,
570 F.2d 1311 (7th Cir. 1978) ........................................................................ 2

*Branch v. Umphenour*,
2014 U.S. Dist. LEXIS 109288 (E. D. Cal. Aug. 6, 2014) .......................... 38

*Brooks v. Cook*,
938 F.2d 1048 (9th Cir. 1991) ................................................................. 26, 27

*Brough v. Imperial Sterling Ltd.*,
297 F.3d 1172 (11th Cir. 2002) ................................................................... 30

*Brown v. Colegio de Abogados de Puerto Rico*,
613 F.3d 44 (1st Cir. 2010) ............................................................... 18, 19, 23

*California Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) ...................................................................................... 36

*Cline v. Am. Aggregates Corp.*,
582 N.E.2d 1 (Ohio App. 1989) ........................................................ 18, 23, 24, 25

*Coursen v. A.H. Robins Co.*,
764 F.3d 1329 (9th Cir. 1985) ..................................................................... 15

*Eazor Express, Inc., v. Teamsters, Chauffeurs, Warehousemen & Helpers
of America*,
520 F.2d 951 (3rd Cir. 1975) ................................................................ 13, 15

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

*Eichel v. New York Cent. R. Co.*,
  375 U.S. 253 (1963) ................................................................................. 26

*Forbes v. Cty. of Orange*,
  No. SACV 11-1330 JGB (ANx), 2013 U.S. Dist. LEXIS 202026 (C.D.
  Cal. Aug. 4, 2013) ................................................................................. 27

*Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*,
  No. 1:11-cv-00845-SKO, 2013 U.S. Dist. LEXIS 71364 (E.D. Cal. May
  20, 2013) ................................................................................................ 31

*Frito-Lay, Inc. v. Local Union No. 137*,
  623 F.2d 1354 (9th Cir. 1980) ........................................................ 12, 23

*Gorski v. Smith*,
  812 A.2d 683 (Pa. Super. Ct. 2002) ........................................................ 17

*Hoffman v. Constr. Protective Servs., Inc.*,
  541 F.3d 1175 (9th Cir. 2008) ........................................................ 37, 38

*Hooks v. Int'l Longshore & Warehouse Union, Local 8*,
  72 F. Supp. 3d 1168 (D. Or. 2014) ...............................................*passim*

*IBEW, Local 501 v. NLRB*,
  181 F.2d 34 (2nd Cir. 1950) .................................................................... 34

*ILWU Local 8 (ILWU III)*,
  2015 NLRB LEXIS 729, 363 NLRB No. 12 (NLRB Sept. 24, 2015),
  *enf. granted ILWU Local 8 v. NLRB (ILWU V)*, 705 Fed. App'x 1 (D.C.
  Cir. Nov. 6, 2017) .........................................................................*passim*

*ILWU Local 8 (ILWU IV)*,
  2015 NLRB LEXIS 870 (Nov. 30, 2015) ...................................... 7, 8, 10

*ILWU Local 8 (ILWU VI)*,
  705 F. App'x 3 (D.C. Cir. Nov. 6, 2017) .................................................. 7

*ILWU v. Juneau Spruce Corp.*,
  189 F.2d 177 (9th Cir. 1951) ........................................................ 13, 14

*Jinro Am., Inc. v. Secure Invs., Inc.*,
  266 F.3d 993 (9th Cir. 2001) .................................................................. 30

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

*Kloepfer v. Honda Motor Co.*,
  898 F.2d 1452 (10th Cir. 1990) ................................................................. 28

*Larez v. Holcomb*,
  16 F.3d 1513 (9th Cir. 1994) ..................................................................... 34

*Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*,
  377 U.S. 252 (1964) ................................................................................... 12

*Lovett v. Union Pac. R.R. Co.*,
  201 F.3d 1074 (8th Cir. 2000) ................................................................... 39

*Maxey v. Butchers' Union Local No. 126, Amalgamated Meat Cutters &*
  *Butchers Workmen of N. Am., AFL-CIO*,
  627 F.2d 912 (9th Cir. 1980) ..................................................................... 12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ................................................................... 36

*NLRB v. Int'l Longshoremen's Ass'n, AFL-CIO*,
  473 U.S. 61 (1985) ....................................................................................... 6

*Outley v. City of New York*,
  837 F.2d 587 (2d Cir. 1988) ...................................................................... 31

*Paulo v. Holder*,
  669 F.2d 911 (9th Cir. 2011) ....................................................................... 8

*Pederson v. Dumouchel*,
  431 P.2d 973 (Wash. 1967) ....................................................................... 30

*Phillips v. W. Co. of N. Am.*,
  953 F.2d 923 (5th Cir. 1992) ..................................................................... 26

*Sheehy v. S. Pac. Transp. Co.*,
  631 F.2d 649 (9th Cir. 1980) ..................................................................... 27

*Stoba v. Saveology.com, LLC*,
  No. 13cv2925 BAS (NLS), 2015 U.S. Dist. LEXIS 178140 (S. D. Cal.
  Jul. 7, 2015) ............................................................................................... 38

*United States v. Cabrera*,
  222 F.3d 590 (9th Cir. 2000) ..................................................................... 29

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

*United States v. City of Twin Falls, Idaho*,
   806 F.2d 862 (9th Cir. 1986) ................................................................ 16

*United States v. Cruz*,
   981 F.2d 659 (2nd Cir. 1992) ................................................................ 30

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) ............................................................................... 30

*United States v. Weitzenhoff*,
   35 F.3d 1275 (9th Cir. 1993) ................................................................ 35

*Universal Commc'ns Corp. v. Burns*,
   449 F.2d 691 (5th Cir. 1971) ................................................................ 34

*W. R. Grace & Co. v. Local Union No. 759, Int'l Union of United Rubber*,
   652 F.2d 1248 (5th Cir. 1981) .............................................................. 11

*Warshawsky & Co. v. NLRB*,
   182 F.3d 948 (D.C. Cir. 1999) .............................................................. 36

*Wash. v. Dep't of Transp.*,
   8 F.3d 296 (5th Cir. 1993) .................................................................... 28

*Weaver v. United States*,
   793 F.3d 857 (8th Cir. 2015) ................................................................ 28

*Zak v. Riffel*,
   115 P.3d 165 (Kan. App. 2005) ............................................................ 26

**Statutes and Rules**

29 U.S.C. § 8(b)(4) ....................................................................................... 4

29 U.S.C. § 8(b)(4)(i) ................................................................................. 36

29 U.S.C. § 8(b)(4)(B) ........................................................................... 5, 11

29 U.S.C. § 158(b)(4)(B) .............................................................................. 4

29 U.S.C. § 187 .................................................................................. *passim*

29 U.S.C. § 187(a) ........................................................................................ 2

29 U.S.C. § 187(b) ........................................................................................ 3

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Fed. R. Civ. P. 26(a)(3)(B)(i) ........................................................................ 37

Fed. R. Civ. P. 26(a)(4) .................................................................................. 37

Fed. R. Civ. P. 37(c)(1) .................................................................................. 37

Fed. R. Evid. 104 ...................................................................................... 2, 8

Fed. R. Evid. 401 .................................................................................... 13, 15

Fed. R. Evid. 402 .................................................................................... *passim*

Fed. R. Evid. 403 .................................................................................... *passim*

Fed. R. Evid. 403 .................................................................................... *passim*

Fed. R. Evid. 404 ............................................................. 14, 16, 31, 29, 31, 33

Fed. R. Evid. 411 ......................................................................................... 40

Fed. R. Evid. 615 ......................................................................................... 39

**Other Authorities**

Gary T. Schwartz, *Reality in the Economic Analysis of Tort Law: Does Tort
  Law Really Deter?*, 42 UCLA L. REV. 377 (1994)....................................... 16

HANDBOOK ON THE LAW OF REMEDIES, Dan B. Dobbs, § 3.6 (1973) ............................ 17

RESTATEMENT (SECOND) OF TORTS § 425A ................................................ 20, 21

RESTATEMENT (SECOND) OF TORTS § 920 ........................................... 16, 18, 21

RESTATEMENT (SECOND) OF TORTS, § 920, comment f................................... 18

RESTATEMENT (SECOND) OF TORTS, § 920, comment d .................................. 17

RESTATEMENT (SECOND) OF TORTS, § 920, comment d & illustration 8................... 17, 20

RESTATEMENT (SECOND) OF TORTS, § 920A ................................................. 16

*Webster's Third New International Dictionary* 1447 (unabridged ed 1981) ................... 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

## LOCAL RULE 7-1(a) CERTIFICATION STATEMENT

Through counsel, ICTSI Oregon, Inc. ("ICTSI") conferred by telephone with International Longshore and Warehouse Union, ILWU Local 8, and ILWU Local 40 (collectively, "ILWU Entities").  Except as noted by tagging motions "[UNOPPOSED]," ILWU Entities oppose ICTSI's motions.

## INTRODUCTION

ICTSI moved for partial summary judgment to streamline issues for the jury.  That goal motivates ICTSI's motions *in limine*.  ICTSI's motions address evidence, argument, and comment falling within the following general categories:

- Previously adjudicated facts and conclusions (Motions 1-6)

- False liability elements and affirmative defenses (Motion 7)

- Damages—supposed mitigation issues (Motions 8-10)

- Damages—supposed offsets (Motions 11-15)

- Improper opinions (Motion 16)

- Appeals to passion and prejudice (Motions 17-23)

- Miscellaneous issues (Motions 24-26)

- Generic matters presented without argument (Motions 27-36)

Such categories, provided for organizational purposes, do not thereby limit any motion.

As used in this brief, the phrase "evidence, argument, and comment" refers to any manner of communicating information to the jury, directly or indirectly.  It includes but is not limited to communicating or drawing attention to information through exhibits,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

demonstratives, testimony, questions, objections, comments on testimony, and statements during opening or closing and during *voir dire*.

In the event that the Court denies or reserves any motion *in limine* to preclude evidence, argument, or comment because some question exists as to whether the ILWU Entities can establish a conditional basis for putting evidence before the jury, ICTSI moves in the alternative that the ILWU Entities provide notice outside of the jury's hearing so that the Court may decide, by Rule 104 hearing, whether they may proceed.

## ISSUE PRECLUSION

"[O]ne fair opportunity to litigate an issue is enough[.]" *Bowen v. United States*, 570 F.2d 1311, 1322 (7th Cir. 1978). After examining Ninth Circuit case law, this Court specified that, "when the NLRB and the Court heard evidence and argument and specifically ruled on a factual determination, it will have a preclusive effect in this proceeding." (Op. & Order [Dkt. 362] at 28.)

**<u>Motion 1</u>** **Excluding evidence, argument, and comment (a) disputing that ILWU Entities violated 29 U.S.C. § 187, as found in this Court's Opinion and Order [Dkt. 362], or (b) for the established periods, asserting some object for the work stoppages and slowdowns other than the reefer dispute.**

This Court entered partial summary judgment that: (a) "ILWU, Local 40, and Local 8 violated 29 U.S.C. § 187(a) from May 21 to June 10, 2012"; (b) which violations continued for ILWU and Local 8 through August 13, 2013; and (c) "during these time periods …, the work stoppages and slowdowns, were motivated by the reefer dispute." (Op. & Order [Dkt. 362] at 24.) This Court should prohibit the ILWU Entities from

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

denying those conclusions or proffering alternative motives for work stoppages and slowdowns during these periods.

First, the ILWU Entities' denials and supposed other motives during these periods are immaterial.  For these periods, the jury need only decide what injury and damages ICTSI suffered "by reason [of]" the work stoppages and slowdowns.  29 U.S.C. § 187(b).  This Court, quoting *Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, AFL-CIO*, 523 F.2d 1371, 1376 (9th Cir. 1975), explained, "injury occur[s] by reason of particular unlawful conduct if such conduct materially contributed to the injury or was a substantial factor in bringing it about, notwithstanding other factors contributed also."  (Op. & Order [Dkt. 362] at 17 (quotation marks omitted).)  Relatedly, ICTSI need only "'establish with reasonable probability the existence of some causal connection between the defendant's wrongful act and some loss of anticipated revenue.'"  *Id*. (quoting *Mead*, 523 F.2d at 1377).  The ILWU Entities' denials of or other putative motives for work stoppages and slowdowns during these periods do not inform the issues of causation or damages and should be excluded.  Fed. R. Evid. 402.

Second, any modicum of probative value is substantially outweighed by the dangers of confusing the issues, misleading the jury, creating unfair prejudice, or wasting time.  Fed. R. Evid. 403.  The factual and legal aspects of this case will be unfamiliar to most jurors.  That heightens the risk that stray issues and facts in the parties' condensed presentations may be left unaddressed because of limited time but still lead the jury astray—for example, to impermissibly reduce damages to try to account for some

Page 3     **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

supposed motive that might have been legal.  Moreover, the prejudice is clear.

Inevitably, the ILWU Entities would select other putative motives that they believed

recast work stoppages and slowdowns in a manner favorable to them, notwithstanding

this Court's entry of summary judgment on this issue.

**Motion 2**     **Excluding evidence, argument, and comment disputing that the Port controlled the reefer work or that it was unlawful for the ILWU Entities to pursue that work through labor activities.**

Following this Court's entry of partial summary judgment, the ILWU Entities are

precluded from relitigating "which entity had the right to control the reefer jobs (the

Port), and why the ILWU Entities did not have a work preservation claim (because for

decades IBEW members had performed the work)."  (Op. & Order [Dkt. 362] at 25.)

That is, "if ICTSI proves that one or more of the ILWU Entities engaged in [labor

activities in pursuit of the reefer work] during a time period other than the time periods

already adjudicated …, then that conduct will conclusively be found to violate § 8(b)(4)

[of the NLRA, 29 U.S.C. § 158(b)(4)(B)]."  (*Id*. at 25-26.)  It follows that ILWU Entities

cannot dispute to a jury that the Port controlled the reefer work or suggest that it was

lawful for them to pursue that work through labor activities.  Fed. R. Evid. 402, 403.

Within the scope of this motion is, for example, evidence, argument, or comment

that the reefer work supposedly belonged to the ILWU Entities under the Pacific Coast

Longshore and Clerks Agreement ("PCL&CA") or was controlled by some member of

the Pacific Maritime Association ("PMA").  Relatedly, ILWU Entities cannot suggest

that ICTSI could or should have obtained control of the reefer work—*e.g.*, arguing that

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

ICTSI participated in a "plot" with the Port to "keep the reefer work away from the ILWU."  (ILWU Opp. to MPSJ [Dkt. 323] at 2-3 (arguing same).)  The Port's control of the reefer work forecloses such argument about a "plot."  *See ILWU Local 8* (*ILWU III*), 2015 NLRB LEXIS 729, \*125-126, 363 NLRB No. 12 (NLRB Sept. 24, 2015), *enf. granted ILWU Local 8 v. NLRB* (*ILWU V*), 705 Fed. App'x 1 (D.C. Cir. Nov. 6, 2017) (finding "absolutely no support" for ILWU's claim that "the lease protections for the [IBEW's] historical work were a subterfuge" or "deliberately hatched by ICTSI in order to avoid … assigning the dockside reefer work to ILWU represented employees").  Likewise, the Port's control of the reefer work forecloses an argument that ICTSI should have capitulated to the ILWU Entities' unlawful labor practices by attempting to amend the lease.  *See id.* at \*129-30 (ILWU Entities wrongfully "pressured ICTSI and the carriers—all neutral employers—to seek the relinquishment of the Port's control over the dockside reefer work …," which would have "require[d] that ICTSI and the Port renegotiate [the lease] requiring the lessee to honor the traditional work assignments that the Port sought to maintain at the terminal").

**Motion 3**     **Excluding evidence, argument, and comment suggesting that ILWU Entities have a "work preservation" defense, which defense was rejected.  [UNOPPOSED.][1]**

The law recognizes a "work preservation defense" to a claim that a labor organization violated Section 8(b)(4)(B).  A union relying on that defense, however, must prove both that, under "all the surrounding circumstances," its coercive conduct was:

---

[1] ILWU Entities stated they do not waive any right to appeal the rejection of that defense.

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***     SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

(1) directed against the entity that *actually controls* assignment of the disputed work; and (2) to preserve work that its members historically performed. *NLRB v. Int'l Longshoremen's Ass'n, AFL-CIO*, 473 U.S. 61, 75-76 (1985).  Here, the NLRB rejected the ILWU Entities' defense.  First—as noted in the prior motion—the Port controlled the reefer jobs to the exclusion of ICTSI and any PMA-member carrier.  *ILWU III*, 2015 NLRB LEXIS 729 at *115-126.  Second, ILWU's objective was to take jobs that ILWU members had never performed at Terminal 6 from IBEW-represented employees of the Port, which *was not* a member of the PMA.  The NLRB found "no valid contractual underpinning for the [ILWU Entities'] work preservation claims…."  *Id.* at *116.

This Court should preclude ILWU Entities from suggesting a work preservation defense for the same evidentiary reasons this Court should prevent them from disputing to the jury that the Port controlled the reefer work or suggesting a lawful pursuit of such work—namely, that suggestion is irrelevant to any issue or presents an undue danger of unfair prejudice, confusion, and waste of limited trial time.  Fed. R. Evid. 402, 403.

**Motion 4**     **Excluding evidence, argument, and comment relitigating "safety" issues, including whether they were pretextual or related to productivity during those previously litigated periods and beyond.**

The ILWU Parties have argued that productivity was diminished because ICTSI "violate[d] safety rules."  (ILWU Opp. to MPSJ at 6-7.)  ILWU Entities have previously litigated whether "safety" issues related to productivity declines and their contention has been rejected.  This Court should preclude the ILWU Entities from relitigating the issue of whether "safety" concern created work stoppages and slowdowns between May 21,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

2012, and August 13, 2013.  Further, absent a showing of changed circumstances regarding previously litigated specific "safety" concerns, ILWU Entities should be precluded from re-litigating whether those concerns were pretextual or affected productivity beyond those periods already litigated.  Fed. R. Evid. 402, 403.

The first NLRB proceeding covered a June 6, 2012 "work stoppage or … job action" on the pretext of safety—specifically, ILWU members refused to operate four loading machines that "did not have fire extinguishers on board[.]"  *ILWU III*, 2015 NLRB LEXIS at *85-88 & n.27.  *See also ILWU Local 8* (*ILWU IV*), 2015 NLRB LEXIS 870 (Nov. 30, 2015), *enf. granted ILWU Local 8 v. NLRB (ILWU VI)*, 705 Fed. App'x 3 (D.C. Cir. Nov. 6, 2017) (describing same as the use of "alleged safety concerns as a pretext for unlawful work stoppages in June 2012").)

In the second NLRB proceeding, ICTSI employee Brian Yockey testified to work stoppages and slowdowns, ostensibly based on safety concerns—ILWU members refused to: (a) operate cranes in bypass mode; and (b) move more than one twenty-foot container ("twin 20s") on older style "bomb" carts.  *ILWU IV*, 2015 NLRB LEXIS 870 at *29-21.  Those "safety" excuses were found to be "pretextual."  *Id*. at *41-42.  Also, the NLRB concluded that the ILWU's "safety" excuses were unfair labor practices.  *Id.* at *46; *ILWU VI*, 705 F. App'x 3 (enforcing same).  Further, the ILWU Entities attributed the productivity decline in part to ICTSI replacing stop signs with yield signs in the container yard in June or July 2012.  *ILWU IV*, 2015 NLRB LEXIS 870 at * 28-29.  ALJ Wedekind rejected the ILWU Entities' contention that the change in signage "caused or contributed

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

to the relatively low productivity" during the period he examined. *Id.*

Moreover, the broader issue of what caused the ILWU Entities' slowdowns and work stoppages between May 21, 2012, and August 13, 2013, has already been litigated. "[T]he fact that a particular argument or theory was not adjudicated does not prevent issue preclusion—it is only the underlying *issue* that must actually have been litigated, not the argument relevant to that issue." (Op. & Order [Dkt. 362] at 21 (summarizing *Paulo v. Holder*, 669 F.2d 911, 917-18 (9th Cir. 2011); emphasis in original).) Here, the underlying issue was "whether other factors versus the reefer dispute motivated the ILUW Entities to engage in the work stoppages and slowdowns …." (*Id.* at 22.) By definition, "other factors" would include *any* "safety" concerns in that period, regardless of whether specifically raised. It follows that ILWU Entities should be precluded from litigating any new "safety" concerns for that period. *See* Fed. R. Evid. 402, 403.

In the event that ILWU Entities wish to reference one of the previously litigated "safety" concerns that was re-asserted post-August 13, 2013, this Court should require them to make a showing pursuant to Rule 104 that there was some material change in circumstances in the interim. As a general matter, the mere passage of time would not diminish the "pretextual" character of previously litigated "safety" concerns.

**Motion 5**    **Excluding evidence, argument, and comment (a) disputing that ILWU Entities agreed to increasing productivity at Terminal 6 during the 2013 mediation with Governor Kitzhaber, or (b) addressing the discussions that preceded that agreement.**

This Court found that, as a result of a December 2013 intervention by then-Governor John Kitzhaber, the Port agreed to "use a contractor … to assign the reefer

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***    SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

work to ILWU members for a temporary period of time." *Hooks v. Int'l Longshore & Warehouse Union, Local 8*, 72 F. Supp. 3d 1168, 1178 (D. Or. 2014).  In the face of conflicting evidence, this Court also found "that Sundet promised to increase productivity at Terminal 6 if the reefer jobs were assigned to ILWU members[.]"  *Id.* at 1185.  For two reasons, the ILWU Entities cannot now dispute the consideration they agreed to provide under that agreement or address the discussions that preceded that agreement.

First, the doctrine of issue preclusion renders further efforts to litigate this issue either irrelevant, *see* Fed. R. Evid. 402, or subject to exclusion under Rule 403.

Second, the ILWU Entities waived litigation of this issue.  When ICTSI moved to compel discovery of the underlying discussions, ILWU Entities represented that they were "not relying on statements from its mediation with the Port to defend itself in this litigation."  (ILWU Opp. to ICTSI's MTC [Dkt. 315] at 6.)  This Court denied ICTSI's motion, accepting ILWU Entities' representation and—importantly for ICTSI's motion *in limine*—committing to "hold them to this assertion."  (Op. & Order [Dkt. 343] at 5.)

**Motion 6** **Excluding evidence, argument, and comment disputing previously adjudicated facts regarding the ILWU Entities and their agents' actions between May 21 and August 10, 2012, including but not limited to those set forth in Exhibit A.**

As this Court observed, "when the NLRB and the Court heard evidence and argument and specifically ruled on a factual determination, it will have a preclusive effect in this proceeding."  (Op. & Order [Dkt. 362] at 27.)  As such, ICTSI moves that all

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

factual findings and legal conclusions in the two NLRB decisions[2] and in this Court's

contempt order[3] be given preclusive effect.  If ILWU Entities intend to dispute any of

those findings or conclusions, they should give the Court and ICTSI notice so that the

Court may determine whether the fact or conclusion ILWU contests is entitled to

preclusive effect.  However, without waiving its right to claim that other facts or

conclusions decided by the NLRB and this Court are entitled to preclusive effect, ICTSI

seeks an order giving preclusive effect the facts and conclusions set forth in Exhibit A.

Evidence, argument, or comment disputing previously adjudicated facts and

conclusion should be excluded because they are not material to any issue before the jury,

Fed. R. Evid. 402, and, regardless, any supposed relevance is substantially outweighed by

its tendency to confuse the issues, mislead the jury, waste limited trial time, and to

unfairly prejudice ICTSI, which has already prevailed on these issues, Fed. R. Evid. 403.

### FALSE LIABILITY ELEMENT OR FALSE AFFIRMATIVE DEFENSE

**<u>Motion 7</u>**    **Excluding evidence, argument, and comment suggesting that ILWU Entities had a good faith belief that the work belonged to it under the PCL&CA.**

The ILWU Entities may intend to suggest to the jury that they possessed a good

faith belief that the labor agreement between ILWU and PMA gave its members the

contractual right to perform the reefer work.  Such suggestion may be made directly, or

indirectly—*e.g.*, referencing opinions reached under procedures established by the

---

[2] *ILWU III*, 2015 NLRB LEXIS 729; *ILWU IV*, 2015 NLRB LEXIS 870.

[3] Hooks v. ILWU Local 8, 72 F. Supp. 3d 1168, 1174 (D. Or. 2014).

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PCL&CA,[4] failures to comply with arbitrator's rulings pursuant to the PCL&CA, or

invoking PMA's or PMA's members' asserted belief that the ILWU was contractually

entitled to the reefer work.[5]  The Court should prohibit any such suggestion of good faith.

First, ILWU Entities' supposed good faith is irrelevant.  They face strict liability.

The "secondary boycott provision" is "[o]ne of the clearest examples in the law of the

situation where persons may in good faith believe they are acting properly but

nevertheless be found to be responsible in damages for improper conduct …." *W. R.*

*Grace & Co. v. Local Union No. 759, Int'l Union of United Rubber*, 652 F.2d 1248, 1256

(5th Cir. 1981).  Because good faith also does not diminish damages, this Court should

exclude suggestions that ILWU Entities acted in good faith.  Fed. R. Evid. 402.

Second, even if some probative value could be associated with a supposed good

faith belief, such weight is substantially outweighed by the danger of unfair prejudice and

---

[4] On May 23, 2012, and thereafter, the Coast Labor Relations Committee and arbitrators issued decisions and awards that, in defiance of the Port's right to control the reefer work, purported to require ICTSI to assign that work to the ILWU.  Those decisions, of course, are contrary to the NLRB's decisions on that issue, which this Court recognized "take precedence over inconsistent arbitration decisions[.]"  (Op. & Order, [Dkt. 362] at 11.)  Likewise, because neither ICTSI nor the ocean carriers controlled the disputed work, the NLRB held that ILWU Entities violated Section 8(b)(4)(B) by "filing, processing, maintaining and prosecuting grievances or lawsuits or threatening to engage in such conduct against ICTSI [and the ocean carriers]" in relation to the reefer work. *ILWU IV*, 2015 NLRB LEXIS 729 at *136-139.

[5] PMA initially joined ILWU as a plaintiff in this action.  (*See* Compl. [Dkt. 1] at 1.)  Also, in opposing ICTSI's motion for partial summary judgment, plaintiff directed this Court to a "demand[]" by "Mike Radak of Hanjin, a member of PMA's board of directors" that "ICTSI follow the PCL&CA" by "'us[ing] ILWU labor to plug, unplug and monitor reefers at [Terminal 6].'"  (ILWU Opp. to MPSJ [Dkt. 323] at 3 (quoting demand).)

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

confusing the jury about its core inquiry—how much harm did ILWU Entities do to ICTSI through their unlawful labor practices.  Fed. R. Evid. 403.  This Court should prevent ILWU Entities from interjecting a legally insufficient "defense" in a Section 303 action by suggesting they acted in good faith.

## DAMAGES—SUPPOSED MITIGATION ISSUES

A plaintiff's damages under Section 303 include "actual, compensatory damages." *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 260 (1964). Those include lost profits and out-of-pocket expenses, *Frito-Lay, Inc. v. Local Union No. 137*, 623 F.2d 1354, 1365 n.11 (9th Cir. 1980), and such damages "should be calculated under a relatively relaxed standard of proof, allowing recovery on evidence supporting a just and reasonable inference, more likely true than not, that the employer was damaged because of … union pressure."  *Maxey v. Butchers' Union Local No. 126, Amalgamated Meat Cutters & Butchers Workmen of N. Am., AFL-CIO*, 627 F.2d 912, 915 (9th Cir. 1980) (internal quotation marks omitted).

**<u>Motion 8</u>**     **Excluding evidence, argument, and comment suggesting that ICTSI failed to mitigate damages or otherwise acted improperly by failing to seek or insist on control of the reefer jobs under its lease with the Port.**

The ILWU Entities have suggested that ICTSI should have sought or insisted on control of the reefer jobs under its lease with the Port.  (*See, e.g.*, ILWU Opp. to MPSJ [Dkt. 323] at 2 (arguing that the Port and ICTSI "plotted" to "keep the reefer work away from the ILWU" under the lease); *id.* at 3 (criticizing ICTSI for making no "effort … to convince the Port to amend their lease.").)  Relatedly, ILWU Entities have retained a

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

sociologist, William Finlay, who relies on the lease to establish "ICTSI's hardline approach to labor disputes" in that, according to Finlay, ICTSI improperly "elevat[ed] its lease obligations (which presumably could have been amended) over its obligations under the PCLCD."  (Eden Decl. Ex. B (Finlay Rep't) at 10.)  Additionally, the ILWU Entities have claimed that ICTSI's alleged failure "to amend the Terminal 6 lease to permit ILWU members to perform the Disputed Work" constitutes a failure to mitigate damages.  (Eden Decl. Ex. C (ILWU's Resp. to ICTSI's 3d Set of Interrogs.) at 3.)

ILWU Entities' contentions are factually and legally misguided.  As established in Motion 2, they may not dispute that the Port controlled the reefer work or that it was unlawful for the ILWU Entities to pursue that work through labor activities.

The ILWU Entities cannot recast their rejected claim to the reefer jobs into a mitigation argument that ICTSI should have "knuckled under" to their illegal coercion. *See ILWU v. Juneau Spruce Corp.*, 189 F.2d 177, 191 (9th Cir. 1951) ("Appellee … was under no duty to … bow to appellants' demands in order to minimize its damages."); *Eazor Express, Inc., v. Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 520 F.2d 951, 969-70 (3rd Cir. 1975) (duty to mitigate does not include "taking steps which amount to a capitulation to the demands of the strikers").

In whatever context, this Court should prevent ILWU Entities from suggesting that ICTSI should have sought or insisted on control of the reefer jobs under its lease with the Port.  Such evidence, argument, or comment is not relevant, *see* Fed. R. Evid. 401, and, even if ILWU Entities suggest it is probative of some issue, such evidence poses too great

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

a danger of confusing the issues, misleading the jury, and causing unfair prejudice to the victim of the ILWU Entities' unlawful conduct.  *See* Fed. R. Evid. 403.  Also, by relying on ICTSI's lease positions as supposed evidence of a "hardline approach to labor," ILWU Entities pursue an improper propensity argument.  *See* Fed. R. Evid. 404.

**Motion 9**    **Excluding evidence, argument, and comment suggesting that ICTSI's failure to heed Hanjin's demand to assign ILWU the reefer work was improper or a failure to mitigate.**

The ILWU Entities suggest that ICTSI should have acceded to Hanjin's demands that ICTSI assign the reefer work to ILWU members or renegotiate its lease with the Port.  (*See, e.g.*, ILWU Opp. to MPSJ [Dkt. 323] at 3 ("Mike Radak of Hanjin" demanded that "ICTSI follow the PCL&CA" by "'us[ing] ILWU labor to plug, unplug and monitor reefers at [Terminal 6]'" (quoting demand)).)  But, as established in Motion 2, ILWU Entities are precluded from relitigating the Port's control of the reefer work.  Further, the illegal pressure brought by the ILWU Entities against Hanjin—work stoppages and slowdowns when Hanjin vessels called at Terminal 6—were the direct cause of Hanjin's demands to ICTSI and the Port to change the reefer work assignment or amend the lease.  (Eden Decl., Ex. D (Radak 6/22/12 email).)

As in the last motion, this Court should prohibit such suggestions.  To obtain the reefer work, the ILWU Entities tried the front door (targeting ICTSI, a neutral party) and the back door (targeting Hanjin, another neutral party).  But entry through either door was wrong; ICTSI had no duty to bow to their unlawful labor practices.  *See ILWU v. Juneau Spruce Corp.*, 189 F.2d 177 (no duty to bow to unlawful demands to minimize damages);

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Eazor Express*, 520 F.2d at 969-970 (no obligation to capitulate to unlawful demands).

Evidence, argument, or comment regarding ICTSI's inability to accede to Hanjin's demands should be excluded as irrelevant, *see* Fed. R. Evid. 402, and, even if ILWU Entities suggest some probative value, such evidence poses too great a danger of confusing the issues, misleading the jury, and causing unfair prejudice to ICTSI as the victim of the ILWU Entities' unlawful conduct, *see* Fed. R. Evid. 403.

**Motion 10**    **Excluding evidence, argument, and comment regarding Terminal 6 subtenant Evraz Steel's complaints or the expiration/non-renewal of its sublease.**

The parties' respective damage experts have not included any damages relating to ICTSI's relationship with Evraz Steel (f/k/a Oregon Steel), which was, for a period, a subtenant at Terminal 6.  Yet the ILWU Entities argue that "Oregon Steel" was among the entities that "complained about [ICTSI's] aggressive and unyielding business practices[.]"  (ILWU Resp. to MPSJ [Dkt. 323] at 8.)  Also, they may intend to argue that ICTSI made inadequate efforts to cause Evraz Steel to renew its sublease.  This Court should exclude Evraz Steel's complaints, opinions, and evidence regarding the expiration/non-renewal of its sublease.

First, such evidence bears on no fact of consequence because ICTSI seeks no associated damages.  Fed. R. Evid. 401, 402.  Second, any claimed probative value is substantially outweighed by the countervailing considerations under Rule 403—namely, the danger of prejudice and confusion from "innuendos of collateral misconduct," *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1335 (9th Cir. 1985), or the waste of

Page 15        **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

ICTSI's allotted trial time that would be necessitated by a comprehensive response regarding ICTSI's relationship with Evraz Steel. Third, as the ILWU Entities suggested by referencing *shared complaints*, Evraz Steel's opinions and complaints are inadmissible propensity evidence. *See* Fed. R. Evid. 404.

## DAMAGES—SUPPOSED OFFSETS

This Court is familiar with the collateral benefit rule, under which a defendant's "liability is not reduced by payments or other benefits received by the injured party …." *United States v. City of Twin Falls*, *Idaho*, 806 F.2d 862, 873 (9th Cir. 1986). *See also* RESTATEMENT (SECOND) OF TORTS, § 920A (1979) (stating rule). That, however, is not the only common law rule that addresses what it means to make a victim "whole." This issue is not simple when the tort sets in motion or occurs alongside "benefits" to the victim—*e.g.*, avoidance of other harms, increased income, or increased property values. Consistent with tort law's underlying deterrence purpose,[6] the common law tightly restricts when a tortfeasor may offset damages owed with supposed "benefits" conferred.

RESTATEMENT (SECOND) OF TORTS § 920 specifies those limited circumstances:

> When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the *interest of the plaintiff that was harmed*, the value of the benefit conferred is considered in mitigation of damages, to the *extent that this is equitable*.

---

[6] *See, e.g.*, Gary T. Schwartz, *Reality in the Economic Analysis of Tort Law: Does Tort Law Really Deter?*, 42 UCLA L. Rev. 377 (1994) (noting that, among some mainstream scholars, deterrence is viewed as the "primary rationale for tort liability rules.").

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

(Emphasis added.)[7]  *See also* HANDBOOK ON THE LAW OF REMEDIES, Dan B. Dobbs,

§ 3.6, at 182 (1973) ("[S]ome considerable care must be exercised in offsetting benefits

received in the course of a tort.  …  Clear benefits, actually accrued, may well be offset.

*But doubts, surely, should be resolved against the tortfeasor*, and he should have no

credit for remote and uncertain 'benefits,' especially if they are unwanted."  (Emphasis

added; footnotes omitted.))  As pertinent here, a defendant wanting to invoke a "special

benefit" to reduce damages cannot do so unless two conditions are met.

   *Causation*.  "[T]o justify a diminution of damages the benefit must result from the

tortious conduct."  RESTATEMENT (SECOND) OF TORTS, § 920, comment d.  That is,

damages are not reduced when "the tortious conduct of the defendant did not *directly*

*confer* on the plaintiff a 'special benefit.'"  *Gorski v. Smith*, 812 A.2d 683, 709 (Pa.

Super. Ct. 2002) (emphasis added).  So, for example, when a tortfeasor injures the

plaintiff but thereby inadvertently prevents the plaintiff from suffering a separate injury,

the tortfeasor did not directly confer the benefit associated with the plaintiff avoiding the

separate injury.[8]  Or when a *plaintiff* "alleviates [a] problem caused by [the tortfeasor]"—

*e.g.*, damage to an aquifer underlying a property—it is *plaintiff's efforts* that confer a

---

   [7] In this context, "mitigate" means "to make (something) less severe, violent, cruel, intense, or painful."  *See Webster's Third New International Dictionary* 1447 (unabridged ed 1981), *available at* http://unabridged.merriam-webster.com/unabridged/mitigate.

   [8] *See* RESTATEMENT (SECOND) OF TORTS, § 920, illustration 8 ("A knocks B down, as a result of which B is prevented from taking a ship that later sinks with all on board. B's damages for the battery are not diminished by his escape from death resulting from A's act.").

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

benefit and the tortfeasor cannot offset damages.[9]  That is, even when the tortfeasor's

actions were in a chain of events that has some later colorable benefit to the victim, the

tortfeasor cannot offset the damages unless the tort was the direct cause of that benefit.

*Equitable considerations.*  Section 920 allows a reduction of damages, "to the

extent that this is equitable."  RESTATEMENT (SECOND) OF TORTS, § 920, comment f.  In

assessing the equities, the tortfeasor is not permitted "to force a benefit on [the plaintiff]

against his will."  *Id.*  A recent First Circuit's case illustrates this concept.  In *Brown v.

Colegio de Abogados de Puerto Rico*, 613 F.3d 44 (1st Cir. 2010), attorneys sued a bar

association that, despite an injunction, had persisted in its unconstitutional practice of

collecting bar fees to purchase life insurance.  *Id.* at 47-48.  The bar association could not

offset the damages owed with the value of life insurance.  "Where [the bar] collected all

of the premiums in question in the teeth of [the prior adjudication], we have no doubt that

the equities weigh very much against the defendant" and do no warrant reducing the

damages award.  *Brown*, 613 F.3d at 53.  Thus, even when a defendant confers a benefit,

a court must weigh the equities to determine whether the plaintiff's damages should be

reduced by the value of the benefit.

With those precepts established, ICTSI turns to the collateral and special benefits

ILWU Entities may intend to invoke at trial in an attempt to offset the damages they

caused ICTSI.  For purposes of these arguments, which address the amount of damages,

---

[9] *See Cline v. Am. Aggregates Corp.*, 582 N.E.2d 1, 4 (Ohio App. 1989) (to remedy problem of loss of well water, property owners had property annexed to city, which increased property value).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

it is proper to assume that ILWU Entities tortiously caused these damages.  (*Cf*. Eden

Decl., Ex. E (Kidder Rep't) at 1, ¶ 1 (ILWU Entities' damage expert noting that he is

"assuming liability for the purposes of calculating damages").)

**Motion 11    Excluding evidence, argument, and comment attempting to use Hanjin's bankruptcy to offset ICTSI's damages.**

In March 2015, ILWU Entities succeeded in driving away ICTSI's biggest

customer, Hanjin, which declared bankruptcy on August 31, 2016.  ILWU Entities intend

to use Hanjin's bankruptcy to offset damages in two ways.  First, ILWU Entities suggest

that their unlawful labor actions benefited ICTSI because—by ILWU Entities' unlawful

actions forcing Hanjin to stop calling on Terminal 6—ICTSI avoided having unpaid

accounts receivable when Hanjin later filed for bankruptcy protection.  (Eden Decl.,

Ex. E (Kidder Rep't) at 18, ¶ 56 (so arguing).)  Second, ILWU Entities intend to claim an

offset because, after ILWU Entities had forced Hanjin to stop calling on Terminal 6,

Hanjin failed and ceased calling on any port.  (*Id*. at 17-19, ¶¶ 53-59.)  That is, ILWU

Entities assign as a benefit the avoidance of a later harm (of the same nature)—Hanjin's

lost calls.  Hanjin's bankruptcy does not belong before the jury.

ILWU Entities did not confer a "special benefit" on ICTSI by driving Hanjin

away, thereby circumventing later similar harms—hypothetical unpaid invoice and later

lost calls from Hanjin.  As in *Brown*, the tortious conduct was undertaken "in the teeth of

[an injunction], … weigh[ing] [the equities] very much against the defendant" and could

not warrant reducing the damages award.  *Brown*, 613 F.3d at 53.  Moreover, ILWU

Entities' offsets fail on causation.  Unless ILWU Entities admit to directly causing

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Hanjin's later bankruptcy—which would itself negate any offset argument—the ILWU

Entities did not confer a "special benefit" by precluding the later injuries associated with

Hanjin's bankruptcy.  *See* RESTATEMENT (SECOND) OF TORTS, § 920, comment d &

illustration 8 (no offset when a tort inadvertently results in the avoidance of later harm).

Regardless, ILWU Entities owe damages for the lost volume of Hanjin's calls

because ICTSI actually intended Hanjin to stop calling.  It is blackletter law that "[a]

person who commits a tort against another for the purpose of causing a particular harm to

the other is liable for such harm if it results, whether or not it is expectable, except where

the harm results from an outside force the risk of which is not increased by the

defendant's act."  RESTATEMENT (SECOND) OF TORTS § 425A (1979).  That exact

scenario occurred here.  Leal Sundet, on behalf of the ILWU Entities, threatened to "send

[Hanjin] packing" in May 2012, *see Hooks*, 72 F. Supp. 3d at 1175 (so finding), and the

ILWU Entities ultimately succeeded in doing so.  The associated harm from losing

Hanjin would necessarily be increased if ICTSI could not replace Hanjin's lost volume

with increased container traffic from existing customers or new customers.  That lost

volume did not come back and, at a minimum, ILWU Entities' wrongful conduct had

increased the risk of that result.[10]  Given the intentional nature of ILWU Entities'

---

[10] Absent downturns in trade, the volume generally carried by Hanjin would
necessarily be picked up by different carriers to continue serving West Coast markets
after Hanjin's bankruptcy.  That is, Hanjin's bankruptcy should not have caused any
long-term decline in net port volume for the region.  (*See* Eden Decl., Ex. E (Kidder
Rep't) at 34, Figure 11 (showing volume for the Pacific Northwest increased from 2016,
when Hanjin declared bankruptcy, to 2017, which is consistent with other ports replacing
Hanjin's lost volume).)

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

conduct, that increased risk of harm to ICTSI from Hanjin's departure cements ICTSI's entitlement to full damages from those lost calls.  *See* RESTATEMENT (SECOND) OF TORTS § 425A.  And consequently, Hanjin's later bankruptcy in August 2016 is not an event that can be used to offset ICTSI's damages from ILWU Entities causing Hanjin to stop calling on Terminal 6.

Given these doctrines, Hanjin's bankruptcy—after ILWU Entities had, as they threatened, "sen[t] [Hanjin] packing," *Hooks*, 72 F. Supp. 3d at 1175—does not make any material issue more or less probative.  ILWU Entities did not confer a "special benefit" by ensuring that ICTSI would not suffer some later injury from Hanjin's bankruptcy because causation is lacking and applying Section 920 would be inequitable.  Moreover, ILWU Entities' intentional tortious conduct at a minimum increased the risk of harm that ICTSI would be unable to replace Hanjin's lost volume when they, as intended, forced it to stop calling on Terminal 6.  Separately and together, these principles render the bankruptcy irrelevant and subject to exclusion.  *See* Fed. R. Evid. 402.  Alternatively, the bankruptcy is subject to exclusion because it is too confusing (as to its lack of materiality), misleading (in that it may suggest an offset to jurors), and too apt to waste limited trial time (as ICTSI is forced to educate the jury about the associated circumstances).  *See* Fed. R. Evid. 403.  This Court should preclude evidence, argument, or comment referencing Hanjin's bankruptcy.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

**<u>Motion 12</u>**    **Excluding evidence, argument, or comment suggesting that the jury may offset ICTSI's damages because ILWU Defendants' wrongful conduct caused ICTSI to avoid 21 years of lease payments to the Port.**

ILWU Entities suggest that their unlawful labor actions *benefited* ICTSI because—by ILWU Entities' unlawful actions forcing ICTSI to cease operations at Terminal 6——ICTSI saved money when it terminated the lease with the Port.  For example, Kidder notes that, by ICTSI entering into its lease termination agreement, it avoided 21 years of lease payments to the Port, totaling roughly $94.5 million.  (Eden Decl., Ex. E (Kidder Rep't) at 53-54, ¶ 150.)  Kidder further opines that ICTSI cannot recover both lost profits and out-of-pocket costs for terminating the lease because, if ICTSI had been profitable, it could not have terminated the lease so cheaply.  (*Id.*)

First, because ICTSI does not seek damages beyond its 2017 lease termination, those later, avoided lease obligations are not material to ICTSI's compensable damages *unless* the lease termination was unreasonable.  No such argument has been advanced by ILWU Entities.  Kidder does not suggest that ICTSI should have (instead of terminating its lease) incurred $94.5 million in lease payments over the following 21 years.  Further, Kidder does not suggest ICTSI overpaid to terminate its lease in relation to its anticipated liabilities under the lease.  Because the lease termination was reasonable, the avoided lease payments are of no consequence in calculating damages.

Second, ILWU Entities did not confer a "special benefit" in the form of the avoided lease payments.  As stated above, the equities cut against ILWU Entities somehow offsetting damages with the "benefit" of ICTSI not having an opportunity to

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

continue to operate Terminal 6. *Brown*, 613 F.3d at 53. Also, the requisite causation is absent. Any benefit to ICTSI resulted "not from the tortious conduct of appellant, but from [its own] efforts to alleviate the problem caused by appellant," *Cline*, 582 N.E.2d at 4—namely, that ILWU Entities had driven away the carriers that called on Terminal 6 and made the facility too toxic for ICTSI to entice old carriers to return or new carriers to call. It follows that ILWU Entities cannot use the avoided lease payments to offset the damages they owe ICTSI for its injuries arising from their unlawful labor practices.

Third, this Court should reject as meritless Kidder's suggestion that ICTSI is required to pick between damages for lost profits and its out-of-pocket expenses. *See Frito*-Lay, 623 F.2d at 1365 n.11 (recognizing right to both); *Am. Steel Erectors v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 815 F.3d 43, 58 (1st Cir. 2016) (upholding award of damages in Section 303 action, in which the jury was instructed that compensatory damages included "'lost profits … and any uncompensated out-of-pocket expenses'").

This Court should exclude evidence, argument, and comment about the avoided lease payments as irrelevant, Fed. R. Evid. 402, or, as with other putative offset issues, unduly confusing, misleading, and a waste of trial time to address, see Fed. R. Evid. 403.

**<u>Motion 13</u>** **Excluding evidence, argument, and comment opining or speculating about Terminal 6's potential profitability after the period of time for which ICTSI seeks damages.**

ICTSI does not seek damages beyond March 2017, when it mitigated its losses by buying out its lease. Even Kidder does not suggest that ICTSI's damages should be

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

assessed by looking to its profitability beyond March 2017. Such later profitability cannot affect liability, causation, or damages and should be excluded.

First, as noted in the preceding motion, there is no contention that ICTSI acted unreasonably in terminating its lease, nor any suggestion that it overpaid.

Second—and again for the reasons in the preceding motions—ILWU Entities did not confer a "special benefit" by their unlawful labor activities in the form of ICTSI avoiding a separate injury—namely, supposed loses that might have occurred at some date after March 2017. It is both inequitable for ILWU Entities to claim any associated offset given that their tortious conduct prevented ICTSI from actually encountering any supposed adverse market trends, and, regardless, ILWU Entities' tortious conduct did not directly confer the supposed benefit associated with avoiding that injury. ICTSI did so when, through its own efforts, it terminated its lease agreement. *Cline*, 582 N.E.2d at 4.

This Court should exclude evidence, argument, and comment about ICTSI's profitability beyond March 2017 as irrelevant, Fed. R. Evid. 402, or, as with other offset issues, unduly confusing, misleading, and a waste of trial time, *see* Fed. R. Evid. 403.

**Motion 14**   **Excluding evidence, argument and comment about ICTSI's discretionary expenditures—*e.g.*, bonuses to employees or distributions to its shareholder.**

Among its damages, ICTSI seeks its lost earnings. Through Kidder, ILWU Entities have suggested they intend to address discretionary expenditures. He attempts to offset ICTSI's damages with a "special benefit"—namely, that because ILWU Entities' tortious conduct reduced ICTSI's earnings, it "repatriated" less of them to its corporate

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

parent as a distribution.  (Eden Decl., Ex. E (Kidder Rep't) at 43-44.)  This Court should preclude evidence, argument, and comment regarding ICTSI's actual discretionary expenditures for obvious reasons, *see* Fed. R. Evid. 402, 403, and those that were precluded by its depressed earnings.

First, Kidder's analysis is a naked claim for a windfall to ILWU Entities.  By his logic, when a tortfeasor causes a plaintiff lost earnings and the plaintiff's lack of funds has the follow-on effect of preventing the plaintiff from paying support to an elderly parent, a lawsuit does not entitle the plaintiff to recover the full lost earnings.  Instead, per Kidder, *the tortfeasor* keeps those missed support payments.  In a word, nonsense.

Second, any discretionary expenditures that were precluded by ICTSI's actual financial situation are not "special benefits."  As in earlier motions, their claim to an offset in relation to discretionary expenditures fails on the equities and because ILWU Entities did not directly confer any supposed "special benefit."  Instead, the lack of discretionary expenditures was, in effect, ICTSI "alleviat[ing] [the] problem caused by [ILWU Entities]," *Cline*, 582 N.E.2d at 4—namely, that it had inadequate earnings to justify discretionary expenditures it might have otherwise made.

This Court should preclude ILWU Entities from presenting evidence, argument, or comment about actual or avoided discretionary expenditures.  *See* Fed. R. Evid. 402, 403.

**<u>Motion 15</u>     Excluding evidence, argument, and comment regarding the Port's payment of some of ICTSI's damages, including any related agreement or statements.**

The ILWU Entities' misconduct caused damages, some of which the Port

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

voluntarily paid—a collateral benefit.  (Op. & Order [Dkt. 362] at 32-42.)  Still, the

ILWU Entities intend to proffer the agreements to "show that ICTSI is exaggerating its

damages."  (Draft Hr'g Tr., Jan. 10, 2019 at 20.)  That intent is misguided.  The Port's

collateral payments and agreements, as well as related communications, are inadmissible.

When the collateral source rule applies, "evidence of collateral benefits simply has

no relevance in the lawsuit."  *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 930 (5th Cir.

1992).  Also, such evidence is "subject to misuse by a jury" and is likely to cause

"prejudicial impact."  *Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 255 (1963).  A jury

that learns of "plaintiff's right to additional funds" may perceive a "windfall and take

steps to offset it."  *Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991).

Here, evidence relating to the Port's gratuitous payments should be excluded.

First, such evidence simply does not bear on ICTSI's compensable damages.  *See*

*Phillips*, 953 F.2d at 930.

Second, the ILWU Entities' belief that such evidence impeaches ICTSI's damage

claim is misplaced.  A defendant cannot cross examine a damage expert for omitting a

collateral benefit.  *Zak v. Riffel*, 115 P.3d 165, 175-76 (Kan. App. 2005).  And even the

ILWU Entities' expert, Kidder, did not rely on such evidence to either calculate damages

caused by the ILWU Entities or discredit ICTSI's expert's opinions on that issue.  At

most, Kidder used the Port's payments *to offset (impermissibly) damages* actually caused

by the ILWU Entities.  (*See* Eden Decl., Ex. E (Kidder Rep't) at 74-75.)  Plus, any

putative impeachment value is substantially outweighed by its tendency to waste limited

Page 26      **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

trial time.  *See* Fed. R. Evid. 403.  ICTSI would then need to teach a jury all the reasons and ways in which its compensable damages can differ from what it solicited and received as a gratuitous collateral benefit.  *See Forbes v. Cty. of Orange*, No. SACV 11-1330 JGB (ANx), 2013 U.S. Dist. LEXIS 202026, at *29-30 (C.D. Cal. Aug. 4, 2013) (recognizing differences between medical bills and amounts paid as a collateral benefit).

Third, *any* collateral source evidence invites the jury to use the specter of an alternative payor to reduce or eliminate the ILWU Entities' liability.  *See Sheehy v. S. Pac. Transp. Co.*, 631 F.2d 649, 653 (9th Cir. 1980) (finding abuse of discretion to admit amount of benefit even though the source was excluded).  Even without collateral source evidence, that danger is great.  After all, ICTSI had two "gun[s] to [its] head," one held by the ILWU Entities and the other by the Port because, under the lease, it controlled the reefer work.  *Hooks*, 72 F. Supp. 3d at 1174.  Any further hint that ICTSI could or did turn to the Port (or, indeed, any third party) for compensation poses an un-mitigatable danger that the jury will conclude ICTSI is seeking a "windfall and take steps to offset it."  *Brooks*, 938 F.2d at 1052.

## IMPROPER OPINION TESTIMONY

**Motion 16**      **Excluding evidence, argument, and comment opining or speculating about how any agent or member of ILWU Entities *might have* responded to hypothetical actions by ICTSI.**

ILWU Entities apparently intend to defend the case in part on the notion that their members had low productivity as a result of ICTSI's management practices.  (*See, e.g.*, ILWU Opp. to MPSJ [Dkt. 323] at 4, 5 (attributing production issues to ICTSI "hir[ing]

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

two especially difficult and abrasive … managers to supervise ILWU workers" and a "confrontation strategy").)  As such, there is the possibility that ILWU Entities intend to elicit testimony about what members and agents of ILWU Entities supposedly *would have done* if ICTSI used hypothetical, different management practices.  This Court should prevent such evidence, argument, or comment as inherently speculative, unduly self-serving, and heavily distorted by hindsight.  *See* Fed. R. Evid. 403 (misleading, prejudice); 701(a) (lay opinions must be "rationally based on the perception of the witness"); *Wash. v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (upholding trial court's exclusion of testimony about what witness "*would have done*" in response to hypothetical warning because such testimony "would not have been based on [the witness's] perception, but upon his self-serving speculation" (emphasis in original)); *Kloepfer v. Honda Motor Co.*, 898 F.2d 1452 (10th Cir. 1990) (similar).  Absent competent testimony about what an agent or member "would have done" differently, argument and comment on that issue to the jury would only invite them into improper "conjecture shaped by the distorting effects of hindsight."  *See Weaver v. United States*, 793 F.3d 857, 864 (8th Cir. 2015) (quotation marks and citation omitted) (in an ineffective assistance of counsel claim, holding that the district court improperly relied upon *post hoc* statements about what the witnesses "would have done" under hypothetical circumstances) (internal quotations omitted).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

## APPEALS TO PASSION AND PREJUDICE

**Motion 17**   **Excluding evidence, argument and comments that reference nationality, locations, or affiliate locations of ICTSI Inc. or ICTSI Oregon, Inc. and their agents or otherwise denigrate them in relation to such characteristics.**

The ILWU Entities' unlawful conduct has been further tainted by xenophobia and nationalism.[11]  Those attitudes seem to seep up in the ILWU Entities' litigation documents—including gratuitously referencing that ICTSI Inc. is a Philippine company (Sundet Decl. [Dkt. 14] at ¶ 24), quoting an ILWU member calling ICTSI Oregon's labor practices "very dictatorial" (ILWU Opp. to MPSJ [Dkt. 323] at 7), and urging that ICTSI Oregon's damages should be reduced by unearned profits that it would have paid its stockholder—specifically, as phrased by Kidder, "repatriation of funds back to the corporate parent in the Philippines."  (Eden Dec., Ex. E (Kidder Rep't) at 43-44.)

This trial should have no place for a repeat of the ILWU Entities' past efforts to pursue their goals by ugly invocations of race, national origin, and the "third world," or supposedly associated "traits."[12]  It would be error if the ILWU Entities were allowed to

---

[11] For example, a 2015 article notes that "ILWU constantly reminds the port community that ICTSI is based in the Philippines" and alleges that ICTSI "attempts to operate in Portland the way it allegedly operates in third-world countries."  (*See* Eden Decl., Ex. F (Bill Mongelluzzo, *Portland port, ICTSI look to mend ILWU relations to attract carrier* (Feb. 18, 2015) *available at* JOC.com).)  The article quotes Leal Sundet, ILWU coast committeeman, as stating "'[t]o succeed in Portland, ICTSI must change its business model to conform with United States standards.'"  (*Id.*)

[12] *See* Fed. R. Evid. 402, 403, 404; *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1151 (9th Cir. 2001) ("Racial stereotyping cannot be condoned in civil cases."); *United States v. Cabrera*, 222 F.3d 590, 597 (9th Cir. 2000) ("People cannot be tried on

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

continue to address any issue of consequence in this case "by invoking an ethnic, national

stereotype," *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1008 (9th Cir. 2001), or

otherwise "attempt[ing] to turn the jury into a hometown rooting section." *Pederson v.*

*Dumouchel*, 431 P.2d 973, 980 (Wash. 1967).

**Motion 18**    **Excluding evidence, argument, and comment about the financial**
                 **resources of ICTSI (beyond use of its financial data for the damages**
                 **claim), its parent company, or their owners, principles, or employees.**

The parties' respective damage experts have considered ICTSI's financial data to

assess damages.  Beyond what they have relied upon, further information about its

financial resources or those of related parties should be precluded.  First, such further

information is irrelevant to any issue.  *See* Fed. R. Evid. 402.  And second, even if it were

to carry some modicum of probative value, such evidence is unduly prejudicial.  *See* Fed.

R. Evid. 403; *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178-80 (11th Cir. 2002)

("The general rule is that, during trial, no reference should be made to the wealth or

poverty of a party, nor should the financial status of one party be contrasted with the

other's."  (Internal quotations excluded.)); *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-

WHO, 2016 U.S. Dist. LEXIS 189272, at *46-47 (N.D. Cal. Aug. 22, 2016) (excluding

"evidence about the wealth of Sophos's founders or employees" because such evidence

---

the basis of their ethnic backgrounds or national origin."); *United States v. Cruz*, 981 F.2d
659 (2nd Cir. 1992) ("Injection of a defendant's ethnicity into a trial as evidence of
criminal behavior is self-evidently improper and prejudicial for reasons that need no
elaboration here."); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940)
(noting that "appeals to class prejudice are highly improper and cannot be condoned and
trial courts should ever be alert to prevent them").

Page 30    **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

was unduly prejudicial); *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. 1:11-cv-00845-SKO, 2013 U.S. Dist. LEXIS 71364, at \*22 (E.D. Cal. May 20, 2013) (excluding evidence of defendant's parent entity's wealth on grounds of prejudice).

**<u>Motion 19</u>    Excluding evidence, argument, and comment suggesting ICTSI is "litigious," including by referencing litigation between ICTSI and parties other than ILWU Entities, demeaning the civil justice system, or disparaging ICTSI's reliance on legal remedies in any matter.**

"The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged[.]"  *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988).  Further, "[l]itigiousness is the sort of character trait with which Rule 404(b) is concerned."  *Id.*  Here, this Court should prevent ILWU Entities from suggesting ICTSI is "litigious" because it is unduly prejudicial, Fed. R. Evid. 403, and improper character evidence, Fed. R. Evid. 404.  The scope of this motion includes not simply the express label "litigious," but other similar efforts that may portray ICTSI as a frequent litigant, references to prior litigation with other parties (for example, PMA, a former party to this lawsuit), or efforts to disparage ICTSI's use of legal process to further its interests.

Attorneys representing clients who have no winning hand sometimes demean the civil justice system or encourage jurors to lash out at its perceived problems.  Such comments include, for example:

- "Money doesn't grow on trees"

- "Where does money come from?"

- Labeling society "litigious"

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

- Labeling lawyers "greedy"

- Suggesting improper motives, such as a defendant's "deep pockets"

- "Your verdict may keep products off the shelves"

- "Anybody can file a lawsuit"

- "Courts have no quality control regarding lawsuits"

- "Plaintiff is trying to hit the litigation lottery"

- Questioning why a trial was necessary

Blatant attempts to play on possible juror biases to influence their verdict are improper.

**Motion 20**    **Excluding evidence, argument, and comment regarding disputes between the Port and ICTSI, including about "reimbursables" under the lease agreement.**

The Port and ICTSI had a lessor-lessee relationship and, as such, interests that did not always align. For example, under the lease agreement, the Port provided specified services (*e.g.*, facility maintenance) for which ICTSI reimbursed the Port. (Eden Decl., Ex. H (Ganda Dep.), 89:21-90:12.) Those "reimbursables" required reconciliation to address, for example, if ICTSI believed it was billed for "work that wasn't done or work that was not requested or work that they had overcharged what we thought was an appropriate time." (*Id.*) That process could prompt disagreement. This Court should preclude ILWU Entities from suggesting the existence of disputes between the Port and ICTSI.

First, such collateral disputes should be excluded because they have no relevance. *See* Fed. R. Evid. 402. Second, for the same reasons that portraying ICTSI as "litigious"

Page 32     **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

is subject to exclusion under Rule 403 and 404, so too is information about any collateral

disputes between the Port and ICTSI.  Moreover, as with excluding collateral benefits,

Motion 15, there is a substantial danger that—if the jury senses collateral disputes and the

notion of a non-party bearing some culpability for ICTSI ceasing operations at

Terminal 6—the jury could respond by trying to relieve ILWU Entities of paying full

damages.  *See* Fed. R. Evid. 403.  Finally, such collateral disputes and the "mini-trials"

they would engender are an undue waste of limited trial time.  *Id.*

**<u>Motion 21</u>    Excluding evidence, argument, and comment suggesting that ICTSI
defrauded PMA when it became a PMA member.**

ILWU Entities may intend to suggest that ICTSI misrepresented facts on its

application to become a member of PMA—namely, that ICTSI was not "bound by any

[other] labor agreement[.]"  (Eden Decl., Ex. H (Ganda Dep.), 60:1-19.)  Plainly, there

was no fraud.  The truthful answer was "no," and one needs to twist the question to even

create ambiguity from which to suggest a misrepresentation about IBEW members

performing the reefer work.  More importantly for this trial, ICTSI's answer to the

question posed has no relevance to any issue of consequence—specifically, whether

ILWU Entities continued their unlawful labor practices after August 2013 and the

damages caused by their actions.  This Court should preclude ILWU Entities' groundless

suggestion that ICTSI fraudulently gained admission to PMA, which is irrelevant, poses

the danger of unfair prejudice and confusing the issues and is, regardless, improper

character evidence.  Fed. R. Evid. 402, 403, 404.

**ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

**Motion 22**     **Excluding evidence, argument, and comment suggesting that ICTSI is suing union members or that union members have individual liability.**

In deposition, ILWU Entities have, by their questioning, incorrectly suggested that ICTSI sued individual members. (Eden Decl., Ex. H (Ganda Dep.), 161:3-18 ("So from 2012 on, … all of your workers were on the opposite of ICTSI in a lawsuit?").) Not only did ICTSI not file such a suit, but Section 303 does not extend liability to individual union members. *See e.g.*, *IBEW, Local 501 v. NLRB*, 181 F.2d 34, 39 (2nd Cir. 1950) (so holding); *Universal Commc'ns Corp. v. Burns*, 449 F.2d 691, 693 (5th Cir. 1971) (same). This Court should preclude ILWU Entities from repeating that false suggestion because it is irrelevant, *see* Fed. R. Evid. 402, or unduly prejudicial—it is a naked sympathy ploy—confusing, and a waste of limited trial time, *see* Fed. R. Evid. 403.

**Motion 23**     **Excluding evidence, argument, and comment about how ILWU Entities would pay a judgment, including suggesting that individual members would somehow pay a judgment rendered against a union.**

ICTSI anticipates possible further efforts by ILWU Entities to diffuse blame and invite sympathy by addressing how they might pay a judgment. But trial courts should direct "all efforts … toward removing potentially distracting considerations" when jurors will be "engaged in calculating compensatory damages." *Larez v. Holcomb*, 16 F.3d 1513, 1519 (9th Cir. 1994). Distracting considerations include addressing how a judgment would be paid, which would improperly "subject[] the jury to a flurry of largely irrelevant assertions and counter-assertions concerning who may or may not be financially harmed by a particular award." *Id.* It follows that this Court should prevent ILWU Entities from addressing how it might pay a judgment—including any suggestion

Page 34      **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

of member responsibility or special assessments.  *See* Fed. R. Evid. 402, 403.[13]

## MISCELLANEOUS ISSUES

**Motion 24**    **Excluding evidence, argument, and comment about supposed legal rights and principles (*e.g.*, the First Amendment) about which the jury is not instructed.**

"It is well settled … that the judge instructs the jury in the law."  *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993).  Witnesses and counsel who attempt to present or argue legal rights and principles to the jury beyond those instructions are invading the exclusive province for the judge.  *See id.* at 1287 ("Resolving doubtful questions of law is the distinct and exclusive province of the trial judge.").  Such an invasion is improper.  *See* Fed. R. Evid. 402, 403.

Furthermore, the First Amendment—which ILWU Entities often reference—

---

[13] This motion targets *how* a judgment would be paid to the exclusion of ICTSI's *motives* and is without prejudice to ICTSI's proffer of documents showing ILWU Entities acted with impunity in the face of an injunction, in part because ILWU believed in June 2012 that the reefer dispute "is not a battle that is going to be won with lawyers."  (Eden Decl., Ex. I (June 12, 2012 minutes) at 3), and continued to do so into at least April 2015 because Sundet believed ILWU to be judgment proof.  At that point, Sundet explained that the "Section 303 damages lawsuit" was stayed but ILWU Defendants had already placed ICTSI in a lose-lose position:

> We do not get to the question of damages until the primary secondary determination is made and then ICTSI has to litigate how much they say they lost.  *[Sundet] stated that the reality is that there is no money to ever get paid.*

> MCGRATH (23) asked if *we are found guilty* why would we not be on the hook financially.

> Coast Committeeman SUNDET stated *we do not have any money*.

(Eden Decl., Ex. J at 5-6 (emphasis added).)

Page 35    **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

provides no legal justification for unlawful labor practices. "The Supreme Court has emphatically said that the prohibition of inducement or encouragement of secondary pressure by § 8(b)(4)(i) carries no unconstitutional abridgment of free speech." *Warshawsky & Co. v. NLRB*, 182 F.3d 948, 952 (D.C. Cir. 1999) (quoting *IBEW, Local 501 v. NLRB*, 341 U.S. 694, 705 (1951) (internal alterations and quotation marks omitted). "First Amendment rights may not be used as the means or the pretext for achieving 'substantive evils' … which the legislature has the power to control." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972).

Allowing ILWU Entities to argue about ostensible legal principles or rights beyond those about which the Court instructs the jury would "not only be superfluous but mischievous." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). This Court should preclude such efforts as irrelevant or, if not, then as unduly prejudicial and confusing for the jury. *See* Fed. R. Evid. 402, 403.

**Motion 25**   **Excluding evidence, argument, or comment regarding examples or incidents beyond the scope of what could have been presented as part of Interrogatories 6, 8, 9, and 13 but—based on ILWU's objection as to the burden of the Interrogatories—were not.**

ILWU Entities objected to providing comprehensive answers to several interrogatories propounded by ICTSI on the basis of burden. As pertinent, those interrogatories sought information about:

- Interrogatory 6:  Each action ILWU Entities contended was lawful primary activity between June 1, 2012, and March 15, 2017.

- Interrogatory 8:  Each communication between officers, employees and agent

Page 36    **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

of ILWU Entities and the entities' members regarding labor productivity or efficiency at Terminal 6 or the reefer work between June 1, 2012, and March 15, 2017.

- <u>Interrogatory 9</u>: Each action taken to communicate with and/or ensure members of ILWU Entities complied with injunctions issued by this Court relating to the reefer dispute.

- <u>Interrogatory 13.</u> Each claimed violation of the labor agreements, safety codes, law, or past practices by ICTSI and its agents.

(Eden Decl., Ex. K (ICTSI's 2d Set of Interrogs.) at 5-7.)  Ultimately, ICTSI moved to compel more complete answers from the ILWU Entities.  (ICTSI MTC [Dkt. 295] at 16-20.)  This Court decided the interrogatories were either unduly burdensome or sufficiently answered.  (Op. & Order [Dkt. 343] at 21-27.  *See also* Eden Decl., Ex. L (ILWU 3d Supp. Resp. to 2d Set of Interrogs.) at 1-21.)

Rule 37(c)(1) requires the exclusion of information sought but not disclosed.  In pertinent part, that rule provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e),[14] the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless.

Under this rule, it is not necessary to prove a party acted willfully or in bad faith before a court can exclude undisclosed evidence.  *Hoffman v. Constr. Protective*

---

[14] Rule 26(a)(3)(B)(i) applies to motions to compel where a deponent fails to answer a written interrogatory. Rule 26(a)(4) states, "[f]or the purposes of this subdivision (a), an evasive or *incomplete* disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." (Emphasis added.)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).  A motion *in limine* is an

appropriate procedural vehicle for addressing a failure to provide information

requested by an interrogatory.  *Id.* at 1179.  (*See also* Op. & Order [Dkt. 343] at 24

(indicating in relation to ILWU Entities' response to ICTSI's Interrogatories 8 and

9 that "If ICTSI is concerned that the supplemental response is incomplete, ICTSI

can make an appropriate motion"—*e.g.*, "a motion *in limine*").)

ILWU Entities had the opportunity to disclose any particular actions, events, or

communications responsive to Interrogatories 6, 8, 9, and 13, but stood on its burden

objection and failed to do.  As such, the Court should preclude any specific matters not

referenced with particularity in their answers.  *See Branch v. Umphenour*, 2014 U.S. Dist.

LEXIS 109288, *22-23 (E. D. Cal. Aug. 6, 2014) (court warned defendant that if he

stood on his objections to certain interrogatory questions, he "should be mindful of the

fact that he will be precluded from using the requested documents … as evidence … in

any way during trial"); *Stoba v. Saveology.com, LLC*, No. 13cv2925 BAS (NLS), 2015

U.S. Dist. LEXIS 178140, *7-8 (S. D. Cal. Jul. 7, 2015) (noting that if the plaintiffs were

to "later try to use [the undisclosed information] as 'evidence … at trial,' [p]laintiffs may

be subject to sanctions in the form of evidence preclusion").

This Court should prevent ILWU Entities from using the burden of comprehensive

answers to interrogatories as a shield (by which they avoid disclosing the requested

information) and a sword (with which to ambush ICTSI at trial with the incidents they

deem most compelling).  Moreover, even if ILWU Entities could establish that the failure

Page 38        **ICTSI OREGON, INC.'S MOTIONS *IN LIMINE***

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

to disclose was "substantially justified," this Court should prevent the belated disclosure of such information at trial under Rule 403 because of the tendency of such untimely disclosures to cause "undue delay" based on ICTSI's entitlement to take further discover in relation to such information.

**Motion 26**  **Excluding ILWU Entities' exhibits and testimony from (or derived from) their members and agents, the substance of which was within the topics listed on ICTSI's 30(b)(6) notice to Local 8.**

ICTSI incorporates by reference the relief, arguments, and analysis it set forth in its Motion for Sanctions in relation to Local 8's failure to produce a prepared witness and refusal to answer inquiries this Court expressly permitted.  (*See* Op. & Order [Dkt. 343] at 31-33 (authorizing discovery).)

### GENERIC MOTIONS PRESENTED WITHOUT ARGUMENT

**Motion 27**  **Excluding all lay witnesses (except parties' designees) from the trial proceedings when they are not testifying, pursuant to Rule 615. [UNOPPOSED.]**

**Motion 28**  **Excluding any evidence, argument, or comment relating to or referencing the parties' law firms, the size or number of attorneys in those law firms, or the law firms' representation of or association with other parties or their employees or agents.  Fed. R. Evid. 402, 403.**

**Motion 29**  **Prohibiting any "Golden Rule" arguments or testimony, or any suggestions that the jury should put themselves in the positions of the parties.  Fed. R. Evid. 402, 403; *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (such arguments are "universally condemned").**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**Motion 30**    .Prohibiting counsel from explicitly or implicitly arguing their case during jury selection or opening statement.  [UNOPPOSED.]

**Motion 31**    Prohibiting the parties from addressing jurors individually (except in *voir dire*).  [UNOPPOSED.]

**Motion 32**    Prohibiting any evidence or argument that any party is covered by insurance.  Fed. R. Evid. 402, 403, 411.  [UNOPPOSED.]

**Motion 33**    Prohibiting counsel from suggesting personal knowledge of the facts or giving their opinions of the testimony, facts, credibility of the witnesses, or justice of the case.  Fed. R. Evid. 402, 403.

**Motion 34**    Precluding speaking objections.

**Motion 35**    Precluding the use of any document or thing for impeachment that was not disclosed in discovery, unless such item is first considered outside the presence of the jury to address whether the item was requested in discovery and properly subject to use for impeachment at trial.

**Motion 36**    That counsel be specifically instructed to inform and instruct all witnesses or parties in the courtroom not to volunteer, inject, disclose, state, or mention to the jury any matters prohibited by the Court's rulings on motions *in limine*, unless specifically allowed by the Court. [UNOPPOSED.]

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Dated this 1st day of February, 2019.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.


By:    s/ Jeffrey S. Eden
      Jeffrey S. Eden, OSB #851903
      Email: jeden@schwabe.com
      Amanda T. Gamblin, OSB # 021361
      Email: agamblin@schwabe.com
      Michael T. Garone, OSB #802341
      Email: mgarone@schwabe.com
      Richard K. Hansen, OSB #832231
      Email: rhansen@schwabe.com
      Andrew J. Lee, OSB #023646
      Email: ajlee@schwabe.com
      Telephone: 503.222.9981
      Facsimile: 503.796.2900

      *Of Attorneys for ICTSI Oregon, Inc.*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

This brief complies with the applicable word-count limitation as authorized by the Court's order authorizing the use of up to 11,000 words [Dkt. 378] because it contains 10,937 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated this 1st day of February, 2019.

SCHWABE, WILLIAMSON & WYATT, P.C.


By:    s/ Jeffrey S. Eden
       Jeffrey S. Eden, OSB #851903
       Email: jeden@schwabe.com
       Amanda T. Gamblin, OSB # 021361
       Email: agamblin@schwabe.com
       Michael T. Garone, OSB #802341
       Email: mgarone@schwabe.com
       Richard K. Hansen, OSB #832231
       Email: rhansen@schwabe.com
       Andrew J. Lee, OSB #023646
       ETelephone: 503.222.9981
       Facsimile: 503.796.2900

       *Of Attorneys for ICTSI Oregon, Inc.*

Page 1    **CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

## CERTIFICATE OF SERVICE

I hereby certify that on the 1ˢᵗ day of February, 2019, I served the foregoing

**ICTSI OREGON, INC.'S MOTION *IN LIMINE*** on:

| | |
|---|---|
| Robert H. Lavitt<br>SCHWERIN, CAMPBELL, BARNARD,<br>IGLITZIN & LAVITT LLP<br>18 W. Mercer Street, Suite 400<br>Seattle, WA  98119-3871<br>Telephone:  (206) 257-6004<br>Facsimile:  (206) 257-6039<br>Email:   lavitt@workerlaw.com<br><br>*Attorney for Plaintiff and*<br>*Counter-Defendants ILWU and*<br>*ILWU Locals 8 and 40* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC CM/ECF<br>   system |
| Amy Endo (admitted *pro hac vice*)<br>Eleanor I. Morton (admitted *pro hac vice*)<br>Emily Maglio (admitted *pro hac vice*)<br>LEONARD CARDER, LLP<br>1188 Franklin Street, Suite 201<br>San Francisco, CA  94109<br>Telephone:  (415) 771-6400<br>Facsimile:  (415) 771-7010<br>Email:   aendo@leonardcarder.com<br>     emorton@leonardcarder.cm<br>     emaglio@leonardcarder.com<br><br>*Attorneys for Plaintiff and*<br>*Counter-Defendants ILWU and*<br>*ILWU Locals 8 and 40* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC CM/ECF<br>   system |

SCHWABE, WILLIAMSON & WYATT, P.C.<br>Attorneys at Law<br>Pacwest Center<br>1211 SW 5th Ave., Suite 1900<br>Portland, OR  97204<br>Telephone: 503.222.9981<br>Fax: 503.796.2900

PDX\119639\200028\AJL\22374104.7

| | |
|---|---|
| Robert S. Remar (admitted *pro hac vice*)<br>LAW OFFICES OF ROBERT REMAR<br>1188 Franklin Street, 4th Floor<br>San Francisco, CA  94109<br>Telephone:  (510) 499-1570<br>Facsimile:  (415) 775-1302<br>Email:   rremar@remarlaw.com<br><br>*Attorney for Plaintiff and<br>Counter-Defendants ILWU and<br>ILWU Locals 8 and 40* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC CM/ECF system |
| Susan J. Harriman (admitted *pro hac vice*)<br>Daniel Purcell (admitted *pro hac vice*)<br>Brook Dooley (admitted *pro hac vice*)<br>Maya Karwande (admitted *pro hac vice*)<br>Philip J. Tassen (admitted *pro hac vice*)<br>KEKER, VAN NEST & PETERS, LLP<br>633 Battery Street<br>San Francisco, CA  94111-1809<br>Telephone:  (415) 391-5400<br>Facsimile:  (415) 397-7188<br>Email:    sharriman@keker.com<br>            dpurcell@keker.com<br>            bdooley@keker.com<br>            mkarwande@keker.com<br>            ptassin@keker.com<br><br>*Attorneys for Plaintiff and<br>Counter-Defendants ILWU and<br>ILWU Locals 8 and 40* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC CM/ECF system |
| Philip C. Monrad (admitted *pro hac vice*)<br>LEONARD CARDER, LLP<br>1330 Broadway, Suite 1450<br>Oakland, CA  94612<br>Telephone:  (510) 272-0169<br>Facsimile:  (510) 272-0174<br>Email:    pmonrad@leonardcarder.com<br><br>*Attorney for Plaintiff and<br>Counter-Defendant ILWU* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC CM/ECF system |

**CERTIFICATE OF SERVICE**

SCHWABE, WILLIAMSON & WYATT, P.C.<br>Attorneys at Law<br>Pacwest Center<br>1211 SW 5th Ave., Suite 1900<br>Portland, OR  97204<br>Telephone: 503.222.9981<br>Fax: 503.796.2900

| | |
|---|---|
| Peter Hurtgen (admitted *pro hac vice*)<br>CURLEY, HURTGEN & JOHNSRUD, LLP<br>4400 Bohannon Drive, Suite 230<br>Menlo Park, CA  94025<br>Telephone:  (949) 302-9193<br>Facsimile:  (650) 323-1002<br>Email:   phurtgen@chjllp.com<br><br>    *Of Attorney for Defendant*<br>    *ICTSI Oregon, Inc.* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC CM/ECF<br>   system |

s/ Jeffrey S. Eden
Jeffrey S. Eden, OSB #851903

Page 3          **CERTIFICATE OF SERVICE**

SCHWABE, WILLIAMSON & WYATT, P.C.<br>Attorneys at Law<br>Pacwest Center<br>1211 SW 5th Ave., Suite 1900<br>Portland, OR  97204<br>Telephone: 503.222.9981<br>Fax: 503.796.2900