**Robert Lavitt** (OSB No. 40083)
SCHWERIN, CAMPBELL, BARNARD,
IGLITZIN AND LAVITT, LLP
18 West Mercer Street, Suite 400
Seattle, WA. 98119-3871
(206) 257-6004 / Fax: (206) 257-6039
lavitt@workerlaw.com

**Eleanor Morton** (CA No. 220407)
**Emily Maglio** (CA No. 267190)
LEONARD CARDER, LLP
1188 Franklin Street, Suite201
San Francisco, CA. 94109
(415) 771-6400 / Fax:  (415) 771-7010
emorton@leonardcarder.com
emaglio@leonardcarder.com

(Admitted Pro Hac Vice)

**Susan J. Harriman** (CA No. 111703)
**Daniel Purcell** (CA No. 191424)
**Brook Dooley** (CA No. 230423)
**Philip J. Tassin** (CA No. 287787)
**Maya Karwande** (CA No. 295554)
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
415-391-5400 / Fax: 415 397 7188
sharriman@keker.com
bdooley@keker.com

**Robert Remar** (CA No. 100124)
LAW OFFICES OF ROBERT REMAR
1188 Franklin Street, 4th Floor
San Francisco, CA 94109
(510) 499-1570 / Fax: 415-775-1302
rremar@remarlaw.com

(Admitted Pro Hac Vice)

(Admitted Pro Hac Vice)

*Attorneys for Plaintiff and Counter-Defendants*
INTERNATIONAL LONGSHORE AND WAREHOUSE UNION,
ILWU LOCAL 8 *and* ILWU LOCAL 40

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, <br><br> Plaintiff, <br><br> v. <br><br> ICTSI OREGON, INC., *an Oregon corporation,* <br><br> Defendant. <br><br> AND RELATED ACTIONS. | Case No.  3:12-CV-01058-SI <br><br> **THE ILWU'S MOTIONS IN LIMINE NOS. 1–8** <br><br> Judge:  Hon. Michael H. Simon <br> Trial date: March 19, 2019 |

1315649

# **TABLE OF CONTENTS**

**Page**

LOCAL RULE 7-1(A) CERTIFICATION STATEMENT ........................................................1

PRELIMINARY STATEMENT ..........................................................................................1

MOTION IN LIMINE NO. 1:  THE COURT SHOULD EXCLUDE NOLAN
GIMPEL'S SPECULATIVE OPINIONS. ..............................................................................1

MOTION IN LIMINE NO. 2:  THE COURT SHOULD EXCLUDE THE OPINIONS
AND TESTIMONY OF JAY SICKLER. ...............................................................................4

MOTION IN LIMINE NO. 3: THE COURT SHOULD EXCLUDE WITNESS
OPINIONS REGARDING PRIOR ADJUDICATIONS AND BRIEFING, AS WELL
AS THE ADJUDICATIONS AND BRIEFING THEMSELVES. ...............................................8

MOTION IN LIMINE NO. 4: THE COURT SHOULD EXCLUDE STATEMENTS
MADE DURING SETTLEMENT DISCUSSIONS. ............................................................... 11

MOTION IN LIMINE NO. 5: THE COURT SHOULD EXCLUDE EVIDENCE
REGARDING OTHER DISPUTES AND THE ILWU'S DEPARTURE FROM THE
AFL-CIO. ................................................................................................................... 14

MOTION IN LIMINE NO. 6: THE COURT SHOULD EXCLUDE EVIDENCE AND
TESTIMONY DISPUTING PREVIOUSLY ADJUDICATED FACTS FOUND IN
FAVOR OF THE ILWU AND ITS LOCALS. ...................................................................... 16

MOTION IN LIMINE NO. 7: THE COURT SHOULD EXCLUDE SAMUEL
ESTREICHER'S IMPROPER LEGAL OPINIONS. .............................................................. 17

MOTION IN LIMINE NO. 8:  THE COURT SHOULD EXCLUDE EVIDENCE,
TESTIMONY, AND ARGUMENT REGARDING STATEMENTS MADE BY THE
ILWU OR ITS AGENTS IN OR RELATED TO COURT OR ADMINISTRATIVE
AGENGY PROCEEDINGS........................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adidas Am., Inc. v. TRB Acquisitions LLC*,
  No. 3:15-CV-2113-SI, 2017 WL 337983 (D. Or. Jan. 23, 2017) (Simon, J.) ......................20

*Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*,
  634 F. Supp. 316 (D. Kan. 1986) .......................................................................................21

*BE&K Constr. Co. v. NLRB*,
  536 U.S. 516 (2002) ...........................................................................................................19

*CDW LLC v. NETech Corp.*,
  No. 1:10-CV-00530-SEB, 2014 WL 272167 (S.D. Ind. Jan. 24, 2014) ...............................7

*Century Indem. Co. v. The Marine Grp., LLC*,
  No. 3:08-CV-1375-AC, 2015 WL 5566351 (D. Or. Sept. 21, 2015) ...................................18

*Chong v. STL Int'l, Inc.*,
  No. 3:14-CV-244-SI, 2016 WL 4253959 (D. Or. Aug. 10, 2016) .........................................1

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) (Simon, J.)............................................................................1

*Coastal States Mktg., Inc. v. Hunt*,
  694 F.2d 1358 (5th Cir. 1983) ...........................................................................................20

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)........................................................................................................1, 4

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)...........................................................................................................20

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) .............................................................................20

*Evangelista v. Inlandboatmen's Union of the Pacific*,
  777 F.2d 1390 (9th Cir. 1985) ...........................................................................................10

*Experience Hendrix, L.L.C. v. HendrixLicensing.com*,
  LTD, 766 F. Supp. 2d 1122 (W.D. Wash. 2011)................................................................20

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*,
786 F.2d 1342 (9th Cir. 1985), *as amended on denial of rehearing* ........................................5

*Forest Grove Sch. Dist. v. Student*,
No. 3:14-CV-00444-AC, 2018 WL 1762738 (D. Or. Apr. 12, 2018) ....................................9

*Freeman v. 16 Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005) ..........................................................................................20

*George E. Hoffman & Sons, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs,
Warehousemen & Helpers of Am., Local No. 627*,
617 F.2d 1234 (7th Cir. 1980) ............................................................................................3

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004)..........................................................................................21

*Gray v. Shell Oil Co.*,
469 F.2d 742 (9th Cir. 1972) ...............................................................................................3

*Harrigan ex rel. Harrigan v. Marion Cty.*,
No. 6:11-CV-06174-SI, 2013 WL 5274407 (D. Or. 2013) ...............................................18

*Hooks v. ILWU, et al.*,
Case No. 3:12-cv-01088-SI, ECF No. 114 (Dec. 16, 2014) ...........................................6, 16

*Hooks v. ILWU Local 8*,
72 F. Supp. 3d 1168 (D. Or. 2014) ......................................................................................8

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
249 F. Supp. 2d 622 (E.D. Pa. 2003), *amended*, 268 F. Supp. 2d 448 ...............................7

*Infusion Res., Inc. v. Minimed, Inc.*,
351 F.3d 688 (5th Cir. 2003) ...............................................................................................5

*In re Initial Public Offering Sec. Litigation*,
174 F. Supp. 2d 61 (S.D.N.Y 2001)...................................................................................18

*International Longshore & Warehouse Union et al.*,
363 NLRB No. 12, 2015 WL 5638153 (Sept. 24, 2015) .....................................................8

*International Longshore and Warehouse Union et al.*,
363 NLRB No. 47, 2015 WL 7750748 (Nov. 30, 2015) ......................................................8

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*,
384 F. Supp. 2d 1334 (S.D. Iowa 2005), *aff'd*, 464 F.3d 1339 (Fed. Cir. 2006)..................20

*Lyons v. Leonhardt*,
  No. 3:05-CV-400 JCM VPC, 2013 WL 3807996 (D. Nev. July 19, 2013) .......................... 14

*Mass Engineered Design, Inc. v. Planar Sys., Inc.*,
  No. 3:16-CV-1510-SI, 2017 WL 2642277 (D. Or. 2017) ...................................................... 18

*Mass Engineered Design, Inc. v. Planar Sys., Inc.*,
  No. 3:16-CV-1510-SI, 2018 WL 3323762 (D. Or. July 6, 2018) .......................................... 18

*Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, AFL-CIO*,
  523 F.2d 1371 (9th Cir. 1975) ............................................................................................... 5

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ............................................................................................. 18

*Palmer v. Bd. of Regents of Univ. Sys. of Ga.*,
  208 F.3d 969 (11th Cir. 2000) ............................................................................................. 14

*Pinal Creek Grp. v. Newmont Mining Corp.*,
  352 F. Supp. 2d 1037 (D. Ariz. 2005) ........................................................................... 18, 19

*Pivot Point Int'l, Inc. v. Charlene Prod., Inc.*,
  932 F. Supp. 220 (N.D. Ill. 1996) ....................................................................................... 21

*Preferred Commc'ns, Inc. v. City of Los Angeles*,
  13 F.3d 1327 (9th Cir. 1994) ................................................................................................. 3

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014) (Simon, J.) .............................................................................. 1

*Rainbow Tours, Inc. v. Hawaii Joint Council of Teamsters*,
  704 F.2d 1443 (9th Cir. 1983) ............................................................................................. 16

*Redwind v. Western Union, LLC*,
  No 3:14-cv-01699, 2016 WL 1732871 (D. Or. May 2, 2016) .............................................. 10

*Schrieber v. Federal Express Corp.*,
  No. 09–CV–128–JHP–PJC, 2010 WL 1078463 (N.D. Okla. Mar. 18, 2010) ..................... 15

*Sebastian Int'l, Inc. v. Russolillo*,
  No. CV 00-3476 SVW JWJX, 2005 WL 1323127 (C.D. Cal. Feb. 22, 20005) ..................... 5

*Second NLRB Hearing, ILWU Local 8 (ILWU IV)*,
  2015 NLRB LEXIS 870 (Nov. 30, 2015) ....................................................................... 16, 17

1315649

*Segler Holdings, LLC v. Miller,*
  No. CV15-4335-DMG, 2016 WL 8839013 (C.D. Cal. Sept. 27, 2016) ................................ 14

*Sosa v. DIRECTV, Inc.,*
  437 F.3d 923 (9th Cir. 2006) .................................................................................. 19, 20

*Sterling Sav. Bank v. Citadel Dev. Co.,*
  656 F. Supp. 2d 1248 (D. Or. 2009) .................................................................................. 13

*Theme Promotions, Inc. v. News America Mktg. FSI,*
  546 F.3d 991 (9th Cir. 2008) ............................................................................................. 19

*TK-7 Corp. v. Estate of Barbouti,*
  993 F.2d 722 (10th Cir. 1993) ............................................................................................. 7

*U.S. v. Sine,*
  493 F.3d 1021 (9th Cir. 2007) ..................................................................................... 10, 11

*United Mine Workers v. Pennington,*
  381 U.S. 657 (1965) ........................................................................................................... 19

*Wilson v. Cox,*
  191 F. Supp. 3d 1172 (D. Or. 2016) .............................................................................. 12, 13

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.,*
  395 F.3d 416 (7th Cir. 2005) ............................................................................................... 7

**Federal Statutes**

29 U.S.C. § 173(d) .................................................................................................................... 12

29 U.S.C. § 187(b) ...................................................................................................................... 5

LMRA .......................................................................................................................................... 17

RICO ........................................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 26(a) ................................................................................................................... 2

Fed. R. Evid. 401 ........................................................................................................................ 9

Fed. R. Evid. 402 ........................................................................................................................ 9

Fed. R. Evid. 403 ........................................................................................................... 11, 14, 15

1315649

Fed. R. Evid. 404 ................................................................................................ 14, 15

Fed. R. Evid. 408 ................................................................................................ 12, 13

Fed. R. Evid. 701 ...................................................................................................... 10

Fed. R. Evid. 702 .................................................................................................... 1, 4

Fed. R. Evid. 801 ...................................................................................................... 10

Fed. R. Evid. 802 ...................................................................................................... 10

Fed. R. Evid. 803 ...................................................................................................... 11

**Constitutional Provisions**

First Amendment ........................................................................................................ 21

1315649

## LOCAL RULE 7-1(a) CERTIFICATION STATEMENT

Counsel for the ILWU, Local 8, and Local 40 (collectively, the "ILWU") conferred by telephone with counsel for ICTSI Oregon, Inc. ("ICTSI") in a good-faith effort to resolve the issues presented in the following motions in limine. ICTSI opposes each of the motions.

## PRELIMINARY STATEMENT

The ILWU and its locals seek to exclude the improper expert opinions of ICTSI's experts, Mr. Gimpel (ICTSI's expert on the shipping industry, motion in limine no. 1) and Mr. Sickler (ICTSI's damages expert, motion in limine no. 2). Both experts offer opinions that rely on rank speculation and are contrary to evidence. Indeed, it appears that ICTSI has tried to take advantage of the Court's stated adherence to *Daubert*'s "flexible" standard. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (Simon, J.) (explaining the *Daubert* standard and reversing the district court's improper exclusion of expert testimony); *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) (Simon, J.) (same). ICTSI has pushed the boundaries well outside acceptable limits. *See* Fed. Rule of Evid. 702; *Chong v. STL Int'l, Inc.*, No. 3:14-CV-244-SI, 2016 WL 4253959, at *13 (D. Or. Aug. 10, 2016) (excluding expert testimony not based on sufficient facts or data). For the reasons described in detail in motions in limine nos. 1 and 2, the Court should exclude the improper opinions of ICTSI's experts.

## MOTION IN LIMINE NO. 1:  THE COURT SHOULD EXCLUDE NOLAN GIMPEL'S SPECULATIVE OPINIONS.

ICTSI expert Nolan Gimpel's speculative and thus inherently unreliable opinions on Terminal 6's likely (but for the labor dispute) market capture rate and carrier service should be excluded. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) (expert opinions cannot be based on "subjective belief or unsupported speculation"); Fed.

R. Evid. 702(b)-(c) (testimony must be based on "sufficient facts" and "reliable principles or methods").

**Mr. Gimpel's "75 percent" likely market capture rate is speculative:** Mr. Gimpel opined in a conversation with ICTSI damages expert Mr. Sickler that, but for the labor dispute, it is "very reasonable" to assume ICTSI would have captured "75 percent" of the market in 2014. ICTSI's Expert Witness List, Feb. 1, 2019, Dkt. No. 372, Ex. B-1 (Sickler Rep. at 11). Mr. Gimpel should be precluded from offering this opinion at trial for two reasons. First, Mr. Gimpel's "75 percent" capture rate opinion was not included in his expert report and under the Federal Rules of Civil Procedure should be excluded on that basis alone. *See* ICTSI's Expert Witness List, Feb. 1, 2019, Dkt. No. 372, Ex. C-1 (Gimpel Rep.); Declaration of Maya Karwande,[1] Ex. C (Gimpel Dep., 126:1-4); Fed. R. Civ. P. 26(a)(2)(B)(i) (expert report must contain "complete statement of ***all*** opinions the witness will express and the basis and reasons for them."), 37(c)(1) (party is "not allowed" to rely on information that was not disclosed under Rule 26(a)).

Second, Mr. Gimpel's "75 percent" capture rate opinion is speculative, unsupported by any analysis, and contrary to the evidence. The "75 percent" number was initially proffered by ICTSI *damages* expert Mr. Sickler, who admitted that he offered the number arbitrarily as a "discussion point" and does not have "any analysis that . . . is supportive of a 75-percent number." Ex. G (Sickler Dep., 35:22-36:10). During that conversation, Mr. Gimpel endorsed the 75 percent figure solely based on his belief that he "would have expected more than that to have come through T6." *Id.* at 35:12-21. Mr. Gimpel, however, did no analysis to support that belief and offered no support for his opinion during his call with Mr. Sickler. Moreover, Mr. Gimpel's expectation is contradicted by evidence: As demonstrated in a report that Mr. Gimpel authored, since

---

[1] Unless otherwise noted, all exhibits referred to in the ILWU's motions in limine are attached to the concurrently filed Declaration of Maya Karwande in support of the ILWU motions in limine.

1994, Terminal 6 has *not once* captured a market share of 75 percent, since 2005,[2] Terminal 6 has always been under 54 percent market share, and since 2010 (with one exception), Terminal 6 has been below 40 percent market share.  Dep. Ex. 443 at 9.  Mr. Gimpel's "75 percent" likely capture rate is "without a factual basis in the record" and should be excluded.  *Gray v. Shell Oil Co.*, 469 F.2d 742, 750 (9th Cir. 1972) (affirming exclusion of expert testimony on "but for" profits that was contradicted by the evidence in the record).

**Mr. Gimpel's opinion that another carrier would have replaced Hanjin is speculative:**  Mr. Gimpel opines that, but for the labor dispute, "it is almost a certainty that Hanjin would have been replaced by another carrier" after Hanjin filed for bankruptcy in 2016.  ICTSI's Expert Witness List, Feb. 1, 2019, Dkt. No. 372, Ex. C-1 (Gimpel Rep. at 9).  No evidence supports this assertion.  Mr. Gimpel admitted that his opinion was based on his belief that carrier SM Lines took over Hanjin's assets, absorbed some of Hanjin's management team, and as a result SM Lines would have called on Terminal 6 (but for the labor dispute) because it was "a very profitable call and why would they not?"  Ex. C (Gimpel Dep., 58:5-59:6).  But ICTSI *never even met with* SM Lines—either before or after Hanjin's bankruptcy.  Dep. Ex. 289 at 3–13 (listing all of ICTSI's meetings with carriers).  Mr. Gimpel cannot simply assume, without evidence, that SM Lines was interested in calling on Terminal 6.  *See George E. Hoffman & Sons, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local No. 627*, 617 F.2d 1234, 1246 (7th Cir. 1980) (excluding damages based on contracts employer did not even attempt to bid on); *Preferred Commc'ns, Inc. v. City of Los Angeles*, 13 F.3d 1327, 1334 (9th Cir. 1994) (excluding damages based on unsigned contract).

---

[2] The Advisian Report finds that a market share of 54 percent "has been experienced in the past, but may be difficult to achieve in the future due to changes in the industry and marketplace." Dep. Ex. 443 at 9.

1315649

Mr. Gimpel's opinion further ignores ICTSI's Chief Operating Officer's view that carriers generally do not start calling on new ports "at the drop of a hat" and that is a "long, tenuous process that could take years."  Ex. H (Trzyzewski Dep., 82:9-16; 82:23-83:5).  Mr. Gimpel also ignores the myriad reasons, unrelated to the labor dispute, that explain why a carrier would not call on Terminal 6, and especially not at the same volume of Hanjin, the carrier that accounted for *80 percent* of the Terminal's container traffic.  For example, Mr. Gimpel fails to consider that Terminal 6 is an inherently more challenging, time-consuming, and expensive port because of its location 100 miles up the Columbia River (Dep. Ex. 443 at 10), that the state of the container industry was generally "awful" (Dep. Ex. 37), and that ICTSI's management had alienated potential carriers by charging higher rates and providing poor service (*see e.g.* Ex. I (Wyatt Dep., 115:17-22)).  In sum, Mr. Gimpel's conclusory opinion is speculative, unsupported, contradicted by evidence, and should be excluded.

For the foregoing reasons, the Court should exclude Mr. Gimpel's speculative opinions that, but for the labor dispute, Terminal 6 would have captured "75 percent" of the market in 2014 and that a new carrier would have replaced Hanjin.

### MOTION IN LIMINE NO. 2:  THE COURT SHOULD EXCLUDE THE OPINIONS AND TESTIMONY OF JAY SICKLER.

The Court should exclude the testimony of ICTSI expert witness Jay Sickler under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Mr. Sickler opines on ICTSI's damages, offering three numbers ranging from $97,635,000 to $188,985,000 and inviting the jury to pick one.  *See* ICTSI's Expert Witness List, Feb. 1, 2019, Dkt. No. 372, Ex. B-1 (Sickler Rep. at 19).  The huge disparity among his estimates demonstrates their speculative nature.  Each number depends entirely on assumptions about volume and price that bear no relationship to the undisputed history of Terminal 6 and the Pacific Northwest market.  The Court should strike Mr. Sickler's testimony for the reasons set forth below.

4

First, Mr. Sickler lumps together all of ICTSI's losses without attempting to segregate those caused by unlawful conduct from those caused by other factors. This is inconsistent with the law that the jury will apply. Under 29 U.S.C. § 187(b), "where a union has engaged in both lawful and unlawful conduct, and the consequences of those activities are separable, the Union is liable under section 303 only for injuries proximately caused by the illegal activity." *Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, AFL-CIO*, 523 F.2d 1371, 1378 (9th Cir. 1975) (citations omitted). Courts have stricken expert reports that fail to separate out damages according to their cause. *Sebastian Int'l, Inc. v. Russolillo*, No. CV 00-3476 SVW JWJX, 2005 WL 1323127, *7-8 (C.D. Cal. Feb. 22, 2005) (excluding report that failed to separate losses caused by defendant from losses caused by other factors); *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 695 (5th Cir. 2003) (report "seriously flawed and inadmissible" because it "failed to segregate between [defendant's] allegedly wrongful antitrust and non-antitrust conduct, and the specific damages that flowed from each"); *see also e.g., Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985), *as amended on denial of rehearing*, April 14, 1986 ("[Plaintiff's] utter failure to make any segregation between damages attributable to lawful competition and that attributable to the unlawful scheme . . . requires reversal of the verdict and remand.").

Mr. Sickler's report attributes every operating loss of ICTSI from June 2012 to March 2017 to the ILWU's actions to obtain the reefer work, as if there were no other issues between ICTSI and the ILWU and nothing else adversely impacted ICTSI's operations for five years. But the evidence shows that, during the same period, ICTSI fired entire ILWU gangs regardless of fault, locked out the ILWU workforce on weekends during part of the open contract period, failed to maintain adequate equipment, engaged in constant harassment and petty reprisals against ILWU workers, alienated its carrier customers with above-market rent increases, and made no efforts to attract additional business to Terminal 6. Moreover, the carrier responsible for 80 percent of

5

ICTSI's business, Hanjin, went out of business for reasons having nothing to do with the
ILWU.  *See* Dep. Ex. 37 at 2.  Delays in production when ILWU workers were not
permitted to work or unable to work because of a lack of functional equipment cannot be
charged to ILWU.  Neither can the effect of Hanjin's bankruptcy.  Yet that is what Mr.
Sickler does.  This Court previously refused to find that obtaining the reefer work
motivated ILWU's actions after August 13, 2013.  *Hooks v. ILWU, et al.*, Case No. 3:12-
cv-01088-SI, ECF No. 114 at 31 (Dec. 16, 2014).  If the jury decides that any of the
ILWU's actions were primary and lawful or that the ILWU was not the cause of ICTSI's
injury, Mr. Sickler's report leaves them to guess as to how that should impact ICTSI's
damages.  As Mr. Sickler conceded in his deposition:

> Q.    Did you do any analysis to segregate ICTSI's economic damages that were
>       caused by ILWU actions related to the reefer dispute from ICTSI's
>       economic damages that were caused by ILWU actions unrelated to the
>       reefer dispute?
> A.    No.
> Q.    If the court or the jury in this case determines that the ILWU engaged in
>       work slowdowns or other job actions that were related to the reefer dispute
>       and work slowdowns or other job actions that were unrelated to the reefer
>       dispute, is there anything in your opinion or report that would allow the
>       court or the jury to determine how much of ICTSI's economic damages
>       were caused by ILWU work slowdowns or other job actions related to the
>       reefer dispute?
> A.    No. My report would not allow that sort of segregation.

*See* Ex. G (Sickler Dep., 54:15-55:6).  Therefore, his opinions should be excluded.

Second, Mr. Sickler's opinions should be excluded to the extent he opines on
damages after August 2016 when Hanjin declared bankruptcy.  His testimony assumes
this loss of 80 percent of ICTSI's business made no impact on ICTSI's volume of work.
*See* Ex. G (Sickler Dep., 58:2-58:13, 60:8-14).  Mr. Sickler bases his opinion on that of
ICTSI expert Nolan Gimpel.  *Id.*  In motion in limine no. 1, ILWU moves to the

testimony of Mr. Gimpel.  Because Mr. Gimpel's testimony must be excluded, Mr.

Sickler's testimony must be excluded also.

Third, Mr. Sickler's opinion as to his first damages number of $188,985,000

should be excluded because it relies on unsupported speculation that ICTSI would have

captured 75% of the Portland market every year starting in 2014 despite Terminal 6's

never having come remotely close to doing so.  *See* Ex. G (Sickler Dep., 117:19-21).  As

explained in motion in limine no. 1, Mr. Sickler made up the 75% number and showed it

to Mr. Gimpel who said it seemed reasonable even though it does not appear in his expert

report and is contradicted by the report he authored for the Port of Portland.  *See id.* at

106:19-24; Dep. Ex. 443 at 97-98.  Both Mr. Gimpel's and Mr. Sickler's testimony on

this point should be excluded.

Finally, Mr. Sickler's second damages number of $135,722,000 should also be

excluded because it relies on the self-serving and unverified 2011 projections of ICTSI

employee Elvis Ganda about the volumes he expected ICTSI to realize once it opened.

*See* ICTSI's Expert Witness List, Feb. 1, 2019, Dkt. No. 372, Ex. B-1 (Sickler Rep. at

12).  "[W]hen an expert relies on information given to him by a party or counsel, he must

independently verify that information at the very least."  *CDW LLC v. NETech Corp.*, No.

1:10-CV-00530-SEB, 2014 WL 272167, at *4 (S.D. Ind. Jan. 24, 2014).  Courts regularly

exclude expert testimony based on a litigant's unverified projections.  *See, e.g.*, *Zenith*

*Elecs. Corp. v. WH-TV Broad. Corp.,* 395 F.3d 416, 420 (7th Cir. 2005) (rejecting as

basis for damages claim a party's "internal projections, which rest on its say-so rather

than statistical analysis" and "represent hopes rather than the results of scientific

analysis"); *TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732-33 (10th Cir. 1993)

(rejecting damages expert opinion that "failed to demonstrate any basis for concluding

that another individual's opinion on a subjective financial prediction was reliable"); *ID*

*Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 249 F. Supp. 2d 622, 695 (E.D. Pa. 2003),

*amended*, 268 F. Supp. 2d 448 (rejecting damages expert's reliance on projection by plaintiff, who had incentive to inflate predicted financial success).

In 2011, Mr. Ganda projected that ICTSI's volumes would increase by 3% in 2013, 5% in 2014 and 6% in 2015. *See* ICTSI's Expert Witness List, Feb. 1, 2019, Dkt. No. 372, Ex. B-1 (Sickler Rep. at 12). Mr. Sickler applies those projections but, in the same report, concedes that overall volumes for the Pacific Northwest actually fell in every one of those years: -2.2% in 2013, -6.3% in 2014 and -1% in 2015. *Id.* at 13. Mr. Sickler concedes he did nothing to verify Mr. Ganda's 2011 projections, and he admits they turned out to be wrong. *See* Ex. G (Sickler Dep., 88:13-22).

For the foregoing reasons, the Court should exclude the opinions and testimony of Mr. Sickler.

### MOTION IN LIMINE NO. 3: THE COURT SHOULD EXCLUDE WITNESS OPINIONS REGARDING PRIOR ADJUDICATIONS AND BRIEFING, AS WELL AS THE ADJUDICATIONS AND BRIEFING THEMSELVES.

During fact discovery in this matter, ICTSI asked several witnesses whether they agreed with particular conclusions that the NLRB and this Court reached in prior proceedings—specifically, the NLRB's decision in *International Longshore & Warehouse Union et al.*, 363 NLRB No. 12, 2015 WL 5638153 (Sept. 24, 2015), the NLRB's decision in *International Longshore and Warehouse Union et al.*, 363 NLRB No. 47, 2015 WL 7750748 (Nov. 30, 2015), and this Court's finding of contempt in *Hooks v. ILWU Local 8*, 72 F. Supp. 3d 1168 (D. Or. 2014). In each instance, ICTSI presented the witness with the prior ruling, quoted one or more conclusions from the ruling, and then—over the ILWU's objection—asked the witness whether he agreed with the quoted conclusion. *See, e.g.*, Ex. A (Furer Dep., 58:20–61:18); Ex. B (Gallaway Dep., 71:18–73:1); Ex. E (McKenna Dep., 51:4–53:8); Ex. F (Ruda Dep., 79:14–25, 81:6–82:17); Ex. I (Wyatt Dep., 35:9–39:1). ICTSI also asked witnesses whether they agreed with statements in legal briefs that had been submitted in the earlier proceedings.

1315649

*See, e.g.*, Ex. D (Leavitt Dep., 72:18–77:13); Ex. F (Ruda Dep., 80:2–81:5).  The testimony ICTSI elicited about the prior rulings and briefing is inadmissible, and should be excluded, for the following two reasons.

First, the witnesses' opinions about the prior rulings and briefing are irrelevant. "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Testimony is relevant only if it has a "tendency to make a fact more or less probable," and only if "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Trial courts have a wide latitude in excluding evidence of remote relevance."  *Forest Grove Sch. Dist. v. Student*, No. 3:14-CV-00444-AC, 2018 WL 1762738, at *2 (D. Or. Apr. 12, 2018) (quotation and citation omitted).

Whether a witness agrees with a particular conclusion from a prior ruling, or a particular statement in a legal brief from an earlier proceeding, has no tendency to make any material fact in this case more or less probable.  The issues for trial in this case are (1) whether the ILWU parties engaged in work slowdowns, (2) whether any slowdowns were substantially motivated by a desire to obtain the reefer work, (3) whether slowdowns motivated by the reefer work proximately caused ICTSI damages, and (4) the amount of ICTSI's damages, if any.[3]  Whether the NLRB's decisions, the Court's contempt order, or a statement in a legal brief were correct is not an issue for the jury to decide—indeed, the Court precluded the parties from litigating the issues decided in those earlier proceedings.  *See* Op. & Order at 24, Jan. 17, 2019, Dkt. No. 362.  Accordingly, testimony concerning the witnesses' agreement with the prior rulings or briefing has no bearing on a material issue, and must be excluded as irrelevant.

---

[3] The Court granted ICTSI partial summary judgment on the first two of these issues with respect to certain periods.  Specifically, the Court held that the ILWU, Local 8, and Local 40 engaged in work slowdowns motivated by the reefer dispute between May 21, 2012 and June 10, 2012, and that the ILWU and Local 8 engaged in further work slowdowns motivated by the reefer dispute between June 11, 2012 and August 13, 2013.  Op. & Order at 24, Jan. 17, 2019, Dkt. No. 362.  The Court's summary judgment ruling is limited to those periods, and the Court made clear that "ICTSI must still . . . prove causation and damages under § 187(b)" for all periods.  *See id.* at 43.

1315649

Testimony about the prior rulings and briefing is inadmissible for an additional reason: it is improper lay opinion under Federal Rule of Evidence 701.  A non-expert witness may testify in the form of an opinion only if the opinion is "helpful to clearly understanding the witness's testimony or to determining a fact in issue."  Fed. R. Evid. 701.  Opinions that amount to legal conclusions must be excluded because they are not helpful to the jury in determining a fact.  *See Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985); *Redwind v. Western Union, LLC*, No 3:14-cv-01699, 2016 WL 1732871, at *2 (D. Or. May 2, 2016) ("A natural extension of the rule against lay-witness opinion testimony is the rule that lay-witnesses may not give testimony in the form of conclusions . . . . [T]estimony which contains argumentative legal conclusions[] is inadmissible.").  A witness's expression of agreement with the NLRB's or the Court's prior rulings, or a legal brief submitted in the earlier proceedings, is nothing more than a legal conclusion about the correctness of those rulings and briefing.  Accordingly, the witnesses' opinions about the prior rulings and briefing are inadmissible under Rule 701.

Just as witness opinions about legal rulings are inadmissible, so too are the legal rulings themselves.  On its trial exhibit list, ICTSI has included seven judicial or agency decisions, including this Court's order granting a temporary restraining order, this Court's order granting a preliminary injunction, the contempt order, and the NLRB's decisions.  *See* ICTSI Trial Exs. 10, 12, 17, 20, 50, 105, 107, Dkt. No. 377.  These legal opinions are inadmissible for three reasons.

First, the opinions, like all judgments, are inadmissible hearsay under Federal Rules of Evidence 801 and 802.  *See U.S. v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (holding that a federal court's prior preliminary injunction and contempt orders were inadmissible hearsay).  The danger of presenting juries with hearsay in the form of judicial opinions is "even more pronounced when," as here, the opinions contain "statements that recapitulate in detail others' testimony and declarations."  *Id.*  Judicial

1315649

opinions may be admitted under only two exceptions to the rule against hearsay,[4] neither of which applies here.  *Id.* at 1036–37.

Second, the opinions are unduly prejudicial under Federal Rule of Evidence 403. As the Ninth Circuit explained in *Sine*, the findings and legal conclusions in a judicial opinion are likely to unduly affect the jury, leading them to "defer to . . . an authoritative factfinder rather than determine those issues for themselves."  *Id.* at 1034.  Where, as here, the prior rulings opine on witnesses' "motivations and truthfulness," the rulings "heavily weigh[] on the unfair prejudice side of the balance," requiring exclusion.  *Id.*  In addition to unfairly prejudicing the ILWU, admitting the prior rulings would run a high risk of confusing and misleading the jury, as the rulings each include a thicket of dense procedural history and legal analysis that would be nearly impenetrable for a layperson.

Third, there is no need for ICTSI to introduce the prior rulings of the NLRB or this Court.  The Court will instruct the jury on any facts to which it decides to give preclusive effect.  Accordingly, there can be no purpose to presenting the jury with the NLRB's decision or this Court's prior order, other than to unfairly prejudice the ILWU.

The Court should exclude ICTSI's Trial Exhibit Nos. 10, 12, 17, 20, 50, 105, and 107, as well as any witness opinions about them.

### MOTION IN LIMINE NO. 4: THE COURT SHOULD EXCLUDE STATEMENTS MADE DURING SETTLEMENT DISCUSSIONS.

ICTSI seeks to use statements that the ILWU made in the context of settlement negotiations as proof that obtaining the reefer work was the motivation behind Terminal 6 job actions after August 2013.  *See* ICTSI motion in limine no. 5 at 8-9, Feb. 4, 2019, Dkt. No. 385.  Admitting statements made during settlement discussions would contravene both the Federal Rules of Evidence and federal labor policy.  The Court

---

[4] Those exceptions are Rule 803(22) concerning prior felony convictions, and Rule 803(23) regarding judgments proving personal, family, or general history, or a boundary.

should therefore bar ICTSI from using the ILWU's settlement communications to support ICTSI's Section 303 claim.

Federal Rule of Evidence 408 prohibits parties from using "conduct or a statement made during compromise negotiations" to "prove . . . the validity or amount of a disputed claim." Fed. R. Evid. 408(a); *see also* Op. & Order at 5, Dec. 3, 2018, Dkt. No. 343 ("Settlement discussions are generally confidential, protected, and not admissible."). Nor may parties use evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—valuable consideration" in "attempting to compromise the claim." Fed. R. Evid. 408(a)(1). The reason behind Rule 408's prohibition is the "promotion of the public policy favoring the compromise and settlement of disputes," Fed. R. Evid. 408 Adv. Comm. Note (1972), a policy that is also enshrined in federal labor law. *See* 29 U.S.C. § 173(d) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.").

Establishing the motivation behind ILWU members' actions at Terminal 6 is an essential element of ICTSI's Section 303 claim. Accordingly, Rule 408 forbids ICTSI from using ILWU's settlement communications to prove those motivations. Moreover, as this Court recognized in its December 3, 2018 order denying ICTSI's motion to compel settlement communications between the ILWU and the Port, statements made in the course of settlement negotiations have little relevance and can be "highly misleading" to a jury. Op. & Order at 5 n.3, Dec. 3, 2018, Dkt. No. 343. For this reason too, the Court should exclude ICTSI from using the ILWU's settlement communications at trial.

Citing this Court's decision in *Wilson v. Cox*, 191 F. Supp. 3d 1172, 1181 n.2 (D. Or. 2016), ICTSI has argued that "proof of state of mind and motive is an appropriate use of settlement communications." ICTSI's Reply Supp. Mot. Summ. J. ("ICTSI Reply") at 19, Nov. 21, 2018, Dkt. No. 339 (alteration omitted). ICTSI misreads this Court's decision. In *Wilson*, this Court admitted settlement communications to show the

defendant's state of mind only because his mindset was relevant for a purpose other than proving the plaintiffs' claim.  *Wilson*, 191 F. Supp. 3d at 1181 n.2.  As the Court made clear, "[u]nder Rule 408(a)(2), settlement negotiations may not be admitted to prove or disprove the validity or amount of a disputed claim."  *Id.*  Accordingly, where a party's motive is an element of the disputed claim—as it is here—that motive may not be proven using the party's settlement communications.

ICTSI has also argued that settlement communications may be admitted when "the claim is based upon some wrong that was committed in the course of the settlement discussions," or when the settlement discussions were "the fruit" of unlawful labor activities.  ICTSI Reply at 19 (citing, *inter alia*, *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1256 (D. Or. 2009)).  ICTSI again is mistaken.  ICTSI's Section 303 claim is not based on some undefined wrong that the ILWU committed during settlement negotiations; the claim is based upon alleged work slowdowns at Terminal 6.  Accordingly, the ILWU's settlement negotiations may not be admitted under the exception for wrongful or fraudulent conduct recognized in *Sterling*.  Equally unavailing is ICTSI's assertion that settlement communications are admissible whenever a mediation is "the fruit" of alleged unlawful behavior—if ICTSI were correct, then Rule 408 would be meaningless, as any settlement negotiation could be seen as the result of the conduct that gave rise to the plaintiff's claim.

The only purpose that could be served by admitting the ILWU's settlement communications is proving the element of motive in ICTSI's Section 303 claim.  The Court should therefore exclude the ILWU's settlement communications as inadmissible under Rule 408(a)(2).

**MOTION IN LIMINE NO. 5: THE COURT SHOULD EXCLUDE EVIDENCE REGARDING OTHER DISPUTES AND THE ILWU'S DEPARTURE FROM THE AFL-CIO.**

The ILWU moves to exclude any reference to lawsuits and legal proceedings other than those arising out of the reefer dispute at the Port of Portland and to exclude any reference to ILWU's departure from the AFL-CIO.  Such evidence is inadmissible evidence of character and alleged prior bad acts under Federal Rules of Evidence 404(a) and (b).  To the extent any arguable relevance exists, the probative value of the evidence is outweighed by the undue prejudice to the ILWU, the burden on the jury's time, and the risk of confusion under Federal Rule of Evidence 403.

The ILWU represents roughly 20,000 workers at 26 ports coastwide.  Over the last ten years, it has been party to dozens of lawsuits, NLRB cases, an Article XX filing under the AFL-CIO Constitution, and other legal proceedings relating to all manner of issues.  Each case arose under its own set of facts.  ILWU prevailed in some, lost some, and settled others.  Some cases remain pending.  Some cases have presented legal theories similar to those alleged here, such as secondary boycott allegations, strike activity, mass picketing, jurisdictional claims by other unions, and antitrust allegations.  Other cases have made allegations that, while dissimilar to the claims alleged here, could inflame jurors, such as claims of discrimination and RICO violations.

Caselaw supports excluding evidence of other legal proceedings against a defendant under Federal Rules of Evidence 403 and 404.  *E.g.*, *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000) ("[W]e do not find any merit to Palmer's argument that the district court abused its discretion in excluding evidence of the existence of the other lawsuits against the University System."); *Segler Holdings, LLC v. Miller*, No. CV15-4335-DMG (MRWX), 2016 WL 8839013, at *3 (C.D. Cal. Sept. 27, 2016) (excluding evidence of other lawsuits against defendant under Rule 403); *Lyons v. Leonhardt*, No. 3:05-CV-400 JCM VPC, 2013 WL 3807996, at *9 (D. Nev. July 19, 2013) (excluding evidence of similar claims against defendant in other cases because

"liability in a previous lawsuit might color the jury's opinion of defendants' conduct in the instant matter"); *Schrieber v. Federal Express Corp.*, No. 09–CV–128–JHP–PJC, 2010 WL 1078463, *4 (N.D. Okla. Mar. 18, 2010) (granting motion in limine to exclude evidence about a previously-filed lawsuit).

Here, the legal proceedings arising out of other disputes say little to nothing about the issues before the jury in this case.  The principal reason for ICTSI to offer such evidence is to try to tarnish the jury's view of the ILWU by suggesting something about the union's character or alleged prior bad acts.  Federal Rules of Evidence 404(a) and (b) do not permit the introduction of such evidence.

Moreover, any fair presentation of evidence about other legal proceedings would have to include a full explanation of the facts and circumstances of each case, the trajectory of the litigation, and the case's outcome or status.  This would risk turning the trial into a series of mini-trials about other disputes not involving ICTSI.  Any minimal probative value of such evidence is outweighed by the prejudice to ILWU and the fact that such evidence would prolong the trial and risk creating confusion.  Thus, the Court should also exclude the evidence under Rule 403.

ICTSI may argue that the ILWU had a coastwide campaign to take maintenance and repair work and thus maintained its object to obtain the reefer work even years after the dispute arose.  This is classic character evidence, which is properly excluded under Rule 404(a).

For the foregoing reasons, the Court should preclude any reference to lawsuits and legal proceedings other than those arising out of the reefer dispute at the Port of Portland and exclude evidence of the ILWU's departure from the AFL-CIO.

**MOTION IN LIMINE NO. 6: THE COURT SHOULD EXCLUDE EVIDENCE AND TESTIMONY DISPUTING PREVIOUSLY ADJUDICATED FACTS FOUND IN FAVOR OF THE ILWU AND ITS LOCALS.**

This Court has held that "when the NLRB . . . heard evidence and specifically ruled on a factual determination, it will have a preclusive effect in this proceeding." Op. & Order at 28, Jan. 17, 2019, Dkt. No. 362. "Collateral estoppel is applicable only to those findings *necessary* to the decision[s] in the prior proceeding[s]." *Rainbow Tours, Inc. v. Hawaii Joint Council of Teamsters*, 704 F.2d 1443, 1446 (9th Cir. 1983) (emphasis in original). The findings listed below have preclusive effect because each finding was necessary to the NLRB's decision regarding the September 1, 2012–June 2013 period and this Court's decision regarding the overlapping July 20, 2012 to August 13, 2013 time-period.

**Fact No. 1:** **Local 40 did not engage in any job actions or slowdowns from June 11, 2012 to August 13, 2013 with an object of obtaining the reefer work.**

*See Second NLRB Hearing, ILWU Local 8 (ILWU IV)*, 2015 NLRB LEXIS 870 (Nov. 30, 2015), at *30-31, 46; *Hooks v. ILWU*, Case No. 12-cv-1088-SI, ECF No. 114, p. 30 (D. Or. Dec. 16, 2014).

The parties are precluded from offering contrary evidence or argument because this finding was necessary to the NLRB's decision that only the ILWU and Local 8 engaged in unfair labor practices, and that Local 40 did not "otherwise violate[] the Act." *See ILWU IV* at *46; *see also Hooks,* ECF No. 114, p. 30.

**Fact No. 2:** **Local 8 crane operators did not engage in slowdowns by arriving late to their assigned cranes.**

*See Second NLRB Hearing, ILWU Local 8 (ILWU IV)*, 2015 NLRB LEXIS 870 (Nov. 30, 2015), at *29-30.

1315649

Preclusion applies because this finding was a necessary component of the NLRB's decision that the ILWU and Local 8 engaged in unfair labor practices by "inducing and encouraging" longshoremen to engage in certain enumerated slowdown activities, but that the Unions "have not otherwise violated the Act." *See id*. at *46.

The Court should preclude ICTSI from offering evidence, argument or comment contrary to the above facts.

### MOTION IN LIMINE NO. 7: THE COURT SHOULD EXCLUDE SAMUEL ESTREICHER'S IMPROPER LEGAL OPINIONS.

ICTSI did not include Prof. Estreicher, ICTSI's legal expert, in its Expert Witness List (Dkt. No. 372) and his testimony should be excluded on the basis alone.  In addition, the Prof. Estreicher's report consists of nothing more than improper legal conclusions. *See* Ex. J (Estreicher's Rep.).  It is black-letter law that this type of testimony is improper and subject to exclusion.  The ILWU raised this issue with ICTSI months ago and requested ICTSI withdraw Prof. Estreicher's report.  ICTSI refused.  *See* Ex. K (Correspondence re Estreicher's Report).  Accordingly, the ILWU moves to exclude Prof. Estreicher's opinions and testimony.

ICTSI expert Prof. Estreicher is a labor law professor who previously practiced as a labor and employment law attorney and authored a labor law casebook and other pieces of legal scholarship.  Ex. J (Estreicher Rep. ¶ 1).  Based on this experience and his review of the legal rulings and deposition transcripts in this case, Prof. Estreicher opines (without citation) on the relevant legal standards and how they apply to the facts of this case.  *Id.* ¶ 2.  Prof. Estreicher's report covers the history of the LMRA (¶ 3), the purpose and legal requirements of section 8(b)(4)(B) governing secondary boycotts (¶¶ 4-6), the legal requirements of section 8(b)(4)(D) governing jurisdictional disputes (¶ 7), the legal requirements of the AFL-CIO's constitution (¶ 8), the adjudication of section 8(b)(4)(B) charges before the NLRB (¶ 9), principles of agency law (¶ 10), and the legal requirements for liability for violations of section 8(b)(4)(B) (¶¶ 11-12).  Sprinkled

throughout the report are Prof. Estreicher's conclusions on how he believes the law applies to this case. *See e.g.*, *id.* ¶ 4 ("In this case . . .); ¶ 5 (here, ICTSI . . ."); ¶ 7 ("in the instant case . . ."). The report concludes with the self-serving conclusion (on one of the ultimate questions of law in this case) that the ILWU did not take sufficient steps to limit its purported liability for an alleged section 8(b)(4)(B) violation. *See id.* ¶ 12 ("In this case, no such steps were taken by respondent unions."). In sum, Prof. Estreicher's expert report amounts to a conclusory legal brief.

The Ninth Circuit has made plain that "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). "[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Id.* (emphasis original). "The principle that legal opinion evidence concerning the law is inadmissible is so well-established that it is often deemed a basi[c] premise or assumption of evidence law—a kind of axiomatic principle." *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005) (internal citations omitted) (excluding law professor testimony on antitrust law, relevant state law); *see also In re Initial Public Offering Sec. Litigation*, 174 F. Supp. 2d 61, 64 (S.D.N.Y 2001) ("every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

This Court also has excluded the precise form of expert testimony that ICTSI seeks to introduce—i.e., "expert" attorneys whose reports "rea[d] like a legal memorandum." *Mass Engineered Design, Inc. v. Planar Sys., Inc.*, No. 3:16-CV-1510-SI, 2017 WL 2642277, at *14 (D. Or. 2017) (excluding intellectual property attorney's expert testimony at summary judgment) and 2018 WL 3323762, at *2 (D. Or. July 6, 2018) (excluding same witness at trial); *Harrigan ex rel. Harrigan v. Marion Cty.*, No. 6:11-CV-06174-SI, 2013 WL 5274407, at *4 (D. Or. 2013) (excluding expert testimony on applicable legal standards); *see also Century Indem. Co. v. The Marine Grp., LLC*,

No. 3:08-CV-1375-AC, 2015 WL 5566351, at *4 (D. Or. Sept. 21, 2015) (excluding testimony from author of insurance law treatise on insurance law and its application to the case).

Despite this clear legal precedent, ICTSI contends that Prof. Estreicher's opinions are proper because he has "specialized knowledge" that will aid the jury in understanding the evidence or determining a fact in issue.  Not so.  Prof. Estreicher's *only* area of specialized expertise is in labor law, a subject on which he is *prohibited* from opining. *See* Ex. J (Estreicher Rep. ¶ 1) (explaining Prof. Estreicher's qualifications in the field of labor law).  Rather than assisting the jury, Prof. Estreicher's proposed legal testimony usurps the Court's responsibility to instruct the jury on the law and "circumvents the [fact finder's] decision-making function by telling it how to decide the case."  *Pinal Creek Grp.*, 352 F. Supp. 2d at 1042 (internal citations omitted).  The Court therefore should exclude Prof. Estreicher's opinions on labor law and its application to this case.

**MOTION IN LIMINE NO. 8: THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REGARDING STATEMENTS MADE BY THE ILWU OR ITS AGENTS IN OR RELATED TO COURT OR ADMINISTRATIVE AGENGY PROCEEDINGS.**

The *Noerr-Pennington* doctrine requires the Court to exclude evidence, testimony, and argument regarding statements made by the ILWU, its locals, or their agents in or related to court or administrative agency proceedings.  *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965)); *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-26 (2002) (applying doctrine to federal labor law action).

Under *Noerr-Pennington*, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929 (citations omitted); *see also Theme Promotions, Inc. v. News*

*America Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (*Noerr-Pennington* applies to

"actions petitioning each of the three branches of government, and has been expanded

beyond its original antitrust context."); *Adidas Am., Inc. v. TRB Acquisitions LLC*, No.

3:15-CV-2113-SI, 2017 WL 337983, at \*4 (D. Or. Jan. 23, 2017) (Simon, J.).  The

doctrine protects all parties to a proceeding.  *See Freeman v. 16 Lasky, Haas & Cohler*,

410 F.3d 1180, 1184 (9th Cir. 2005) (citations omitted) ("*Noerr-Pennington* immunity . .

. also appl[ies] to defensive pleadings, because asking a court to deny one's opponent's

petition is also a form of petition.").

        In determining what statements or actions are protected, courts apply the privilege

broadly to "give adequate 'breathing space' to the right of petition."  *Sosa*, 437 F.3d at

931–32 (quoting *BE&K*, 536 U.S. at 531).  Thus, the doctrine protects legal filings and

oral statements in a legal proceeding, as well as communications between private parties

and public statements outside of a proceeding that are "incidental" or "intimately related"

to the proceeding.  *Id.* at 934; *see also id.* at 935 ("[T]he law of this circuit establishes

that communications between private parties are sufficiently within the protection of the

Petition Clause to trigger the *Noerr–Pennington* doctrine, so long as they are sufficiently

related to petitioning activity."); *see, e.g., Eastern R.R. Presidents Conference*, 365 U.S.

at 127 (publicity campaign to promote support for laws harmful to trucking interest

protected); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d

1074, 1082 (C.D. Cal. 2010) (communications between private parties and on company

website about legal rights protected); *Experience Hendrix, L.L.C. v.*

*HendrixLicensing.com*, LTD, 766 F. Supp. 2d 1122, 1146 (W.D. Wash. 2011)

(communications and press releases about legal rulings protected); *Coastal States Mktg.,*

*Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) ("publicity and threats of litigation

were protected by petitioning immunity."); *Kemin Foods, L.C. v. Pigmentos Vegetales*

*del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1349, 1353 (S.D. Iowa 2005) (press

releases regarding competitor's alleged patent infringement protected), *aff'd*, 464 F.3d

1339 (Fed. Cir. 2006); *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634
F. Supp. 316, 326 (D. Kan. 1986) (public statements in newspapers discussing litigation
and intimating that competitors' customers may also be liable protected); *Globetrotter
Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374-77 (Fed. Cir. 2004)
(communications to third parties urging them to investigate whether competitor's
products infringed protected).

   Since ICTSI began operating Terminal 6, the ILWU, Local 8 and Local 40 and
their agents have communicated to members and the public, including in meetings, news
articles and in press releases, about the status and merit of the legal proceedings pending
before the courts and the NLRB.  These statements are "incidental to" the legal
proceedings that they describe.  It follows that they cannot form a basis for liability under
*Noerr-Pennington*.  In order to avoid unfairly prejudicing the ILWU and confusing the
jury with facts on which they cannot lawfully rely, the Court should exclude the evidence
of such statements at the outset.  *Pivot Point Int'l, Inc. v. Charlene Prod., Inc.*, 932 F.
Supp. 220, 224 (N.D. Ill. 1996) (conditionally granting in limine motion based on *Noerr-
Pennington*).[5]

Respectfully submitted,

Dated:  February 12, 2019

KEKER, VAN NEST & PETERS LLP

By:   */s/ Susan Harriman*
Susan J. Harriman (CA No. 111703)
Daniel Purcell (CA No. 191424)
Brook Dooley (CA No. 230423)
Philip J. Tassin (CA No. 287787)
Maya Karwande (CA No. 295554)

[5] Despite the First Amendment concerns, ILWU, Local 8 and Local 40 do not seek to
exclude evidence of communications specifically describing this Court's injunction
orders and the unions' obligations under them and compliance.  There is no practical way
to exclude this evidence and still offer a complete record.

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

This brief complies with the Court's Order (Dkt. No. 378) authorizing the use of up to 11,000 words in the parties' respective motion in limine briefing.  This brief contains 7,056 words, including headings, footnotes, and quotations but excluding the caption, table of contents, table of authorities, signature block, and exhibits.

*/s/ Susan Harriman*
Susan J. Harriman (CA No. 111703)

1315649

## CERTIFICATE OF SERVICE

I hereby certify that on **February 12, 2019**, **The ILWU's Motions in Limine Nos. 1–8** were served on the following parties

☑    by **ELECTRONICALLY POSTING** to the ECF website of the District of Oregon, Portland Division.  The Court performed service electronically on all ECF-registered entities in this matter.

| | |
|---|---|
| Jeffrey S. Eden (*jeden@schwabe.com*) | Attorneys for Defendant/Counter Claimant |
| Richard K. Hansen (*rhansen@schwable.com*) | ICTSI OREGON, INC. |
| Michael T. Garone (*mgarone@schwabe.com*) | |
| Amanda T. Gamblin (*agamblin@schwabe.com*) | |
| Andrew J. Lee (*ajlee@schwabe.com*) | |
| SCHWABE WILLIAMSON & WYATT, PC | |
| 1600-1900 Pacwest Center | |
| 1211 SW Fifth Avenue | |
| Portland, OR 97204 | |

| | |
|---|---|
| Peter Hurtgen (*phurtgen@chjllp.com*) | Attorneys for Defendant/Counter Claimant |
| CURLEY, HURTGEN & JOHNSRUD, LLP | ICTSI OREGON, INC. |
| 4400 Bohannon Drive, Suite 230 | |
| Menlo Park, Ca 94025 | |

*/s/ Susan J. Harriman*
Susan J. Harriman (CA No. 111703)

1315649