**Jeffrey S. Eden**, OSB #851903
Email: jeden@schwabe.com
**Amanda T. Gamblin**, OSB #021361
Email: agamblin@schwabe.com
**Michael T. Garone**, OSB #802341
Email: mgarone@schwabe.com
**Richard K. Hansen**, OSB #832231
Email: rhansen@schwabe.com
**Andrew J. Lee**, OSB #023646
Email: ajlee@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.796.2903
Facsimile: 503.796.2900

*Of Attorneys for ICTSI Oregon, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION,**<br><br>Plaintiff,<br><br>vs.<br><br>**ICTSI OREGON, INC., an Oregon corporation,**<br><br>Defendant. | No. 3:12-cv-01058-SI<br><br>**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**<br><br>Judge: Hon. Michael H. Simon<br>Trial Date: March 19, 2019 |
| **ICTSI OREGON, INC., an Oregon corporation,**<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>**INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; ILWU LOCAL 8; ILWU LOCAL 40,**<br><br>Counterclaim Defendants. | |

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

# TABLE OF CONTENTS

EXPERT WITNESSES ................................................................................................. 1

Motion 1 The Court should deny ILWU Entities' motion to exclude two of Nolan
Gimpel's opinions, which are admissible under Rule 702. ............................... 3

    A.    Gimpel's opinion that, *but for* ILWU Entities' tortious conduct,
ICTSI likely could have captured 75 percent of the relevant
market ............................................................................................... 3

    B.    Gimpel's opinion that, *but for* ILWU Entities' tortious conduct,
another carrier would have replaced the volume carried by
Hanjin ................................................................................................ 7

Motion 2 The Court should deny ILWU Entities' motion to exclude ICTSI's
expert economist Jay Sickler's opinions and testimony, which are
admissible under Rule 702. ............................................................................. 10

    A.    Sickler was not required to apportion ICTSI's damages between
the alternative causes that ILWU Entities will argue to a jury. ............. 11

    B.    Sickler was not required to make assumptions contrary to
Gimpel's opinions. ............................................................................ 16

    C.    As with a 75-percent market capture, Sickler was entitled to build
a damages model that, subject to proof at trial, assumed that
ICTSI's growth projections were accurate. ......................................... 16

Motion 7 The Court should deny as moot the ILWU Entities' motion to exclude
Samuel Estreicher, who ICTSI has not disclosed as a witness. ....................... 18

LEGAL PROCEEDINGS ......................................................................................... 18

Motion 3 The Court should deny as overreaching ILWU Entities' motion to
exclude witness opinions regarding prior adjudications and briefing, as
well as the adjudications and briefing themselves. .......................................... 18

    A.    Briefs litigating ILWU Entities' position in proceedings
regarding the ILWU Entities' unlawful labor practices in pursuit
of the reefer work. ............................................................................. 18

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

B.     Decisions from legal proceedings relating to ILWU Entities' unlawful labor practices.........................................................19

C.     Witness's statements agreeing or disagreeing with statements in decisions and briefs..............................................................24

Motion 4   The Court should deny ILWU Entities' motion to exclude certain statements, which they mischaracterize as settlement discussions subject to Rule 408.....................................................................26

A.     Wyatt testimony about consideration ILWU Entities would provide in exchange for its members temporarily performing reefer work............................................................27

B.     Ganda testimony that ILWU President McEllrath conveyed an implied threat of future slowdowns and work stoppages.....................28

Motion 5.     The Court should deny as overreaching ILWU Entities' motion to exclude evidence regarding other disputes and the ILWU's departure from the AFL-CIO............................................................32

A.     ILWU's departure from the AFL-CIO...................................32

B.     Other legal proceeding in which the ILWU Entities are involved........33

Motion 6   After correcting ILWU Entities' misstatements of fact, the Court should conform its ruling on the ILWU Entities' motion regarding issue preclusion to this Court's ruling on ICTSI's similar motion regarding previously adjudicated facts.................................................35

Motion 8   The Court should deny as overreaching ILWU Entities' motion to exclude evidence, testimony, and argument regarding statements made by the ILWU or its agents in or related to court or administrative agency proceedings..............................................................36

CONCLUSION ............................................................................42

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## TABLE OF AUTHORITIES

### Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ................................................................. 11

*Adidas Am., Inc. v. TRB Acquisitions Ltd. Liab. Co.*,
    No. 3:15-cv-2113-SI, 2017 U.S. Dist. LEXIS 9228 (D. Or. Jan. 23,
    2017) ....................................................................................................... 40

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2013 U.S. Dist. LEXIS 160188 (N.D. Cal.
    Nov. 6, 2013) .......................................................................................... 12

*Basha v. Mitsubishi Motor Credit of Am., Inc.*,
    336 F.3d 451 (5th Cir. 2003) .................................................................. 28

*Bazemore v. Friday*,
    478 U.S. 385 (1986) ............................................................................... 16

*Beech Aircraft Corp. v. Rainey*,
    488 U.S. 153 (1988) ......................................................................... 22, 26

*Bill Johnson's Restaurants, Inc. v. NLRB*,
    461 U.S. 731 (1983) ............................................................................... 41

*Catullo v. Metzner*,
    834 F.2d 1075 (1st Cir. 1987) ................................................................ 28

*CDW LLC v. NETech Corp.*,
    No. 1:10-cv-00530-SEB-DML, 2014 U.S. Dist. LEXIS 8898 (S.D. Ind.
    Jan. 23, 2014) ......................................................................................... 17

*Cent. Soya Co., Inc. v. Epstein Fisheries, Inc.*,
    676 F.2d 939 (7th Cir. 1982) ................................................................. 28

*Children's Broad. Corp. v. Walt Disney Co.*,
    357 F.3d 860 (8th Cir. 2004) ................................................................... 3

*Dimono v. New York City Transit. Auth.*,
    64 F. Supp. 2d 136 (E.D.N.Y. 1999) ..................................................... 30

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ................................................................................. 37

*Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*,
   766 F. Supp. 2d 1122 (W.D. Wash. 2011) ................................................ 40

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*,
   786 F.2d 1342 (9th Cir. 1985) .................................................................. 14

*Frito-Lay v. Local Union No. 137, Int'l Bhd. of Teamsters, Chauffeurs,
   Warehousemen & Helpers of Am.*,
   623 F.2d 1354 (9th Cir. 1980) .................................................................... 3

*Grace v. Apple, Inc.*,
   328 F.R.D. 320 (N.D. Cal. 2018) .............................................................. 16

*Gray v. Shell Oil Co.*,
   469 F.2d 742 (9th Cir. 1972) ...................................................................... 7

*Greger Pac. Marine, Inc. v. Or. Offshore Towing, Inc.*,
   No. 3:13-cv-00461-SI, 2014 U.S. Dist. LEXIS 93786 (D. Or. 2014) ........ 21

*In re High-Tech Emple. Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2014 U.S. Dist. LEXIS 47181 (N.D. Cal. Apr.
   4, 2014) .............................................................................................. 16, 17

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   No. CV-00-20905 RMW, 2008 U.S. Dist. LEXIS 123822 (N.D. Cal.
   Jan. 5, 2008) ............................................................................................. 15

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
   249 F. Supp. 2d 622 (E.D. Pa. 2003), *amended*, 268 F. Supp. 2d 448 ........ 18

*Infusion Res., Inc. v. Minimed, Inc.*,
   351 F.3d 688 (5th Cir. 2003) .................................................................... 14

*Int'l Longshore & Warehouse Union, AFL-CIO*,
   2013 NLRB LEXIS 573 (N.L.R.B. August 28, 2013) ................................. 36

*Int'l Longshoremen's & Warehousemen's Union, Local 32 v. Pac. Mar.
   Ass'n*,
   773 F.2d 1012 (9th Cir. 1985) .................................................................. 41

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS
*IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

*Int'l Longshoremen's & Warehousemen's Union v. NLRB*,
   884 F.2d 1407 (D.C. Cir. 1989) ................................................. 41

*John Morrell & Co. v. Local Union 304A of United Food & Commercial
   Workers, AFL-CIO*,
   913 F.2d 544 (8th Cir. 1990) ................................................... 14

*Lee v. United States Taekwondo Union*,
   No. 04-00461 SOM-LEK, 2006 U.S. Dist. LEXIS 25559, at *10 (D.
   Haw. Jan. 26, 2006) ....................................................... 12, 13

*Local 8 v. NLRB*,
   705 Fed. App'x 3 (D.C. Cir. Nov. 6, 2017) .................................... 38

*Maxwell v. Kelly Servs., Inc.*,
   730 F.Supp 2d 1254 (D. Or. 2010) ............................................ 21

*Mead v. Retail Clerks Int'l Ass'n., Local Union No. 839, AFL-CIO*,
   523 F.2d 1371 (9th Cir. 1975) ......................................... 2, 12, 13

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   No. 14-cv-00722-SI, 2016 U.S. Dist. LEXIS 53734 (N.D. Cal. Apr. 21,
   2016) ....................................................................... 15

*Ni-Q, LLC v. Prolacta Bioscience, Inc.*,
   No. 3:17-cv-000934-SI, 2019 U.S. Dist. LEXIS 24272 (D. Or. Feb. 14,
   2019) ....................................................................... 38

*Hooks ex rel. NLRB v. Int'l Longshore & Warehouse Union*,
   544 Fed. Appx. 657 (9th Cir. Sept. 30, 2013) ................................ 42

*Hooks ex rel. NLRB v. Int'l Longshore & Warehouse Union, Local 8*,
   72 F. Supp. 3d 1168 (D. Or. 2014) ........................................... 31

*Obeng-Amponsah v. Don Miguel Apartment*,
   744 Fed. App'x 476 (9th Cir. 2018) .......................................... 39

*Oracle Am., Inc. v. Google Inc.*,
   No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 136172, 2011 WL
   5914033 (N.D. Cal. Nov. 28, 2011) ........................................... 12

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
   2011 U.S. Dist. LEXIS 133502, 2011 WL 5417090 (N.D. Cal. Oct. 27,
   2011) ........................................................................ 4

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Roberts v. Heating Specialist Inc.*,
No. 3:12-CV-01820-SI, 2013 U.S. Dist. LEXIS 61995 (D. Or. Apr. 29,
2013) ................................................................................................................ 22

*Sebastian Int'l, Inc. v. Russolillo*,
No. CV 00-3476 SVW, 2005 U.S. Dist. LEXIS 45828 (C.D. Cal. Feb.
22, 2005) ........................................................................................................... 14

*Silverman v. Local 3 Int'l Bhd. of Elec. Workers*,
No. 81 Civil 6936, 1981 U.S. Dist. LEXIS 16723 (S.D.N.Y. Dec. 23,
1981) ................................................................................................................. 35

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n, Local 200,
AFL-CIO*,
611 F.3d 483 (9th Cir. 2010) ........................................................................... 41

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ...................................................................... 37, 39

*Sterling Sav. Bank v. Citadel Dev. Co.*,
656 F. Supp. 2d 1248 (D. Or. 2009) ................................................................ 31

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931) ........................................................................................... 3

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) ........................................................................... 40

*TK-7 Corp. v. Estate of Barbouti*,
993 F.2d 722 (10th Cir. 1993) ..................................................................... 17, 18

*Towerridge, Inc. v. T.A.O., Inc.*,
111 F.3d 758 (10th Cir. 1997) ......................................................................... 28

*Uforma/Shelby Bus. Forms v. NLRB*,
111 F.3d 1284 (6th Cir. 1997) ..................................................................... 31, 32

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965) ......................................................................................... 37

*United Nurses Associations of California v. NLRB*,
871 F.3d 767 (9th Cir. 2017) ........................................................................... 41

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS
*IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*United States v. Beckman*,
   298 F.3d 788 (9th Cir. 2002) ................................................................ 34

*United States v. Boulware*,
   384 F.3d 794 (9th Cir. 2004) ................................................................ 20

*United States v. Cherer*,
   513 F.3d 1150 (9th Cir. 2008) .............................................................. 34

*United States v. Hoffman-Vaile*,
   568 F.3d 1335 (11th Cir. 2009) ............................................................ 27

*United States v. Lattner*,
   385 F.3d 947 (6th Cir. 2004) ................................................................ 34

*United States v. Pang*,
   362 F.3d 1187 (9th Cir. 2004) .............................................................. 20

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) .................................................................. 4

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
   858 F.2d 1075 (5th Cir. 1988) .............................................................. 39

*Vulcan Hart Corp. (St. Louis Div.) v. NLRB*,
   718 F.2d 269 (8th Cir. 1983) ................................................................ 32

*Walker v. Soo Line R. Co.*,
   208 F.3d 581 (7th Cir. 2000) ................................................................ 14

*Warshawsky & Co. v. NLRB*,
   182 F.3d 948 (D.C. Cir. 1999) .............................................................. 42

*Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*,
   119 F.3d 1505 (11th Cir. 1997) ............................................................ 28

*Williams v. Illinois*,
   567 U.S. 50 (2012) ................................................................................ 18

*Wilson v. Cox*,
   191 F. Supp. 3d 1172 (D. Or. 2016) ..................................................... 29

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
   395 F.3d 416 (7th Cir. 2005) ................................................................ 17

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS
*IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## Statutes

29 U.S.C. § 8(b)(4)(i) ...................................................................................... 42

29 U.S.C. § 8(b)(4)(B) ..................................................................................... 42

29 U.S.C. § 160(k) Section 10(k) ................................................................... 41

29 U.S.C. § 187 ............................................................................................... 16

## Rules

Fed. R. Civ. P. 26(a) ..................................................................................... 4, 5

Fed. R. Civ. P. 37(c)(1) ................................................................................... 4

Fed. R. Evid. 401 ........................................................................................... 25

Fed. R. Evid. 402 ........................................................................................... 26

Fed. R. Evid. 403 .................................................................................... *passim*

Fed. R. Evid. 404 ...................................................................................... 33, 34

Fed. R. Evid. 404(b) ................................................................................. 34, 35

Fed. R. Evid. 408 .................................................................................... *passim*

Fed. R. Evid. 701 ...................................................................................... 26, 27

Fed. R. Evid. 702 .................................................................................... *passim*

Fed. R. Evid. 703 ........................................................................................... 17

Fed. R. Evid. 801 ........................................................................................... 20

Fed. R. Evid. 802 ........................................................................................... 20

Fed. R. Evid. 803(8) ...................................................................................... 22

Fed. R. Evid. 803(22) .................................................................................... 20

Fed. R. Evid. 803(23) .................................................................................... 20

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

**Other Authorities**

Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE &
    PROCEDURE § 5314 (2018) ....................................................................... 31

National Aeronautics and Space Administration, "Newton's First Law,"
    *available at* https://www.grc.nasa.gov/www/k-
    12/airplane/newton1g.html (last accessed on February 18, 2019)............................ 25

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

# EXPERT WITNESSES

ILWU Entities invoke Rule 702 to argue that two of ICTSI's expert witnesses' opinions are subject to exclusions.[1]  Those witnesses are:

- <u>Nolan Gimpel</u> (container industry expert), who ICTSI intends to have testify about whether, *but for* ILWU Entities' unlawful labor activities, ICTSI likely would have met or exceeded historic productivity levels, increased rates, grown container throughput volume, retained Hanjin and Hapag-Lloyd as customers past early 2015, and replaced the container volume carried by Hanjin after it declared bankruptcy in 2016.  (ICTSI' Exp. Wit. List [Dkt. 372] at 32-50.)

- <u>Jay Sickler</u> (economist), who ICTSI intends to have testify about several models by which he computed damages incurred by ICTSI, which are based on various starting assumptions about how ICTSI's business would have performed *but for* ILWU Entities unlawful labor activities.  (*Id*. at 23-32.)

Rather than contesting those witness' methodologies, ILWU Entities principally contest the underlying facts and assumptions for those opinions, arguing that a jury should ultimately reject those facts or assumptions.  Before responding, two principles are salient.

First, "damages [do] not need to be proven with certainty."  (Op. & Order [Dkt. 362] at 17 (discussing *Mead v. Retail Clerks Int'l Ass'n., Local Union No. 839, AFL-CIO*, 523 F.2d 1371, 1377 (9th Cir. 1975)).)  That rule and its rationale have been more fully explained by the Supreme Court in the context of anti-trust suits:

---

[1] ILWU Entities moved to exclude the testimony of Samuel Estreicher (Motion 7). ICTSI did not identify him in its Expert Witness List [Dkt. 372].

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS** *IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

> [W]hile the damages may not be determined by mere speculation or
> guess, it will be enough if the evidence show the extent of the
> damages as a matter of just and reasonable inference, although the
> result be only approximate. *The wrongdoer is not entitled to
> complain that they cannot be measured with the exactness and
> precision that would be possible if the case, which he alone is
> responsible for making, were otherwise.*

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)

(emphasis added). *See also Frito-Lay v. Local Union No. 137, Int'l Bhd. of Teamsters,

Chauffeurs, Warehousemen & Helpers of Am.*, 623 F.2d 1354, 1364 (9th Cir. 1980)

(similar in relation to unlawful labor practices). The jury will ultimately need to

undertake the same task ICTSI's experts (and ILWU Entities' experts) have: to assess, to

the best of their respective abilities, what would have occurred at Terminal 6, *but for*

ILWU Entities' unlawful labor practices.

Second, challenges of the type ILWU Entities bring to the predicate facts and

assumptions for an expert's opinion face a high bar. As a "general rule," such challenges

to "the factual basis of an expert opinion" raise issues as "to the credibility of the

testimony, not the admissibility, and it is up to the opposing party to examine the factual

basis for the opinion in cross-examination." *Children's Broad. Corp. v. Walt Disney Co.*,

357 F.3d 860, 865 (8th Cir. 2004) (internal quotation marks and citation omitted). To

overcome that general rule, ILWU Entities must establish that ICTSI's experts' opinions

"[are] so fundamentally unsupported that [they] can offer no assistance to the jury." *Id.*

This Court should reject ILWU Entities' thin arguments.

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS
*IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**<u>Motion 1</u>**    **The Court should deny ILWU Entities' motion to exclude two of Nolan Gimpel's opinions, which are admissible under Rule 702.**

For the reasons stated below, neither of ILWU Entities' challenge has merit.

### A.    Gimpel's opinion that, *but for* ILWU Entities' tortious conduct, ICTSI likely could have captured 75 percent of the relevant market

Gimpel—whose expertise and experience ILWU Entities do not dispute—testified that "[i]n the absence of labor problems and with another Asia service or two, [Terminal 6] should have been … back up in that 75-80 percent range where they were in—where the terminal was in the '93, '94, '95, 2003, '4 time frame."  (Eden Decl., Ex. A (Gimpel Dep.) at 115:24-116:6.)  This is proper opinion testimony because, "[w]hen evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience."  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (internal quotation marks and authority omitted).  *See also PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 U.S. Dist. LEXIS 133502, 2011 WL 5417090, at *8 (N.D. Cal. Oct. 27, 2011) (Ware, J.) (expert testimony grounded on the expert's personal knowledge and experience was admissible in light of his extensive background in the area).

ILWU Entities first object that the 75-percent market share opinion was not timely disclosed and exclusion is required, ILWU Entities argue quoting Rule 37(c)(1), because a "party is 'not allowed' to rely on information that was not disclosed under Rule 26(a)." (ILWU's MILs [Dkt. 407] at 2.)  ILWU Entities, however, omit a material provision

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**<u></u>*IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

when invoking Rule 37(c)(1)—namely, that *exclusion is improper* if "the failure [to initially disclose information] was substantially justified or is harmless."

Here, any omission was harmless.  ILWU Entities timely knew of Gimpel's opinion.  On ICTSI's disclosure deadline, ILWU Entities disclosed Jay Sickler's opinions, which state that he relied on Gimple's "opinion" that a "volume assumption" of ICTSI "captur[ing] 75 percent of this estimated 2014 market seize" is "very reasonable." (ICTSI's Exp. Wit. List, Ex. B [Dkt. 372-1] (Sickler Rep't) at 11.)  ILWU Entities then took discovery on that opinion.  When ILWU Entities deposed Gimpel, they specifically inquired about this opinion and, for example, how that opinion related to other information regarding market share, which ILWU Entities contend showed Terminal 6 achieving only 72 percent market share in the past.  (Eden Decl., Ex. A (Gimpel Dep.), 115:24-119:10.)  In their motion, ILWU Entities identified no harm from a technical non-compliance with Rule 26(a)'s expert disclosure requirements.  The record proves there was none.

ILWU Entities next argue that this Court should exclude Gimpel's opinion because, according to ILWU Entities, it is "speculative, unsupported by any analysis, and contrary to the evidence."  (ILWU's MILs [Dkt. 407] at 2.)  According to ILWU Entities, *Gimpel's* figure must be excluded in part because, as they represent *Sickler's* testimony:

> The "75 percent" number was initially proffered by ICTSI *damages* expert Mr. Sickler, who admitted that he offered the number arbitrarily as a "discussion point" and does not have "any analysis that … is supportive of a 75-percent number."  Ex. G (Sickler Dep.,

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

35:22-36:10).  During that conversation, Mr. Gimpel endorsed the
75 percent figure solely based on his belief that he "would have
expected more than that to have come through T6."  *Id.* at 35:12-21.
Mr. Gimpel, however, did no analysis to support that belief and
offered no support for his opinion during his call with Mr. Sickler.

(ILWU's MILs [Dkt. 407] at 2 (emphasis in original).)

ILWU Entities' argument omits material facts.  First, unmentioned by ILWU

Entities is that Sickler specifically inquired of Gimpel, "'Would that be reasonable?'"

(Karwande Decl. ISO ILWU's MILs, Ex. G [Dkt 408-7] (Sickler Dep.), 35:12-21.)

Second, ILWU Entities omit Gimpel's testimony on this point.  As ILWU Entities know,

Gimpel testified that the foundation for his opinion was historical market capture, as he

remembered it, and his opinion that, *but for* the ILWU Entities' wrongful conduct, ICTSI

could have successfully marketed Terminal 6 services to other carriers.  (*See* Eden Decl.,

Ex. A (Gimpel Dep.) at 115:24-116:6 (so testifying).)

ILWU Entities' other prong of attack on the 75-percent market capture opinion is

to argue that the opinion is "contradicted by evidence."  (ILWU's MILs [Dkt. 407] at

2-3.)  In particular, ILWU Entities argue that Gimpel's opinion is impeached by an

inadmissible February 2018 report from a "Consultant Team," for which Gimpel was

"Project Manager and Principal Consultant" about "Terminal 6 Container Business

Strategy."  (Karwande Decl. ISO ILWU's MILs, Ex. 443 [Dkt 408-14] (Advisian Rep't)

at cover & ii.)

ILWU Entities had an opportunity to present this Court with Gimpel's testimony

Page 5    **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

about that report, but neglected to do so.  During his deposition, ILWU Entities presented

Gimpel the same data table they now present to this Court to impeach Gimpel's opinion

about the likelihood that, *but for* the ILWU Entities' unlawful labor practices, ICTSI

could have captured 75 percent of the relevant market.  Gimpel explained that there was

no meaningful discrepancy between the data and his opinion:

> Q. All right.  And so the—you're satisfied that the Port of Portland
> was never able to capture 72 percent of the—the available
> market, at least during the years from 1995 to 2015?
>
> A. If you start—well, yes.  They didn't quite make it to 72 percent,
> but they came very close in a number of years.
>
> Q. So how—how, if at all, does that affect your opinion as to the
> likely market-capture rate ICTSI would have achieved in the
> absence of labor issues at Terminal 6?
>
> A. Well, there's no—there's no reason that they wouldn't have
> achieved at least these same capture rates of the best years once
> they were able to attract another Asian service.

(Eden Decl., Ex. A (Gimpel Dep.) at 119:11-18.)

Finally, this Court should reject ILWU Entities' invocation of *Gray v. Shell Oil

Co.*, 469 F.2d 742, 750 (9th Cir. 1972), which they quote for the proposition that this

Court may exclude Gimpel's opinion because it is, according to them, "'without a factual

basis in the record.'"  (ILWU's MILs [Dkt. 407] at 3.)  ILWU Entities' reliance on *Gray*

is misplaced.  The full sentence from which ILWU Entities extract their quote reveals the

quote has nothing to do with Rule 702 or expert opinions.  The Ninth Circuit stated:

"*Appellant's* opinion, based on his hindsight, that he would have been able to make a

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

greater margin of profit than his 4 cents commission if he had operated as a lessee-dealer, is pure guess work and without foundation in this record." *Gray*, 469 F.2d at 750 (emphasis added). Contrary to ILWU Entities' suggestion, the opinion supplies no guidance on ILWU Entities' motion to exclude Gimpel's *expert* opinion under Rule 702.

In sum, Gimpel has an opinion informed in part by historical data. It is for a jury to assess whether there is a material discrepancy between Gimpel's recall of data and the post-1995 data to which ILWU Entities will direct the jury and, further, if a discrepancy exists, whether it impeaches Gimpel's opinion that is based additionally on his conclusion that ICTSI likely would have, *but for* ILWU Entities' wrongful conduct, attracted new carriers to call on Terminal 6.

**B.    Gimpel's opinion that, *but for* ILWU Entities' tortious conduct, another carrier would have replaced the volume carried by Hanjin**

In March 2015, ILWU Entities succeeded in driving away ICTSI's biggest customer, Hanjin, which declared bankruptcy on August 31, 2016. Gimpel's opinions address whether it is "reasonably probable that another ocean carrier would have picked up substantially all of Hanjin's market share in Portland after Hanjin filed for bankruptcy in 2016." (ICTSI's Exp. Wit. List, Ex. C-1 [Dkt. 372-1] (Gimpel Rep't) at 8-9.) He recognized that the "volume of cargo moving in a trade lane" is an independent variable from "the number of carriers that serve that trade lane," such that "the demise of one" results in the volume going to an existing carrier in that lane or a new carrier to that lane. (*Id*. at 9.) Gimpel noted that, following Hanjin's demise, an entity now known as SM

Page 7    **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

Line obtained many of its managers and assets.  (*Id.*)  Gimpel recognized there were

factors that could affect *which carrier* ultimately handled Hanjin's volume in a given

market, but concluded that "absent the labor issues, it is almost a certainty that Hanjin

would have been replaced by another carrier" in Portland.  (*Id.*)  Notable, "Portland is a

unique market with limited direct calls and a carrier desirous of a disproportionate market

share and operating smaller vessels would likely have had the incentive to call Portland."

(*Id.*)

　　　　By selective citation to Gimpel's deposition, ILWU Entities recast and then attack

his opinion.  ILWU Entities portray Gimpel's opinion as being wholly "based on his

belief that carrier SM Lines … would have called on Terminal 6 (but for the labor

dispute) because it was 'a very profitable call and why would they not?'"  (ILWU's MILs

[Dkt. 407] at 3 (quoting Karwande Decl. ISO ILWU's MILs, Ex. C [Dkt. 408-3] (Gimpel

Dep.), 58:5-59:6).)  ILWU Entities then argue that because—in the actual course of

events, wherein the ILWU Entities' labor actions had driven Hanjin away—ICTSI

allegedly never marketed itself directly to SM Lines, Gimpel cannot reliably opine that

ICTSI likely *would have* been able to replace the volume carried by Hanjin's pre-

bankruptcy.  (*Id.*)

　　　　There are at least two significant flaws with ILWU Entities' argument.  First,

ILWU Entities ignore Gimpel's testimony.  When asked why he concluded that another

carrier would have replaced Hanjin post-bankruptcy and absent the labor actions, Gimpel

prefaced his reference to SM Lines acquiring Hanjin's assets and hiring some of its

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

management employees with the phrase "[f]irst of all[.]"  (Karwande Decl. ISO ILWU's

MILs, Ex. C [Dkt. 408-3] (Gimpel Dep.), 58:5-59:6.)  Not only did Gimpel's report

clearly disclose *additional* reasons for his opinion (as noted above), but just three

questions after the portion of the transcript ILWU Entities cite is the following testimony:

> Q:  Do you have any opinion as to which carrier would have replaced
>      Hanjin?
>
> A.  No.

(Karwande Decl. ISO ILWU's MILs, Ex. C [Dkt. 408-3] (Gimpel Dep.), 59:17-59:19.)

That is, contrary to how ILWU Entities portray Gimpel's opinion, it was additionally

predicated on market forces and the fact that Portland is a unique market.

Second, ILWU Entities' argument that SM Lines would not have called on

Terminal 6 improperly conflates the real world (in which ILWU Entities' labor actions

made Terminal 6 a toxic port of call) with the hypothetical world (in which ILWU

Entities work in good faith without slowdowns and ICTSI is able to leverage Portland's

status as a unique market in the aftermath of Hanjin's bankruptcy).  ILWU Entities can

attempt to sell their apples to the jury as oranges, but such conflation provides no basis

for excluding Gimpel's opinion that, *but for* the ILWU Entities' unlawful labor practices,

it is "reasonably probable that another ocean carrier would have picked up substantially

all of Hanjin's market share in Portland after Hanjin filed for bankruptcy in 2016."

(ICTSI's Exp. Wit. List, Ex. C-1 [Dkt. 372-1] (Gimpel Rep't) at 8-9.)

Finally, without citation to Gimpel's deposition, ILWU Entities argued that

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Gimpel's opinion "ignores" the substance of ILWU Entities' jury arguments about why, in their view, Terminal 6 was doomed.  (ILWU Entities' MILs [Dkt. 407] at 4.)  ILWU Entities fail to substantiate their contention that Gimpel has "ignore[d]" anything and it is simply not for this Court to endorse ILWU Entities' view as to what the evidence shows.

This Court should deny ILWU Entities' Motion 1 in its entirety.  Their quibbles at most raise jury issues, not bases for excluding opinions under Rule 702.

**<u>Motion 2</u>**       **The Court should deny ILWU Entities' motion to exclude ICTSI's expert economist Jay Sickler's opinions and testimony, which are admissible under Rule 702.**

Jay Sickler created three models of damages, each predicated on different starting assumptions.  ILWU Entities argue this Court must exclude Jay Sickler's opinions under Rule 702 because, according to them, the assumptions are incorrect.  (ILWU's MILs [Dkt. 407] at 4.)  As established below, the attacks ILWU Entities levy present jury issues rather than inviting exclusion under Rule 702.

ILWU Entities fundamentally misapprehend the role of the Court in relation to a damage expert's starting assumptions, which, by necessity, will be proved through other witnesses and exhibits.  Because such challenges do not address methodology, such disagreements generally "go to the weight to be afforded the testimony and not its admissibility."  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (challenge to damages expert's assumptions and alleged failure to "control for certain variables are factual issues best addressed by cross

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

examination and not by exclusion").  As one district court summarized in relation to

damage experts:

> In [*Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011
> U.S. Dist. LEXIS 136172, 2011 WL 5914033 at *1 (N.D. Cal. Nov.
> 28, 2011)], the court allowed Google's damages experts, who were
> both economists without technical expertise, to assume as fact the
> technical conclusion that Google had non-infringing alternatives to
> the patents and copyrights at issue at the time of the parties'
> hypothetical licensing negotiation. … The court overruled Oracle's
> Rule 702 objection to the experts' reliance on this conclusion
> because "[b]oth experts relied on Google's non-infringement
> experts, interviews with Google's employees, and documentary
> evidence for the technical points."  *Id*. (internal citation and
> quotation omitted).  Thus, *Oracle* holds that a damages expert may
> assume the truth of a technical opinion in her analysis when she
> relies on foundational testimony given at trial.  *Id*.

*Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2013 U.S. Dist. LEXIS

160188, at *46-48 (N.D. Cal. Nov. 6, 2013).  *See also Lee v. United States Taekwondo*

*Union*, No. 04-00461 SOM-LEK, 2006 U.S. Dist. LEXIS 25559, at *10 (D. Haw. Jan.

26, 2006) (attacks on underlying assumptions "go to the weight that should be accorded

[expert economist's] testimony [about damages], rather than its admissibility").

So too here, where the assumptions ILWU Entities challenge are, to be sure,

matters a jury will need to find.  But Sickler's opinions, relying on those assumptions, are

not subject to exclusion based on ILWU Entities' belief that the assumptions are flawed.

### A.    Sickler was not required to apportion ICTSI's damages between the alternative causes that ILWU Entities will argue to a jury.

ILWU Entities first complain that Sickler "lumps together all of ICTSI's losses

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
   ***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

without attempting to segregate those caused by unlawful conduct from those caused by other factors[,]" which ILWU Entities contend is contrary to *Mead*, 523 F.2d 1371. (ILWU's MILs [Dkt. 407] at 5.)  They further argue—after summarizing their jury arguments about other potential causes of the damages—that "[i]f the jury decides that any of the ILWU's actions were primary and lawful or that the ILWU was not the cause of ICTSI's injury, Mr. Sickler's report leaves them to guess as to how that should impact ICTSI's."  (*Id.* at 5.)  ILWU Entities misapprehend both the substantive law and the evidence code.

First, under *Mead*, it is not necessary to separate damages among causes because the injuries for which ICTSI seeks compensation—for example, Hanjin being driven away—are not themselves separable.  As ICTSI explained in its trial memorandum:

> … *Mead* involved an "inseparable course of conduct" (striking and picketing) with "consequences" of that conduct that were themselves "not [separable]" (loss of business and profits).  *Id*. at 1373, 1378-79.  In *Mead*, 523 F.2d at 1373, the union disputed two causation issues: (a) whether the unlawful object caused its strike when it had "multiple motivations"; and (b) whether that strike caused damages when there were "multiple causes of economic injury[.]"  *Id.* at 1376.  The Ninth Circuit answered "both problems" by establishing a "relatively relaxed standard of proof."  *Id*. at 1379.  When "a union exerts economic pressure to achieve both lawful and unlawful objectives and the consequences are not separable, damages cannot be recovered unless the unlawful objective was a substantial cause of the pressure."  *Id*. at 1374.  Likewise, an injury occurs "by reason of" the unlawful conduct "if such conduct materially contributed to the injury, or was a substantial factor in bringing it about, notwithstanding other factors contributed also."  *Id*. at 1376 (quotation marks and citations omitted).

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

(ICTSI's Trial Memo. [Dkt. 376] at 8-9 (clerical error corrected by "[separable]").)  Even if ILWU Entities may intend to argue that ICTSI's injuries *are separable* by cause or that their labor actions *never* had mixed motives, those are issues for the jury, not this Court.

Second, ILWU Entities seem to contend that a damages expert, in order to proffer an admissible opinion under Rule 702 based on some assumptions, must also model other permutation of factual conclusions that a jury could reach.  (*See* ILWU's MILs [Dkt. 407] at 6 (arguing for exclusion because Sickler's opinions "leave [a jury] to guess as to how [findings adverse to ICTSI] should impact ICTSI's damages").)[2]  ILWU Entities' authority, however, does not support that proposition.  Each case they cite is predicated on a separable injury; that is, the plaintiff sought damages beyond those substantially caused by the defendant's tortious conduct.[3]  No principle of law required Sickler to

---

[2] The argument is an about-face from ILWU Entities' contention, only a few lines earlier, that making different damages calculations based on different assumptions proves Sickler's opinions are "speculative." *But see John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO*, 913 F.2d 544, 559 (8th Cir. 1990) (expert may testify to multiple damages models based on "the different assumptions upon which each model was premised"); *Walker v. Soo Line R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000) ("Experts are allowed to posit alternate models to explain their conclusion.").

[3] *See Sebastian Int'l, Inc. v. Russolillo*, No. CV 00-3476 SVW (JWJx), 2005 U.S. Dist. LEXIS 45828, at *25-26 (C.D. Cal. Feb. 22, 2005) (expert lumped together lost sales caused by tortious conduct and others attributable to other causes); *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 695 (5th Cir. 2003) (antitrust claims failed as a matter of law so that a damage report that failed to segregate damages flowing from lawful and tortious conduct was defective); *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985) (recognizing that, because some of plaintiff's lost sales were attributable to fair competition, plaintiff was required to "segregat[e]

---

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

model damages based on ILWU Entities' beliefs that the jury will find their case theory persuasive. *See Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2008 U.S. Dist. LEXIS 123822, at *46-47 (N.D. Cal. Jan. 5, 2008) (argument that expert's "testimony will likely be baseless" in the event the expert's "assumptions turn out to be false" did not require exclusion of damages expert's opinion).

What's more, Sickler's opinions *do account for* the performance of ICTSI's business in relation to many of the factual arguments ILWU Entities advance. (ILWU's MILs [Dkt. 407] at 5-6.) Under Sickler's models, the jury would award damages for injuries caused by ILWU Entities' unlawful labor practices—ILWU Entities cannot leverage exclusion of Sickler's testimony from the parties' dispute about whether some actions ICTSI was forced to undertake in mitigation of ILWU Entities' wrongful conduct are, ultimately, ILWU Entities' legal responsibility. *See In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. 14-cv-00722-SI, 2016 U.S. Dist. LEXIS 53734, at *35-36 (N.D. Cal. Apr. 21, 2016) ("Mulcahey did not adopt or apply a flawed methodology simply because he did not disaggregate the price impact of one alleged wrongdoing that directly resulted from another."). Further, Sickler's damages model is based in part on past performance, which addresses noise introduced by, for example, *normal* equipment downtime. And by providing different models, Sickler's opinions, as a whole, enable the jury to grapple with

between damages attributable to lawful competition and that attributable to the unlawful scheme").

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

possible headwinds to the growth of ICTSI's business besides ILWU Entities' unlawful labor activities.

Ultimately, many of the uncertainties that ILWU Entities identify—and with which experts retained by both sides have to contend when modeling damages caused by ILWU Entities' unlawful labor practices—exist precisely because of ILWU Entities' wrongful conduct.  Under similar circumstances, a district court in a recent anti-trust case rejected the defendants' argument "that a damages model must *precisely* segregate out effects of every possible factor, including legal conduct, that could impact the dependent variable, in order to be admissible under *Daubert*" because it "directly contravenes well-established Supreme Court and Ninth Circuit authority holding that damages in antitrust cases often cannot, and therefore need not, be proven with exact certainty."  *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 U.S. Dist. LEXIS 47181, at *74 (N.D. Cal. Apr. 4, 2014).  The same rationale applies here, in part because Section 303 borrows damages principles from antitrust law.

In sum, ILWU Entities' argument that Sickler failed to account for certain variables in his assessment of damages raises matters of weight, not admissibility.  *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility."); *Grace v. Apple, Inc.*, 328 F.R.D. 320, 341 (N.D. Cal. 2018) (applying same to reject argument that damages models were "flawed owing to their failure to include this or that variable").

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**B.      Sickler was not required to make assumptions contrary to Gimpel's opinions.**

From ILWU Entities' challenge to Gimpel's opinions, ILWU Entities daisy chain a challenge to Sickler's opinion about: (a) ICTSI's damages after Hanjin's bankruptcy; and (b) ICTSI's damages, assuming that ICTSI captured 75-percent of the market's container volume.  (ILWU's MILs [Dkt. 407] at 6-7.)  For the same reasons this Court should deny ILWU Entities' motion as to Gimpel's opinions, this Court should likewise deny this aspect of ILWU Entities' motion as to Sickler.

**C.      As with a 75-percent market capture, Sickler was entitled to build a damages model that, subject to proof at trial, assumed that ICTSI's growth projections were accurate.**

ILWU Entities seek exclusion of Sickler's "second damages number … because it relies on the self-serving and unverified 2011 projections" ICTSI created about its anticipated growth before the ILWU Entities commenced their unlawful labor practices. (*Id.* at 7.)  ILWU Entities argue that Sickler was obligated to "independently verify" ICTSI's 2011 growth projection and, according to ILWU Entities, should have declined to rely on it to model damages *for Terminal 6* because during those years, overall volume for *the Pacific Northwest fell*.  (*Id.* at 7-8 (quotation marks and citation omitted).)

First, ILWU Entities misapprehend the authority they cite, none of which address an expert modeling damages using assumptions to be proved at trial.[4]  Second, Gimpel, in

---

[4] Two of ILWU Entities' cases do not involve an expert opinion built on assumptions.  *See CDW LLC v. NETech Corp.*, No. 1:10-cv-00530-SEB-DML, 2014 U.S.

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

an opinion *ILWU Entities do not challenge*, has explained why the rate of change for

container volume for the Pacific Northwest did not dictate the growth rate at Terminal 6.

Unlike Terminal 6, ports like Seattle and Tacoma are competing with ports in California

to serve markets in the Midwest and Southeast; those port's growth rate is independent of

what Terminal 6 could have achieved.  (ICTSI's Exp. Wit. List, Ex. C-1 [Dkt. 372-1]

(Gimpel Rep't) at 7-8.)  Third, as addressed at the outset of responding to ILWU Entities'

motion *in limine*, Sickler is entitled to testify to damages models built around

assumptions to be proved at trial.

As the Supreme Court has observed, "[u]nder settled evidence law, an expert may

express an opinion that is based on facts that the expert assumes, but does not know, to be

true."  *Williams v. Illinois*, 567 U.S. 50, 57 (2012).  This Court should reject ILWU

Entities' efforts to challenge Sickler's opinions on the basis of assumptions, the truth of

which are for the jury.  ILWU Entities' Motion 2 should be denied.

---

Dist. LEXIS 8898, at *11 (S.D. Ind. Jan. 23, 2014) (excluding expert testimony that
would have simply channeled the party's own opinion); *Zenith Elecs. Corp. v. WH-TV
Broad. Corp.,* 395 F.3d 416, 420 (7th Cir. 2005) (upholding exclusion of a growth
projection created by a party's manager that amounted to the company's "hopes"; no
apparent reliance by any expert on same).  Two other cases involve a Rule 703
consideration—a ground that ILWU Entities did not raise in seeking exclusion of
Sickler's opinions.  *TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732-33 (10th Cir.
1993) (examining a Rule 703 issue about whether data was of a type experts in the field
would rely upon); *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 249 F. Supp. 2d
622, 695 (E.D. Pa. 2003), *amended*, 268 F. Supp. 2d 448 (discussing and applying *TK-7
Corp.* to remit damages where underlying assumption of lost sales was based on party's
projections, apparently not borne out by evidence at trial).

Page 17    **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS
*IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

**Motion 7**    **The Court should deny as moot the ILWU Entities' motion to exclude Samuel Estreicher, who ICTSI has not disclosed as a witness.**

Without conceding that his testimony would have been improper, ICTSI no longer intends to call Professor Estreicher and, therefore, did not list him as an expert witness in its initial pretrial filings.  (*See generally* ICTSI' Exp. Wit. List [Dkt. 372].)  It follows that ILWU Entities' motion is moot and should be denied on that basis.

## LEGAL PROCEEDINGS

In general, ILWU Entities want to use the extended legal proceedings associated with the ILWU Entities' unlawful labor practices to throw a veil over their persistent object for their labor actions—obtaining the reefer work.

**Motion 3**    **The Court should deny as overreaching ILWU Entities' motion to exclude witness opinions regarding prior adjudications and briefing, as well as the adjudications and briefing themselves.**

ILWU Entities' motion combines what are at least three distinct topics.

**A.    Briefs litigating ILWU Entities' position in proceedings regarding the ILWU Entities' unlawful labor practices in pursuit of the reefer work.**

ILWU Entities move to exclude "briefing" regarding "prior adjudications." (ILWU MILs [Dkt. 407] at 8.)  The body of the motion, however, addresses exclusively "testimony … about the prior rulings and briefing" and, separately, "the legal rulings themselves.  (*Id*. at 8, 10.)  ILWU Entities proffered no argument or analysis setting forth any objection to admission of the briefs.  Accordingly, that aspect of ILWU Entities' motion should be denied.

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## B.     Decisions from legal proceedings relating to ILWU Entities' unlawful labor practices

ILWU Entities' unlawful labor practices have spawned many legal proceedings and many decisions—indeed, several have been afforded preclusive effect.  (*See* Op. & Order [Dkt. 362].)  Still, ILWU Entities object on grounds of hearsay and under Rule 403 to decisions identified as exhibits.[5]  This Court should overrule ILWU Entities' objections.

As to hearsay, ILWU Entities argue that "the opinions, like all judgments, are inadmissible hearsay under Federal Rules of Evidence 801 and 802" and argue by way of footnote that such opinions do not fall within two hearsay exceptions, Rule 803(22) and 803(23).  (ILWU's MILs [Dkt. 407] at 11 & n.4.)  ILWU Entities are mistaken.

ILWU Entities' hearsay objections are misplaced.  The decisions are not hearsay

---

[5] ICTSI identified the following decisions as exhibits:

- Ex. 10—This Court's July 3, 2012 temporary restraining order;
- Ex. 12—This Court's July 19, 2012 order granting preliminary injunction against work stoppages and slowdowns;
- Ex. 17—This Court's November 21, 2012 preliminary injunction against filing lost work opportunity grievances;
- Ex. 20—ALJ Schmidt's August 28, 2013 decision;
- Ex. 50—ALJ Wedekind's May 30, 2013 decision;
- Ex. 88—This Court's 12/16/2014 contempt order;
- Ex. 105—NLRB's September 24, 2015 decision affirming ALJ Schmidt's decision; and
- Ex. 107—NLRB's November 30, 2014 decision affirming ALJ Wedekind's decision.

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

because they are "legally operative verbal conduct." *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) (holding that checks are not hearsay because they are "out-of-court statements that are offered as evidence of legally operative verbal conduct").  "A prior judgment is not hearsay … to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties."  *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004).  The restraining orders, injunctions, contempt order, and administrative decisions clearly dictated the ILWU Entities' legal obligations—namely, that they could not engage in the unlawful labor practices that they did, in fact, undertake and, for example, that they must provide notice to members of the injunction and that they had been held in contempt.

Moreover, each decision is offered for a non-hearsay purpose—namely, the effect such decision had on the parties.[6]  As to ILWU Entities, the jury is entitled to infer from the fact that production remained depressed even after each decision issued that ILWU Entities, with the object of obtaining the reefer work, was responsible for ongoing job actions that the entities called for, instigated, supported, encouraged, authorized, participated in, directed, condoned, or ratified.  (*See, e.g.*, Ex. 14 (ILWU Entities advising

---

[6] *See, e.g.*, *Greger Pac. Marine, Inc. v. Or. Offshore Towing, Inc.*, No. 3:13-cv-00461-SI, 2014 U.S. Dist. LEXIS 93786 at *27 (D. Or. 2014) (accountant's advice was not hearsay because "it is being offered for its effect on the listener, providing an explanation for why [the witness] did what he did."); *Maxwell v. Kelly Servs., Inc.*, 730 F.Supp 2d 1254, 1266 (D. Or. 2010) (statement that the plaintiff intended to sue was not hearsay because it was offered to show the listener was aware of a "potential threat to sue.").

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
    ***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

members that they were informing members of the court's injunction "under protest,"

that they "strongly believe[d] that the injunction [was] legally wrong," and that they "will

win this dispute").)  Further, such decisions bear on ILWU Entities': (a) arguments that

ICTSI was unreasonable in enforcing its contractual rights when confronted with work

stoppages, gimmicks, and slowdowns; and (b) mitigation defense in that the decisions

evidence ICTSI's reasonableness in pursuing and relying on legal recourse and self-help

(enforcement of contractual rights) in an attempt to lessen its injuries from ILWU

Entities' unlawful labor practices.

    Finally, the administrative decisions fall under Rule 803(8), the "public records"

exception.  As this Court knows, this exception "sweeps broadly" and the drafters

intended to "'assume[] admissibility in the first instance.'"  *Roberts v. Heating Specialist

Inc.*, No. 3:12-CV-01820-SI, 2013 U.S. Dist. LEXIS 61995, at *10-11 (D. Or. Apr. 29,

2013) (quoting Fed. R. Evid. 803, Notes of Advisory Committee).  As the Supreme Court

has explained, opinions and conclusions are admissible alongside factual findings in a

public record "[a]s long as the conclusion is based on a factual investigation and satisfies

the Rule's trustworthiness requirement[.]"  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153,

170 (1988).

    This Court should overrule the ILWU Entities' objections under Rule 403.  The

probative value of this evidence is substantial.  It is integral to the history of the dispute

and tends to prove on an ongoing basis that ILWU Entities called for, instigated,

supported, encouraged, authorized, participated in, directed, condoned, or ratified the

Page 21    **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

work stoppages and slowdowns.  Moreover, because the decisions establish that the

ILWU Entities acted with impunity even when under injunction, such evidence tends to

rebut the ILWU Entities' argument that, in effect, ICTSI could have obtained increased

productivity by asking nicely.

In contrast, the risks addressed by Rule 403 are not present to a degree compelling

exclusion.  ILWU Entities first complain of prejudice in that their witnesses have been

found not to be credible.  (ILWU's MILs [Dkt. 407] at 11.)  In isolation, certain

inaccurate testimony the jury will hear regarding disputed facts may be excused or even

believed by a jury; but a jury is entitled to discredit the testimony of a witness that

repeatedly provides inaccurate testimony.  (*See* MCJI 1.14 (jury may consider "any other

factors that bear on believability," and, if it "decide[s] that a witness has deliberately

testified untruthfully about something important, [it] may choose not to believe anything

that witness said.").)  That permissible and highly probative inference is precisely what

ILWU Entities label as "prejudice."  They should not be allowed to enhance their

witness's credibility by spreading their non-credible testimony about the core facts of this

dispute across multiple proceedings.

The ILWU Entities also raise the putative risk of a jury being confused or misled

by the "dense procedural history and legal analysis."  Those concerns are overblown—

these portions of the opinions are adverse to ILWU Entities, consistent with what the jury

will be instructed for these periods.  Moreover, given the volume of evidence in this

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

matter, a jury is highly unlikely to delve into the procedural history or legal conclusions unless specifically invited to by ILWU Entities.

Finally, the ILWU Entities seem to object that the evidence is unduly cumulative in relation to jury instructions—albeit without specifically tethering the argument to Rule 403. (See ILWU's MILs [Dkt. 407] at 11 (arguing that "there is no need" for the opinions because "[t]he Court will instruct the jury on any facts to which it decides to give preclusive effect").) The ILWU Entities' objection is misplaced. In fact, the ILWU Entities *object to the jury being instructed* on the previously adjudicated facts (*see* ILWU's Obj. to ICTSI's Jury Inst. [Dkt. 390] at 3-4; Tassin Decl. ISO ILWU's Obj. to MILs, Ex. I [Dkt 398-9] (objecting to instructions about adjudicated facts).) Further, as identified above, the prior decisions are offered for purposes beyond their specific finding, including that they tend to create an inference, by their actions and inactions in response thereto, that ILWU Entities continued to call for, instigate, support, encourage, authorize, participate in, direct, condone, or ratify work stoppages and slowdowns in pursuit of the reefer work.

In sum, ILWU Entities' hearsay objections are unfounded and, relative to their probative value, the countervailing arguments raised by ILWU Entities—specifically, prejudice or the risk of confusing and misleading the jury—do not substantially outweigh that probative value, as required to exclude evidence under Rule 403. At most, ILWU Entities' objections invite targeted redactions rather than exclusion.

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

### C.   Witness's statements agreeing or disagreeing with statements in decisions and briefs

During depositions, as an entry point for related testimony about the witness's knowledge about related matters, ICTSI inquired of various witnesses whether they agreed or disagreed with statements in legal decisions, a brief, or both.  ILWU Entities move to exclude such testimony, raising only two objections—relevance and opinion.  (ILWU's MILs [Dkt. 407] at 9-10 (citing Rule 402 and Rule 701.)  ILWU Entities' objections are without merit.

By definition, evidence is relevant if "it has any tendency to make a fact more of less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  ILWU Entities' sweeping motion prevents a fine-grained analysis of each way in which such evidence may be relevant.  But, by way of example, Furer testified that he "generally agreed" with this Court's conclusion that "during the time period from July 19, 2012, through August 13, 2013, the ILWU and Local 8 have violated the court's order by inducing and encouraging their members to engage in work stoppages and slow-downs with an object to coerce ICTSI and the carriers to force the Port of Portland to cede the right to control the reefer work or assign the reefer work to ILWU members."  (Karawande Decl. ISO ILWU's MILs, Ex. A [Dkt. 408-1] (Furer Dep.), 59:19-60:25.)  Such testimony bear on the actions and motives of ILWU Entities' and their members, for example as it relates to inertia around the reefer

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**_IN LIMINE_ NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

dispute.[7]  A witness such as Furer, who agrees with a finding that ILWU Entities engaged in past wrongful conduct, thereby creates at least an inference that ILWU Entities' wrongful conduct continued.  Similarly, if a witnesses affiliated with ILWU Entities disagrees with or disclaims knowledge of a finding that ILWU Entities engaged in unlawful labor practices, such testimony raises a permissible interference for the jury that ILWU Entities failed to supply sufficient information and guidance to members and agents sufficient to overcome the inertia by which ILWU Entities continued to engage in work stoppages and slowdowns—whether in pursuit of the reefer work or as a foreseeable consequence of the prior unlawful labor actions.  Such testimony falls well within the expansive limits allowed by Rule 402.

This Court should also reject the ILWU Entities' objection that a witness's agreement or disagreement is "nothing more than a legal conclusion about the correctness of those rulings and briefing."  (ILWU's MILs [Dkt. 407] at 10.)  Such agreement or disagreement, if it is deemed opinion,[8] would be "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and, within this context, "not based on scientific, technical, or other

---

[7] Newton's First Law is apropos:  "[E]very object will remain at rest or in uniform motion in a straight line unless compelled to change its state by the action of an external force."  National Aeronautics and Space Administration, "Newton's First Law," *available at* https://www.grc.nasa.gov/www/k-12/airplane/newton1g.html (last accessed on February 18, 2019).

[8] "[T]he distinction between statements of fact and opinion is, at best, one of degree."  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988).

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Clearly, the salient aspect of a witness's testimony agreeing or disagreeing with statements in legal decisions or briefs is not, in fact, whether the statement in a document is correct or not—at least as to the decisions, issue preclusion conclusively establishes the statement is correct. Rather, the agreement or disagreement is a toehold for the jury to understand the witness's motivations and perceptions of the reefer dispute, to assess their credibility, and to assess whether ILWU Entities continued after a given decision their unlawful labor practices. *See, e.g.*, *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1341-42 (11th Cir. 2009) (testimony that defendant had been informed that billing practice was improper was not subject to exclusion under Rule 701 because, contextually, its salient aspect was that the defendant was on notice that practice was fraudulent).

**Motion 4**    **The Court should deny ILWU Entities' motion to exclude certain statements, which they mischaracterize as settlement discussions subject to Rule 408.**

The ILWU Entities misapprehend ICTSI's plan to use certain evidence at trial and disregard the fact that Rule 408 does exclude statements simply by virtue of being made in the context of a persisting dispute. ILWU Entities' motion should be denied because ICTSI is not seeking to use settlement discussions to "prove … the validity or amount of a disputed claim" that was the subject of those discussions. Instead, ICTSI intends to present evidence that is outside the confines of that rule.

In the first instance, this Court should deny ILWU Entities' motion because they do not identify with particularity what evidence they seek to exclude; they simply attempt

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

to cast a blanket over every "statement[] made during settlement discussions."  (ILWU

Entities' MILs [Dkt. 407] at 11.)  But there are at least two particular discussions ILWU

Entities may intend to reference, which ICTSI will address separately: (1) the agreement

entered into between Bill Wyatt for the Port of Portland and Leal Sundet for the ILWU in

late 2013 by which the Port would engage an independent contractor to perform the

reefer work with ILWU members in exchange for the ILWU's gradual increase of

productivity at Terminal 6; and (2) a statement made by ILWU President Robert

McEllrath to ICTSI CEO Elvis Ganda in September 2014 that conveyed an implied threat

that, unless ICTSI dropped this lawsuit, the ILWU would continue their unlawful

slowdowns and work-stoppages.

A.    **Wyatt testimony about consideration ILWU Entities would provide in exchange for its members temporarily performing reefer work**

In relation to the 2013 agreement, this Court should reject ILWU Entities'

objection for two reasons.  First, Wyatt (on behalf of the Port) and Sundet (on behalf of

ILWU Entities) made no attempt to compromise *ICTSI's then-existing claim* against the

ILWU Entities during their discussions.  Hence, by its very terms, Rule 408 is

inapplicable.  *See, e.g.*, *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir.

1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a

claim different from the one litigated").

Second, the pre-agreement discussions prove the terms of the resulting agreement

between the Port and ILWU Entities.  Rule 408 does not condemn such evidence to

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

exclusion.  *See Cent. Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982) (testimony about settlement discussions is admissible despite Rule 408 where the "purpose was to demonstrate what the terms of the settlement . . . were"); *Basha v. Mitsubishi Motor Credit of Am., Inc.,* 336 F.3d 451, 454 n.4 (5th Cir. 2003) (similar); *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1512-13 (11th Cir. 1997) (admitting settlement evidence "for the permissible purpose of resolving a factual dispute about the meaning of the settlement agreement"); *Catullo v. Metzner*, 834 F.2d 1075, 1078-79 (1st Cir. 1987) (similar).

Here, the agreement itself is relevant to the ILWU Entities' motive and intent— *i.e.*, that they still claimed the reefer work and were willing to take actions in furtherance of their object after August 2013.  *See Wilson v. Cox*, 191 F. Supp. 3d 1172, 1181 n.2 (D. Or. 2016) (Simon, J.) (proof of "state of mind and motive" is an appropriate use of settlement communications).  Further, the terms of the agreement also rebuts the ILWU Entities' assertions that they do not have the ability to control productivity or that ICTSI management was incompetent.

### B.    Ganda testimony that ILWU President McEllrath conveyed an implied threat of future slowdowns and work stoppages

In September 2014, ILWU President McEllrath—while in less vile terms than Sundet's threats at the outset of the reefer dispute—conveyed the same message that ILWU Entities would engage in unlawful labor actions until ICTSI stopped pursing their

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

legal rights.  In deposition, Elvis Ganda responded to ILWU Entities' questions as

follows:

> Q. How did you try to work with the ILWU to put a stop to the
> damage?
>
> A. Well, I had a meeting with Bob McEllrath in September of
> 2013—or 2014, I believe …. … I talked to Bob McEllrath about
> how do we put an end to this, and his—his point to me was
> "Drop your lawsuits and I'll guarantee you the best productivity
> on the west coast."
>
> Q. So did you—what did you say in response?
>
> A. I told him I couldn't drop my lawsuits unless we had some sort of
> a written agreement and guarantees that we were not going to
> have slowdowns or gimmicks or productivity problems going
> forward.  He told me he would float that idea to the membership
> and get back to me the following week, which he never did.
>
> Q. So you're telling me you told Mr. McEllrath that you would
> agree to drop the lawsuit if he guaranteed that production would
> stay up?
>
> A. No.  What he told me was that if we dropped the lawsuits he
> would guarantee me the best productivity of any terminal
> operated on the west coast.  That was his guarantee.
>
> Q. And did you say, "That's a great guarantee, I accept"?
>
> A. I didn't believe it.

(Eden Decl., Ex. C (Ganda Dep.), 163:16-164:18.)

Rule 408 does not bar such testimony.  First, an offer of "valuable consideration"

within the meaning of Rule 408 does not include something that the other party is already

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

entitled to.  *Dimono v. New York City Transit. Auth.*, 64 F. Supp. 2d 136, 162 (E.D.N.Y. 1999).  Here, the absence of "valuable consideration" is illustrated both by McEllrath's failure to follow up and the fact that the ILWU and its members were *already contractually obligated* not to interfere with ICTSI's efficient operations and to work in good faith and to the best of their abilities.  (Eden Decl., Ex. D (PCLCD excerpts) at §§ 15.1, 18.1.)

Moreover, McEllrather's statement conveyed an implied threat:  If ICTSI continued to assert its rights, the ILWU Entities would punish ICTSI with depressed productivity.  And just as Sundet's May 2012 threats do not become settlement offers by couching them in the negative—*e.g.*, "if you pressure the Port to re-assign the reefer work, the ILWU won't shut down ICTSI operations"[9]—McEllrath's "offer" that the then existing hard-timing would continue until ICTSI relented is an extortionary threat.

Such threats are not protected by Rule 408, which is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; *e.g.*, … unfair labor practice, and the like" or the resulting compromise is itself unlawful.  Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE & PROCEDURE § 5314 (2018).  *See also Sterling Sav. Bank v. Citadel Dev. Co.,* 656 F. Supp. 2d 1248, 1256 (D. Or. 2009) (Acosta, J.) (evidence admissible "to prove …

---

[9] As this Court found, "[o]n May 24, 2012, Sundet stated on two separate occasions that ILWU was going to 'shut down' ICTSI's operations unless ICTSI began using Local 8 members to perform the reefer work."  *Hooks ex rel. NLRB v. Int'l Longshore & Warehouse Union, Local 8,* 72 F. Supp. 3d 1168, 1175 (D. Or. 2014).

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

wrongful activity … during the settlement negotiations," including "threats of retaliation" (citation omitted)).

This principle is well-illustrated by *Uforma/Shelby Bus. Forms v. NLRB*, 111 F.3d 1284 (6th Cir. 1997). In *Uforma*, the union attempted to settle a grievance with the employer. While discussing the grievance, the employer threatened to retaliate against the union. On appeal, the Sixth Circuit rejected the employer's contention that Rule 408 prevented the NLRB from considering that threat, which the NLRB had considered in finding the employer's later retaliation was an unfair labor practice. The Sixth Circuit relied in part on the treatise language cited above, stating: "we hold that Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats." *Id.* at 1293-194. *See also Vulcan Hart Corp. (St. Louis Div.) v. NLRB*, 718 F.2d 269 (8th Cir. 1983) (holding that Rule 408 did not bar evidence of demand during negotiations to settle grievance that employee resign his union office when NLRB did not seek to prove validity of grievance).

The same is true here. At a minimum, McEllrath's September 2014 implied threat to continue ILWU Entities' labor actions against ICTSI is evidence that tends to substantiate ICTSI's claim that ILWU Entities' further labor actions against it continued to relate to the reefer work.

This Court should deny ILWU Entities' Motion 4, which—merely by labeling

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

evidence "settlement discussions"—seeks the exclusion of material evidence that ILWU

Entities continued to pursue and engage in unlawful labor practices after August 13,

2013.

**Motion 5.**     **The Court should deny as overreaching ILWU Entities' motion to exclude evidence regarding other disputes and the ILWU's departure from the AFL-CIO.**

ILWU Entities' motion appears to cover evidence regarding two distinct topics,

which are discussed in turn.

### A.     ILWU's departure from the AFL-CIO

ILWU Entities move to exclude evidence regarding ILWU's departure from the

AFL-CIO. Although undescribed by ILWU Entities, the evidence will be that in late

August 2013, the ILWU made the dramatic decision to withdraw from the AFL-CIO on

the eve of a mediation/arbitration process to be conducted by the AFL-CIO between the

ILWU and the IBEW to settle the reefer dispute at Terminal 6.

ILWU Entities explain nothing about that departure and provide no argument or

analysis suggesting that the departure would somehow be subject to exclusion under

Rule 403 or 404, the two rules ILWU Entities cite in relation to the other subject of their

motion. The Court should deny the motion because ILWU Entities have not supplied

sufficiently specific information to enable ICTSI to respond or, in turn, for this Court to

provide a ruling.

Page 32     **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

**B.**      **Other legal proceeding in which the ILWU Entities are involved.**

In relation to other legal proceedings, which, per ILWU Entities, "say little to nothing about the issues before the jury in this case" and are therefore subject to exclusion under Rule 403 as a waste of time and unduly prejudicial.  Further, in relation to Rule 404, ILWU Entities acknowledge an argument by ICTSI that "ILWU had a coastwide campaign to take maintenance and repair work and thus maintained its object to obtain the reefer work even years after the dispute arose," but contend that such evidence is "classic character evidence[.]"  (ILWU's MILs [Dkt 407] at 15.)

The Ninth Circuit holds:

> Other acts evidence is admissible under Rule 404(b) if it (1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged.

*United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002).  Then, if not subject to exclusion under Rule 404, the Court should then engage in Rule 403 balancing.  *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008).

First, evidence of other legal proceedings is material.  The ILWU Entities' character evidence argument is self-defeating in relation to the role of individual jurisdictional disputes that were part of a "coastwide campaign."  As ILWU President McEllrath testified, loss in the Terminal 6 reefer dispute would "bleed up and down- the whole entire West Coast[.]"  (Eden Decl., Ex. E (McEllrath Dep), 77:18-78:11.)  That is, there is evidence that ILWU Entities' continued pursuit of the reefer jobs in Portland was

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
**IN LIMINE NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

interrelated with other jurisdictional disputes by intent and a common plan.  Such

evidence of the related disputes is therefore proper under Rule 404(b).  *See United States*

*v. Cherer*, 513 F.3d 1150, 1158 (9th Cir. 2008) (prior conviction admissible to establish

intent and common plan for current charge because conduct in both cases was "strikingly

similar"); *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004) ("[T]he evidence of

prior drug transactions could be introduced to prove a scheme or plan to traffic hashish

and that proving said scheme was probative with respect to evaluating defendant's

defense of innocent association.").

Second, the other legal proceedings are not remote in time; many occurred roughly

contemporaneously with the ILWU Entities' unlawful pursuit of the reefer work.  Third,

ICTSI can present evidence weighty enough to establish that ILWU Entities engaged in

other jurisdiction disputes as part of their coastwide strategy.  Fourth, such other

proceedings are similar—indeed, they are part of a coastwide strategy.

In a similar case in the Southern District of New York, the trial court admitted

evidence under Rule 404(b) tending to establish the union had a "total job" policy where

it was competing with another union for jurisdiction of jobs.

> The evidence is relevant to show a uniform practice and policy in
> furtherance of respondent's total job philosophy; as the Board
> contends and as the history of various litigations reflects, at different
> sites in the Metropolitan area where [the other union's] members
> were engaged in telephone installation work, respondent and its
> members pursued a persistent and recurrent pattern of conduct in the
> enforcement of its total job policy which resulted in strikes or
> stoppages and other conduct proscribed by the Act.

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Silverman v. Local 3 Int'l Bhd. of Elec. Workers*, No. 81 Civil 6936, 1981 U.S. Dist.

LEXIS 16723, at *11-12 (S.D.N.Y. Dec. 23, 1981).

**Motion 6**    **After correcting ILWU Entities' misstatements of fact, the Court should conform its ruling on the ILWU Entities' motion regarding issue preclusion to this Court's ruling on ICTSI's similar motion regarding previously adjudicated facts.**

ILWU Entities move *in limine* to exclude evidence and testimony about two facts

that they claim to have previously adjudicated.  Troublingly, ILWU Entities misstate the

contents of prior adjudications, including what this Court found.

According to ILWU Entities, *ALJ Wedekind* and *this Court* found that "Local 40

did not engage in any job actions or slowdowns from *June 11, 2012* to *August 13, 2013*

with an object of obtaining the reefer work."  (ILWU's MILs [Dkt. 407] at 16 (emphasis

added).)  Each emphasized fact is false.  First, ALJ Schmidt found that Local 40

continued to file lost-work opportunity grievances against ICTSI into August 2012 in

pursuit of the reefer work, which conduct was an unfair labor practice.  *Int'l Longshore &*

*Warehouse Union, AFL-CIO*, 2013 NLRB LEXIS 573, *105, 135-37 (N.L.R.B. August

28, 2013).  Second, as ILWU Entities themselves recognize, ALJ Wedekind's opinion

does not adjudicate actions before September 2012.  Third, this Court was never asked to

find Local 40 in contempt, defying ILWU Entities' assessment that this Court's passing

statements about Local 40 "[were] necessary to … this Court's decision."  (ILWU's

MILs [Dkt. 407] at 16.  *See also* Op. & Order [Dkt. 362] at 10-11 (recounting procedural

history that contempt was sought against ILWU and Local 8).)

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

The ILWU Entities also move to give preclusive effect to the "fact" that "Local 8 crane operators did not engage in slowdowns by arriving late to their assigned cranes." (ILWU's MILs [Dkt. 407] at 16.)  Although ILWU Entities describe that "fact" without reference to the adjudicated period, ICTSI similarly moved that safety gimmicks that had adjudicated adversely to ILWU be given preclusive effect even beyond that period. (ICTSI's MILs [Dkt. 379] at Mot. 4, pp. 6-8.)  ICTSI agrees this Court should treat the extension of these prior findings outside their period in equivalent fashion.

**Motion 8**  **The Court should deny as overreaching ILWU Entities' motion to exclude evidence, testimony, and argument regarding statements made by the ILWU or its agents in or related to court or administrative agency proceedings.**

The ILWU Entities make the sweeping and unsupportable contention that this Court is required under the First Amendment to exclude *for any purpose* evidence, testimony, and argument "regarding statements made by the ILWU or its agents in or related to court or administrative agency proceedings."  (ILWU's MILs [Dkt. 407] at 19.) As support, the ILWU Entities invoke the *Noerr-Pennington* doctrine,[10] but portray it in a form that is unrecognizable.  Under that doctrine—a product of the First Amendment's Petition Clause—those who petition "the government for redress are generally immune from statutory liability *for their petitioning conduct*."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (emphasis added).  Here, the doctrine is immaterial because

---

[10] The doctrine is named for two cases, *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965), and *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

ILWU Entities do not face statutory liability for petitioning activities.  This Court should deny ILWU Entities' motion for at least two reasons.

First, the ILWU Entities' arguments have already been rejected.  On appeal to the D.C. Circuit on appeal from the second NLRB case, they argued that the NLRB erred by relying on court-approved injunction notices to employees and ILWU press releases regarding court cases to demonstrate that the ILWU Entities induced or encouraged ILWU members to engage in slowdowns with an object to obtain the reefer work.  (*See* Eden Decl., Exs. F, G (ILWU Opening Br., D.C. Cir. Ct. Case Nos. 15-1443, pp. 26-34; ILWU Reply Brief, D.C. Circuit Court Case Nos. 15-1443, 16-1036, pp. 14-17).)  Although the ILWU Entities spoke broadly of their First Amendment rights without express mention of the specific *Noerr-Pennington* doctrine, the argument is materially indistinguishable from that which they presently assert—namely, that statements relating to legal proceedings are inadmissible for any purpose.  The ILWU Entities argument had insufficient merit to even warrant comment from the D.C. Circuit.  *See Local 8 v. NLRB*, 705 Fed. App'x 3 (D.C. Cir. Nov. 6, 2017) (upholding the Board's factual and legal findings, including those referring to the ILWU notices to employees and press releases about the district court injunctions).  As the D.C. Circuit did *sub silentio*, this Court should reject ILWU Entities' contention that the First Amendment prohibits a factfinder from examining the contents of speech to, for example, discern motive.

Second, and perhaps even more fundamentally, the ILWU Entities' First Amendment/*Noerr-Pennington* argument turns on a false premise—namely, that ICTSI

Page 37    **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8**    SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

alleges that statements attributable to ILWU Entities before a court or administrative

agency themselves were illegal. If that premise were true, as this Court knows, the

doctrine's immunity can extend to "'conduct (including litigation) aimed at influencing

decision-making by the government,'" provided the conduct is not objectively baseless or

a "sham." *Ni-Q, LLC v. Prolacta Bioscience, Inc.*, No. 3:17-cv-000934-SI, 2019 U.S.

Dist. LEXIS 24272, at *9, *11 (D. Or. Feb. 14, 2019) (quoting *Octane Fitness, LLC v.*

*ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 1757, 188 L. Ed. 2d 816

(2014). That is because the doctrine exists to avoid chilling the right to petition the

government with the risk of reprisal for that *petitioning conduct. See Video Int'l Prod.,*

*Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988)

(recognizing purpose).

      The premise of ILWU Entities' argument, however, is false. ICTSI has not

alleged that the ILWU Entities violated the law by virtue of litigating their claims,

making related public statements, or discussing such claims internally. Instead, ICTSI

relies on such statements for their relevance to ICTSI's claims that ILWU Entities

engaged in unlawful labor practices—specifically, such statements are probative of their

motive for their labor actions (their persisting object of obtaining the reefer work) and

that ILWU Entities condoned or ratified prior unlawful conduct. Further, such statements

also tend to rebut the ILWU Entities' claims that after some time the union no longer

cared at all about the reefer work. That is, the activity that ICTSI claims gives rise to

union liability is the independently unlawful conduct of engaging in slowdowns and other

    **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
          *IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

coercive conduct with a proscribed secondary object.  *See Obeng-Amponsah v. Don Miguel Apartment*, 744 Fed. App'x 476 (9th Cir. 2018) (dismissal of case under *Noerr-Pennington* doctrine erroneous where plaintiff "alleges wrongful conduct . . . that is distinct from defendants' litigation activity.")

Because ICTSI is not contending that the claimed "petitioning" activities of the ILWU Entities were themselves illegal, the cases the ILWU Entities cite in support of their First Amendment claim are inapposite.  For example, in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006), plaintiff alleged that the sending of a pre-litigation demand letter by defendant's attorneys *itself constituted* a RICO violation, which the court rejected based on *Noerr-Pennington* as "the basis of liability under RICO."  *See also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (verdict on intentional interference with contractual relations claim based solely on threat of litigation and was hence barred by *Noerr-Pennington* doctrine); *Adidas Am., Inc. v. TRB Acquisitions Ltd. Liab. Co.*, No. 3:15-cv-2113-SI, 2017 U.S. Dist. LEXIS 9228, at *9 (D. Or. Jan. 23, 2017) (Simon, J.) (allegations in affirmative defense "are directed at litigation and threatened litigation—conduct squarely protected by the *Noerr–Pennington* doctrine"); *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122 (W.D. Wash. 2011) (claim for relief was predicated on five activities court found were petitioning activities within meaning of *Noerr-Pennington*).  The cases ILWU Entities cite—unlike the case now before this Court—are ones in which the moving parties claimed that the petitioning activities themselves violated the law.  None of the

Page 39     **ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
         ***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

cases cited hold that statements in litigation or connected to litigation are inadmissible for *any purpose*, as the ILWU Entities urge here.

The absence of authority supporting ILWU Entities' arguments makes sense. ILWU Entities' construction of the *Noerr-Pennington* doctrine produces absurd results. Under the ILWU Entities' formulation, union officials and their attorneys could use the prospect, existence, or appeal of legal actions or discussion before a public body as a shield by which to pursue the very unlawful labor practice that are forbidden by federal law by levying threats or encouraging, condoning, or ratifying members' labor actions in pursuit of secondary objectives. Indeed, ILWU Entities' motion stretches so far as to preclude even impeachment on prior inconsistent statements in connection with prior legal actions.

In addition to expanding *Noerr-Pennington* well outside its recognized bounds, the ILWU Entities ignore the limited application the doctrine has been afforded in the context of union jurisdictional disputes. In *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 737 n.5 (1983), the Supreme Court held that *Noerr-Pennington* does not protect lawsuits that have an "objective that is illegal under federal law." In *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n, Local 200, AFL-CIO*, 611 F.3d 483, 493 (9th Cir. 2010), the Ninth Circuit, relying on *Bill Johnson Restaurants, Inc.*, held that the union's state court lawsuit, which conflicted with the NLRB's Section 10(k), 29 U.S.C. § 160(k), determination regarding jurisdiction over certain work, was not protected by *Noerr-Pennington* because the union's lawsuit had an illegal objective. In reaching this

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

conclusion, the Ninth Circuit cited two cases involving ILWU lawsuits and grievances with similar illegal jurisdictional objectives, *Int'l Longshoremen's & Warehousemen's Union, Local 32 v. Pac. Mar. Ass'n*, 773 F.2d 1012, 1015 (9th Cir. 1985), and *Int'l Longshoremen's & Warehousemen's Union v. NLRB*, 884 F.2d 1407 (D.C. Cir. 1989). *Id.  See also United Nurses Associations of California  v. NLRB*, 871 F.3d 767, 786-88 (9th Cir. 2017) (conduct that "reflects an illegal objective" under the NLRA is not protected by the *Noerr-Pennington* doctrine).  Thus, because the prior legal proceedings here involved the ILWU's illegal objective of seeking the reefer work, the *Noerr-Pennington* doctrine can offer no protection.[11]

In sum, this Court should reject the ILWU Entities' arguments predicated on the Noerr-Pennington doctrine.  Its purpose is not served by excluding all discussions by and between ILWU officers about this litigation.  As explained by the D.C. Circuit, "'the prohibition of inducement or encouragement of secondary pressure by § 8(b)(4)(i) carries no unconstitutional abridgement of free speech.'"  *Warshawsky & Co. v. NLRB*, 182 F.3d 948, 952 (D.C. Cir. 1999) (quoting *IBEW Local 501 v. NLRB*, 341 U.S. 694, 705(1951)).  The ILWU Entities' motion should be denied.

---

[11] In this regard, the ILWU Entities also ignore the fact that this Court enjoined them from filing lawsuits and grievances over the reefer work and this injunction was upheld (at least under Section 8(b)(4)(B)) by the Ninth Circuit, which rejected similar First Amendment claims made by the ILWU herein.  *Hooks ex rel. NLRB v. Int'l Longshore & Warehouse Union*, 544 Fed. Appx. 657, 658-59 (9th Cir. Sept. 30, 2013).

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
*IN LIMINE* **NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

## CONCLUSION

For the reasons set forth above, this Court should deny each of ILWU Entities'

motions *in limine*.

Dated this 19th day of February, 2019.

                    Respectfully submitted,

                    SCHWABE, WILLIAMSON & WYATT, P.C.

                    By:  s/ Jeffrey S. Eden
                          Jeffrey S. Eden, OSB #851903
                          Email: jeden@schwabe.com
                          Amanda T. Gamblin, OSB #021361
                          Email: agamblin@schwabe.com
                          Michael T. Garone, OSB #802341
                          Email: mgarone@schwabe.com
                          Richard K. Hansen, OSB #832231
                          Email: rhansen@schwabe.com
                          Andrew J. Lee, OSB #023646
                          Email: ajlee@schwabe.com
                          Facsimile: 503.796.2900

                          *Of Attorneys for ICTSI Oregon, Inc.*

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
        ***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

This brief complies with the applicable word-count limitation as authorized by the Court's order authorizing the use of up to 11,000 words [Dkt. 378] because it contains 10,952 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated this 19th day of February, 2019.

SCHWABE, WILLIAMSON & WYATT, P.C.


By:    s/ Jeffrey S. Eden
       Jeffrey S. Eden, OSB #851903
       Email: jeden@schwabe.com
       Amanda T. Gamblin, OSB # 021361
       Email: agamblin@schwabe.com
       Michael T. Garone, OSB #802341
       Email: mgarone@schwabe.com
       Richard K. Hansen, OSB #832231
       Email: rhansen@schwabe.com
       Andrew J. Lee, OSB #023646
       ETelephone: 503.222.9981
       Facsimile: 503.796.2900

       *Of Attorneys for ICTSI Oregon, Inc.*

**ICTSI OREGON, INC.'S RESPONSE TO ILWU'S MOTIONS**
      ***IN LIMINE* NOS. 1-8**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2019, I served the foregoing **ICTSI**

**OREGON'S INC.'S RESPONSE TO ILWU'S MOTIONS *IN LIMINE* NOS. 1-8** on:

| | |
|---|---|
| Robert H. Lavitt<br>SCHWERIN, CAMPBELL, BARNARD,<br>IGLITZIN & LAVITT LLP<br>18 W. Mercer Street, Suite 400<br>Seattle, WA 98119-3871<br>Telephone: (206) 257-6004<br>Facsimile: (206) 257-6039<br>Email: lavitt@workerlaw.com<br><br>*Attorney for Plaintiff and<br>Counter-Defendants ILWU and<br>ILWU Locals 8 and 40* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email<br>☒ Electronically via USDC CM/ECF<br>   system |
| Amy Endo (admitted *pro hac vice*)<br>Eleanor I. Morton (admitted *pro hac vice*)<br>Emily Maglio (admitted *pro hac vice*)<br>LEONARD CARDER, LLP<br>1188 Franklin Street, Suite 201<br>San Francisco, CA 94109<br>Telephone: (415) 771-6400<br>Facsimile: (415) 771-7010<br>Email: aendo@leonardcarder.com<br>      emorton@leonardcarder.cm<br>      emaglio@leonardcarder.com<br><br>*Attorneys for Plaintiff and<br>Counter-Defendants ILWU and<br>ILWU Locals 8 and 40* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email<br>☒ Electronically via USDC CM/ECF<br>   system |

SCHWABE, WILLIAMSON & WYATT, P.C.<br>Attorneys at Law<br>Pacwest Center<br>1211 SW 5th Ave., Suite 1900<br>Portland, OR 97204<br>Telephone: 503.222.9981<br>Fax: 503.796.2900

PDX\119639\200028\AJL\24830505.2

| | |
|---|---|
| Robert S. Remar (admitted *pro hac vice*)<br>LAW OFFICES OF ROBERT REMAR<br>1188 Franklin Street, 4th Floor<br>San Francisco, CA  94109<br>Telephone:  (510) 499-1570<br>Facsimile:  (415) 775-1302<br>Email:   rremar@remarlaw.com<br><br>*Attorney for Plaintiff and*<br>*Counter-Defendants ILWU and*<br>*ILWU Locals 8 and 40* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email<br>☒ Electronically via USDC CM/ECF<br>   system |
| Susan J. Harriman (admitted *pro hac vice*)<br>Daniel Purcell (admitted *pro hac vice*)<br>Brook Dooley (admitted *pro hac vice*)<br>Maya Karwande (admitted *pro hac vice*)<br>Philip J. Tassen (admitted *pro hac vice*)<br>KEKER, VAN NEST & PETERS, LLP<br>633 Battery Street<br>San Francisco, CA  94111-1809<br>Telephone:  (415) 391-5400<br>Facsimile:  (415) 397-7188<br>Email:   sharriman@keker.com<br>         dpurcell@keker.com<br>         bdooley@keker.com<br>         mkarwande@keker.com<br>         ptassin@keker.com<br><br>*Attorneys for Plaintiff and*<br>*Counter-Defendants ILWU and*<br>*ILWU Locals 8 and 40* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email<br>☒ Electronically via USDC CM/ECF<br>   system |
| Philip C. Monrad (admitted *pro hac vice*)<br>LEONARD CARDER, LLP<br>1330 Broadway, Suite 1450<br>Oakland, CA  94612<br>Telephone:  (510) 272-0169<br>Facsimile:  (510) 272-0174<br>Email:   pmonrad@leonardcarder.com<br><br>*Attorney for Plaintiff and*<br>*Counter-Defendant ILWU* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email<br>☒ Electronically via USDC CM/ECF<br>   system |

Page 2 -      CERTIFICATE OF SERVICE

| | |
|---|---|
| Peter Hurtgen (admitted *pro hac vice*)<br>CURLEY, HURTGEN & JOHNSRUD, LLP<br>4400 Bohannon Drive, Suite 230<br>Menlo Park, CA  94025<br>Telephone:  (949) 302-9193<br>Facsimile:  (650) 323-1002<br>Email:    phurtgen@chjllp.com<br><br>    *Of Attorney for Defendant*<br>    *ICTSI Oregon, Inc.* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email<br>☒ Electronically via USDC CM/ECF<br>    system |

s/ Jeffrey S. Eden
_____
Jeffrey S. Eden, OSB #851903

Page 3 -        CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.<br>Attorneys at Law<br>1211 SW 5th Ave., Suite 1900<br>Portland, OR  97204<br>Telephone: 503.222.9981<br>Fax: 503.796.2900