# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ICTSI OREGON, INC.**, <br><br>        Plaintiff, <br><br>    v. <br><br>**INTERNATIONAL LONGSHORE AND WAREHOUSE UNION**; **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION Local 8**; and **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION Local 40**, <br><br>        Defendants. | Case No. 3:12-cv-1058-SI <br><br>**OPINION AND ORDER ON SANCTIONS MOTION** |

**Michael H. Simon, District Judge.**

ICTSI Oregon, Inc. ("ICTSI") brings the sole remaining claim in this case against International Longshore and Warehouse Union ("ILWU") and International Longshore and Warehouse Union Local 8 ("Local 8") (collectively, "ILWU Entities").[1] ICTSI alleges that the ILWU Entities engaged in illegal secondary boycott activities, violating § 303 of the Labor-Management Relations Act, 29 U.S.C. § 187. Specifically, ICTSI alleges that the ILWU Entities engaged in work stoppages, slowdowns, safety gimmicks, and other coercive actions with an object of forcing and compelling ICTSI to pressure the Port of Portland (the "Port") to relinquish control over or reassign jobs at Terminal 6 of the Port that involve the plugging, unplugging, and

---

[1] ICTSI notified the Court that it intends to dismiss its claims against Local 40 with prejudice.

PAGE 1 – OPINION AND ORDER ON MOTION FOR SANCTIONS

monitoring of refrigerated containers. This Opinion and Order addresses ICTSI's motion for sanctions based on the ILWU Entities' alleged improper conduct during discovery. For the following reasons, ICTSI's motion is granted in part.

**A. Standards**

The Court has inherent authority to impose sanctions and Rule 37 of the Federal Rules of Civil Procedure authorizes the imposition of sanctions. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) ("There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 . . . ."). Rule 37(c)(1) permits sanctions for failure to provide information requested under Rule 26(a) or (e). Rule 37(d)(1) authorizes sanctions for the failure to appear of a witness designated under Rule 30(b)(6).

To obtain sanctions for spoliation, a party must show:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989-90 (N.D. Cal. 2012) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). "[T]he presence of bad faith automatically establishes relevance; however, when the destruction is negligent, relevance must be proven by the party seeking sanctions." *S.E.C. v. Mercury Interactive LLC*, 2012 WL 3277165, at *10 (N.D. Cal. Aug. 9, 2012) (quotation marks omitted). In evaluating relevance, however, "because 'the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any

presumption of irrelevance as to the destroyed documents.'" *Leon*, 464 F.3d at 959 (alterations in original) (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982)).

**B. Discussion**

ICTSI moves for sanctions against the ILWU Entities on three grounds: (1) Leal Sundet destroyed relevant notebooks; (2) Robert McEllrath destroyed relevant calendars; and (3) the ILWU Entities' engaged in improper conduct during depositions taken under Rule 30(b)(6) of the Federal Rules of Civil Procedure. ICTSI requests a sanction precluding the ILWU Entities from introducing evidence or argument on the issues relating to the alleged misconduct.

**1. Mr. Sundet's Notebooks**

ICTSI asserts that Mr. Sundet writes notes in notebooks while attending meetings, ICTSI requested those notebooks in discovery, and the ILWU Entities have given inconstant responses regarding the responsive notebooks, including stating that they were destroyed. ICTSI requests that the Court preclude evidence relating to the notebooks and give the jury an adverse inference instruction regarding the content of the notebooks.

During his deposition, Mr. Sundet testified that he does not take notes in notebooks while at meetings. ICTSI then moved to compel production of any journals or notebooks contain relevant notes written by Mr. Sundet. In response to the motion to compel, the ILWU Entities represented to the Court that Mr. Sundet testified that he did not maintain any relevant journals or notebooks but that nonetheless the ILWU Entities requested that Mr. Sundet search for any such items, and no such materials exist. Counsel for ICTSI then provided counsel for the ILWU Entities a photograph of Mr. Sundet at a meeting showing three different colored notebooks in front of him (one blue, one red, one black). In later correspondence between counsel, an attorney for the ILWU Entities stated that she had discussed the photograph with Mr. Sundet, it did not depict Mr. Sundet taking any notes, it appeared one notebook was Mr. Sundet's calendar, and it

also appeared the others were notebooks he used to "to take stray notes and to doodle." ECF 315-1 at 39. The attorney also explained in the letter that such stray notes and doodles would be immediately destroyed by Mr. Sundet and then the notebooks would be destroyed when fully used. *Id.* ICTSI promptly requested sanctions, and the Court stated in its Opinion and Order on the parties' discovery motions ("Discovery Opinion") that ICTSI would need to file a formal sanctions motion, if it believed the requirements for sanctions were met under the circumstances of the alleged destruction of evidence. ICTSI then filed the pending sanctions motion.

In response to ICTSI's motion for sanctions, the ILWU Entities repeat the assertion that Mr. Sundet does not take relevant notes in journals or notebooks. They note that the photograph does not refute this assertion because it does not show Mr. Sundet taking any notes. They also submit Mr. Sundet's declaration, which reiterates his deposition testimony that he generally does not take notes at union meetings, does not use notebooks to take notes at union meetings, and does not recall taking notes at union meetings. He also states that he believes, regarding the incident photographed, that he merely took the three notebooks out of his bag to get at information needed from within his bag but was not using the notebooks during the meeting. He explains that the black notebook appears to be his calendar (which was produced), the red notebook appears to be his notebook containing his user names and passwords, and the blue notebook was blank and never used. He offers to have the Court review the red and blue notebooks *in camera* because he does not want his user names and passwords produced.

ICTSI responds that the ILWU Entities should be judicially estopped from changing their representation that the journals were destroyed because they made that representation to counsel and the Court. The decision to impose judicial estoppel is left to the discretion of the district

court. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). In considering whether to apply the doctrine of judicial estoppel, district courts may consider several questions, including:

> (1) Is the party's later position "clearly inconsistent with its earlier position?" (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party?"

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51). This is not an exhaustive list of the factors that a court may consider. *New Hampshire*, 532 U.S. at 751. The Ninth Circuit has explained that the "second *New Hampshire* factor—that one of the courts has been misled—is often dispositive." *Baughman*, 685 F.3d at 1133. Judicial estoppel is appropriate where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position." *Id.*

The ILWU Entities did not represent to the Court that any journals had been destroyed. The ILWU Entities instead repeatedly told the Court that Mr. Sundet does not maintain a journal or diary to keep relevant notes and thus no *responsive* journals exist. The sole reference by the ILWU Entities to any potential destruction of evidence by Mr. Sundet was: "Mr. Sundet did not take or maintain substantive notes of meetings; on occasions when he wrote down stray notes during a meeting, he followed a practice of discarding those notes after taking them." ECF 334 at 9. An attorney for the ILWU Entities linked stray note taking and the journals together in a letter to counsel for ICTSI, which both ICTSI and the ILWU Entities filed as an exhibit with the Court. The statements in the letter were, however, equivocal. The ILWU Entities never "persuaded" the Court that responsive journals were destroyed. Indeed, the Court specifically stated in its Discovery Opinion that the ILWU Entities contended not that the journals were destroyed, but that responsive journals did not exist and that "stray notes" were destroyed.

Accordingly, the ILWU Entities have not taken "clearly inconsistent" positions before the Court. The doctrine of judicial estoppel, thus, does not preclude the ILWU Entities' arguments regarding the three journals in the photograph, whose purported destruction are the basis of this motion.

ICTSI has not shown that responsive notebooks have been destroyed. Nor have they shown that the three notebooks in the photograph were destroyed. This precludes imposition of any sanction. Further, ICTSI has not shown that any notebook beyond Mr. Sundet's calendar, which has already been produced, was relevant. Mr. Sundet has consistently testified at deposition and in his declaration, and the ILWU Entities have consistently responded throughout the discovery dispute relating to the notebooks that Mr. Sundet did not take relevant notes in any notebook or journal. The photograph provided by ICTSI does not contradict that testimony. ICTSI provides no testimony from any witness that Mr. Sundet took notes during meetings or any other evidence that Mr. Sundet substantively used any notebook during meetings for business purposes. The Court declines to review the notebooks *in camera* and declines to impose sanctions for any purported conduct relating to the notebooks.[2]

2. **Mr. McEllrath's Calendars**

ICTSI argues that Mr. McEllrath destroyed his calendars each year under his normal calendar destruction policy, even though his information was or should have been under a litigation document hold. The ILWU Entities respond that Mr. McEllrath's calendars are irrelevant and that ICTSI moved to compel calendars of other union personnel and the Court denied the motion. Thus, according to the ILWU Entities, requesting sanctions for failing to preserve calendars that are not discoverable is unwarranted. ICSTI replies that the obligation to

---

[2] Nothing in this Opinion and Order precludes ICTSI from asking Mr. Sundet at trial any appropriate question regarding representations made relating to the notebooks.

preserve is not contingent on whether a future discovery motion will be granted. ICTSI notes that the destruction was particularly egregious because ICTSI had issued a specific document request for Mr. McEllrath's calendars. ICTSI also notes that it did not move to compel Mr. McEllrath's calendars because he had destroyed them, the Court's Discovery Opinion specifically does not apply, and the concerns that motivated the Court to deny the motion with respect to the other union representatives are not present with respect to Mr. McEllrath. ICTSI also argues that demonstrating the relevance of destroyed documents is, rightfully, a low threshold under Ninth Circuit precedent.

The Court denied production of the calendars of other union personnel because ICTSI did not show that the calendars were under the possession, custody, or control of the ILWU Entities and because ICTSI did not show that the personnel used the calendars for more than *de minimus* work purposes. ICTSI argues that such concerns are not present with Mr. McEllrath, who was the President of the ILWU during the relevant time period. ICTSI asserts that as an officer of the corporate entity (ILWU), documents Mr. McEllrath created are presumed to be under the corporate entities' custody and control. ICTSI cites *McBryar v. Int'l Union of Auto. Aerospace & Agric. Implement Workers*, 160 F.R.D. 691, 698-02 (S.D. Ind. 1993). ICTSI also notes that Mr. McEllrath testified during his deposition that he used his calendar to record his union-related travel and meetings and to take notes, and that this information is relevant to his involvement in the dispute at Terminal 6 because it may show when he traveled to Portland or when he was in San Francisco with Mr. Sundet and could have discussed the dispute at Terminal 6.

"Litigants have an obligation to preserve potentially relevant evidence from the moment that litigation is reasonably anticipated. But a party only engages in spoliation as a matter of law if it had some notice that the evidence was at least potentially relevant to the litigation before it

was destroyed." *Olney v. Job.com*, No. 1:12-CV-01724-LJO, 2014 WL 5430350, at *10 (E.D. Cal. Oct. 24, 2014) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). The ILWU Entities had notice that Mr. McEllrath's calendars were potentially relevant by at least April 2013 when ICTSI issued a document request for those calendars. *Id.* at *11. Nonetheless, Mr. McEllrath later destroyed his calendars.

Mr. McEllrath's testimony that he used his calendars to track work travel and meetings and store work-related notes is sufficient to overcome the Court's stated concern in its Discovery Opinion that the personal calendars of union personnel were not shown to have been used for more than *de minimus* work purposes. Additionally, because Mr. McEllrath was the President of the ILWU, that entity had sufficient possession, custody, or control over the calendar of Mr. McEllrath that he used for work purposes. The Court agrees with ICTSI that Mr. McEllrath should have preserved his calendars. Given the information now before the Court, if he had preserved them but objected to producing them and ICTSI would have filed a motion to compel, the Court would have granted that motion.

The next requirement to find spoliation is relevance. The ILWU Entities argue that whether Mr. McEllrath's calendars would have contained relevant evidence is speculative. The ILWU Entities also note that Mr. McEllrath testified during his deposition that he delegated most of the issues with the dispute at Terminal 6 to Mr. Sundet. Mr. McEllrath added that he only traveled twice to Portland, to attend "mediations" with Oregon Governor Kate Brown. Mr. McEllrath testified regarding what he could recall of those mediation sessions. The ILWU Entities also point out that ICSTI attended those sessions and thus have knowledge regarding their dates and what occurred. Mr. McEllrath further testified about his discussions with Mr. Sundet regarding the dispute at Terminal 6. Thus, the ILWU Entities argue, there is no

potentially relevant information in Mr. McEllrath's calendars that ICTSI did not obtain through other discovery. This latter argument, however, goes to prejudice and the type of appropriate sanctions, if any, not to relevance.

The Ninth Circuit has cautioned that when evidence is destroyed, it diminishes the ability of the moving party clearly to ascertain the relevance of the destroyed evidence and that there can be no presumption of irrelevance. *Leon*, 464 F.3d at 959. Accordingly, the Court rejects the ILWU Entities' argument that it is mere speculation that the calendars contained relevant information. Moreover, as President of the ILWU during the relevant time period, Mr. McEllrath's travel likely did contain some relevant information, particularly given the undisputed fact that he engaged in travel related to the dispute at Terminal 6. The calendars also potentially could have led to the discovery of further relevant information, by containing information regarding meetings with other key relevant personnel that might have triggered memories of discussions. ICTSI also argues that it could have evaluated the productivity at Terminal 6 after each of Mr. McEllrath's visits to Portland for circumstantial evidence of his visit's (and thus ILWU's) effect on productivity, because during his deposition Mr. McEllrath did not have particularly good recollection of his visits to Portland. ICTSI further argues that Mr. McEllrath's calendar might have contained information to impeach his testimony that he delegated the Terminal 6 dispute to Mr. Sundet. It is impossible to gauge the calendars' full relevance because they have been destroyed. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Id.* (emphasis added in *Leon*) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). Accordingly, destroying the calendars was spoliation of evidence.

In considering whether to impose a sanction and, if so, what type of sanction to impose, the Court considers three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple Inc.*, 888 F. Supp. 2d at 992; *see also Singleton v. Kernan*, 2018 WL 5761688, at *3 (S.D. Cal. Nov. 1, 2018). "The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959.

With regard to the first factor, the degree of fault, although there is some fault in either counsel failing properly to instruct Mr. McEllrath to preserve his calendars or in him failing to understand their relevance, the Court does not find it to be particularly culpable or bad faith destruction. The Court also does not find, in considering the second factor, that there is significant prejudice to ICTSI resulting from the destruction of the calendars. ICTSI argues that the calendars could have shown Mr. McEllrath's travel to Portland or when he and Mr. Sundet were in the same location and could have spoken about the dispute at Terminal 6. ICTSI, however, deposed both Mr. McEllrath and Mr. Sundet and were able to ask about those types of meetings and discussions. ICTSI also had other witnesses to ask when or how many times Mr. McEllrath traveled to Portland. ICTSI does not argue that Mr. McEllrath was untruthful in his testimony that he only traveled twice to Portland. Because, however, there may have been some other meetings or travel noted in the calendars that witnesses no longer remember due to the passage of time, and Mr. McEllrath could not recall the specific dates so that ICTSI could track productivity statistics, some prejudice did result from the destruction of the calendars.

Regarding the third factor, the Court denies ICTSI's request for a sanction either precluding evidence or having the Court give an adverse inference instruction. Considering all the circumstances, the Court finds that an appropriate sanction is allowing ICTSI (or the Court) to inform the jury of the destruction of Mr. McEllrath's calendars[3] and allowing ICTSI to argue to the jury about the implications of that destruction. The Court, however, will not instruct the jury that it must or even may make certain "adverse inferences" against the ILWU Entities or about what may have been contained on the calendars, although ICTSI will not be precluded from making any such arguments to the jury. The ILWU Entities also will not be precluded from making any arguments in response, including regarding Mr. McEllrath's minimal involvement in the dispute. Further, although the ILWU Entities will be able to introduce testimony from Mr. McEllrath about what information he generally puts in his calendars, they will not be able to introduce evidence regarding any specific information that might have been contained in the destroyed calendars.

### 3. Rule 30(b)(6) Deposition Conduct

ICTSI asserts that Local 8 did not adequately prepare Stuart Strader, a witness designated under Rule 30(b)(6), and that counsel continually made improper objections during the Rule 30(b)(6) deposition, which cumulatively resulted in the equivalent of Mr. Strader "not showing up" for the deposition. According to ICTSI, this conduct warrants a sanction. ICTSI argues that Mr. Strader admitted throughout his deposition that he was not informed of the topics on which he was designated, he reviewed few relevant documents, and that he testified only as to his own personal knowledge. ICTSI also argues that counsel instructed Mr. Strader not to answer

---

[3] The specifics regarding the notification to the jury, whether by ICTSI, the Court, or stipulation of the parties, will be determined not later than the final pretrial conference. The parties are directed to confer regarding the possibility of reaching a stipulated statement.

questions that the Court in its Discovery Opinion specifically ordered be answered. ICTSI further argues that the ILWU Entities improperly instructed other witnesses designated under Rule 30(b)(6) not to answer questions, including instructing the witness designated regarding electronic discovery not to answer questions regarding how the ILWU Entities communicated their litigation hold obligations to the appropriate personnel.

The ILWU Entities respond that the Rule 30(b)(6) topics were unreasonably broad, the Court indicated during a January 15, 2019, telephone conference that it would not be receptive to a motion for sanctions, and that counsel repeatedly stated that the objections were to the form of the question, which sought attorney-client and work product information but that ICTSI's counsel could have rephrased the questions to reach only underlying facts. Thus, argues the ILWU Entities, sanctions are not warranted.[4]

### a. Local 8—Stuart Strader

As an initial matter, the ILWU Entities are conflating the Court's comments during the January 15th telephone call regarding Rule 30(b)(6) topics 2, 8, 10, 13, and 20, with topics 16, 17, and 25, which the Court ruled on in its Discovery Opinion and are the subject of the privilege objections that are partially the basis of this motion. For topics 2, 8, 10, 13, and 20, during the January 15th telephone call, the Court acknowledged that the topics were broad, but instead of striking the topics, the Court took a "middle ground" and allowed them to be asked of the Rule 30(b)(6) witnesses, but noted with respect to "substantive" questions that if the witness answered in good faith "I don't know," then the Court would not be "particularly sympathetic" to a motion for sanctions or contempt. The Court was only discussing topics 2, 8, 10, 13, and 20 at that time.

---

[4] The ILWU Entities also argue that ICTSI's counsel did not adequately confer. The Court finds that conferral was adequate.

The Court addressed topics 16, 17, and 25 in its Discovery Opinion. Those topics were not addressed on the January 15, 2019 telephone call. In the Discovery Opinion, among other things, the Court narrowed the scope of the ILWU Entities' required responses to Topics 16, 17, and 25. *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.* ("*ILWU I*"), 2018 WL 6305665, at *16-17 (D. Or. Dec. 3, 2018). The Court narrowed these topics to the relevant specific instances, acts, or failures to act for which the ILWU Entities intended to provide evidence at trial, plus generally the types of acts or instances the ILWU Entities would find concerning for the particular topic. *Id.*

The Court also notes that topics 16, 17, and 25 do not seek information protected by the attorney-client privilege or work product doctrine. The specific instances of ICTSI's purported mismanagement or safety concerns are not communications providing legal advice (attorney-client privileged communications) or documents prepared in anticipation of litigation (subject to work product protection). The Court, however, limited the Rule 30(b)(6) witness to only specific instances for which the ILWU Entities would present evidence at trial. ICTSI questioning the witness about evidence the ILWU Entities intend to rely on at trial triggered the ILWU Entities' concern regarding the attorney-client privilege and work-product doctrine. The reason the Court limited the specific instances of alleged safety problems and mismanagement only to those that were going to be used at trial was to reduce the burden on the ILWU Entities. Several weeks before trial, the ILWU Entities presumably had that information readily available. It therefore would not be unduly burdensome to prepare a Rule 30(b)(6) witness with that information, as compared to preparing a witness with every single instance of purported mismanagement and safety concerns.

Regarding the other topics, including topics against which the ILWU Entities asserted no objections and topics for which the Court granted in part the ILWU Entities' motion for protective order, the ILWU Entities were under an obligation to prepare Mr. Strader as a Rule 30(b)(6) witness, which requires preparation beyond his personal knowledge. *See, e.g.*, *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 660-61 (D. Or. 2015). His response at his Rule 30(b)(6) deposition that he only reviewed his personal deposition and declaration and was not even provided a copy of the topics on which he was designated as the corporate representative witness is not acceptable preparation for a corporate designee. *Id.* at 661 ("Under this rule, companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter. For these reasons, the purpose underlying Rule 30(b)(6) would be frustrated if a corporate party produces a witness who is unable or unwilling to provide the necessary factual information on the entity's behalf." (quotation marks, alterations, and citation omitted)).

Because trial has been postponed in this case, the Court will allow the reopening of the Rule 30(b)(6) deposition(s) for Local 8, with the deposition(s) to take place within 30 days from the date of this Opinion and Order. The ILWU Entities remain under a more relaxed standard of preparation for topics 2, 8, 10, 13, and 20, as discussed during the telephone conference of January 15, 2019. For topics 16, 17, and 25, the ILWU Entities need only prepare the witness as ordered by the Court in its Discovery Opinion. Under normal circumstances, questions asking what evidence a party will rely on at trial are not appropriate. In this instance, the Court specifically ordered that the ILWU Entities only had to prepare their designated corporate representative witnesses with instances that will be relied on by the ILWU Entities at trial. This

understandably may have caused confusion during the deposition. To the extent questions along the lines of "what instances will you rely on at trial" create concern regarding privilege or work product, the Court will allow the questions to focus on the Court's Discovery Opinion, such as "describe ICTSI's specific acts that interfered with productivity as ordered by the Court" and "describe the general concerns about ICTSI interfering with productivity as ordered by the Court." That will eliminate any concern of an open-ended question requiring more instances than ordered by the Court while also eliminating the concern of a question focused on what will be presented at trial. The witness, however, need only be educated regarding the incidents, working conditions, and the like that the ILWU Entities plan to rely on at trial.

Additionally, at oral argument ICTSI explained by way of example that in discovery responses the ILWU Entities never identified who at Local 8 was responsible for conveying to members the Court's injunction order. At one point Local 8 identified that Local 8's "Secretary/Treasurer" was responsible. At the Rule 30(b)(6) deposition, Mr. Strader testified that he did not know who the responsible party was or who the Secretary/Treasurer was at the relevant time, but that he could review records and obtain that information. Because this was a specific topic, ICTSI contends that Mr. Strader should have been prepared with this information. The Court agrees. ICTSI adds that only recently has it been disclosed that Mr. Bitz personally spoke to ILWU members about the injunction. Accordingly, the Court will reopen discovery to allow ICTSI to take the deposition of Mr. Bitz relating to this issue, for a maximum of four hours.

    b.  **Electronic Discovery**

Regarding ICTSI's argument that the Rule 30(b)(6) witness designated regarding electronic discovery was not properly prepared to discuss the litigation hold or was improperly instructed not to discuss this topic, this argument is rejected. ICTSI did not include the ILWU

Entities' litigation hold in any Rule 30(b)(6) topic. "As one court has explained, 'to allow the Rule to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.'" *Memory Integrity*, 308 F.R.D. at 661 (emphasis in original) (quoting *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006). Without including litigation hold practices as a topic, ICTSI cannot now complain that the litigation hold was not appropriately discussed in the Rule 30(b)(6) deposition.

**C. Conclusion**

ICTSI's motion for sanctions (ECF 364) is GRANTED IN PART as stated in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 5th day of April, 2019.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge