**Susan J. Harriman** (CA No. 111703)
**Dan Jackson** (CA No. 216091)
**Brook Dooley** (CA No. 230423)
**Philip J. Tassin** (CA No. 287787)
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
415-391-5400 / Fax: 415-397-7188
sharriman@keker.com
djackson@keker.com
bdooley@keker.com
ptassin@keker.com

**Robert A. Shlachter** (OSB No. 911718)
**Timothy S. DeJong** (OSB No. 940662)
**Lydia Anderson-Dana** (OSB No. 166167)
STOLL BERNE P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
503-227-1600 / Fax: 503-227-6840
rshlachter@stollberne.com
tdejong@stollberne.com
landersondana@stollberne.com

(Admitted *Pro Hac Vice*)

*Attorneys for Defendants*

INTERNATIONAL LONGSHORE AND WAREHOUSE UNION *and* ILWU LOCAL 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| ICTSI OREGON, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION *and* ILWU LOCAL 8,<br><br>Defendants. | Case No.  3:12-CV-01058-SI<br><br>**MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND FOR RECONSIDERATION UNDER** *GASOLINE PRODUCTS* **AND** *HASBROUCK*<br><br>Judge:      Hon. Michael H. Simon |

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND FOR
RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

1378281.v1

# TABLE OF CONTENTS

**Page**

LOCAL RULE 7-1 CERTIFICATION ............................................................................ 1

MOTION ...................................................................................................................... 1

ARGUMENT ................................................................................................................. 2

    A.    Applicable standards for relief under 28 U.S.C. § 1292(b). ........................ 2

    B.    The standards for relief under 28 U.S.C. § 1292(b) are satisfied here.......... 5

    C.    Certifying the Order for interlocutory appeal would present the Ninth Circuit with at least three controlling and crucial questions of law. ............. 7

        1.    The Ninth Circuit should decide, sooner rather than later, whether this Court misinterpreted or misapplied *Mead*. .................................. 7

        2.    The Ninth Circuit should decide, sooner rather than later, whether ICTSI entangled itself in the dispute. ................................................ 13

        3.    The Ninth Circuit should decide, sooner rather than later, whether the ILWU waived arguments for purposes of Rule 50(b), despite having expressly preserved them under Rule 50(a). ........................ 15

    D.    A new trial limited to damages would violate *Gasoline Products* and *Hasbrouck*. .............................................................................................. 18

CONCLUSION .......................................................................................................... 21

1378281.v1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alabama v. Blue Bird Body Co.*,
    573 F.2d 309 (5th Cir. 1978) ................................................................................................. 19

*Atlas Food Systems & Services, Inc. v. Crane National Vendors, Inc.*,
    99 F.3d 587 (4th Cir. 1996) ........................................................................................... *passim*

*Bohack Corp. v. Iowa Beef Processors, Inc.*,
    715 F.2d 703 (2d Cir. 1983) ................................................................................................ 20

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ................................................................................................... 16, 17

*In re Fosamax Prod. Liab. Litig.*,
    No. 06 CIV. 9455 JFK, 2011 WL 2566074 (S.D.N.Y. June 29, 2011) ........................ *passim*

*Fulton v. Plumbers & Steamfitters*,
    695 F.2d 402 (9th Cir. 1982) ............................................................................ 11, 13, 14, 20

*Gasoline Prods. Co. v. Champlin Ref. Co.*,
    283 U.S. 494 (1931) .......................................................................................... 1, 6, 18, 19

*Guerrero-Lasprilla v. Barr*,
    No. 18-1015, 2020 WL 1325822 (U.S. Mar. 23, 2020) .......................................................... 5

*Hasbrouck v. Texaco, Inc.*,
    663 F.2d 930 (9th Cir. 1981) ......................................................................................... *passim*

*Jerden v. Amstutz*,
    430 F.3d 1231 (9th Cir. 2005) ...................................................................................... 15, 16

*Macsenti v. Becker*,
    237 F.3d 1223 (10th Cir. 2001) ........................................................................................... 17

*Marbled Murrelet v. Babbitt*,
    83 F.3d 1060 (9th Cir. 1996) ............................................................................................... 16

*Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, AFL-CIO*,
    523 F.2d 1371 (9th Cir. 1975) ....................................................................................... *passim*

ii

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND FOR
RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

1378281.v1

*Nat'l Woodwork Mfrs. Ass'n v. NLRB*,
  386 U.S. 612 (1967) ................................................................................. 6, 13, 14

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
  786 F.2d 794 (7th Cir. 1986) .......................................................................... 8

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ..................................................................*passim*

*RFD Publications, Inc. v. Oregonian Publ'g Co.*,
  No. CIV. 81-1057-B4, 1983 WL 692 (D. Or. Dec. 14, 1983), *aff'd* 749 F.2d
  1327 (9th Cir. 1984) ................................................................................*passim*

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ...................................................................................... 11

*Weisgram v. Marley Co.*,
  528 U.S. 440 (2000) ........................................................................................ 5

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*,
  668 F.2d 1014 (9th Cir. 1981) .................................................................*passim*

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
  516 U.S. 199 (1996) ........................................................................................ 6

**Statutes**

15 U.S.C. § 15(a) .......................................................................................... 19, 20

28 U.S.C. § 1292(b) .....................................................................................*passim*

29 U.S.C. § 157 .................................................................................................. 13

29 U.S.C. § 187 ...........................................................................................*passim*

**Rules**

Fed. R. App. P. 5(a)(3) ...................................................................................... 1, 2

Fed. R. Civ. P. 50...........................................................................................*passim*

Local R. 7-1(a)....................................................................................................... 1

1378281.v1

**Other Authorities**

16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3930 (3d ed.
 2019) .................................................................................................................... 3, 7, 8

15B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3915.5 (2d ed.
 2019) ....................................................................................................................... 4, 6

Restatement (Third) of Torts: Apportionment of Liability § 26 (2000)..................................... 10

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND FOR
RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

## **LOCAL RULE 7-1 CERTIFICATION**

In compliance with Local Rule 7-1(a), the parties attempted in good faith, through telephone conferences and email correspondence, to resolve the issues presented here, but were unable to do so.

## **MOTION**

Defendants, the International Longshore and Warehouse Union (the International) and ILWU Local 8 (Local 8) (collectively the ILWU), hereby move, pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(a)(3), for this Court to amend its Opinion and Order dated March 5, 2020 ("Order") to certify that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The ILWU also moves for a stay pending any appeal. *See id.* And the ILWU moves the Court to consider whether the issue of damages "is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931); *see also Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 934 (9th Cir. 1981) (holding that damages and liability cannot fairly be separated under the Clayton Act, on which section 303 of the Taft-Hartley Act is based). If the Court declines to order a new trial on both liability and damages, that presents another question for interlocutory appeal under section 1292(b).

1

1378281.v1

## ARGUMENT

**A.    Applicable standards for relief under 28 U.S.C. § 1292(b).**

When an interlocutory order involves (1) a controlling question of law as to which (2) there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation, the Court may include such a statement in its order.  28 U.S.C. § 1292(b).  The Court also may amend a prior order to include such a statement "in response to a party's motion."  Fed. R. App. P. 5(a)(3).  Within ten days of such an amendment, the party seeking review may apply to the appropriate circuit court, which, in its discretion, may permit an appeal.  *See id.*; 28 U.S.C. § 1292(b).  Such an application does not automatically stay proceedings in the district court, but the Court may stay them.  *See* 28 U.S.C. § 1292(b).

*First*, a "controlling question of law" is one that could materially affect the outcome of the litigation.  *See*, *e.g.*, *RFD Publications, Inc. v. Oregonian Publ'g Co.*, No. CIV. 81-1057-B4, 1983 WL 692, at *4 (D. Or. Dec. 14, 1983), *aff'd* 749 F.2d 1327 (9th Cir. 1984) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) ("all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court")).

In *RFD*, for example, the district court found that the question at issue there— whether two ostensibly different products were distinct for antitrust purposes—was "controlling" because, if the district court's answer to that question was erroneous, "the entire case will have to be re-tried to another jury."  *Id.* at *4.  The Ninth Circuit agreed.

2

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

1378281.v1

*See RFD*, 749 F.2d at 1327; *see also*, *e.g.*, 16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3930 (3d ed. 2019) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district-court proceedings.").

***Second***, there is "substantial ground for difference of opinion" where "reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.  Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  The Ninth Circuit adopted this flexible approach in order to avoid "unnecessary, protracted litigation and a considerable waste of judicial resources."  *Id.* n.5 (citing 16 Fed. Prac. & Proc. § 3929 (2d ed. 1987)).

***Third***, the requirement that an appeal "may materially advance the ultimate termination of the litigation" is "closely tied to the requirement that the order involve a controlling question of law."  16 Fed. Prac. & Proc. § 3930 (3d ed. 2019).  As the Ninth Circuit held in *Reese*, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688.  An interlocutory appeal may materially advance the litigation where, for example, it may obviate an extra

"trip to the jury," or provide guidance about the scope of trial. *RFD*, 1983 WL 692, at *4, *aff'd* 749 F.2d at 1327; *accord In re Fosamax Prod. Liab. Litig.*, No. 06 CIV. 9455 JFK, 2011 WL 2566074, at *1, *9 (S.D.N.Y. June 29, 2011) (certifying order on post-trial motions under § 1292(b) after plaintiff rejected a remittitur: "appellate review at this point will prevent the possibility that a third trial of this case might be held").

Indeed, the Wright & Miller treatise—which the Ninth Circuit has cited as authoritative on the flexibility afforded by section 1292(b), *see Reese*, 643 F.3d at 688 n.5—states that "certifying the remittitur order for permissive interlocutory appeal under 28 U.S.C.A. § 1292(b)" is a "happy inspiration" that "deserves emulation." 15B Fed. Prac. & Proc. § 3915.5 (2d ed. 2019). For example, in *Atlas Food Systems & Services, Inc. v. Crane National Vendors, Inc.*, 99 F.3d 587 (4th Cir. 1996), after two trials and two rejected remittiturs, the district court certified an interlocutory appeal in order to avoid a third trial. *See id.* at 591. The Fourth Circuit agreed to hear the appeal, including the defendant's arguments that the district court erred in denying judgment as a matter of law and limiting the scope of the second trial to punitive damages. *Id.* Similarly, in *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014 (9th Cir. 1981), the Ninth Circuit allowed an interlocutory appeal under section 1292(b) to decide, among other questions, whether the district court erred in refusing to grant judgment notwithstanding the verdict. *See id.* at 1024, 1048–51; *see also*, *e.g.*, *Fosamax*, 2011 WL 2566074, at *1, *9 (certifying appeal under section 1292(b) after rejection of remittitur).

1378281.v1

**B.**     **The standards for relief under 28 U.S.C. § 1292(b) are satisfied here.**

Here, this Court's order denying the ILWU's motion for judgment as a matter of law involves controlling questions of law as to which there are substantial grounds for difference of opinion such that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  Broadly speaking, the controlling question is whether a reasonable jury would have had a legally sufficient basis to find the ILWU liable for the period after August 13, 2013 (though that overarching question involves several more specific questions, as discussed in sections C and D, below).

*First*, as the term "judgment as a matter of law" makes clear, it is a question of law whether the jury's liability determination was supported by legally sufficient evidence.  *See* Fed. R. Civ. P. 50; Order at 4–36 (applying the Court's opinion of the law to facts that were either undisputed or construed in ICTSI's favor); *cf. Guerrero-Lasprilla v. Barr*, No. 18-1015, 2020 WL 1325822, at *4 (U.S. Mar. 23, 2020) (interpreting the term "questions of law" to include "the application of a legal standard to undisputed or established facts").  Whether the liability verdict should be reversed is also a "controlling" question, because the Ninth Circuit's answer could materially affect the outcome of the litigation.  *See*, *e.g.*, *RFD*, 1983 WL 692, at *4, *aff'd* 749 F.2d at 1327.  The Ninth Circuit might decide that the ILWU is entitled to judgment as a matter of law, without a new trial.  *See* Fed. R. Civ. P. 50; *Weisgram v. Marley Co.*, 528 U.S. 440, 457 (2000).  Or the Ninth Circuit might decide that there must be a new trial on liability— whether under Rule 50, or because of errors "fairly included within the certified order,"

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

*Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996), or because the issue of damages "is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial," *Gasoline Prods.*, 283 U.S. at 500; *see also Hasbrouck*, 663 F.2d at 934.

     ***Second***, there is substantial ground for difference of opinion.  Indeed, there are several legitimate controversies, as discussed below.  *See* §§ C-D, *infra*.  The Court's decision to uphold the jury's liability findings presents "novel legal issues," about which "fair-minded jurists might reach contradictory conclusions."  *Reese*, 643 F.3d at 688.

     ***Third***, an interlocutory appeal may materially advance the litigation, either by avoiding retrial entirely, or by determining in advance the proper scope of any retrial, thereby avoiding serial retrials.  *See*, *e.g.*, *RFD*, 1983 WL 692, at *4, *aff'd* 749 F.2d at 1327; *Inglis*, 668 F.2d at 1024; *Atlas*, 99 F.3d at 591; *Fosamax*, 2011 WL 2566074, at *1, *9; 15B Fed. Prac. & Proc. § 3915.5 ("certifying the remittitur order for permissive interlocutory appeal" is a "happy inspiration" that "deserves emulation").

     Turning from the overarching question—whether the liability verdict may be reversed or limited—to more specific questions, the following should be decided by the Ninth Circuit sooner rather than later: (1) whether this Court misinterpreted or misapplied *Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, AFL-CIO*, 523 F.2d 1371 (9th Cir. 1975); (2) whether ICTSI "entangled [it]self in the vortex of the primary dispute," *Nat'l Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 627 (1967); (3) whether arguments

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

that are sufficiently preserved under Rule 50(a) must *also* be raised in separate motions to exclude or strike the evidence at issue to preserve those arguments under Rule 50(b); and (4) whether a retrial limited to damages will deprive the ILWU of a fair trial, contrary to *Gasoline Products*, *Hasbrouck*, and other authorities discussed below.

### C. Certifying the Order for interlocutory appeal would present the Ninth Circuit with at least three controlling and crucial questions of law.

#### 1. The Ninth Circuit should decide, sooner rather than later, whether this Court misinterpreted or misapplied *Mead*.

This Court has acknowledged room to question its interpretation of *Mead*. *See*, *e.g.*, Oct. 11, 2019 Tr. at 6:6–66:2; Trial Tr. Vol. 8 at 1702:13–1703:4. The ILWU intends to seek review on that point. Unless this Court authorizes appeal under section 1292(b) now, however, the ILWU's first opportunity to seek review would arise—if ever—after the second trial. If the ILWU's position is correct, the likely result is a third trial. Immediate review is preferable to an unnecessary trial and related proceedings.

Furthermore, immediate review is preferable because the proper interpretation and application of *Mead*, among other crucial questions, may "elude effective review on appeal from final judgment." 16 Fed. Prac. & Proc. § 3930 (3d ed. 2019). It is all too likely that the ILWU will be forced into bankruptcy as a result of a second trial on damages—certainly if any award equals or exceeds the amount of the remittitur, on top of the expense of the second trial itself. Even if the ILWU can litigate its appeal despite bankruptcy, irreparable harm will have already occurred: if the Ninth Circuit reverses, the injury of bankruptcy and the intervening harms to the ILWU's members cannot be

undone.  Judicial consideration of such hardships is "of increasing importance in an age of titanic damage judgments," like the one ICTSI seeks here.  *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986).  Indeed, this Court previously took steps to prevent this litigation from prematurely forcing "the bankruptcy of a union that traces its beginnings to at least 1933 and arguably into the 19th century." ECF 627 at 2.  Likewise, given the "hardship" of the second trial, and the risk that it will preclude appellate review, "it would be a mistake to defeat the opportunity for desirable appeals by insisting over-much on the 'controlling question' and 'materially advance' elements of § 1292(b)."  16 Fed. Prac. & Proc. § 3930 (3d ed. 2019).

In any case, the "controlling question" and "materially advance" elements of section 1292(b) are satisfied here, as is the "substantial ground for difference of opinion" element, as confirmed by this Court's well-founded expressions of doubt concerning its interpretation of *Mead*.  *See*, *e.g.*, Oct. 11, 2019 Tr. at 6:6–66:2; Trial Tr. Vol. 8 at 1702:13–1703:4.  The ILWU contends that it is entitled to judgment as a matter of law, or a complete retrial, because the law and the evidence refute the jury's findings that the ILWU engaged in, and *only* in, unlawful secondary activity after August 13, 2013; that such activity caused *all* of ICTSI's alleged damages; and that *no* non-labor factors caused ICTSI *any* losses.  *See* ECF 654 & 653; *see also* Feb. 14, 2020 Tr. at 123:15–124:3 (ILWU's counsel arguing that, "if there is a retrial, it should not only be about damages, but it should also be about causation and the unlawful activity").  This Court has rejected the ILWU's arguments, in part, relying on the Court's interpretation of *Mead*.  *See* Order

8

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK* CASE NO. 3:12-CV-01058-SI

1378281.v1

at 26–27, 29.  Although the Court also cited other authorities, its interpretation of *Mead* has been a constant, controversial theme in this case.  *See*, *e.g. id.*; Oct. 11, 2019 Tr. at 6:6–66:2; Trial Tr. Vol. 8 at 1702:13–1703:4.

The Order cites *Mead* for the proposition that "when lawful primary and unlawful secondary purposes motivate conduct, if the unlawful secondary purpose is a substantial factor or materially contributed to bringing about the loss, then the loss is fully recoverable."  Order at 26–27.  According to the Court, because "a jury reasonably could find that the reefer work remained an important issue for ILWU after August 13, 2013," *id.* at 22, "all the conduct at Terminal 6 may be considered illegal and all the damages caused by that conduct are recoverable by ICTSI," *id.* at 29 (citing *Mead*, 523 F.2d at 1379).

In *Mead*, however, the Ninth Circuit reversed the district court because its "judgment rested upon the premise that the injury was compensable simply because the picketing was motivated in part by the Union's unlawful secondary purpose."  *Mead*, 523 F.2d at 1379.  *Mead* should not be read to support the conclusion that *all* conduct was illegal, and *all* alleged damages are recoverable, where ICTSI merely showed, at most, that the reefer work remained an "important issue" after August 13, 2013, Order at 22, in the context of ongoing litigation, but did not even come close to proving that unlawful secondary activity was "the major or dominant reason" for *all* of its alleged damages, *Mead*, 523 F.2d at 1377 n.7.  "[W]here a union has engaged in both lawful and unlawful conduct, and the consequences of those activities are separable, the Union is liable under

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

section 303" of the Taft-Hartley Act, 29 U.S.C. § 187, "*only* for injuries proximately caused by the illegal activity."  *Id.* at 1378 (emphasis added) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 731–32 & n.17 (1966); and *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 261–62 (1964)).

Here, the Court asked the jury to decide whether the consequences of lawful and unlawful conduct were separable, but the jury never answered that question, because it found—unreasonably, and contrary to the law and the evidence—that the ILWU did not engage in *any* lawful activity after August 13, 2013, and that *no* non-labor factors caused ICTSI *any* losses.  *See* ECF 620.  Moreover, the jury was allowed to avoid answering the crucial question of separability because the Court did not allocate the burden of proof on that issue to ICTSI.  The Court relied on the Restatement (Third) of Torts: Apportionment of Liability § 26 (2000), to assign the burden of proof to the ILWU.  *See* Tr. Vol. 8 at 1699:20–1700:17.  But that section—indeed, that entire Restatement—only addresses "apportionment of liability among two or more persons who caused the divisible damages."  Rest. 3d § 26, cmt. h; *see also* Rest. 3d, Intro. ("This Restatement addresses apportionment of liability when more than one person is legally liable for an injury.").  That is not the issue here, so the Third Restatement is inapposite.

The Ninth Circuit, moreover, did not rely on the Third Restatement in *Mead*. Most explicitly, and consistent with legislative history, the court in *Mead* relied on antitrust law.  *See Mead*, 523 F.2d at 1376 (noting that the "language of section 303 was drawn directly from the treble damage provision of the Clayton Act"); *see also*, *e.g.*,

10

1378281.v1

*Fulton v. Plumbers & Steamfitters*, 695 F.2d 402, 405–08 & n.5 (9th Cir. 1982) (explaining that Congress intended for courts to look to antitrust cases for guidance in interpreting section 303). Accordingly, this Court should have assigned the burden of apportionment to ICTSI. *See*, *e.g.*, ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, Instruction 4: Causation and Disaggregation, at 310–11 (2016) (plaintiff has the burden of apportionment, and if it fails to carry that burden, its claim must fail as a matter of law). At the very least, ICTSI should have been required to prove that the consequences of lawful and unlawful conduct are inseparable. Without proof of such "special facts," *Gibbs*, 383 U.S. at 731, a plaintiff's recovery must be "strictly confined to the direct consequences of [unlawful] conduct, and does not include consequences resulting from associated peaceful picketing or other union activity," *id.* at 729; *see also Mead*, 523 F.2d at 1378.

The ILWU respectfully contends that this Court's interpretation and application of *Mead* is contrary to *Mead* itself, the Supreme Court cases on which *Mead* relies, and subsequent authorities, including *Fulton*. As the Ninth Circuit held in *Fulton*, when Congress enacted section 303 of the Taft-Hartley Act, it did not intend to impose "expansive" liability. *Fulton*, 695 F.2d at 405. On the contrary, the "imposition of unlimited liability would tend to subvert our national labor policy" by "destabilizing" unions, rendering them "incapable of effective representation," inhibiting "legitimate union activity," and "frustrating the exercise of rights granted by the National Labor Relations Act." *Id.* at 408. That describes this case.

11

In any event, there is certainly substantial ground for difference of opinion. As this Court acknowledged, *Mead* is "confus[ing], and . . . there is enough in [t]here that each side can then make their arguments in their client's interest." Oct. 11, 2019 Tr. at 7:21-24. A "problematic question" is raised by what the Court perceived to be "a difference in the way the antitrust laws deal with aggregation and the way that tort principles, at least expressed by the Restatement and general tort principles, deal with this aggregation issue." *Id.* at 8:16-20. So "what do I do," the Court asked, "given that *Mead* seems to point to both antitrust, which may send us in one direction, and general tort principles of causation on disaggregation, which may send us in another direction?" *Id.* at 8:21-25. As the Court stated, "this is an issue here where you're not going to hear from me on my final decision on what to do about this until you get my final jury instructions on disaggregation . . . so far, I have been going back and forth on this issue." *Id.* at 10:4–11:14. A reasonable jurist might ask, as this Court asked ICTSI's counsel: "Doesn't *Mead* tell us we need to look to antitrust laws, and then when we look to contemporary antitrust laws, doesn't contemporary antitrust damages tell us, well, these things can often be disaggregated, at least if you apply econometric tools?" *Id.* at 12:11-15. The Court ultimately answered that question negatively, but acknowledged that "whether I get it right or whether I get it wrong, you are at least focused for somebody's appeal." *Id.* at 60:23–62:5; *see also id.* at 63:16 ("I'm still struggling"); Trial Tr. Vol. 8 at 1703:2-4 (The Court: "I understand [the ILWU's] point. I respect it. I'm rejecting it

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK* CASE NO. 3:12-CV-01058-SI

now.  If I get reversed on that, I will not—so be it, I'll learn from it.").  In sum, "fair-minded jurists might reach contradictory conclusions."  *Reese*, 643 F.3d at 688.

If the Ninth Circuit interprets *Mead* as the ILWU does—or if it holds, *Mead* notwithstanding, that plaintiffs must carry burdens under section 303 that are at least as heavy as the burdens antitrust plaintiffs must bear; or otherwise disagrees with this Court—then either judgment will be entered for the ILWU; or there will be a new trial on liability; or, at the very least, there will be guidance about any trial on damages.  Thus, the proper interpretation and application of *Mead* is "a controlling question of law," the Ninth Circuit's answer to which "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see*, *e.g.*, *RFD*, 1983 WL 692, at *4, *aff'd* 749 F.2d at 1327; *Inglis*, 668 F.2d at 1024; *Atlas*, 99 F.3d at 591; *Fosamax*, 2011 WL 2566074, at *9.

### 2.    The Ninth Circuit should decide, sooner rather than later, whether ICTSI entangled itself in the dispute.

As noted above, Congress did not intend for section 303 of the Taft-Hartley Act to impose "expansive," much less "unlimited," liability.  *Fulton*, 695 F.2d at 405, 408.  On the contrary, both Congress and the Supreme Court have mandated that secondary disputes must be narrowly defined: "however difficult the drawing of lines more nice than obvious, the statute compels the task."  *Nat'l Woodwork*, 386 U.S. at 645; *see also*, *e.g.*, 29 U.S.C. § 157 ("Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ."); *id.* § 158(b)(4)(ii)(B) ("nothing

13

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing"); *id.* § 163 ("Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right."); *Nat'l Woodwork*, 386 U.S. at 643 ("these provisions caution against reading statutory prohibitions as embracing employee activities to pressure their own employers into improving the employees' wages, hours, and working conditions").  In particular, the law mandates drawing a line "where the secondary employer against whom the union's pressure is directed has entangled [it]self in the vortex of the primary dispute."  *Nat'l Woodwork*, 386 U.S. at 627.

This Court held that ICTSI did not entangle itself in the dispute because, according to the Court, "the evidence supports the jury's finding that the reefer dispute remained a substantial motivating factor for ILWU's conduct after August 13, 2013," and "this finding makes all of ILWU's conduct illegal secondary activity."  Order at 28–29.  As already discussed above, however, "reasonable jurists might disagree."  *Reese*, 643 F.3d at 688; *see*, *e.g.*, Oct. 11, 2019 Tr. at 6:6–66:2; Trial Tr. Vol. 8 at 1702:13–1703:4.  A reasonable jurist might conclude "that ICTSI entangled [it]self in the vortex of the primary dispute," *Nat'l Woodwork*, 386 U.S. at 627, and that this Court's contrary conclusion reflects an overly "expansive interpretation" of liability under section 303, which penalizes and inhibits "legitimate union activity, frustrating the exercise of rights granted by the National Labor Relations Act," *Fulton*, 695 F.2d at 405, 408.  If the Ninth

Circuit were to draw that conclusion, the result would either be judgment for the ILWU, or a new trial on liability.

Thus, whether ICTSI entangled itself in the dispute is "a controlling question of law as to which there is substantial ground for difference of opinion," such that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see, e.g., Reese*, 643 F.3d at 688; *RFD*, 1983 WL 692, at *4, *aff'd* 749 F.2d at 1327; *Inglis*, 668 F.2d at 1024; *Atlas*, 99 F.3d at 591; *Fosamax*, 2011 WL 2566074, at *1, *9.

### 3. The Ninth Circuit should decide, sooner rather than later, whether the ILWU waived arguments for purposes of Rule 50(b), despite having expressly preserved them under Rule 50(a).

In its Order, this Court held that the ILWU waived some of its arguments for purposes of Rule 50(b), even though the ILWU's Rule 50(a) motions "sufficiently preserved the issues." Order at 10. But in *Jerden v. Amstutz*, 430 F.3d 1231 (9th Cir. 2005), on which this Court relied, the Ninth Circuit indicated that its waiver ruling depended on the distinction between an argument based on "a rule of evidence," and an argument that the plaintiffs failed to support "an essential element of their case." *Id.* at 1238. If the defendant in *Jerden* "had intended to argue in the district court that Plaintiffs had failed to present evidence as to all elements of their claim, Defendant might have tried to move for a directed verdict rather than for an instruction limiting portions of [the expert's] testimony." *Id.* n.8.

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

Here, unlike the defendant in *Jerden*, the ILWU moved for judgment as a matter of law on the basis that "a reasonable jury would not have a legally sufficient evidentiary basis to find for" ICTSI.  Fed. R. Civ. P. 50(a)(1).  Such a motion "may be made *at any time before the case is submitted to the jury*."  Fed. R. Civ. P. 50(a)(2) (emphasis added).  Nothing in *Jerden* indicates any intention to deviate from the plain language of Rule 50—nor could it.  On the contrary, the Ninth Circuit indicated that the defendant's argument would not have been waived if it had been directed to the plaintiffs' failure to support an element of their claim.  *See* 430 F.3d at 1238 & n.8.

This Court also relied on *Marbled Murrelet v. Babbitt*, 83 F.3d 1060 (9th Cir. 1996), where the court found waiver "even though [the defendant] couche[d] its argument in terms of insufficiency of the evidence, because its insufficiency argument is identical to the admissibility objection which it waived."  *Id.* at 1066.  But the ILWU's argument under Rule 50 was *not* identical to an admissibility objection.  *See*, *e.g.*, Feb. 14, 2020 Tr. at 110:1–112:16.  Even evidence that is admissible may, nonetheless, be insufficient to "support a jury's verdict" where, as here, it is "'weak' at best."  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (quoting *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 564–65 (1981)).  That describes ICTSI's damages evidence—indeed, this Court held that the testimony of ICTSI's damages expert was entitled to "little weight."  Order at 47.  As the ILWU argued, the weakness of ICTSI's damages evidence supports judgment as a matter of law

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

for the ILWU, regardless of any purported waiver of admissibility objections. *See*, *e.g.*, Feb. 14, 2020 Tr. at 110:1–112:16.

In *Macsenti v. Becker*, 237 F.3d 1223 (10th Cir. 2001), on which the Court also relied, the argument at issue was about admissibility, and the Tenth Circuit reviewed it under the "plain error" standard. *Id.* at 1231. Although the defendant brought a contemporaneous motion for judgment as a matter of law, the defendant apparently did not assert, and the Tenth Circuit did not consider, an argument about the insufficiency of the evidence as distinct from its admissibility. Nor did the Tenth Circuit consider the rule that a "motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2).

None of the cases on which the Court relied held that where, as here, a party has undeniably preserved its legal-insufficiency arguments under Rule 50(a), it may nevertheless be deemed to have waived those arguments for purposes of Rule 50(b) by not presenting them earlier in the form of admissibility objections. Surely "reasonable jurists might disagree" about this issue. *Reese*, 643 F.3d at 688. Indeed, this Court stated that it was "struggling with waiver." Feb. 14, 2020 Tr. at 88:14.

The Ninth Circuit might agree with the ILWU and this Court that ICTSI's damages expert's testimony is entitled to "little weight," Order at 47, and then conclude that ICTSI's evidence "cannot support [the] jury's verdict," *Brooke*, 509 U.S. at 242, *regardless of its admissibility*. Moreover, the Ninth Circuit might overturn this Court's waiver determination based on the rule that a "motion for judgment as a matter of law

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

may be made at any time before the case is submitted to the jury." Fed. R. Civ. P.

50(a)(2). "That is sufficient to advance materially the litigation, and therefore

certification of the interlocutory appeal [is] permissible." *Reese*, 643 F.3d at 688.

### D.    A new trial limited to damages would violate *Gasoline Products* and *Hasbrouck*.

Finally, the issue of damages here "is so interwoven with that of liability that the

former cannot be submitted to the jury independently of the latter without confusion and

uncertainty, which would amount to a denial of a fair trial." *Gasoline Prods.*, 283 U.S. at

500; *accord Hasbrouck*, 663 F.2d at 933–34. It is unclear whether this Court considered

*Gasoline Products* and its progeny, including *Hasbrouck*, before ordering that the new

trial will be limited to damages. Thus, in addition to seeking certification under section

1292(b), the ILWU asks the Court to either consider, or reconsider, as the case may be,

whether such a limited retrial would amount to a denial of a fair trial under *Gasoline

Products* and *Hasbrouck* (among other authorities). If this Court maintains, despite

*Gasoline Products* and *Hasbrouck*, that the retrial should be limited to damages, this

question should also be certified for interlocutory appeal.

In *Gasoline Products*, the plaintiff sued for royalties and the defendant

counterclaimed for breach of contract. *Gasoline Prods.*, 283 U.S. at 495. The jury found

for the defendant on the counterclaim, but the First Circuit reversed because of errors

relating to the measure of damages. *Id.* at 496. In directing a new trial, the First Circuit

"restricted the issues to the determination of damages only." *Id.* The Supreme Court

held that partial retrials are only permitted under the Seventh Amendment where "it

1378281.v1

clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Id.* at 500. That condition was not satisfied in *Gasoline Products* because, although the "verdict on the counterclaim may be taken to have established the existence of a contract and its breach," material facts about the extent of liability were left unspecified. *Id.* Thus, "the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." *Id.* The Supreme Court, therefore, mandated "a new trial of all the issues raised by the counterclaim." *Id.* at 501.

In *Hasbrouck*, moreover, the Ninth Circuit held that under section 4 of the Clayton Act—on which section 303 of the Taft-Hartley Act is based—liability and damages are not fairly separable for purposes of a retrial limited to damages. *Hasbrouck*, 663 F.2d at 934. In *Hasbrouck*, the Ninth Circuit held that the defendant was entitled to a new trial because the damages award in the first trial was tainted by error, and went on to reject the appellants' request that it "affirm the jury's finding of liability and remand on the measure of damages issue alone." *Id.* Instead, the Ninth Circuit remanded "for a new trial on both the issues of liability and amount of damages" because the determination of liability is *not* "fairly separable from the calculation of damages in a private antitrust action," given "the overlap between proof of injury for liability purposes and for damage calculation purposes under Clayton section 4." *Id.* (citing *Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978)).

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

As this Court is by now well aware, the language of section 303 of the Taft-Hartley Act "was drawn directly from" section 4 of the Clayton Act, *Mead*, 523 F.2d at 1376, and the Ninth Circuit looks to "judicial interpretations of section 4 for guidance in construing section 303," *Fulton*, 695 F.2d at 405.  Both section 303 of the Taft-Hartley Act and section 4 of the Clayton Act require a plaintiff to prove that he was "injured in his business or property by reason" of unlawful activity.  29 U.S.C. § 187(b); 15 U.S.C. § 15(a).  This "inevitably introduces the possibility that in the liability phase the first jury might find that there was such injury, while the second jury might on the same evidence of injury in the damage phase, find none."  *Blue Bird*, 573 F.2d at 318.  This "possibility of disparate findings" led the Fifth Circuit to conclude, and the Ninth Circuit to agree, "that 'in a private antitrust suit there is no neat dividing line between the issue of liability and damages,'" and that liability and damages should not be tried separately due to the "vague dividing line between liability and damages" under section 4 of the Clayton Act. *Id.* (quoting *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 21 (5th Cir. 1974)); *accord Hasbrouck*, 663 F.2d at 934.

The same conclusion follows under section 303 of the Taft-Hartley Act.  *See*, *e.g.*, *Mead*, 523 F.2d at 1376; *Fulton*, 695 F.2d at 405–08 & n.5.  A second jury cannot decide "the issues of causation and injury" without "considering the extent of the violation." *Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 709 (2d Cir. 1983).  Thus, it would be error to limit the retrial to damages, as this Court proposes in its Order.

20

If this Court disagrees, and maintains that the retrial will be limited to damages, this is yet another controlling question of law as to which there is substantial ground for difference of opinion, appellate resolution of which may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). If a new trial is held on damages alone, but the Ninth Circuit subsequently decides that the ILWU was deprived of a fair trial because of the overlap, under section 303 of the Taft-Hartley Act, "between proof of injury for liability purposes and for damage calculation purposes," *Hasbrouck*, 663 F.2d at 934, then the damages retrial will have been a waste of time and resources. Thus, the issue should be certified for interlocutory appeal, along with the other issues discussed above. *See*, *e.g.*, *Reese*, 643 F.3d at 688; *RFD*, 1983 WL 692, at *4, *aff'd* 749 F.2d at 1327; *Inglis*, 668 F.2d at 1024; *Atlas*, 99 F.3d at 591; *Fosamax*, 2011 WL 2566074, at *9.

## CONCLUSION

The Court should amend its Order to state that the new trial shall not be limited to damages, and should certify that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court should also stay proceedings pending appeal. *See id.*

Respectfully submitted,

Dated:  April 1, 2020                    KEKER, VAN NEST & PETERS LLP

                                        By:    */s/ Dan Jackson*_____

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE NO. 3:12-CV-01058-SI

## CERTIFICATE OF SERVICE

I hereby certify that on **April 1, 2020**, the motion above was served on the following:

☑ by **ELECTRONICALLY POSTING** to the ECF website of the District of Oregon, Portland Division.  The Court performed service electronically on all ECF-registered entities in this matter.

Jeffrey S. Eden (*jeden@schwabe.com*)          Attorneys for Plaintiff
Richard K. Hansen (*rhansen@schwable.com*)     ICTSI OREGON, INC.
Michael T. Garone (*mgarone@schwabe.com*)
Amanda T. Gamblin
(*agamblin@schwabe.com*)
Andrew J. Lee (*ajlee@schwabe.com*)
SCHWABE WILLIAMSON & WYATT, PC
1600-1900 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204

Peter Hurtgen (*phurtgen@chjllp.com*)          Attorneys for Plaintiff
CURLEY, HURTGEN & JOHNSRUD, LLP               ICTSI OREGON, INC.
4400 Bohannon Drive, Suite 230
Menlo Park, Ca 94025


*/s/ Dan Jackson*
Dan Jackson (CA No. 216091)

MOTION FOR CERTIFICATION AND STAY UNDER 28 U.S.C. § 1292(b), AND
FOR RECONSIDERATION UNDER *GASOLINE PRODUCTS* AND *HASBROUCK*
CASE No. 3:12-CV-01058-SI