IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ICTSI OREGON, INC., | Case No. 3:12-cv-1058-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION Local 8, | |
| Defendants. | |

Jeffrey S. Eden, Amanda T. Gamblin, Michael T. Garone, Richard K. Hansen, and Andrew J. Lee, SCHWABE, WILLIAMSON & WYATT PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204; Peter Hurtgen, CURLEY, HURTGEN & JOHNSRUD LLP, 4400 Bohannon Drive, Suite 230, Menlo Park, CA 94025. Of Attorneys for Plaintiff ICTSI Oregon, Inc.

Susan J. Harriman, Dan Jackson, and Brook Dooley, KEKER, VAN NEST & PETERS LLP, 633 Battery Street, San Francisco, CA 94111; Robert A. Shlachter, Timothy S. DeJong, and Lydia Anderson-Dana, STOLL BERNE PC, 209 SW Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Defendants International Longshore and Warehouse Union and International Longshore and Warehouse Union Local 8.

**Michael H. Simon, District Judge.**

After a ten-day trial, the jury returned a verdict in the amount of $93,635,000 in favor of

Plaintiff ICTSI Oregon, Inc. ("ICTSI") and against Defendants International Longshore and

Warehouse Union ("ILWU National") and International Longshore and Warehouse Union

Local 8 ("Local 8") (collectively, "ILWU"). The jury found that ILWU had engaged in illegal secondary boycott activities, in violation of § 303 of the Labor-Management Relations Act, 29 U.S.C. § 187. The Court received the jury's verdict and discharged the jury but deferred entering judgment.

ILWU filed post-trial motions under Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure. The Court denied ILWU's renewed motion for judgment as a matter of law under Rule 50(b). The Court also denied ILWU's motion for new trial under Rule 59(a) based on the jury's findings related to liability and causation. Further, the Court conditionally denied ILWU's motion for new trial on damages if ICTSI would agree to accept reduced damages in the amount of $19,061,248 but also conditionally ordered a new trial limited to damages if ICTSI were to reject remittitur. ICTSI rejected remittitur. A second trial, limited to damages, has not yet occurred.

Before the Court is ILWU's motion for: (1) reconsideration of the Court's order for new trial limited to damages; (2) certification for interlocutory appeal under 28 U.S.C. § 1292(b) of the Court's Opinion and Order resolving ILWU's post-trial motions; and (3) stay pending appeal. The Court has reviewed the written submissions of the parties and all *amici curiae* and heard oral argument on May 27, 2020. For the reasons that follow, the Court denies ILWU's motion for reconsideration, grants ILWU's motion for certification in part, and grants ILWU's motion for stay.

## DISCUSSION

### A.  Motion for Reconsideration

Rule 60(b) of the Federal Rules of Civil Procedure governs reconsideration of "a final judgment, order, or proceeding" of a district court. That rule allows a district court to relieve a party from a final judgment, order, or proceeding for the following reasons: "(1) mistake,

inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). A motion under Rule 60(b) must be made within a reasonable time but "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). The party making a motion under Rule 60(b) bears the burden of proof. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992). Reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation and quotation marks omitted); *see also Shalit v. Coppe*, 182 F.3d 1124, 1132 (9th Cir. 1999) (noting that "reconsideration is appropriate only in very limited circumstances"). "[M]otions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 670 (D. Nev. 2013) (alteration in original) (quoting *Cheffins v. Stewart*, 2011 WL 1233378, at *1 (D. Nev. Mar. 29, 2011)). A motion for reconsideration also "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945.

ILWU moves for reconsideration of the Court's order granting a new trial limited to damages. ILWU does not discuss the standards for reconsideration but presumably moves under subsection (b)(6) of Rule 60, the "catch-all" provision. "A movant seeking relief under Rule 60(b)(6) must show 'extraordinary circumstances' . . . ." *Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)). This rule is "'used sparingly as an equitable remedy to prevent manifest injustice.'" *Lal v. California*, 610 F.3d 518,

524 (9th Cir. 2010) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)).

ILWU argues that damages and liability are so intertwined in this case, and generally in cases under 29 U.S.C. § 187, that a court may not hold a trial limited to damages. ILWU argues that reconsideration is necessary to prevent the manifest injustice of separating liability from damages. In support of this argument, ILWU cites *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931), and *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930 (9th Cir. 1981).

In ILWU's 119 pages of briefing on its post-trial motions, however, ILWU never cited either *Gasoline Products* or *Hasbrouck*. Further, in its post-trial motions, ILWU moved alternatively for judgment as a matter of law, for new trial (on all issues, including liability), and for *new trial on damages*. ILWU also moved, in the further alternative, for remittitur. ILWU did *not* argue that if the Court were to deny ILWU's motions for judgment as a matter of law and for new trial based on liability but grant ILWU's motion for new trial on damages (or grant ILWU's request for remittitur and ICTSI were to reject remittitur), the Court would need to grant a new trial on *both* liability and damages. Indeed, ILWU argued just the opposite in its post-trial motions. ILWU specifically requested that the Court propose reduced damages of $3,983,669 and "if ICTSI rejects that remittitur, the Court should grant a new trial limited to damages for the time period from May 21, 2012 to August 13, 2013." ECF 653 at 14 and 70.

ILWU now argues that the Court may not grant a new trial limited to damages. ILWU also argues that if the Court were to deny a new trial conditioned upon remittitur and ICTSI were to reject remittitur, the Court would be required to order a new trial on both liability and damages. Yet these positions are inconsistent with ILWU's earlier arguments. In resolving ILWU's post-trial motions, if the Court would have agreed with the argument now being made

by ILWU and so fashioned a remittitur order, this would have been important information for ICTSI to consider before deciding whether to accept remittitur. This argument, however, was not made by ILWU until its pending motion for "reconsideration."

*Gasoline Products* and *Hasbrouck*, the cases cited by ILWU for its current argument, date from 1931 and 1981, respectively. They are not new law. ILWU's only argument for why it did not cite these decades-old cases in its post-trial motions and did not present the argument it now raises is that it did not need to because the Court had not yet ordered a new trial limited to damages. This argument is rejected.

ILWU should have raised this argument in its post-trial motions. ILWU requested the relief of remittitur and requested, in the alternative, a new trial limited to damages. Yet ILWU did not argue that if the Court were to grant this requested relief, the Court would be required to order a new trial on all issues, including liability. ILWU also specifically requested in its reply brief a new trial limited to damages, without expressing any issue based on *Gasoline Products* or *Hasbrouck*. Moreover, during oral argument on the post-trial motions, the Court expressed its concern with the testimony of ICTSI's damages expert, but ILWU did not raise any argument at that time about the need for a full retrial if the Court were to reject the jury's damage award as lacking in evidentiary support. Instead, ILWU again argued for a new trial limited to damages for the period from May 21, 2012 through August 13, 2013. When the Court asked ICTSI's counsel whether a new trial limited to damages could extend to the period including through 2017, depending on how the Court viewed the evidence, counsel for ILWU agreed, stating: "Right." ILWU gave no hint of its current position, either in briefs or at oral argument.

It is inappropriate to raise an argument for the first time in a motion for reconsideration, absent good cause. *See Shalit*, 182 F.3d at 1132 (concluding that there was no abuse of discretion

by district court in denying motion for reconsideration when movant offered no reason for failure to provide evidence when litigating underlying motion); *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995) ("The district court did not abuse its discretion in declining to consider an argument raised for the first time on reconsideration without a good excuse."). "In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation." *Cachil Dehe Band of Wintun Indians of Colusa Indian Cty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)). ILWU has not shown good cause for not raising this argument earlier. Accordingly, ILWU's motion for reconsideration is denied. *Accord In re Galena Biopharma, Inc. Derivative Litig.*, 2014 WL 5494890, at *2 (D. Or. Oct. 30, 2014) (denying motion for reconsideration when movant raised new arguments that could have been presented during the substantive briefing of the original motion).[1]

## B.  Request for Certification for Interlocutory Appeal

A district court may certify an order for interlocutory appeal when the district court finds "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). A court may find a question of law "controlling" if its resolution "could materially affect the outcome of litigation in the district

---

[1] The Court granted ILWU's motion for new trial "relating to damages." The Court, however, has not yet described the parameters of that trial. Both parties cite *Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 511 F.2d 839, 844-48 (4th Cir. 1975). Although the second trial in that case was limited to damages, the trial court there also allowed evidence and argument related to causation. Precisely how a second trial limited to damages will be structured here is an issue that the Court reserves for another day.

court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). A court may find

substantial ground for difference of opinion when "reasonable jurists might disagree" about the

resolution to the question of law at issue. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th

Cir. 2011).

### 1. Whether a Controlling Question of Law Must be Purely a Legal Issue

The first statutory requirement for certification for interlocutory appeal is that the

requested issue or issues for appeal be a controlling question of law. The parties dispute whether

the questions for review need to be "pure" legal issues or may be mixed questions of law and fact

that would require the Ninth Circuit to review the record on appeal.[2] The Ninth Circuit has not

specifically addressed this question outside the context of multidistrict litigation involving

unusual issues of liability.[3]

---

[2] This district court previously found persuasive the Seventh Circuit's discussion in *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 677 (7th Cir. 2000), holding that under § 1292(b), a question of law is generally one that is "pure" or "abstract" and does not require a review of the record. *See, e.g.*, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 2020 WL 403722, at *3 (D. Or. Jan. 24, 2020); *accord Schedler v. FieldTurf USA, Inc.*, 2018 WL 451555 (D. Or. Jan. 17, 2018) (explaining that the issue was not a controlling question of law in part because it was not a "pure" legal issue), *adopting Schedler v. FieldTurf USA, Inc.*, 2017 WL 8948593 (D. Or. Oct. 16, 2017) (citing *Ahrenholz* and concluding the issue was not a "pure question of law" and thus not controlling). The Seventh Circuit later held, however, that when the court of appeals is not asked to overturn any findings of fact, but instead "to determine the legal significance of a set of facts" by deciding whether a complaint met the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), such a determination might be appropriate for interlocutory appeal. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010). The court certified the case for interlocutory appeal despite the fact that such a review is often labeled as a "mixed question of law and fact," noting that such labels were "not helpful," and concluding that an appeal under § 1292(b) "should not be precluded altogether by a narrow interpretation of 'question of law.'" *Id.* The court distinguished *Ahrenholz* because resolving the *Twombly* issue did not require "hunting through a record or immersing ourselves in a complicated contract." *Id.* at 626. The court further noted that "application of a legal standard is a controlling question of law," although "routine applications of well-settled legal standards to facts" are not. *Id.*

[3] In *Steering Committee v. United States*, 6 F.3d 572 (9th Cir. 1993), the Ninth Circuit *sua sponte* addressed whether it could consider an interlocutory appeal of a mixed issue of law

At oral argument, the parties clarified their positions on this issue. ILWU argues that so long as the resolution of the proposed question of law meets the requirement established in *In re Cement Antitrust Litig.* that resolution of the question could materially affect the outcome of the litigation in the district court, the question may be appropriate for certification for interlocutory appeal even if it requires a review of the record, particularly if it involves an important question of law. ICTSI argues that only "pure" questions of law are appropriate for certification. ICTSI further argues that the Ninth Circuit and district courts in the Ninth Circuit accept certification for mixed questions of law and fact only when there also is a "pure" question of law that has been certified.

Under either parties' interpretation of this factor, certification may be appropriate for the questions proposed for certification by ILWU, provided that resolution could materially advance the outcome of the litigation. This is because even under ICTSI's interpretation, there only needs to be one "pure" question of law, and the Court finds, as discussed below, that the question

---

and fact, after noting that several other jurisdictions do not permit interlocutory review of such issues under § 1292(b). *Id.* at 575. In *Steering Committee*, the Ninth Circuit concluded that in "the liability phase of a multidistrict, multiparty litigation case," or what the court described as "'the issue of liability in such unusual cases,'" interlocutory appeal of mixed questions of law and fact "served the congressional purposes underlying § 1292(b)." *Id.* (quoting *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 479 F. Supp. 1118, 1126 (E.D.N.Y. 1978)). The Ninth Circuit, however, has certified some cases under § 1292(b) that are not multidistrict litigation actions yet involve mixed questions of law and fact. *See, e.g.*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764 (9th Cir. 2000), *aff'd*, 535 U.S. 302 (2002), *and overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) (certifying under § 1292(b) the question of a regulatory taking and specifically noting that whether government regulation of private property amounts to a regulatory taking "depends largely upon the particular circumstances [of each] case—that is, on essentially *ad hoc*, factual inquiries" and engaging in the requisite factual inquiry (alterations in original) (quoting *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978))); *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 339-40 (9th Cir. 1996) (certifying under § 1292(b) the question of waiver of attorney-client privilege and stating that "[w]hether a holder has waived the right to claim the attorney-client privilege is a mixed question of law and fact which we review *de novo*.").

relating to the Court's interpretation of *Mead* is a pure question of law. Thus, the critical question for the "controlling question of law" factor in this case is whether the resolution of ILWU's proposed questions "could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. The specific questions requested to be certified by ILWU are considered under this standard.

### 2. *Mead's* Application of Tort Principles to Dividing and Apportioning Damages

#### a. Waiver

ILWU requests interlocutory review of the Court's Opinion and Order resolving ILWU's post-trial motions ("Post-Trial Opinion"). *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 2020 WL 1062881 (D. Or. Mar. 5, 2020) (ECF 662). ILWU argues that the Court's citations in the Post-Trial Opinion to the Ninth Circuit's decision in *Mead v. Retail Clerks Int'l Ass'n Local Union No. 839*, 523 F.2d 1371 (9th Cir. 1975), warrant interlocutory review because the Court interpreted *Mead* as applying tort principles, rather than antitrust principles. ILWU specifically challenges the Court's conclusions relating to divisibility (or separability) of damages and the burden of proof for apportionment of damages.

Although before trial ILWU argued that the Court—and not the jury—must determine divisibility (or separability) of damages as a matter of law, the Court allowed the jury to determine that issue. The Court also applied tort principles for apportionment, even though ILWU argued that the Court must find as a matter of law that ICTSI failed properly to apportion damages and thus failed to prove any damages. ILWU also argued that the Court must follow antitrust principles in this case and place the burden of proof on ICTSI to apportion damages, if the question of apportionment were sent to the jury. ILWU did not directly challenge any of these decisions in the post-trial motions and did not directly challenge the related jury instructions. Thus, the Court's interpretation of *Mead* relating to these decisions was not directly

at issue in the post-trial motions and *Mead* was not cited for these propositions in the Post-Trial Opinion. To be precise, ILWU's current challenges in its request for interlocutory appeal are not directly to the Court's use of *Mead* in the Post-Trial Opinion but rather to the Court's pretrial rulings interpreting *Mead*. Ultimately, however, the Court's interpretation of *Mead* in the Court's pretrial rulings and jury instructions played a significant role in the outcome of this case, including the results reached in the Court's Post-Trial Opinion.

The two citations to *Mead* in the Post-Trial Opinion are not related to the Court's interpretation of *Mead* currently challenged by ILWU related to applying tort principles to divisibility and apportionment of damages. The Court cited *Mead* in the Post-Trial Opinion as an "accord" supporting authority after a string citation relating to "mixed motive" liability— supporting that when a union has a mixed motive (both lawful and unlawful) for conduct, if the unlawful objective is found to be a substantial motivating factor for the challenged activity, then all of the activity is considered unlawful. *ICTSI*, 2020 WL 1062881, at *12. The court later cited *Mead* and one of the cases in the string cite for the proposition that if a union engaged in both unlawful activity and lawful activity and an unlawful motive (giving rise to the unlawfulness) was a substantial motivating factor for all the conduct, then all damages caused by that conduct are recoverable. *Id.* at *14.[4] ICTSI argues that because ILWU did not specifically challenge in its post-trial motions the Court's pretrial rulings or jury instruction relating to the Court's interpretation of *Mead* applying tort principles to separability and apportionment, ILWU waived

---

[4] To the extent ILWU requests certification of the Court's citations to *Mead* in the Post-Trial Opinion for the two discrete issues for which it was cited, the Court declines certification. The Court cited *Mead* as one authority among others supporting "routine applications of well-settled legal standards to facts," which is not considered a controlling question of law for purposes of interlocutory review. *See In re Text Messaging Antitrust Litig.*, 630 F.3d at 626.

its ability to request interlocutory review of the Court's interpretation of *Mead* on this issue. The Court rejects ICTSI's argument.

Both the Supreme Court and the Ninth Circuit have held that "an appellate court's interlocutory jurisdiction under 28 U.S.C. § 1292(b) permits it to 'address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court.'" *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (quoting *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in original)); *see also Yamaha Motor Corp.*, 516 U.S. at 205 (noting that the "scope of interlocutory review [includes] all issues material to the order in question" (alteration in original) (quoting Note, "*Interlocutory Appeals in the Federal Courts Under § 1292(b),*" 88 Harv. L. Rev. 607, 628-29 (1975)). A court of appeals may not, however, "reach beyond the certified order to address other orders made in the case." *Id.* Although the Court's Post-Trial Opinion only cited *Mead* for two discrete issues, the Court's understanding of the burden of proof and the sufficiency of the evidence relating to causation and damages was guided by the Court's interpretation of *Mead* applying tort principles to divisibility and apportionment, and that interpretation was material to most of the Court's conclusions. In fact, most of the Court's conclusions in the Post-Trial Opinion may be fairly construed as including the Court's interpretation of *Mead* reflected in the Court's pretrial rulings and jury instructions. Thus, ILWU has not waived its right to have this issue considered.

### b.  Controlling question of law

Whether the Court correctly interpreted *Mead* regarding applying tort principles instead of antitrust principles to the issues of divisibility of damages and the proper allocation of the burden of proof for apportionment in a case under 29 U.S.C. § 187 is a controlling question of law that could materially affect the outcome of this litigation. If ILWU's interpretation is correct,

then the jury's liability determination may not survive review and a new trial limited to damages could be a waste of the parties' and the Court's resources.

Further, the proper interpretation of *Mead* on this issue is a "pure" question of law. Thus, regardless of whether a mixed question of law and fact is appropriate for certification under § 1292(b), this specific question is appropriate for certification. It does not involve the "routine application of a well-settled legal standard" because the standard is not well-settled. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010). And although applying whatever legal standard is ultimately found to be the correct legal standard to the facts of this case would involve consideration of the facts, "[d]ecisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." *Id.* (citing cases).

### c.  Substantial ground for disagreement

ILWU argued before trial that *Mead* incorporates antitrust principles of apportionment and places the burden on ICTSI to prove that no other factors other than illegal labor activities caused damage to ICTSI. This argument is based on *Mead's* statements that labor law derives from antitrust law. *See Mead*, 523 F.2d at 1376-78 (citing and quoting antitrust cases for legal principles to apply and noting the "exact parallel" of problems for plaintiffs in labor cases and antitrust cases trying to prove lost profit damages).

Before trial, however, ICTSI argued, and the Court held, that *Mead* incorporates tort principles relating to apportionment for that specific causation issue. As stated by the Ninth Circuit in *Mead*:

> The rules of causation imported into the statutory scheme through the "by reason of" language of section 303 afford a means of dealing with at least the extremes of the problem. The requirement that the unlawful objective must have "materially contributed" to the loss or have been a "substantial factor" in bringing it about,

> will prevent windfall recoveries by employers negligibly affected
> by a violation, and protect the union's right to strike for primary
> objectives where such objectives, standing alone, would have
> caused the strike, but the unlawful objective, standing alone, would
> not. Restatement (Second) of Torts § 432; W. Prosser, *Law of
> Tort*s § 41, at 238-40 (4th ed. 1971); 2 F. Harper & F. James, *Torts*
> § 20.3, at 1121-23 (1956). On the other hand, a relatively relaxed
> standard of proof, allowing recovery on evidence supporting "a
> just and reasonable inference," more likely true than not, that the
> employer was damaged because of picketing or other union
> pressure will assure recovery in most cases in which the unlawful
> motivation was a significant factor producing the union pressure.

*Mead*, 523 F.2d at 1379; *see also id.* at 1376 (quoting the Restatement (Second) of Torts in

support of the "substantial factor" standard, and stating that the "by reason of" text "is read as

incorporating common law principles of causation," the same as in antitrust cases).

In crafting the jury instructions here, the Court considered the most recent Restatement,

the Restatement (Third) of Torts, instead of the Restatement (Second) of Torts, which was the

Restatement in effect when *Mead* was decided.[5] The Court determined that the damages here

might be capable of divisibility, or separation, depending on the evidence presented at trial, and

thus the Court asked the jury to decide the issue, as instructed by both the Restatement (Second)

of Torts and the Restatement (Third) of Torts. The Court also asked the jury to decide whether

ILWU engaged in any lawful labor activity (the jury's answer was "no") and whether any lawful

activity or nonlabor factors caused any damage to ICTSI (again, the jury's answer was "no").

Because both these answers were "no," the jury did not need to answer the question about

divisibility.

In considering divisibility and apportionment, and whether to apply antitrust or tort law

principles, the Court also relied on the Ninth Circuit's decision in *Frito-Lay, Inc. v. Local Union*

---

[5] ICTSI argued that under the Restatement (Second) of Torts, the burden also was on
ILWU.

*No. 137, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 623 F.2d 1354

(9th Cir. 1980). In *Frito-Lay*, the Ninth Circuit stated:

> Appellants claim that the underlying object of the strike was lawful to obtain increased economic benefits for its members even though the attempt to force multi-employer bargaining was unlawful. They argue that to recover damages Frito-Lay must either (1) distinguish between the effects of the legal and illegal objectives, or (2) if those effects are not separable, establish that the strike would not have occurred absent the illegal objectives.
>
> *Mead* does not require that the illegal object be the sole cause of the strike, only that it be a "substantial" cause or that it "materially contribute" to the injury, "notwithstanding other factors contributed also." 523 F.2d at 1376-77. The Union's argument misapprehends the principles applicable to proof of causation in cases such as this. *The controlling rules derive from tort law principles where more than one factor can be a substantial cause,* and no single factor need be the sole causative element. Here the district court properly found the illegal objective to be at least a substantial if not the sole cause of the strike; from this the court could reasonably infer a causal relationship between the illegal objectives and the damages attributable to the strike.

*Id.* at 1362-63 (emphasis added).

Many cases under labor law decline to apportion damages in the manner argued by

ILWU. *See, e.g.*, *R.L Coolsaet Constr. Co. v. Local 150, Int'l Un. Of Operating Eng'rs*, 177

F.3d 648, 660 (7th Cir. 1999); *Abreen Corp. v. Laborers' Int'l Un., N.A., AFL, AFL-CIO*, 709

F.2d 748, 758-60 (1st Cir. 1983); *Pepsi-Cola Co. v. Rhode Island Carpenters Dist. Council*, 962

F.2 Supp. 266, 282-83 (D.R.I. 1997). Jury instructions under labor law generally focus on what

the Court instructed here—that a union may only be held liable for unlawful conduct and

defining what that means. Cases under antitrust law, however, may require more specific

apportionment of damages by the plaintiff. *See, e.g.*, *Schiller & Schmidt, Inc. v. Nordisco

Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992); *U.S. Football League v. Nat'l Football League*, 842

F.2d 1335, 1376-79 (2d Cir. 1988); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351-53 (3d Cir. 1975).

ILWU requested a modified version of the American Bar Association's Antitrust Model Jury Instruction No. 4: Causation and Disaggregation. This proposed instruction would require placing the burden on ICTSI to prove that no other factor, such as nonlabor factors or any lawful labor activity engaged in by ILWU, caused ICTSI's damages, and to require ICTSI to provide evidence from which damages may be apportioned between illegal labor activity and any other factor. ILWU argued that if ICTSI did not provide evidence from which a jury could apportion damages, then a verdict must be entered for ILWU. ILWU argued that ICTSI had this burden of apportionment, even if ILWU's unlawful purpose was a substantial factor in motivating ILWU's conduct.

Under tort law principles, however, the burden of apportionment is placed on the party arguing for divisibility. Under the Restatement (Third) of Torts, § 26, a jury determines divisibility and apportionment unless the issue is without dispute or a court determines that no reasonable jury could find the damages to be divisible. The party arguing for divisibility and apportionment has the burden of proof on both divisibility and the magnitude of each divisible part. *See, e.g.*, Restatement (Third) of Torts: Apportionment Liab. § 26 cmt. h (2000) ("Whether damages are divisible is a question of fact. A party alleging that damages are divisible has the burden to prove that they are divisible. . . . The magnitude of each divisible part is also a question of fact. The burden to prove the magnitude of each part is on the party who seeks division.").

Thus, there is conflict between antitrust principles and tort principles relating to divisibility and apportionment, particularly on the burden of proof. *Mead* cites and incorporates

both antitrust law and tort law. In issuing its pretrial rulings, the Court found the following persuasive: (1) *Mead's* discussion and citation to tort principles on causation; (2) *Frito-Lay's* interpretation of *Mead*; and (3) the application of labor law, including *Mead*, by courts in this circuit and other jurisdictions. These pretrial rulings permeate throughout the Court's Post-Trial Opinion.

      *Mead*, however, also specifically referenced and incorporated antitrust law. The application of antitrust law may support ILWU's argument. The Court struggled with this issue and asked for supplemental briefing from the parties, who cited differing authorities. Reasonable jurists could disagree on whether the Court should have applied tort law principles or antitrust law principles in this context, and whether applying antitrust law principles would have made a difference in the outcome of the Court's pretrial rulings, jury instructions, or the Post-Trial Opinion in this case. Thus, this factor supports certification.

### d.  Materially advance the ultimate termination of the litigation

      "Courts within the Ninth Circuit have held that resolution of a question materially advances the termination of litigation if it 'facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later [in order to] save the courts and the litigants unnecessary trouble and expense.'" *Finder v. Leprino Foods Co.*, 2016 WL 4095833, at *4 (E.D. Cal. Aug. 1, 2016) (alterations in original) (quoting *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004)). If the Ninth Circuit reviews on interlocutory appeal the district court's application of tort principles to divisibility and apportionment of damages for claims under 29 U.S.C. § 187, that would materially advance the litigation under the unique circumstances of this case because it may prevent an otherwise unnecessary second trial (or even a third, of the second trial is not done consistently with the Ninth Circuit's view of the law). Further, if ILWU's arguments prevail, then a second trial

limited to damages may be unnecessary. ILWU may prevail as a matter of law or may prevail in obtaining a new trial on both liability and damages. If a new trial limited to damages is held before this issue is resolved on appeal and if ILWU were to prevail on appeal, a second trial would result in a significant waste of the parties' and the district court's resources.

### 3.    The Court's Finding that ICSTI Remained a Secondary Employer

ILWU argued in its motions under Rule 50(b) that ICSTI entangled itself in the "vortex" of ILWU's dispute with the Port of Portland (the "Port") to such a degree that ICTSI lost its status as a "secondary employer." The Court rejected this argument, holding that ICTSI did not so entangle itself the Port or with ILWU's dispute with the Port as to lose ICTSI's status as a secondary employer. The Court also found that to the extent there were labor activities between ILWU and ICTSI that were lawful primary activities, there was sufficient evidence in the record to support a finding by the jury that ILWU's unlawful objective was a substantial motivating factor for ILWU's conduct and thus, as the jury found, all of the challenged conduct was unlawful. ILWU requests certification of this decision.

#### a.    Controlling question of law

As discussed above, for this factor the Court focuses on whether resolution of the proposed question could materially affect the outcome of this litigation before the district court. It could. If ILWU prevails in its argument, ILWU might be entitled to judgment as a matter of law. Thus, this factor is satisfied.

#### b.    Substantial ground for disagreement

ILWU argues that Congress and the Supreme Court have mandated that secondary liability be narrowly construed and that the jury's interpretation of the evidence and the Court's construction is too expansive. Although the Court finds this to be a closer call than the issue of whether tort or antitrust principles apply to divisibility and apportionment in labor law, the Court

nevertheless concludes that if certification is accepted, there would be a benefit to having these challenged issues considered together and that reasonable jurists could disagree on this issue. Thus, this factor is met.

### c.   Materially advance the termination of the litigation

For the same reasons discussed above, this factor is satisfied. Under the unique circumstances of this case, if ILWU prevails in its argument, ILWU might be entitled to judgment as a matter of law.

### 4.   The Court's Determination on ILWU's Waiver

ILWU also challenged in its motions under Rule 50(b) certain evidence from ICTSI's experts. In response to ILWU's motions under Rule 50(b), ICTSI objected that ILWU had waived its right to challenge that evidence by failing to include its objections in its pretrial *Daubert* motions and other pretrial filings. In its Post-Trial Opinion, the Court held that although ILWU included these challenges in its Rule 50(a) motions, it had not raised many of these later objections to ICTSI's expert testimony in any pretrial objection or timely raised those objections during trial, specifically during the relevant expert's testimony or at the earliest reasonable time after the basis for the objection became apparent. Thus, the Court held, ILWU waived its right to challenge those aspects of expert testimony for purposes of its motion under Rule 50(b). ILWU requests certification of the Court's ruling that ILWU's challenges to expert testimony that ILWU raised in its motion under Rule 50(a) but did not preserve before or during trial were waived for purposes of Rule 50(b).

ILWU's question regarding waiver might not be a "controlling question of law." Reversing the Court's findings of waiver relating to ILWU's challenges to certain testimony by ICTSI's expert witnesses would not materially affect the outcome of the litigation before this Court. Regarding ILWU's challenges to ICTSI's causation expert Dr. Bryce Ward, the Court

made an alternative finding on the merits. Thus, any possible harm to ILWU by any potential erroneous ruling by the Court in finding waiver was mitigated by the Court's alternative merits determination.

Regarding the Court's finding of waiver of some of ILWU's challenges to ICTSI's damages expert Mr. Jay Sickler, even if the Court erroneously found waiver and even if the Court would have accepted ILWU's challenges and excluded Mr. Sickler's testimony, that would not materially affect the outcome of this case. The Court denied ILWU's Rule 59(a) motion based on challenges to Mr. Sickler's testimony conditioned on ICTSI's acceptance of remittitur. Because ICTSI rejected remittitur, the Court, in effect, granted ILWU's Rule 59(a) motion based on challenges to Mr. Sickler's testimony. The Court ordered a new trial limited to damages.

ILWU's current request for interlocutory appeal would only materially affect the outcome of this litigation if it could result the Court granting ILWU's Rule 50(b) motion. Even if ILWU's challenges to Mr. Sickler's testimony that were considered waived had been accepted by the Court, and if Mr. Sickler's testimony was thus excluded at trial, there was still sufficient evidence of damage presented by ICTSI as of the close of its case-in-chief for the case to go to the jury. The other evidence of damage included at least: (1) evidence of the fee paid by ICTSI to terminate the lease; (2) testimony from Elvis Ganda, President and Chief Executive Officer of ICTSI, regarding estimated shipping volume through 2012 that, in his opinion, would have occurred but for the labor dispute; (3) Mr. Ganda's testimony regarding the rates ICTSI charged for shipping volume; and (4) testimony from James Mullen, ICTSI's former Director of Labor and Terminal Services, regarding the lost volume from shipping companies that had to bypass Terminal 6 in the summer of 2012. Thus, even without Mr. Sickler's testimony, there was evidence of at least some damage to ICTSI sufficient to withstand a Rule 50(a) motion at the

close of Plaintiff's case-in-chief, and also warranting the denial of a renewed motion under Rule 50(b).

Although the Court declines to certify this specific issue for interlocutory appeal, the Court notes that it is an issue fairly included within the Post-Trial Opinion and thus is nevertheless eligible for interlocutory appeal along with the controlling questions certified by this Court. *See Bank of Am.*, 672 F.3d at 673; *see also Yamaha Motor Corp.*, 516 U.S. at 205. The Court expresses no opinion on whether the Ninth Circuit should include this non-controlling but related issue if the Ninth Circuit decides to accept interlocutory review of the other issues certified in this Opinion and Order.

## C.  Motion for Stay Pending Appeal

Finally, ILWU moves to stay pending appeal a second trial limited to damages. ILWU argues that moving forward with a second trial limited to damages could be a waste of the parties' and the district court's resources. If ILWU were to prevail on interlocutory appeal on some or all of the issues that it has raised, then a second trial may be unnecessary or may significantly change in scope.

A district court may stay a case pending interlocutory appeal. *See* 28 U.S.C. § 1292(b); *see also Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 897 (E.D. Cal. 2010). Filing an interlocutory appeal does not automatically stay proceedings in the district court, but a district court may grant a stay to "promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972). "A stay is not a matter of right, [however,] even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Instead, it is "an exercise of judicial discretion." *Id.* In deciding whether to order a stay pending interlocutory appeals, courts traditionally balance four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on

the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at 434; *Scallon v. Scott Henry's Winery Corp.*, 2015 WL 5772107, at *1 (D. Or. 2015). The first two factors are the most critical. *Nken*, 556 U.S. at 433-34.

The Ninth Circuit has discussed at length the first factor and what a moving party must show with regard to success on the merits, reviewing *Nken* and other Supreme Court and circuit court cases. *Leiva-Perez v. Holder*, 640 F.3d 962, 966-68 (9th Cir. 2011). The Ninth Circuit has explained that "[t]here are many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a 'reasonable probability'[;] 'fair prospect'; 'a substantial case on the merits'; or that 'serious legal questions are raised.'" *Id.* at 967-68 (citations omitted). The Ninth Circuit concluded that however the standard is articulated, it does not "demand a showing that success is more likely than not." *Id.* at 968. Although ILWU has not shown that success is more likely than not, it raises serious legal questions, and denying a stay risks causing irreparable injury to ILWU. Further, staying this action will not likely cause substantial injury to ICTSI, especially in light of the fact that ICTSI ceased all operations at the Port in 2017. A stay also will serve the public interest by avoiding potentially wasteful use of the parties' and the district court's resources. Balancing all factors and considering the unique circumstances of this case, the Court exercises its discretion and grants a stay pending appeal.

## CONCLUSION

The Court GRANTS ILWU's motion for certification for interlocutory appeal under 28 U.S.C. § 1292(b). ECF 664. The Court CERTIFIES for interlocutory appeal its Opinion and Order dated March 5, 2020. ECF 662. The Court also STAYS all proceedings before this Court pending final action by the Ninth Circuit on ILWU's interlocutory appeal. The parties are

directed to file a joint status report within two weeks after any final action by the Ninth Circuit

on ILWU's petition for interlocutory review.

**IT IS SO ORDERED**.

DATED this 28th day of May, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge