# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ICTSI OREGON, INC.,** | Case No. 3:12-cv-1058-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION**; and **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION Local 8**, | |
| Defendants. | |

Jeffrey S. Eden, Michael T. Garone, and Andrew J. Lee, SCHWABE, WILLIAMSON & WYATT, PC, 900 Pacwest Center, 1211 SW Fifth Avenue, Portland, OR 97204; Amanda T. Gamblin, AMANDA T. GAMLIN ATTORNEY AT LAW LLC, 4004 SE Francis Street, Portland, OR 97202; Peter Hurtgen, CURLEY, HURTGEN & JOHNSRUD LLP, 4400 Bohannon Drive, Suite 230, Menlo Park, CA, 94025. Of Attorneys for Plaintiff ICTSI Oregon, Inc.

Julie R. Vacura, Cody Hoesly, John C. Rake, Brett Applegate, and Kelsey Benedick, LARKINS VACURA KAYSER LLP, 121 SW Morrison St, Suite 700, Portland, OR 97204. Of Attorneys for Defendants International Longshore and Warehouse Union and International Longshore and Warehouse Union Local 8.

**Michael H. Simon, District Judge.**

This case involves a retrial limited to damages. Before the Court are cross-motions for partial summary judgment, one filed by Defendants International Longshore and Warehouse Union and International Longshore and Warehouse Union Local 8 (collectively, ILWU) and one by Plaintiff ICTSI Oregon, Inc. (ICTSI). ILWU moves the Court to determine as a matter of law that ICTSI may not seek as damages the value of equipment it transferred to the Port of Portland

(Port) when ICTSI terminated its lease with the Port. ICTSI moves that the Court conclude that certain findings of the first jury are preclusive in the "but-for world" and bind the second jury in evaluating damages. Specifically, ICTSI asserts that the second jury is bound by the first jury's findings that: (1) the lease buyout costs must be awarded as damages; (2) ILWU's unlawful activity was the sole cause of ICTSI's lost productivity throughout the entire time in both the real world and the "but-for world"; and (3) ILWU's unlawful conduct was the sole cause of ICTSI's reduced market share and thus ICTSI would not have experienced "unprofitable loss of market share on the whole" in the "but-for world." For the reasons discussed below, the Court grants ILWU's motion and denies ICTSI's motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties cross-move for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

This case was heard by a jury in a ten-day trial beginning October 21, 2019. The jury returned a verdict in favor of ICTSI for $93,635,000. ECF 620. ILWU filed post-trial motions for judgment as a matter of law, new trial, and remittitur. ECF 654.

On March 5, 2020, the Court granted in part the post-trial motions filed by ILWU (Post-Trial Opinion). *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 442 F. Supp. 3d 1329 (D. Or. 2020). The Court denied ILWU's motion for judgment as a matter of law. The Court also denied ILWU's alternative motion for new trial, except for damages, which the Court conditionally denied. The Court stated that ILWU's motion for new trial on damages would be denied if ICTSI agreed to accept reduced damages in the amount of $19,061,248. *Id.* at 1366.

The Court added that if ICTSI did not agree to accept remittitur in this amount, ILWU's motion

for new trial would be granted in part, limited to damages. On March 19, 2020, ICTSI informed

the Court and ILWU that ICTSI declined the proposed remittitur. ECF 663.

In discussing the retrial limited to damages, the parties disagreed about the scope of the

retrial. *See* ECF 705. The Court directed the parties to brief their views on that issue. After

considering the parties' opening briefs and responses and holding a hearing, the Court issued an

opinion describing the scope of the limited retrial (Scope Order). ECF 716. The Court explained

that the jury's findings in the first trial related to liability and causation would be treated as

preclusive in the second trial. The Court added that "the jury in the second trial will not be asked

to decide whether other factors caused ICTSI's damages, whether or how to apportion damages,

or any other questions directly relating to causation." *Id.* at 2.

The Court also stated that in the second trial, "damages will be calculated by determining

the lost profits, lower operating costs, or both that would be reasonably anticipated 'but for'

ILWU's unlawful labor practices at Terminal 6." *Id.* The Court described that the parties may

present evidence, including new evidence, at the second trial about what the "but-for world"

reasonably would have looked like—meaning the conditions that reasonably would have existed

from May 21, 2012, through March 31, 2017, if there had been no unlawful labor activity. The

Court explained:

> This may include evidence about actual market factors during that
> time, such as the realities and economics of the worldwide
> shipping market, specific challenges and opportunities relating to
> the Port of Portland, and how each party contends shipping prices,
> costs, volumes, and profits at Terminal 6 would have been affected
> by the bankruptcy of Hanjin Shipping America, LLC (Hanjin) and
> other worldwide, national, and local economic circumstances. In
> other words, although the jury at the first trial determined that
> ILWU's unlawful labor practices caused all of ICTSI's damages
> relating to Terminal 6 and that conclusion is entitled to preclusive
> effect and will not be revisited, the *amount* of ICTSI's damages

> must be determined by the new jury at the second trial by looking
> at what likely would have happened in the hypothetical "but-for
> world" considering the facts as they occurred in 2012-2017 but
> absent ILWU's unlawful labor practices at Terminal 6.

*Id.* at 2-3 (emphasis in original).

The Court established an "iterative" process by which the parties would submit proposals on how they intended to prove and challenge damages. At the status conference discussing the first round of damages proposals, ICTSI argued that the factors relating to market conditions, Hanjin's bankruptcy, the location of the Port, and so forth are the same in the "but-for world" as they were in the real world and the first jury rejected them as causal factors. Thus, argued ICTSI, the second jury should not be allowed to consider those factors in evaluating the amount of damages because doing so would infringe ICTSI's Seventh Amendment rights. The Court rejected this argument, finding it to be the same point that ICTSI had made in briefing the issues before the Court issued its Scope Order. *See* ECF 724 at 18-21, 24-27. ICTSI requested the opportunity to move for partial summary judgment on these issues, which the Court allowed. The pending cross-motions followed.

## DISCUSSION

### A.  ILWU's Motion for Partial Summary Judgment

#### 1.  Evidentiary Objection

ILWU objects to ICTSI's submission of the Declaration of Elvis Ganda, arguing that it contains hearsay statements of Port personnel, including Keith Leavitt and Bill Wyatt. ICTSI responds that the statements have been submitted not for the truth of the matter asserted, but for their effect on the listener, ICTSI, in agreeing to the Port's demands. ICTSI also argues that the statements are subject to the "state of mind" exception.

In evaluating a nonmoving party's facts offered at summary judgment, the Court does "not focus on the admissibility of the evidence's form. [The Court] instead focus[es] on the

admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also*

*Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a

form that would be admissible at trial in order to avoid summary judgment."); *Norse v. City of*

*Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("[T]he evidence presented at the summary

judgment stage does not yet need to be in a form that would be admissible at trial[.]"); *Block v.*

*City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a

party does not necessarily have to produce evidence in a form that would be admissible at trial,

as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."). At

summary judgment, the Court may consider "evidence submitted in an inadmissible form, so

long as the underlying evidence could be provided in an admissible form at trial, such as by live

testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th

Cir. 2016); *see also Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D.

Cal. 2006) ("[W]hen evidence is not presented in an admissible form in the context of a motion

for summary judgment, *but it may be presented in an admissible form at trial*, a court may still

consider that evidence." (emphasis in original)); *cf.* Fed. R. Civ. P. 56(c)(2) (permitting a party to

"object that the material cited to support or dispute a fact cannot be presented in a form that

would be admissible in evidence"). For example, in *Fraser* the Ninth Circuit considered a diary's

contents as evidence to defeat a motion of summary judgment, despite a hearsay challenge,

because the contents of the diary "could be admitted into evidence at trial in a variety of ways,"

including that the witness "could testify to all the relevant portions of the diary from her personal

knowledge." *Fraser*, 342 F.3d at 1037. "Because the diary's contents could be presented in an

admissible form at trial, we may consider the diary's contents in the [movant's] summary

judgment motion." *Id.*

Even assuming the challenged statements are hearsay, their substance could be admitted at trial through live testimony by Port personnel. Thus, the Court will consider this evidence at summary judgment. The Court overrules ILWU's evidentiary objection.

### 2. Equipment Expense

ILWU moves against ICTSI's claim for the approximately $4.3 million in appraised value of equipment ICTSI asserts it transferred to the Port as part of the compensation that ICTSI paid the Port for the lease buyout. ICTSI argues that this compensation qualifies as an "extraordinary expense" under § 303 of the Labor Management Relations Act.

"In addition to lost profits, an injured employer is entitled to recover the extraordinary expenses, not normal to its business operation, incurred as a result of the Union's illegal strike." *Frito-Lay Union No. 137, Int'l Bhd. of Teamsters*, 623 F.2d 1354, 1365 n.11 (9th Cir. 1980). The Court previously found that the transfer of equipment was not an extraordinary expense under § 303 as the Ninth Circuit has construed it, but the Court accepted the $11,450,000 cash payment made at the lease buyout as an extraordinary expense. The Court explained:

> The Ninth Circuit has described the type of extraordinary expenses generally awarded in labor cases to include the cost for extra guards, overtime pay, travel expenses, long distance telephone calls, extra freight expenses, and bonuses and salaries paid to certain personnel to keep them during the strike when the business was closed. *Frito-Lay*, 623 F.2d at 1364, 1365 n.11. These are all expenses incurred as a result of the illegal labor and paid out-of-pocket at that time. This case, as noted above, has unique factual circumstances involving illegal labor practices that continued for nearly five years, resulting in ICTSI terminating its lease. This may have caused out-of-pocket expenses not seen in other labor cases. The Court will accept these out-of-pocket expenses because they align with the type of expenses allowed in a § 303 case. Without specific Ninth Circuit guidance, however, the Court declines to expand the types of "extraordinary expenses" allowed in § 303 cases to expenses not paid out-of-pocket as a result of the illegal labor practices.

Applying these principles, the Court finds that the $11,450,000 payment ICTSI made to the Port is a recoverable extraordinary expense incurred as a result of ILWU's illegal labor activity. As discussed above, weighing all the evidence and considering the Rule 59 standard, the Court declines to disturb the jury's findings that there were no other factors that contributed to the loss in productivity. Thus, ICTSI would not have had to terminate its lease and pay that lease termination fee absent ILWU's illegal legal practices.

There are two problems, however, with the recoverability of the $4,364,000 appraised value for the equipment as an extraordinary expense. First, ICTSI did not pay this amount out of pocket at the lease termination, which is what ICTSI argues is the "outside its normal business practice" element that makes this expense recoverable. ICTSI bought that equipment throughout the time it operated Terminal 6. Thus, this expense does not fall within the type of out-of-pocket extraordinary expense accepted under Ninth Circuit precedent.

Second, and as an independent and alternative reason, ICTSI chose to leave the equipment at the Port. If the equipment had a value of about $4.3 million, as claimed, ICTSI could have elected to sell it or ship it to another port run by ICTSI's parent company. ICTSI made the voluntary decision to abandon the equipment. That is a not an expense directly caused by the illegal labor action.

*ICTSI*, 442 F. Supp. 3d at 1364-65.

ICTSI argues that in the Post-Trial Opinion the Court misunderstood that ICTSI "abandoned" the equipment when, in fact, ICTSI transferred the equipment to the Port as part of the lease buyout. ICTSI also argues that there is no logical reason to allow the cash payment for the lease buyout as an extraordinary expense but not allow the in-kind equipment transfer. ICTSI contends that it was required to mitigate its damages and the best it could do was negotiate a combination cash and equipment deal with the Port.

ILWU disputes ICTSI's contentions and points to the lease buyout agreement, which does not contain a provision indicating that consideration for the lease buyout is a combination of cash and equipment and instead lists only the $11.5 million in cash as the termination

payment. ILWU also points to the lack of evidence of negotiations between the Port and ICTSI showing such an agreement and the fact that the appraisal of the equipment was conducted weeks after the lease buyout agreement was signed, which ILWU argues shows that the appraisal was done to increase damages in this lawsuit and not as genuine consideration for the lease buyout. ILWU also submits an email between ICTSI personnel two days after the lease buyout agreement was signed in which they discuss that they will "place 100% focus" on pursing damages and that they already have asked their attorneys to add the buyout expense to the damages claim.

Regardless of any factual dispute on the purpose of the transfer (or abandonment) of the equipment, the Court remains mindful of the Ninth Circuit's discussions about the types of "extraordinary expenses" compensable under § 303. Along with the narrow list described in *Frito-Lay*, the Ninth Circuit later explained: "The language of the statute, its legislative history, and judicial interpretation make clear that damages recoverable under section 303 include actual compensatory damages for out-of-pocket expenses paid to third parties as a result of the picketing . . . ." *Matson Plastering Co. v. Plasterers & Shophands Loc. 66*, 852 F.2d 1200, 1203 (9th Cir. 1988). The Ninth Circuit has viewed the "extraordinary expenses" category narrowly, and an in-kind provision of equipment simply does not fall within the accepted types of expenses.

ICTSI cites cases from outside the Ninth Circuit that allowed damages under § 303 for the rental value of equipment during the time it was out of service because of a strike. *See F.A. Wilhelm Const. Co. v. Ky. State Dist. Council of Carpenters, AFL-CIO*, 293 F.3d 935, 941-42 (6th Cir. 2002) (recognizing that "[d]amages for lost opportunity revenue may be awarded for loss of use of owned equipment" because equipment sitting idle represents a "real and qualifiable loss" of rental income whether that rent is paid by a third party or the contractor himself through

an accounting mechanism to cover "expenses such as depreciation, finance charges and taxes");

*R.L. Coolsaet Const. Co. v. Loc. 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 660, 660

n.9 (7th Cir. 1999) (same). The Court does not find the cases about the rental value of

temporarily out-of-service equipment to be on point. ICTSI is not requesting expenses for any

rental fee for the value of equipment that was placed out of service during the work stoppages or

slowdowns. ICTSI is requesting reimbursement for equipment it chose to transfer to or leave for

the Port as part of ICTSI's lease buyout. The Court stands by its original conclusion that, absent

further guidance from the Ninth Circuit, the transfer of equipment is not an "extraordinary

expense" as that term is construed for § 303.

ICTSI also argues in the alternative that the equipment transfer qualifies as a "lost

opportunity" for ICTSI to otherwise liquidate the equipment. ICTSI cites no authority for this

proposition other than *F.A. Wilhelm* and *R.L. Coolsaet*. Those out-of-circuit cases, however,

involved the value of the use of equipment for the specific days the equipment, which otherwise

was rented, was offline. They are of no help to ICTSI in seeking the value of equipment that

perhaps could have been liquidated but was not. The Ninth Circuit previously rejected damage

claims for the "lost opportunity" to bid on future projects as unreasonably speculative. *Matson

Plastering*, 852 F.2d at 1203. Similarly, ICTSI's potential to liquidate the equipment and for how

much is unreasonably speculative. Accordingly, the Court grants ILWU's motion for partial

summary judgment.

## B.  ICTSI's Motion for Partial Summary Judgment

ICTSI asserts that the first jury's findings have a preclusive effect on the second jury in

three areas: (1) lease buyout expenses; (2) lost productivity; (3) lost market share. Most of

ICTSI's arguments, however, center on whether the first jury's findings in the "real world"

necessarily include findings in the hypothetical "but-for world." ICTSI argues that the verdict

form, jury instructions, and the Court's Post-Trial Opinion support ICTSI's position that they do. Based on its contentions that the first jury made preclusive findings in the "but-for world," ICTSI argues that the Court must now issue preclusive findings, or determine at summary judgment, that ICTSI is entitled to certain expenses or calculations as damages or that the second jury is even more limited in what it may consider. If the Court does not, ICTSI contends, then its Seventh Amendment rights will be violated. The Court addresses ICTSI's broader arguments about preclusive findings in the hypothetical "but-for world" and then addresses any remaining specific arguments about the three areas in which ICTSI argues for preclusive findings at the second trial.

### 1. Preclusive Effect Generally

#### a. Findings of the First Jury

ICTSI argues that the first jury made findings about causation in both the "real world" and the hypothetical "but-for world" and both findings warrant preclusive effect. ICTSI contends that the Court should give general preclusive effect to findings from the first jury that, although not expressly made in the verdict, can be inferred because they were necessary to other findings by the jury. ECF 727 at 10-11 (citing Wright & Miller, FED. PRAC. & PROC. § 4420 (3d ed. 2022)). ICTSI asserts that the first jury's answer of "No" on Question 6 of the special verdict form combined with Jury Instruction No. 31 necessarily means that the jury made findings about causation in the "but-for world." Question 6 asked: "Did any non-labor factors cause any losses to ICTSI?" The jury answered "No," meaning that the jury found that only ILWU's unlawful labor practices caused ICTSI's harm (or was a substantial factor along with lawful primary conduct, making all the labor conduct considered unlawful). Final Jury Instruction No. 31, Damages, Divisibility (Separability), instructed:

> When there is the potential for multi-factor causation, the threshold
> question that you may have to decide is whether there are other
> factors, besides the <u>unlawful</u> labor practices, that caused losses to
> ICTSI. These other factors may include <u>lawful</u> primary conduct by
> ILWU or Local 8 after August 13, 2013, or non-labor factors, for
> example, market conditions, the location of Terminal 6 on the
> Columbia River, the bankruptcy of Hanjin, the management
> practices of ICTSI, or something else.

ECF 615 at 37 (emphasis in original).

ICTSI also argues that because the verdict form asked the jury about "losses" instead of "damages," a change requested by ILWU, the verdict form specifically was asking about losses in the "but-for world" together with losses in the real world. The "but-for world" is necessary to calculate damages here and is not used in causation. The real world is required for causation and is the comparator against the "but-for world" in calculating damages. ICTSI thus concludes that the first jury made preclusive factual findings "in *any* world." *See* ECF 727 at 9, 13, 29, 39 (emphasis in original).

For several reasons, the Court disagrees that Question 6 on the verdict form combined with Instruction No. 31 necessarily means that the first jury answered Question 6 as including the "but-for world." First, Instruction No. 31, relied on by ICTSI because it lists Hanjin's bankruptcy as a potential non-labor factor and uses the word "losses," is a damages instruction relating to divisibility. A juror proceeding through the verdict form would not consider Instruction No. 31 until Question 7 or Question 10, depending on how earlier questions were answered. Thus, the instruction would not have been relied on by the jury in answering Question 6.

Second, ICTSI's argument that simply because Question 6 listed Hanjin's bankruptcy the jury had to have considered the "but-for world" is not persuasive. ILWU contended at trial that ICTSI should have done more to keep Hanjin as a customer or get Hanjin back after it stopped calling at the Port, in the real world. ICTSI, on the other hand, argued at closing that it "makes

no logical sense" that Hanjin's bankruptcy could cause ICTSI any harm because the bankruptcy occurred in 2016 and Hanjin left the Port in 2015. ECF 651 at 42-43. If the jury had accepted ILWU's proposition, however, then Hanjin's bankruptcy would have affected ICTSI in the real world of damages, even assuming that ILWU's unlawful labor activities stayed the same. The hypothetical "but-for world" assumes no unlawful labor activities. ILWU's argument was that *even with* the unlawful labor activities, ICTSI should have been able to keep or retrieve Hanjin and then Hanjin's bankruptcy would have caused damages in 2016. This is not a "but-for world" argument; it is a real world argument—that in the real world, even with the unlawful labor conduct, ICTSI should have been able to keep Hanjin as a customer and then would have lost it in 2016 because of Hanjin's bankruptcy. Thus, if the jury rejected ILWU's real-world argument and accepted ICTSI's, the "No" answer to Question 6 could have been only for "real world" causation. Therefore, a finding relating to the "but-for world" was not *necessary* to the answer to Question 6, and the Court rejects ICTSI's argument that the Court *must* infer otherwise.

Third, the word "losses" does not necessarily refer to both the real world and the "but-for world." ICTSI relies on the fact that Instruction No. 31 included Hanjin's bankruptcy as a potential causal factor and used the word "losses" and thus concludes that losses had to include both worlds because Hanjin's bankruptcy could only be a factor in the "but-for world." As discussed with respect to Question 6 on the verdict form, however, the jury could have accepted ILWU's argument that ICTSI should have done more to keep or retrieve Hanjin as a customer in the real world, and then Hanjin's bankruptcy would have had a causal effect in the real world. Thus, the inclusion of Hanjin's bankruptcy in Instruction No. 31 does not mandate that "losses" or any other term must have been referring to both the real and the "but-for world."

ICTSI also relies on the Court's Post-Trial Opinion in arguing that the first jury's factual findings should be given preclusive effect in the "but-for world." ICTSI cites the Court's

discussion in declining to grant ILWU's motion under Rule 50 of the Federal Rules of Civil

Procedure and rejecting ILWU's Rule 50 challenge to ICTSI's expert Jay Sickler as failing

properly to consider whether Hanjin's bankruptcy caused an interruption in ICTSI's revenue.

The Court first noted that ILWU had argued that ICTSI should have retained Hanjin as a

customer or persuaded it to return (a real world argument), and that Hanjin's bankruptcy in 2016

would have caused ICTSI to close Terminal 6 and terminate its lease. *ICTSI*, 442 F. Supp. 3d

at 1355. The Court determined that "[t]he evidence, viewed in the light most favorable to ICTSI,

does *not* permit only one reasonable conclusion about Hanjin's bankruptcy that conflicts with the

jury's verdict." *Id.* (emphasis in original). The Court reviewed the trial evidence, based on the

standards under Rule 50, which did not conclusively show that Hanjin's bankruptcy would have

forced ICTSI to terminate its lease.

The Court's discussion, under the standards of Rule 50 and introduced with the notion

that ILWU argued that ICTSI should have retained Hanjin as a customer, is not a preclusive

finding preventing evidence in the new trial on damages, particularly when the Court proceeded

to *grant* a new trial under Rule 59 based on all the problems with Mr. Sickler's damages opinion.

To the extent that the Court's discussion in that section caused any confusion that the Court

accepted the jury as having made preclusive findings in the "but-for world," the Court now

clarifies that it does not accept the first jury as so finding. As the Court made clear in its Scope

Order, the parties may present new evidence at the second trial, limited to damages. ECF 716 at

2 ("At the second trial, each party may present evidence, including new evidence, about what

that party contends would have been reasonably anticipated to occur at Terminal 6 from May 21,

2012, through March 31, 2017, *but for* ILWU's unlawful labor practices at Terminal 6."

(emphasis in original)); *id.* at 3-4 ("As also discussed, however, the parties may present evidence

and argument (including new evidence and new argument) about the hypothetical 'but-for world'

and what would have been reasonably anticipated to occur at Terminal 6 in the absence of ILWU's unlawful labor practices there.").

Additionally, even if the first jury did make findings about the "but-for world," the Court granted a new trial on damages. The "but-for world" is only relevant to damages. The Court now clarifies that any findings made by the first jury regarding the "but-for world" are contrary to the clear weight of the evidence and will not be given preclusive effect. *See, e.g.*, *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 835 (9th Cir. 2021) ("Because we conclude below that the jury verdict must be vacated, we necessarily also conclude that it has no preclusive effect."); *Woods by & through Wade v. City of Reno*, 2018 WL 493015, at *9-10 (D. Nev. Jan. 18, 2018) ("A new trial means just that—a do over such that rulings in the previous trial no longer apply and are therefore not 'final rulings' for purposes of issue preclusion."). As for causation, however, the Court has already ruled that those findings from the first jury will be given preclusive effect and not revisited.

### b.  Seventh Amendment

ICTSI also raises a general objection under the Seventh Amendment. ICTSI argues that the first jury made factual determinations in the "real world" that the Court accepted (*i.e.*, no other factors caused ICTSI's damages). ICTSI contends that the "but-for world" requires consideration of the same "real world" factors (*e.g.*, market conditions, Hanjin's bankruptcy, the location and features of the Port), except presuming no unlawful labor activity occurred. ICTSI argues that allowing the second jury to consider these same "real world" factors that hold steady in the "but-for world" violates ICTSI's Seventh Amendment rights. The Court rejects ICTSI's argument.

The first jury resolved liability and causation, and the second jury will be addressing only damages. These issues are not so interwoven that two different juries cannot answer these

separate questions. *See Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499 (1931)

("[W]here the requirement of a jury trial has been satisfied by a verdict according to law upon

one issue of fact, that requirement does not compel a new trial of that issue even though another

and separable issue must be tried again."); *cf. id.* at 500 (holding that a new trial solely on

damages is not appropriate when the question of damages "is so interwoven with that of liability

that the former cannot be submitted to the jury independently of the latter without confusion and

uncertainty, which would amount to a denial of a fair trial").

The second jury will evaluate the hypothetical "but-for world" to assess damages.

> [T]he but-for world differs from what actually happened only with
> respect to the harmful act, that is, the but-for world holds all other
> factors except one—the alleged conduct—the same in order to
> measure what [profits] would have been but for the alleged
> conduct. As discussed below, economic experts apply this
> fundamental approach . . . . by developing an economic model of
> the market that holds constant the effect of market factors
> unrelated to that conduct.

Justine S. Hastings and Michael A. Williams, *What is a "But-for" World?*, 31 ANTITRUST 102,

102 (Fall 2016) (footnote omitted). The second jury must be able to consider what actually

occurred in the real world when evaluating the "but-for world" and determining what would have

happened if ILWU had not engaged in unlawful labor activities. To follow ICTSI's suggestion

would have the second jury ignore reality and consider a fantasy "but-for world" where there

were no market factors like Hanjin's bankruptcy. But that is not how the "but-for world" is

considered. It requires consideration of actual real world conditions during the entire damages

period, with the only fantastical element being that the unlawful conduct did not occur.

The Court rejects the notion that allowing the second jury fully to consider the "but-for

world" infringes on ICTSI's Seventh Amendment rights. The Seventh Amendment does not

require so narrow a second trial. Indeed, the Fourth Circuit in a labor case affirmed a district

court that set aside a jury verdict as excessive, ordered a new trial on damages only, and submitted both causation and the amount of damages to the second jury. *Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters*, 511 F.2d 839 (4th Cir. 1975). The Fourth Circuit explained that this type of separate trial on damages is permissible:

> Nor are we able to agree that the issues of liability and damages were so closely intertwined that the second jury should not consider the issue of damages apart from liability. The jury in the first trial, under proper instructions, ascertained liability, and in the second trial the judge ever so carefully charged the jury only that the defendant had been found liable for certain acts of unlawful secondary boycott activity, and having again defined which activities were lawful and which were not, left to the jury the question which of the unlawful acts, if any, caused damage to the plaintiff, and which did not, and also the amount of the damages.

*Id.* at 847. Thus, the Court declines to constrain the second jury as requested by ICTSI and readopts its Scope Order.

### 2. Lease Buyout

ICTSI argues that because the first jury found that there were no other causes of ICTSI's losses, then as a matter of law ICTSI is entitled to recover the reasonable value of its mitigation expenditure to buy out its lease. ICTSI contends that ILWU caused carriers to stop calling at Terminal 6, which led to losses, which led to ICTSI buying out the remainder of its lease as a mitigation measure. ICTSI contends that the $11,450,000 it paid and the value of the equipment it provided to the Port were items of mitigation that stopped ICTSI's losses. ICTSI argues that it is "blackletter tort law" that ICTSI is entitled to recover those amounts. ICTSI, however, brings its claims not under tort law but under § 303 of the Labor Management Relations Act.

Under § 303, ICTSI's claim to these types of damages is under the "extraordinary expense" category of recovery. As earlier discussed, ICTSI is only entitled to extraordinary expenses that are "not normal to its business operations" and are "incurred as a result of"

ILWU's illegal conduct. *Frito-Lay*, 623 F.2d at 1365 n.11. The Court in Section A.2, *supra*, has foreclosed ICTSI's ability to recover the value of the transferred (or abandoned) equipment under this category, which is limited to out-of-pocket expenses.

As for the approximately $11.5 million that ICTSI paid out-of-pocket to the Port to buy out the rest of ICTSI's lease of Terminal 6, in the Post-Trial Opinion the Court acknowledged that this was not the typical type of expense that courts have allowed as an extraordinary expense under § 303. *See ICTSI*, 442 F. Supp. 3d at 1364. Because of the unusual facts of this case (where the unlawful labor activity was ongoing for years) and the fact that ICTSI paid this expense out-of-pocket to a third party, the Court accepted this expense as an extraordinary expense under § 303. *Id.*

In so doing, the Court relied on its denial of a new trial under Rule 59 on causation and liability to conclude that the jury found that Hanjin's bankruptcy "would not" have caused the closure of Terminal 6 or the extraordinary expense. That statement, however, reflects that the $11.5 million mitigation expense would not have been incurred in the hypothetical "but-for world." Upon further reflection and as analyzed in Section B.1, *supra*, the Court declines to accept any finding by the first jury as necessarily involving the "but-for world" or having any preclusive effect in the "but-for world" for purposes of the second trial.

In now evaluating whether ICTSI should recover as a matter of law under § 303 the $11.5 million as an extraordinary expense, the Court generally would not consider the "but-for world." The facts here, though, are unusual. The requested extraordinary expense is nothing like the usual type of accepted discrete out-of-pocket expenses for extra guards, travel expenses, freight expenses, long distance telephone calls, and overtime expenses to "resume normal plant operations at the end of a strike." *Frito-Lay*, 623 F.2d at 1365 n.11. Instead, ICTSI requests a significant multi-million dollar mitigation expense for terminating its lease early. The Court still

PAGE 18 – OPINION AND ORDER

accepts the first jury's finding that ILWU's unlawful labor conduct caused ICTSI's harm that triggered the lease buyout.

ILWU's argument, however, is that ICTSI should not recover the unusual extraordinary expense of a mitigation cost such as the lease buyout, at least without the second jury evaluating whether the expense would have been incurred anyway, by considering the "but-for world." ILWU seeks to argue to the second jury that in the hypothetical "but-for world" of no unlawful labor activity, Hanjin would have remained a customer at Terminal 6 until its bankruptcy in 2016, and then Hanjin's bankruptcy would have caused Terminal 6 to fail and ICTSI's lease buyout expense then would have still been incurred. ICTSI responds that the first jury necessarily rejected this argument and its finding should be given preclusive effect. As explained in Section B.1, *supra*, the Court rejects this argument by ICTSI.

ILWU contends that mitigation costs that would have been incurred anyway are not recoverable. "The fundamental purpose of limiting mitigation damages is to prevent a windfall— that is, to not award costs that would have been incurred anyway." *S. Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 436 (2007), *aff'd in part, vacated in part on other grounds*, 637 F.3d 1297 (Fed. Cir. 2011). The Court recognizes that allowing the lease buyout mitigation expense is an expansion beyond traditional § 303 extraordinary expenses. The Court continues to hold that the unique facts of this case support such an expansion. The unique facts, however, also support the conclusion that because this is a mitigation expense, there may be a scenario in which the second jury, which is evaluating the circumstances in the "but-for world," could conclude that in the "but-for world" Hanjin's bankruptcy would have created an untenable economic situation at Terminal 6. Thus, the second jury could conclude that even in the "but-for world," Terminal 6 would have failed regardless of the unlawful labor activities. In that event,

the second jury could find that the mitigation expense would have been incurred anyway and thus is not recoverable as a mitigation expense.

This type of analysis is not generally at issue with typical § 303 extraordinary expense claims. These expenses usually are not appropriate for consideration in the hypothetical "but-for world" because they are paid without analyzing whether something in the "but-for world" would have rendered them payable regardless and thus a "mitigation windfall." In other words, there generally is not an argument that extra guards, specific long distance phone calls, or strike-related overtime pay would have been needed anyway without the unlawful labor activity. Nor are extraordinary expenses generally mitigation expenses. The lease buyout here, however, has many unique facts, which make it both potentially recoverable as an extraordinary expense under § 303 and potentially a mitigation windfall. Thus, the Court agrees with ILWU that this issue is better left to the jury to decide. ICTSI, of course, may argue to the second jury that Hanjin's bankruptcy would not have caused Terminal 6 to fail in the hypothetical "but-for world."

ICTSI's last argument for why consideration of this expense is inappropriate for the jury is that even if Hanjin's bankruptcy could occur in the "but-for world" under an economic condition that would result in lease termination, that would simply show concurrent causation to the first jury's causation finding. Concurrent causation, however, is a causation doctrine that only applies when two or more factors independently operate *at the same time* to cause the same outcome. *See Jones v. Williams*, 297 F.3d 930, 937 n.6 (9th Cir. 2002) (affirming the verdict and the concurrent cause jury instruction that "many factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such a case each may be a proximate cause"); Restatement (Third) of Torts: Phys. & Emot. Harm § 27 (2010) ("If multiple acts occur, each of which under § 26 alone would have been a factual cause of the physical harm at the same time in the absence of the other act(s), each

act is regarded as a factual cause of the harm."). ILWU argues that concurrent causation would not apply under these circumstances because the first jury found that in the real world ILWU's unlawful conduct caused Hanjin (and other carriers) to leave in 2015, which ultimately caused Terminal 6 to fail. Under ILWU's position, the second jury will be considering the hypothetical "but-for world" of damages, in which there are no unlawful labor practices, Hanjin and the other carriers do not leave the Port in 2015, and Hanjin's 2016 bankruptcy creates an economic situation at Terminal 6 that results in an inevitable lease buyout. Thus, the unlawful labor practices in the real world considered by the first jury as causing multiple carriers to leave are not acting at the same time as Hanjin's bankruptcy in the "but-for world" being considered by the second jury. Nor is the second jury considering causation. The Court agrees with ILWU that the concurrent causation doctrine is not applicable in this case.

ILWU also argues that, even if the lease buyout were not a mitigation windfall, there are issues of fact about whether it qualifies as an extraordinary expense not normal to ICTSI's business. ILWU requests discovery to learn whether lease buyouts are normal to ICTSI's business operations or the business operations of port operators in general. Viewing the facts in the light most favorable to ICTSI, as the Court must at this stage in the proceedings, the Court also agrees that there are issues of fact whether a lease buyout of this type is an expense not normal to ICTSI's business or if the amount is normal to ICTSI's business. Thus, summary judgment at this time is denied for this second and independent reason, and ICTSI may seek this limited discovery.

### 3. Reduced Productivity

ICTSI argues that there can be no dispute that ILWU's unlawful labor activities starting in 2012 depressed productivity and harmed ICTSI in both the real and "but-for world." ICTSI reiterates its arguments that because all factors in the "but-for world" remain constant except the

illegal labor activity, then the first jury's findings remain constant as well. For the same reasons the Court in Section B.1., *supra*, generally rejected applying preclusive effect to the first jury's findings to the "but-for world," the Court rejects ICTSI's argument here.

As described in the Scope Order, the second jury will not consider whether other factors caused ICTSI's damages. This means that ILWU may not argue that factors such as lawful primary activity caused work stoppages and slowdowns and thus caused ICTSI's damages. ILWU, however, may describe actual market conditions, such as global market conditions, Hanjin's bankruptcy, and the like, and argue how they would have affected Terminal 6 in the hypothetical "but-for world" of no unlawful labor activities as the parties dispute the estimated level of productivity that would have occurred in the "but-for world."

### 4.  Loss of Market Share

ICTSI argues that the first jury found that ILWU was responsible for all of ICTSI's loss of market share and found that in the "but-for world, ICTSI would not have experienced an unprofitable loss of market share on the whole." ECF 727 at 24. For the latter proposition, ICTSI again relies on its argument that the first jury made findings in the "but-for world" through implication and that the Court must give such findings a preclusive effect. For the same reasons as discussed in Section B.1., *supra*, the Court rejects this argument.

**CONCLUSION**

The Court GRANTS ILWU's motion for partial summary judgment (ECF 725) and DENIES ICTSI's motion for partial summary judgment (ECF 727).

**IT IS SO ORDERED**.

DATED this 14th day of November, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge