**Jeffrey S. Eden**, OSB #851903
Email: jeden@schwabe.com
**Michael T. Garone**, OSB #802341
Email: mgarone@schwabe.com
**Andrew J. Lee**, OSB #023646
Email: ajlee@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Facsimile:  503-796-2900

**Amanda T. Gamblin**, OSB #021361
Email: amanda@gamblin-law.com
AMANDA T GAMBLIN, ATTORNEY AT LAW LLC
4004 SE Francis Street
Portland, OR 97202
Telephone: (503) 329-1858

*Of Attorneys for ICTSI Oregon, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ICTSI OREGON, INC.,** an Oregon corporation**,**<br><br>Plaintiff,<br><br>vs.<br><br>**INTERNATIONAL LONGSHORE AND WAREHOUSE UNION** and **ILWU LOCAL 8,**<br><br>Defendants. | No. 3:12-cv-01058-SI<br><br>**FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**<br><br>Judge: Hon. Michael H. Simon |

Page 2 -    **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**Elvis Jude Ganda**

1.    Address: 5665 Meadows Road, Suite 110, Lake Oswego, OR  97035

2.    Occupation:  Chief Executive Officer, Chairman-Board of Directors, North America, ICTSI Oregon, Inc. (ICTSI).

3.    The following statement will outline the subject matters on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 and provide a summary of the facts and opinions to which the witness is expected to testify:

4.    Mr. Ganda started in the ocean container shipping industry in 1976 with Marine Terminals Corporation in the container freight station in Oakland. In 1982 Ganda worked for Lykes Lines as terminal superintendent and was later promoted to Northern CA operation manager. In 1984 Ganda worked for US Lines in Oakland as the intermodal manager and equipment control manager. In 1986 he started with SeaLand, where he started as stevedore manager and became marine manager, terminal manager and port manager in Oakland. Ganda also headed up an effort to improve productivity and process improvement in the Pacific Division. This project resulted in the best productivity in the region. Because of his success, Ganda was also assigned productivity improvement projects in Japan, Honduras, and Guatemala. In 1998 he worked for APL as director of global terminal operations. In this role, Ganda worked on global productivity and process improvement and he negotiated APL's terminal operator contracts for the terminals in Korea, Japan, Singapore, Dubai, India, and China, as well as Latin America. In 2006-2007 he went to the Massachusetts Port as deputy port director of maritime operations, where he raised terminal rates to MSC by approximately 10% to match market levels and also achieved an increase in container volumes at that terminal. In 2007-2010 he was

Page 3 -    **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

President of California United Terminals in Long Beach. In May 2010 Ganda became CEO of ICTSI. Ganda will describe his history of improving port productivity and labor relations at other ports.

5.      Ganda will testify regarding the general model for moving goods by ocean container, including a general description of the container shipping industry, the development of the ocean container shipping industry by SeaLand, the major ocean carriers and their changing alliances during the time frame from 2010- 2017, the goods that ship via containers, a general description of the shippers, US west coast (USWC) ports, USWC terminal operators, the role of the PMA and the labor that works at USWC ports.

6.      Ganda will explain that ocean carriers typically sign 1-3 year contracts with terminal operators. Unless the terminal operator is a public entity, the terms of those contracts are considered proprietary and are not available to the public. Ganda will describe how contentious those contract negotiations can be, often accompanied by heated rhetoric and unverifiable threats by the ocean carriers. Hanjin in particular was very tough to negotiate with.

7.      Ganda will explain that typically when containers are moved to or from a container terminal, they do so by truck. The cost of trucking containers to and from the container terminal is typically paid by the shipper, not the ocean carrier.

8.      Ganda will explain how and why terminal operators and ocean carriers track port productivity, including that of labor. Ganda will describe the measures of productivity used in the container shipping industry, including at T6, including gross and net moves per hour. Because carriers pay ICTSI by the move and ICTSI pays labor by the hour, there is a direct relationship between productivity and profitability for ICTSI.

9.      Productivity varies by port in part based on differences between ports including

Page 4 -    **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

terminal layout, equipment, lift profiles, cargo mix, manning levels, and labor. Ocean carriers also track the profitability of each port they call, typically using a formula to calculate the contribution margin per box. Ganda will explain that in the absence of illegal labor actions he would not expect to see a material change in the lift profiles at T6 during the damages period at issue. Ganda will explain that in a but-for world of no illegal labor actions, he would expect average productivity at T6 to have been at least as high as the historical average productivity at T6 prior to June 2012.

10.     ILWU has a monopoly on dockside cargo handling on USWC. PMA represents employers who hire labor to work on the docks to move cargo including containers. The PMA and ILWU negotiate the labor contracts that apply on the USWC, including generally the generous pay and benefits available to the average longshore worker during 2011- 2017 period at issue and the pay guarantee program (PGP) available to the longshore workers. The basic intention of the PGP is to provide a weekly income to eligible registered ILWU workers. The PGP is funded by the PMA.

11.     ILWU labor handles the movement of cargo at the terminal facility and performs most maintenance and repair of the terminal operator's equipment. ICTSI determines the amount and category of labor required for operations at the terminal and requests such labor through the PMA. The PMA places that request for labor through the ILWU union hall. ICTSI supervises labor at the terminal within the parameters of the PMA/ILWU labor contracts.

12.     In 2010, ICTSI signed a 25-year lease with Port of Portland to operate at T6. ICTSI started operating T6 in February, 2011. ICTSI had to assume or renegotiate existing vendor and supplier contracts. ICTSI had to hire employees, buy equipment, set up an office and systems to run the terminal.

Page 5 -     **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

13.     Ganda will testify as to a general description of the condition of the premises, cranes and other equipment that came with the T6 lease and ICTSI's plans and actions to improve, supplement and/or replace those cranes and equipment over the term of the 25-year lease. He will summarize the additional equipment purchased by ICTSI including pickup trucks, bomb cart/chassis, reach stackers, forklifts, tools and equipment as needed. ICTSI also performed paving and striping at the terminal.

14.     Ganda will describe his decision to retain six of the seven Ports America employees, including Mullen and Yockey. During the term of the lease, ICTSI's T6 supervisor turnover was less than 20 persons.

15.     Ganda will describe the business of ICTSI at T6 including the handling of customer cargo at the terminal facility, its customers and contracts, the services ICTSI provides to customers, the resources it requires to service T6 customers. Ganda will describe how ICTSI inherited sub-optimum cargo handling rates for existing ocean carriers Hanjin, Hapag-Lloyd and Westwood. These rates were agreed to between the Port of Portland and the ocean carriers in 2010 without ICTSI's consent. Those carriers knew that negotiating favorable rates with the Port of Portland was easier than negotiating favorable rates with ICTSI. The contracts inherited by ICTSI did not expire until the end of 2012. Ganda will testify that based on ICTSI's discussions with the Port and with the carriers, the ocean carriers expected ICTSI to raise the cargo handling rates when those contracts expired in 2013.  In response to market conditions, including labor actions, carriers typically are able to relatively quickly skip port calls as the carriers did in the summer of 2012.

16.     The characteristics that make a port attractive to ocean carriers include the productivity, the carrier schedule reliability, the cost of moving goods through the port, the

Page 6 -    **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

market served by that port, the balance of import and export of goods in that port, the port's infrastructure, and a high contribution margin per box. Ganda will explain the advantages that T6 enjoyed over the ports of Seattle and Tacoma in servicing containers originating from or destined for the T6 catchment area. These advantages included closer proximity to a growing catchment basin, shippers loyal to T6 service, as well as relative balance in import and export containers that reduced the ocean carriers' cost of repositioning empty containers. These advantages allowed ocean carriers to charge shippers a premium for moving containers through T6 as compared to ports in Seattle and Tacoma and this in turn allowed ICTSI to charge ocean carriers higher rates for T6 catchment containers than were charged by terminal operators in Seattle and Tacoma. ICTSI and the Port estimated that ocean carriers could charge a premium of $300 westbound and $450 eastbound per container. This knowledge was reinforced by a Hanjin document Ganda received from Sam Ruda in late 2011 or early 2012. Ruda explained to Ganda this document was given to him by Jeff McEwen with Hanjin. This document confirmed that in 2011 T6 was Hanjin's most profitable call on the North American West Coast, with the highest contribution margin per box of all of Hanjin's West Coast calls including Seattle and Tacoma ports, causing Hanjin to direct its salesforce to increase container volumes through T6. Ganda will explain that in a but-for world of no illegal labor actions at T6, it is feasible to simultaneously increase container volumes and increase revenues per TEU.

17.    The costs incurred by ICTSI for providing terminal services are directly impacted by labor productivity at T6.

18.    Ganda will describe ICTSI's marketing efforts to retain existing ocean carriers servicing T6 and to attract new carrier services to T6 commensurate with the opportunities to attract and retain ocean carriers. Ganda will testify about the joint marketing and travel with Port

Page 7 -    **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

of Portland personnel, as outlined in ICTSI's Response to ILWU Fourth Set of Interrogatories, Response No. 1.

19.    ICTSI's rate negotiations with ocean carriers calling on T6 started in late 2012 and were contentious. Hanjin was particularly difficult to negotiate with, but ICTSI attempted to maintain a professional relationship with all carriers, including during rate negotiations. Ganda will describe the container terminal pricing models in the container industry and the different pricing models ICTSI charged its customers between 2011 and 2016, and changes to the rate structure that ICTSI charged to carriers in the real world. Ganda will describe what his profit-maximizing pricing strategy would have been in a but-for world absent the ILWU's illegal labor actions, and the basis for his strategy. Ganda will explain that the rates he charged ocean carriers in the real world in 2013 and thereafter were reasonable, would have been reasonable in a but-for world, and the carriers would have likely accepted those rates in a but-for world with no illegal labor actions at T6.

20.    ICTSI calculates its charges to its customers to make certain that those charges at least cover the cost of providing services at T6 and to capture available profit. Ganda's pricing strategy is based on his knowledge of the general market rates in the competing ports of Seattle and Tacoma and the cost of moving containers between those ports and T6. Rate setting can involve trial and error to discover the highest rate the market will bear.

21.    Ganda will explain that in the real world he again increased rates in 2013 and every year thereafter to Hanjin, as well as Hamburg Sud, Hapag-Lloyd and Westwood, and that those carriers paid those increased rates. Ganda will describe that the carriers paid these increased rates despite the poor service those carriers endured due to the ILWU's illegal labor actions.

Page 8 -    **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

22.     Ganda will describe the addition of T6 service by ocean carrier Hamburg Sud in 2012. Hamburg Sud shared space on Hapag-Lloyd vessels. Hapag-Lloyd insisted that Hamburg Sud and ICTSI separately negotiate a terminal contract at T6. Ganda will describe those negotiations, why he believed those rates as agreed to and paid by Hamburg Sud were reasonable rates for T6. Ganda will explain that the rate structure Hamburg Sud agreed to in 2012 likely would have been agreed to by the carriers calling on T6 in a but-for world of no illegal labor actions at T6, including Hanjin, Hapag-Lloyd and Westwood.

23.     Labor relations between ICTSI and ILWU and other labor unions working at T6 were good from February 2011 until June 2012. During that time, productivity at T6 was increasing through process improvement efforts, which efforts included discussions with labor. Process improvement includes improving terminal and vessel operations efficiency through better yard and vessel planning, efficient routing of traffic through the facility, and ensuring proper preparation and availability of equipment to support terminal operations.

24.     The PMA/ILWU contracts provide the rules about how work is to be conducted, how labor is to be paid through the PMA and the rates labor is paid by category for that work. The contracts include methods and remedies for resolving labor disputes.

25.     Local 8 operates and maintains the terminal equipment at T6. Local 40 does the paperwork and directs the movement of cargo on the terminal.

26.     Twice every year the ILWU reports to the PMA the names of the locals' officers for the first and second half of the year.

27.     In late 2010 or early 2011, Ganda met with ILWU members Holte, Smith and others. During that meeting ILWU claimed jurisdiction over maintenance and repair work under the Port's control. Ganda told them ICTSI did not control the assignment of certain maintenance

Page 9 -    **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

and repair work retained by the Port under the lease and if they wanted to pursue that work, they needed to follow the proper process for establishing the entity that controls that work.

28.     When ICTSI began operations at T6 in February 2011, the ILWU sent a welcome letter that included the ILWU plan to pursue the reefer work, among other jobs at T6. ICTSI responded by letter advising that electrical work, such as the reefer work, was not under ICTSI's control, as the Port had insisted during lease negotiations that such work continue to be under the Port's control, as it had been since 1974.

29.     Ganda was present at the March 2011 TPM in Long Beach. During that meeting Local 8 President Smith promised ILWU would do the best job that organized labor can do and in partnership with ICTSI ILWU would give ICTSI the productivity levels needed at T6.

30.     Ganda will describe that in June 2012, the ILWU asserted its claim to the reefer work. Local 8 wanted to perform the plugging, unplugging and monitoring of the reefers. Local 40 wanted to record data from the reefers. To get that work, the ILWU began engaging in work stoppages, slowdowns and safety gimmicks. These job actions caused increased costs to ICTSI, loss of customers, lost opportunities for new customers, and loss of container volume resulting in decreased revenue.

31.     Ganda will describe discussions he had with ILWU leadership regarding the reefer work, productivity and carrier retention.  Ganda will describe letters from the ILWU to the ocean carriers demanding that the reefer work be performed by ILWU labor. Ganda will testify regarding the various threats he recalls were made to him by ILWU as found by this court.

32.     At all times ICTSI attempted to comply with the PCLCA. The ILWU has made false allegations that ICTSI violated the PCLCA.

33.     Ganda will testify about his participation in the discussions with Wyatt and others

Page 10 -   **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

in late 2013 leading up to the agreement between Wyatt and Sundet to temporarily reassign the reefer work to ILWU in exchange for an eventual return to historical productivity at T6.

34.    Ganda will describe the marketing efforts that led to the APL call in December 2014 and why a regular call at T6 in a but-for world would be profitable for APL, saving APL up to $420 per container in container storage fees, resulting savings totaling approximately $400,000 for 1,000 empty containers with 21 days of free time for storage of empty containers. In addition, in a but-for world ICTSI would have charged APL the same rate for handling empties that it would have charged other carriers for container handling. APL could have saved additional money moving empties via T6 as compared to trucking those containers to the APL terminal in Seattle.  Ganda will explain that based on his conversations and negotiations with APL, and based on savings available to APL with a T6 call, in a but-for world with no illegal labor actions APL likely would have started a weekly service at T6 in December 2014 picking up approximately 1000 empty containers approximately every week. In addition, APL likely would have commenced a full service regular call at T6 sometime thereafter. Ganda will describe the poor ILWU labor productivity in the real world during APL's December 2014 call that virtually ensured APL would not make any additional T6 calls in the real world.

35.    Ganda will describe his conversations with those in the international container shipping industry regarding T6 and that based on these conversations it was clear that the ILWU's unlawful labor actions at T6 were well known throughout the industry. Ganda will testify regarding his communications with the ocean carriers calling on T6 expressing their dissatisfaction and frustration with T6 productivity, schedule reliability, and corresponding increased cost, resulting in the carrier's threats to terminate calls to T6.

36.    The reasons cited by the carriers for terminating service to T6 were primarily lack

Page 11 -   **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

of productivity and lack of schedule reliability resulting in increased costs, all due to the impact of the illegal labor actions.

37.    Ganda will explain that in a but-for world without illegal labor actions at T6 it is likely that Hanjin and Hapag-Lloyd would have continued calling T6 rather than discontinuing their service in March 2015. Ganda will explain that in a but-for world without illegal labor actions at T6 a substitute carrier likely would have promptly replaced Hanjin at T6 following Hanjin's bankruptcy in August 2016. Ganda will discuss why he believes that it is likely that Hanjin's alliance partners would have taken over T6 service for Hanjin's customers following Hanjin bankruptcy, if Hanjin had not left T6 in March 2015. If Hanjin's partners did not pick up this captured market, then other carriers such as APL likely would be willing to take on the T6 service for those customers. In a but-for world without illegal labor actions at T6, ICTSI could focus less attention on the nightmare of unrelenting labor actions and instead focus on identifying and marketing a Hanjin replacement, likely with the help and support of Fred Meyer and other T6 shippers, the Oregon Governor, the Port of Portland and perhaps even the ILWU. Ganda will explain dialogue ICTSI had with Yang Ming in 2016 about Yang Ming's possible interest in a T6 call that was just not possible to fulfill in the real world due to illegal labor actions.

38.    In the real world, once Hanjin cancelled the T6 call due to the labor dispute, those Hanjin customers then established other methods for transporting and warehousing their cargo to the T6 market area, making it difficult to re-establish that call to T6, especially in light of ILWU's well-known reputation for poor productivity at T6.

39.    After Hanjin and Hapag/Lloyd terminated their T6 service in March 2015 due to the illegal labor actions of ILWU, ICTSI made substantial efforts to find replacement carriers to

Page 12 -   **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

service T6, including discussions with representatives of Hanjin, Hapag/Lloyd, APL, K-Line, NYK, Yang Ming, Evergreen, and other ocean carriers to establish a new T6 service. ICTSI also had discussions with Westwood about expanding its existing service at T6. Those ocean carriers told Ganda they were reluctant to take the risk of establishing a new or returning call to T6 in light of T6's well-known history of ILWU's illegal labor actions.

40.    Westwood terminated its T6 service in May 2016 due to poor ILWU labor productivity and the high cost of calling on T6.

41.    It therefore became clear that ocean carriers were unlikely to establish a call to T6. As a result, in late 2016 ICTSI approached Port of Portland to negotiate the termination of the T6 lease. ICTSI negotiated the best terms available to terminate that lease.

42.    Ganda will generally describe the course of this litigation, including the issuance of the injunction, finding of contempt, and the conclusions of fact and law that are conclusively established as applicable in this case.

43.    Injuries incurred by ICTSI as a result of ILWU's illegal labor actions include increased labor expense, increased operating and equipment costs due to low ILWU productivity and gimmicks at T6, lost carrier calls and lost TEUs as a result of labor actions at T6, the eventual loss of all ocean carrier container customers calling on T6, and the lost opportunity to attract other ocean carrier services to T6. In addition, ICTSI incurred out of pocket damages in the form of the lease termination fee of $11,450,000, as well as the lost value of the equipment that was purchased by ICTSI but then sold to the Port of Portland as partial consideration for the buyout of the remaining lease obligation. That equipment was valued at $4,364,000. Ganda will explain that based on ICTSI's profits in the real world in 2013, in a but-for world of no illegal labor actions at T6 ICTSI likely would have earned at least those profits in 2013 and even greater

Page 13 -   **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

profits in the years thereafter.

Dated this 8th day of February 2023.

By: *s/Jeffrey S. Eden*
Jeffrey S. Eden, OSB #851903
Email: jeden@schwabe.com
Michael T. Garone, OSB #802341
Email: mgarone@schwabe.com
Andrew J. Lee, OSB #023646
Email: ajlee@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Facsimile:  503-796-2900

Amanda T. Gamblin, OSB #021361
Email: amanda@gamblin-law.com
AMANDA T GAMBLIN, ATTORNEY AT LAW
LLC
4004 SE Francis Street
Portland, OR 97202
Telephone: 503-329-1858

*Of Attorneys for ICTSI Oregon, Inc.*

Page 14 -  **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February 2023, I served the foregoing **FRCP 26(a)(2)(C) DISCLOSURE OF ELVIS GANDA** on:

| | |
|---|---|
| Julie R. Vacura<br>Cody Hoesly<br>John C. Rake<br>Brett Applegate<br>Kelsey Benedick<br>LARKINS VACURA KAYSER LLP<br>121 SW Morrison Street, Suite 700<br>Portland, OR 97204<br>Telephone:  (503) 242-4424<br>Facsimile:  (503) 827-7600<br>Email:    jvacura@lvklaw.com<br>          choesly@lvklaw.com<br>          jrake@lvklaw.com<br>          bapplegate@lvklaw.com<br>          kbenedick@lvklaw.com<br><br>*Of Attorneys for ILWU and ILWU Local 8* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC<br>   CM/ECF system |
| Peter Hurtgen (admitted *pro hac vice*)<br>CURLEY, HURTGEN & JOHNSRUD, LLP<br>4400 Bohannon Drive, Suite 230<br>Menlo Park, CA  94025<br>Telephone:  (949) 302-9193<br>Facsimile:  (650) 323-1002<br>Email:    phurtgen@chjllp.com<br><br>*Of Attorneys for ICTSI Oregon, Inc.* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email<br>☒ Electronically via USDC<br>   CM/ECF system |

*s/Jeffrey S. Eden*
Jeffrey S. Eden, OSB #851903